# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

THE HARTFORD FIRE INSURANCE COMPANY,

      Plaintiff/Counter-defendant,

vs.                                                                                No. CIV 10-0137 JB/RHS

GANDY DANCER, LLC;
BNSF RAILWAY COMPANY; and
ROY D. MERCER, LLC.,

      Defendants.
-- and --

BNSF RAILWAY COMPANY,

      Counter-Plaintiff,

vs.

THE HARTFORD FIRE INSURANCE COMPANY,

      Counter-defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the BNSF Railway Company's and Gandy Dancer's Motion to Stay Proceedings, filed July 14, 2010 (Doc. 29)("Motion").  The Court held a hearing on August 13, 2010.  The primary issue is whether the Court should stay this insurance coverage case pending resolution of the underlying case in state court.  Because the issues before the Court are distinct from the issues before the state court, the Court will deny the Motion.

## FACTUAL BACKGROUND

Defendant and Counterplaintiff BNSF Railway Company ("BNSF") is a Delaware corporation that does business in, among other places, Soccoro County, New Mexico, and owns and

operates a railroad track.  <u>See</u> Hartford's Complaint for Declaratory Judgment ¶¶ 5, 9, at 2, filed February 16, 2010 (Doc. 1)("Hartford's Complaint").  A portion of BNSF's railroad facilities is located next to a tract of land that Roy Mercer, LLC ("Mercer, LLC"), the plaintiff in the state case, owns.  <u>See</u> Hartford's Complaint ¶ 9, at 2.  Mercer, LLC's land lies within a silting basin for the Brown Arroyo, which is located south of Socorro and drains water in an easterly direction toward the railroad tracks.  <u>See</u> Hartford's Complaint ¶ 10, at 3.

In July and August 2006, heavy rainfall produced floodwaters that damaged a system of levees and berms designed to divert water flowing down the Brown Arroyo away from BNSF's railroad tracks.  <u>See</u> Memorandum Brief in Support of BNSF's and Gandy Dancer's Motion to Stay Proceedings at 2, filed July 14, 2010 (Doc. 30)("Memorandum"); Hartford's Complaint ¶ 16, at 3.  As a result, floodwaters breached BNSF's diversion levees in several locations, washed out BNSF's tracks and ballast, and deposited mud and debris on the tracks.  <u>See</u> Memorandum at 2; Hartford's Complaint ¶ 16, at 3.  Shortly after the flooding, BNSF hired Gandy Dancer, LLC, a New Mexico company doing business in New Mexico, to perform rehabilitation work on the railroad.  <u>See</u> Hartford's Complaint ¶ 14, at 2; Defendant BNSF's Amended Answer to Complaint for Declaratory Judgment and Counterclaim ¶¶ 13-14, at 11, filed April 13, 2010 (Doc. 15)("BNSF's Answer").

BNSF's contractors, including Gandy Dancer, rehabilitated the diversion system by removing vegetation, rebuilding levees, and repairing existing berms and dikes.  <u>See</u> Memorandum at 2; Hartford's Response to Motion to Stay Proceedings at 2, filed July 28, 2010 (Doc. 32)("Response").  Gandy Dancer performed part of the rehabilitation work on the diversion system on Mercer, LLC's property.  <u>See</u> Hartford's Complaint ¶¶ 11, 17, at 4; BNSF's Answer ¶ 17, at 3.

In the fall of 2006, Mercer, LLC notified BNSF of its concerns about the rehabilitation work BNSF and Gandy Dancer performed, which Mercer, LLC contends damaged his property, particularly the water diversion system they constructed.  See Answer to Complaint for Injunctive Relief, Declaratory Judgment, Negligence and Nuisance and Counterclaim ¶¶ 6, 19, at 5, 8 (dated July 1, 2008); BNSF Railway Co. v. Roy Mercer, LLC, No. D 725 CV 2008 00092 (Seventh Judicial District Court, County of Socorro, State of New Mexico), filed July 8, 2008 (Doc. 1-1)("Mercer's Answer"); BNSF's Answer ¶ 15, at 11.  Mercer, LLC alleges that the system redirected floodwater onto its property and deprived Mercer, LLC of its reasonable use.  See Mercer's Answer ¶¶ 11, 19, at 6, 8.  Mercer, LLC also alleges, contrary to BNSF and its agents' representations to Mercer, LLC that BNSF had a valid easement to construct the diversion system, that BNSF had no legal right to access Mercer, LLC's property.  See Mercer's Answer ¶¶ 8, 9, at 5-6.  BNSF contends that it has an easement on Mercer, LLC's property allowing it to construct structures to protect the railroad from floodwaters.  See Hartford's Complaint ¶ 13, at 3.

After notifying BNSF of its claims regarding the rehabilitation work, BNSF and Mercer, LLC initially attempted to resolve the dispute amongst themselves.  See Memorandum at 2.  In May or June of 2007, while BNSF and Mercer, LLC were negotiating, BNSF tendered Mercer, LLC's claims to The Hartford Fire Insurance Company ("The Hartford") for coverage under several business liability insurance policies issued to Gandy Dancer, under which BNSF is also insured.  See Hartford's Complaint ¶ 33, at 6; BNSF's Answer ¶ 16, at 15; Memorandum at 3.

The policies provide coverage for property damage only if it is caused by an "occurrence," defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Hartford's Complaint ¶¶ 31-32, at 6.  The policies exclude from coverage

"'property damage' expected or intended from the standpoint of the insured" or for damage to "[t]hat particular part of real property on which [the insured] or any contractors or subcontractors working directly or indirectly on [the insured's] behalf are performing operations, if the 'property damage' arises out of those operations."  Hartford's Complaint ¶¶ 38-39, at 8-9.

On August 16, 2007, BNSF had not received an answer from The Hartford regarding its determination of coverage, and BNSF requested a determination of coverage by August 22, 2007. See BNSF's Answer ¶ 17, at 11.  BNSF extended that deadline to August 31, 2007, and the Hartfortd subsequently informed BNSF that it had accepted coverage for Mercer, LLC's claim.  See BNSF's Answer ¶¶ 17-18, at 11-12.  On October 2, 2007, The Hartford affirmed to BNSF in writing that BNSF was entitled to a defense and indemnification under the insurance policies without a reservation of rights to deny coverage and withdraw the defense if no coverage is available under the insurance policies.  See BNSF's Answer ¶ 19, at 12.  On November 13, 2007, The Hartford sent an additional affirmation to BNSF that it had accepted coverage, but included a reservation of rights. See BNSF's Answer ¶ 20, at 12.  On December 14, 2007, BNSF notified The Hartford of its objection to The Hartford's reservation of rights.  See BNSF's Answer ¶ 19, at 21.  From the time The Hartford accepted coverage until May 2008, The Hartford investigated damages and liability relating to Mercer, LLC's claims.  See BNSF's Answer ¶¶ 22-23, at 12.  BNSF contends that, in the spring of 2008, Mercer, LLC threatened to begin earthmoving activities to remove BNSF's rehabilitation work from its property, see Hartford's Complaint ¶ 9, at 2, which Mercer, LLC denies, see Defendant Roy D. Mercer, LLC's Answer to Plaintiff's Complaint for Declaratory Judgment ¶ 18, at 3, filed April 5, 2010 (Doc. 14)("Mercer's Answer to Hartford").

On June 3, 2008, BNSF filed a complaint against Mercer, LLC for injunctive relief, declaratory judgment, negligence, and nuisance in the Seventh Judicial District of New Mexico. <u>See</u> Hartford's Complaint ¶ 19, at 4.  The New Mexico District Court entered a temporary-restraining order preventing Mercer, LLC from removing or disturbing the rehabilitation work performed on its property on June 4, 2008.  <u>See</u> Hartford's Complaint ¶ 19, at 4; BNSF's Answer ¶ 25, at 13. Mercer, LLC filed an answer to BNSF's complaint along with counterclaims on July 8, 2008.  <u>See</u> Hartford's Complaint ¶ 20, at 4; Mercer's Answer at 4.  Mercer, LLC contended that BNSF was not authorized to enter Mercer, LLC's property to perform the rehabilitation work and construct the diversion system.  <u>See</u> Mercer's Answer ¶¶ 3-4, at 5.  Mercer, LLC stated counterclaims for trespass, negligence, negligent misrepresentation, misrepresentation, nuisance, unjust enrichment, prima-facie tort, and punitive damages.  <u>See</u> Mercer's Answer at 4.

On June 24, 2009, Mercer, LLC filed a third-party complaint against Gandy Dancer in state court.  <u>See</u> Mercer's Third-Party Complaint Against Third-Party Defendant Gandy Dancer, LLC at 1, filed June 24, 2009 (Doc. 1-3)("State Court Complaint").  Mercer, LLC contended that BNSF hired Gandy Dancer to perform the rehabilitation work, and asserted claims for negligence, negligence per se, nuisance, unfair trade practices, trespass, deprivation of property value, and punitive damages.  <u>See</u> State Court Complaint at 1.  Mercer, LLC also filed a second amended counterclaim against BNSF in state court asserting additional claims for negligence per se, unfair trade practices, inverse condemnation, deprivation of property value, abandonment, and modification of easement.  <u>See</u> Defendant/Counter-Plaintiff's 2nd Amended Counterclaim Against Plaintiff/Counter-Defendant BNSF at 1, filed June 24, 2009 (Doc. 1-4)("Mercer's Second Amended Counterclaim").  The Hartford is currently defending BNSF and Gandy Dancer against Mercer,

LLC's counterclaims in state court.  See Hartford Complaint ¶ 40 at 6; BNSF's Answer ¶ 40, at 6; Gandy Dancer's Response to Hartford ¶ 40, at 8.

## PROCEDURAL BACKGROUND

On February 16, 2010, The Hartford filed its Complaint in the Court.[1]  The Hartford requests a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  See Hartford's Complaint at 1.  The Hartford requests that the Court declare that The Hartford owes no insurance obligations to indemnify or to defend BNSF or Gandy Dancer in connection with the rehabilitation work that is the subject of Mercer, LLC's suit against BNSF and Gandy Dancer.  See Hartford's Complaint ¶ 1, at 1.

On March 28, 2010, Gandy Dancer filed its Answer to Complaint for Declaratory Judgment. Doc. 12 ("Gandy Dancer's Answer to Hartford").  Gandy Dancer asserts that the doctrines of waiver, delay and/or laches, bad faith, inequitable conduct and/or unclean hands, and "mend and hold" bar The Hartford's claims.  See Gandy Dancer's Answer to Hartford ¶¶ 1-7, at 9.  Gandy Dancer requests that the Court grant declaratory judgment against The Hartford, declaring that The Hartford has a duty to defend and indemnify Gandy Dancer in the underlying suit.  See Gandy Dancer's Response to Hartford at 10.  Mercer, LLC responded, similarly asserting that the doctrines of laches, estoppel and/or waiver, comparative fault, acquiescence, and The Hartford's failure to join a necessary party bar The Hartford's claims.  See Mercer's Answer to Hartford ¶ 46, at 7.  BNSF

---

[1] In its Complaint, The Hartford contends that Mercer, LLC dropped all the allegations and claims asserted in Mercer, LLC's original counterclaim, and purported to assert claims for declaratory judgment and modification of the easement by estoppel in Mercer, LLC's amended counterclaim. See Hartford's Complaint ¶ 22, at 4.  Mercer, LLC however, "incorporates by referenced, [sic] each and every allegation, response, defenses [sic] and affirmative defense in it [sic] entirety, contained within its" original counterclaim.  Mercer, LLC's Answer to Amended Complaint for Declaratory Judgment and Injunctive Relief and Counterclaim ¶ 1, at 1, filed September 15, 2008 (Doc. 1-2)(Mercer's First Amended Counterclaim).

responded, asserting that the doctrines of waiver, estoppel, estoppel by contract, bad faith, inequitable conduct, unclean hands, laches, and "meld the hold" bar Hartford's claims. <u>See</u> BNSF's Answer at 7.  BNSF asserted counterclaims for bad faith, breach of contract, violation of the Unfair Insurance Practices Act, and violation of the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 to 57-12-30.  <u>See</u> BNSF's Answer at 14-16.

The Hartford filed an answer to BNSF's counterclaims on May 13, 2010.  <u>See</u> The Hartford Insurance Company's Answer to BNSF Railway Company's Counterclaim at 1, filed May 13, 2010 (Doc. 19)("Hartford's Response to Counterclaims").  The Hartford denied most of BNSF's allegations and asserted that BNSF's counterclaims were barred to the extent that others' fault caused the injuries and to the extent that BNSF failed to mitigate damages.  <u>See</u> Hartford's Response to Counterclaim at 7.  The Hartford also contended BNSF's claim for punitive damages violates the Constitution of the United States as well as the Constitution of the State of New Mexico.  <u>See</u> Hartford's Response to Counterclaim at 7.  The Hartford argued that BNSF knowingly brought a groundless action under the Unfair Practices Act.  <u>See</u> Hartford's Response to Counterclaim at 7.  The Hartford once again asserted that BNSF is not entitled to coverage under the policies and requests that the Court dismiss BNSF's counterclaims with prejudice.  <u>See</u> Hartford's Response to Counterclaim at 8.

On July 14, 2010, BNSF and Gandy Dancer filed their Motion, seeking to stay these proceedings pending resolution of the underlying suit, <u>BNSF Railway Co. v. Roy D. Mercer, LLC</u>, No. D-725-CV-2008-92, in New Mexico District Court.  <u>See</u> Motion at 1.  BNSF and Gandy Dancer contend that, based on the factors in <u>State Farm Fire and Casualty Co. v. Mhoon</u>, 31 F.3d 979 (10th Cir. 1994), the Court should decline to exercise jurisdiction over this case.  <u>See</u> Memorandum at 5.

-7-

Specifically, BNSF and Gandy Dancer argue that: (i) there is a substantial risk of friction between the federal and state courts, because this action involves the same fact-dependant issues regarding intent that will be litigated in the underlying action; (ii) they are likely to suffer prejudice if the declaratory proceeding is permitted to proceed; (iii) a stay is in accordance with New Mexico law; and (iv) the two and half years between the time when The Hartford accepted coverage and the time when it challenged coverage constitutes laches as a matter of law.  See Memorandum at 1, 8-9, 10, 12. BNSF and Gandy Dancer contend that allowing the declaratory proceedings to continue presents a risk that they could be left without counsel in the middle of the underlying action, that an adverse factual finding could prevent them from relitigating the issue in the underlying action, and that they will be forced to fight a two-front war.  See Memorandum at 2.  Mercer, LLC filed a response in support of BNSF and Gandy Dancer's motion to stay these proceedings, and requests that the Court grant BNSF and Gandy Dancer's motion.  See Defendant Roy D. Mercer, LLC's Response in Support of BNSF Railway Company and Gandy Dancer, LLC's Motion to Stay Proceedings at 1, filed July 27, 2010 (Doc. 31).

The Hartford responded to BNSF and Gandy Dancer's motion on July 28, 2010.  See Response at 1.  The Hartford contends that the State Farm Fire and Casualty Co. v. Mhoon factors favor the Court's retention of jurisdiction over the case.  See Response at 3-5.  The Hartford argues that, because the federal and state actions are not parallel, there is no friction between the federal and state courts.  See Response at 5.  The Hartford points out that it is not a party to the state action and that the state action sounds in tort while the federal action sounds in contract.  See Response at 5.  The Hartford contends that the Court will be able to determine whether the alleged damages resulted from an "occurrence," or involve "expected or intended" property damage, without making

a determination regarding intent that will interfere with BNSF's and Gandy Dancer's ability to defend themselves in their suit against Mercer, LLC.  Response at 7.

The Hartford also points out that prejudice is not a factor under State Farm Fire and Casualty Co. v. Mhoon for the Court to consider in determining whether to exercise its jurisdiction or to stay the proceedings.  See Response at 7.  The Hartford further contends that BNSF and Gandy Dancer will not suffer prejudice, because allowing the declaratory judgment action to proceed: (i) will not prohibit BNSF and Gandy Dancer from defending themselves in the underlying dispute; (ii) will not align The Hartford's interests with Mercer, LLC's interest; and (iii) will not require BNSF and Gandy Dancer to fight a "two-front war," because the declaratory judgment action is purely a legal question.  See Response at 9.  The Hartford argues that Foundation Reserve Insurance Co. v. Mullenix, 97 N.M. 618, 642 P.2d 604 (1982), does not control whether a stay is appropriate.  See Response at 10.  The Hartford requests that the Court deny BNSF and Gandy Dancer's motion to stay this proceeding in its entirety.  See Response at 11.

In their reply, BNSF and Gandy Dancer argue that the declaratory judgment proceedings do not involve a purely legal question in this case.  See Reply Brief in Support of BNSF Railway Company's and Gandy Dancer's Motion to Stay Proceedings at 1-2, filed August 11, 2010 (Doc. 33)("Reply Brief").  BNSF and Gandy Dancer argue that, to determine coverage in this case, the Court must make factual findings regarding BNSF's and Gandy Dancer's intent, which is the same factual determination at issue in the underlying action.  See Reply Brief at 2.  BNSF and Gandy Dancer contend that The Hartford erroneously equates the intent to perform an act with the intent to cause harm and that this distinction is relevant to the determination of coverage as well as to the underlying action.  BNSF and Gandy Dancer assert that a stay is appropriate because the coverage

issue turns on facts that will be litigated in the underlying action.  See Reply Brief at 7.  BNSF and Gandy Dancer request that the Court stay this proceeding pending resolution of the underlying state court action.  See Reply Brief at 8.

The Court held a hearing on August 13, 2010.  The parties stated that the state court proceedings had been in progress for approximately two years at the time of the hearing.  The parties further represented that the state proceeding was removed to federal court for about eight months before the Honorable Martha A. Vasquez, Chief United States District Court Judge,[2] determined it was improperly removed, and remanded the case to state court.  See Transcript of Hearing at 10:20-24 (taken February 22, 2008)(Ford)("Tr.").[3]  BNSF represented that it was unaware whether the state court judge would prefer that the Court exercise jurisdiction.  See Tr. at 16:23-17:1 (Court, Fields).

BNSF reiterated that, to determine coverage, the Court will have to determine whether there was an intent to harm, which is essentially the same issue that will be decided in the underlying state action.  See Tr. at 4:10-14 (Fields).  BNSF contended that, under New Mexico law, declaratory judgment proceedings should be stayed and the underlying state action should go forward when the same factual determination will be decided in both actions.  See Tr. at 4:15-22 (Fields).  BNSF argued that, based on State Farm Fire and Casualty Co. v. Mhoon, the proceedings should be stayed, because there is a substantial risk of friction between state and federal courts if the declaratory judgment action is allowed to proceed.  See Tr. at 9:22-25, 10:1-3 (Fields).  BNSF also pointed out that in State Farm Fire and Casualty Co. v. Mhoon, the issue of intent was clear, while here the issue is disputed in both the federal and state actions.  See Tr. at 18:10-17 (Warburton).  BNSF contended

---

[2] Judge Vasquez was Chief Judge at the time the case was before her.
[3] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

that it and Gandy Dancer will have to fight a "two-front war" with regard to the issue of intent.  See Tr. at 15:7-9 (Fields).  BNSF and Gandy Dancer also asserted that they do not seek to dismiss this case, but only to stay it until the conclusion of the state hearing.  See Tr. at 7:7-14 (Fields).

The Hartford countered that the declaratory action will require the Court only to make a legal determination of coverage based on whether the act was performed voluntarily and will not interfere with the factual issues being litigated in the underlying state action.  See Tr. at 32:1-6 (Suarez).  The Hartford argued that the factors in State Farm Fire and Casualty Co. v. Mhoon weigh in favor of denying the motion to stay these proceedings.  See Tr. at 31:9-14 (Suarez).  The Hartford contended that it does not wish to intervene in the underlying state action.  See Tr. at 35:1-2 (Suarez).  The Hartford also argued that it would be unfair to stay this proceeding, because doing do would require it to pay for two law firms to defend two parties in the underlying case while it waited for the coverage issued to be determined.  See Tr. at 34:1-4 (Suarez).

Mercer, LLC clarified what common questions of fact exist in the state case and this case. Mercer, LLC stated that issues of coverage and tort liability both turn on the scope of the easement which ran on its property.  See Tr. at 23:17-21 (Ford).  Mercer, LLC further asserted that the scope of the easement is factually complex, involving expert testimony and issues whether BNSF and Gandy Dancer knew that the repairs would redirect a diversion channel.  See Tr. at 23:21-24:16 (Ford).

The Hartford represented that it does not require discovery to resolve its duty to defend.  See Tr. at 32:25-33:1 (Court, Suarez).  The Hartford seeks primarily a federal court interpretation of state law, which it does not believe would require discovery.  See Tr. at 32:15-24 (Court, Suarez).  The Hartford represented that, if it is permitted to go forward, it will file a summary judgment motion

-11-

asking the Court to determine whether <u>Knowles v. United Services Automobile Association</u>, 113 N.M. 703, 832 P.2d 394 (1992), requires only volitional activity to establish whether "expected or intended" injuries, or something more.  <u>See</u> Tr. at 33:10-13 (Court, Suarez).

BNSF asserted that it believed this case was more complex than interpreting <u>Knowles v. United Services Automobile Association</u>, because that interpretation would lead to the Court determining whether the facts of this case satisfy the requirements set forth in that case.  <u>See</u> Tr. at 37:24-38:25 (Court, Fields).  The Hartford further stated that it had no objection to the Court staying this case if it is permitted to file a motion asking the Court to decide if, under <u>Knowles v. United Services Automobile Association</u>, and based on the four corners of the state complaint and the insurance policies, it has no duty to defend or indemnify BNSF and Gandy Dancer.  <u>See</u> Tr. at 41:3-15 (Court, Suarez).

## <u>LAW REGARDING EXERCISING DISCRETIONARY JURISDICTION OVER DECLARATORY JUDGMENT ACTIONS</u>

The Federal Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 282 (1995).  In <u>Brillhart v. Excess Insurance Co. of America</u>, 316 U.S. 491 (1942), the Supreme Court of the United States explained that district courts are "under no compulsion to exercise . . . jurisdiction" under the Federal Declaratory Judgment Act.  316 U.S. at 494.  The Supreme Court explained:

-12-

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

316 U.S. at 495.   A court should determine whether the lawsuit "can be better settled in the proceeding pending in the state court."   316 U.S. at 495.

The United States Court of Appeals for the Tenth Circuit has adopted a five-factor test for evaluating whether a district court should exercise its discretionary jurisdiction over a declaratory judgment action:

> [(i)] whether a declaratory action would settle the controversy; [(ii)] whether it would serve a useful purpose in clarifying the legal relations at issue; [(iii)] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata "; [(iv)] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [(v)] whether there is an alternative remedy which is better or more effective.

St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d 1167, 1169 (10th Cir. 1995)(quoting State Farm Fire and Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994)).   In St. Paul Fire and Marine Insurance Co. v. Runyon, the plaintiff, an insurance company, sought declaratory judgment that it had no obligation to defend the defendant under the terms of a professional-liability insurance policy.   See 53 F.3d at 1168.   The defendant sought indemnification and defense for claims brought by his coworkers.   See 53 F.3d at 1168.   The insurance-company plaintiff refused to provide a defense.   See id.   After three years of negotiation, the defendant told the insurance-company plaintiff that he would initiate a state court suit for breach of contract and bad faith by February 18, 1994 if it did not assume his defense.   See 53 F.3d at 1168.   On February 17, 1994, the insurance-company plaintiff filed a diversity action for declaratory judgment.   See 53 F.3d at 1168.   The defendant filed

-13-

a complaint for bad faith and breach of contract in state court on February 18, 1994.  See 53 F.3d at 1168.

The Tenth Circuit noted that the federal declaratory-judgment statute, see 28 U.S.C. § 2201, "vests the federal courts with power and competence to issue a declaration of rights." St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1168.  "[W]hether this power should be exercised in a particular case is vested in the sound discretion of the district courts." 53 F.3d at 1168.  The district court in St. Paul Fire and Marine Insurance Co. v. Runyon had abstained from exercising jurisdiction, "because the same issues were involved in the pending state proceeding, and therefore, there existed a more effective alternative remedy." 53 F.3d at 1169.

The Tenth Circuit in St. Paul Fire and Marine Insurance Co. v. Runyon explained:

The parties have a pending state contract action, which incorporates the identical issue involved in the declaratory judgment action. [The defendant's] state breach of contract complaint against [the insurance-company plaintiff] alleges the coworkers' lawsuit is a "covered claim" pursuant to the insurance policy.  In resolving the insurance contract, the state court will necessarily determine rights and obligations under the contract. [The insurance-company plaintiff] is seeking a declaration by the federal court that the coworkers' lawsuit is not a covered claim.  The issue in the federal declaratory judgment action is identical to what would be a defense to the state court contract action -- whether [the defendant]'s insurance contract with [the insurance-company plaintiff] protects him from the coworkers' lawsuit.  Because the state court will determine, under state contract law, whether the tort action is covered by the insurance contract, it is not necessary for the federal court to issue a declaration on the insurance contract.

53 F.3d at 1169.  A federal court is not required to refuse jurisdiction, but it "should not entertain a declaratory judgment action over which it has jurisdiction if the same fact-dependent issues are likely to be decided in another pending proceeding." 53 F.3d at 1170.  A federal court may abstain from exercising jurisdiction over a declaratory judgment action if "the plaintiff is using the action for procedural fencing." 53 F.3d at 1170.  The Tenth Circuit noted that the insurance-company

-14-

plaintiff's timing of filing suit "may not necessarily be bad faith on [its] part," but found that the insurance-company plaintiff was unable to show error in the district court's perception that it was using the declaratory judgment action for procedural fencing or "to provide an arena for a race to res judicata." Id. (emphasis in original).

In State Farm Fire & Casualty Co. v. Mhoon, three lawsuits arose from Robert Mhoon shooting Takuro Fujiwara. See 31 F.3d at 981. Fujiwara and his wife filed suit in state court on November 2, 1990, alleging that Mhoon committed intentional torts against them. See 31 F.3d at 982. State Farm, Mhoon's insurer, agreed to defend him against the Fujiwaras, "but only under a reservation of rights which left State Farm free to seek a judicial determination of its contractual obligations to Mhoon." 31 F.3d at 982. On June 12, 1991, State Farm filed a declaratory judgment action under 28 U.S.C. § 2201 and sought declaration that Mhoon was not covered under the policy because he shot Fujiwara intentionally. See State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d at 982. "Though the state tort suit between Mhoon and [Fujiwara] was still in progress at the time, the federal district judge agreed to hear State Farm's declaratory action." 31 F.3d at 982. The federal district court ruled, as a matter of law, that Mhoon intentionally shot Fujiwara. See 31 F.3d at 982.

> The critical question whether Mhoon acted intentionally was before both the state and federal courts simultaneously and the federal court's failure to await the state court's resolution of the issue opened the possibility that the state court would be foreclosed from deciding that Mhoon behaved only negligently and was, thus, entitled to be insured and defended.

31 F.3d at 983.

The Tenth Circuit in State Farm Fire and Casualty Co v. Mhoon, held that the federal district court did not abuse its discretion by hearing the case, because "a live need for declaration of State Farm's rights and duties did, in fact, exist." 31 F.3d at 983-84. The Tenth Circuit based its decision

on: (i) neither party suggested that State Farm could have been or was a party to the state tort action, "thus obviating the need for an independent declaratory action and providing a simpler and more efficient resolution of State Farm's obligations towards Mhoon"; (ii) there was substantial interest in deciding the question of duty to defendant without delay; and (iii) the federal district court was an available forum to State Farm.  31 F.3d at 984.  The Tenth Circuit noted that the federal court's exercise of jurisdiction did not unduly interfere with the state proceeding.  See 31 F.3d at 984.  The federal court's decision on State Farm's duty "involved no matter, factual or legal, at issue in the state case."  31 F.3d at 984.  The coverage issue was not a complicated one, and involved only a search of the record to determine whether Mhoon's conduct was accidental under the insurance policy.  See 31 F.3d at 984.  "[It] was not a case, therefore, where the district court found a material factual dispute and proceeded to resolve it in the face of ongoing state proceedings on the same subject."  31 F.3d at 984.  That scenario would have presented a different issue, especially if the state proceedings were quite far along.  Under those circumstances, a stay or dismissal might be proper.  See 31 F.3d at 984.

In 2006, Judge Baldock, sitting by designation on the United States District Court for the District of New Mexico, denied the defendants' motion to dismiss, but granted the defendants' request to stay the proceedings.  See Progressive Specialty Ins. Co. v. Thakur, Order Denying Defendants' Motion to Dismiss But Allowing Defendants' Alternative Motion to Stay Proceedings, No. CIV 06-0542 BRB/RHS (D.N.M. November 14, 2006)(Doc. 14)("Thakur Order").  In Progressive Specialty Ins. Co. v. Thakur, the insurance company sought declaratory judgment that the total amount of coverage owed to the insured was $50,000.00.  See Thakur Order at 2.  The insured counterclaimed, seeking a declaration of rights and obligations, reformation of the insurance

contract, and monetary damages for breach of contract, negligence, bad-faith dealing, and violation

of the New Mexico Insurance Code and Unfair Practices Act.  See Thakur Order at 2.  The insured

also responded to the insurance company's suit in federal court by filing his own suit against the

insurance company in state court.  See Thakur Order at 2.  The insured named an additional

defendant that he contended was a necessary and indispensable party to the federal lawsuit.  See

Thakur Order at 2. The additional defendant was the agency that sold the insurance policy to the

insured.  See Thakur Order at 2.  Both the insured and the agency were residents of New Mexico,

and the joinder of the agency "effectively destroyed diversity jurisdiction and the possibility of

removal from state court."  Thakur Order at 2.  Although the insured's state lawsuit was "broader

in scope," it essentially raised issues identical to the insurance company's federal lawsuit.  Thakur

Order at 3.

Judge Baldock determined that "the state proceeding, unlike [the federal lawsuit], appear[ed]

to encompass the entire controversy by addressing both [the insurance company's] and [the agent's]

potential liability to [the insured]."  Thakur Order at 5.  "In other words, the rights and obligations

of all concerned parties may be adjudicated only in the state action," while the federal lawsuit

"might lead to piecemeal litigation thereby undermining both federal and state interests in

practicality and wise judicial administration."  Thakur Order at 5 (internal quotations omitted and

emphasis in original).  Judge Baldock explained that, for the same reasons, "the state remedy

appear[ed] to be the most effective.  Because the state action [would] likely decide the rights of all

interested parties, including the parties to the [federal action], such remedy necessarily is more

comprehensive and cohesive."  Thakur Order at 6.  Judge Baldock did not believe that the federal

-17-

lawsuit provided the insured with an effective remedy, "because he might very well have to argue factually and legally similar issues against [the agency] in state court." Thakur Order at 6.

Judge Baldock in Progressive Speciality Insurance Co. v. Thakur explained that, more importantly, the case presented "purely questions of state law including the interpretation of the state's insurance code." Thakur Order at 6. "The State of New Mexico has the predominant interest in deciding a matter involving an insurance policy issued within the state to a state resident involved in an auto accident on a state throughfare." Thakur Order at 6. Judge Baldock did not dismiss the case, but stayed it, because "a stay avoids problems which might arise if application of a time bar might prevent [the insurance company] from refiling its federal action." Thakur Order at 7.

## ANALYSIS

BNSF and Gandy Dancer contend that there is a significant risk of: (i) increased friction between state and federal courts; and (ii) prejudice to BNSF and Gandy Dancer should these proceedings be permitted to proceed. The Hartford responds that, on balance, the State Farm Fire & Casualty Co. v. Mhoon factors weigh in favor of denying the BNSF's and Gandy Dancer's Motion. The Court agrees that, under State Farm Fire & Casualty Co. v. Mhoon, the relevant factors weigh in favor of denying BNSF's and Gandy Dancer's Motion. The Hartford has represented that, if it permitted to go forward, it will file a motion for summary judgment seeking the Court's declaration that, as a matter of law, based only on the pleadings and the insurance policies, that The Hartford has no obligation to BNSF and Gandy Dancer under the policies in the state court proceedings.

The Court will deny BNSF's and Gandy Dancer's Motion, because the Mhoon factors weigh against staying this case. The standard for determining whether BNSF's and Gandy Dancer's

actions were "expected or intended" is distinct from the standard for determining intent for the tort claims before the state court, so there is no risk of the state and federal courts deciding the same issue differently.  Moreover, under New Mexico law, the Court determines whether The Hartford has a duty to defend based on the State Court Complaint and the insurance policies, and The Hartford has represented that it will seek a decision based only on those documents.  Moreover, BNSF and Gandy Dancer have not shown that they will suffer prejudice from the Court allowing this case to proceed.  The Court therefore denies their Motion.

## I.   EXERCISING JURISDICTION WILL NOT INCREASE FRICTION BETWEEN THE FEDERAL AND STATE COURTS.

BNSF and Gandy Dancer argue that potential friction between the federal and state courts warrants imposition of a stay.  They assert that the two actions involve similar fact-dependent issues regarding intent, and, accordingly, inconsistent factual determinations might result, and/or they might suffer collateral estoppel if the federal action outpaces the state court action, which they state is advanced in the litigation process.  The Hartford responds that the two actions are dissimilar in: (i) the claims asserted, (ii) legal standards to be applied, and (iii) remedies sought.  See Scottsdale Ins. Co. v. Detco Indus., Inc., 426 F.3d 994, 999 (8th Cir. 2005)(finding no entanglement where one action was in tort and the other in contract).  The Hartford contends, moreover, that the Court can determine whether it has a duty to defend and indemnify BNSF and Gandy Dancer based on the pleadings and the insurance policies.  The Hartford avers that, because BNSF and Gandy Dancer do not deny that they intentionally performed remedial work, BNSF and Gandy Dancer cannot argue that their conduct amounted to an accidental occurrence.  See Response at 6-7.  The Hartford further argues that, because there is no dispute regarding whether BNSF and Gandy Dancer performed the

remedial work, there can be no underlying factual issue concerning whether the "expected or intended" exclusion applies.  Response at 6.

The Court agrees that allowing this case to go forward will not create tension between the state and federal courts.  In State Farm Fire and Casualty Co. v. Mhoon, the Tenth Circuit suggested that a federal district court may unduly interfere with the state court's proceedings if it decides a factual issue before the state court, but stated that it was appropriate to entertain a declaratory judgment that a district court could decide as a matter of law where no material fact was in dispute:

> [E]ntertaining State Farm's summary judgment motion involved no undue interference with the state proceeding.  In hearing and deciding the summary judgment motion, the trial judge inquired whether, as a matter of law, there was any basis for holding that State Farm had a duty to defend or that its policy covered the conduct at issue in the state tort case.  Having decided that there was no material fact to be settled on either issue, summary judgment was granted.  The duty to defend issue, as will be explained below, involved only an examination of the state court complaint to see if its allegations of fact triggered the duty.  Determining that duty involved no matter, factual or legal, at issue in the state case.  Nor was the coverage issue, under the trial court's approach, a complicated one: it involved only a search of the relevant record to ascertain whether there was any triable issue with respect to whether Mhoon's conduct could be termed accidental under the terms of the homeowner policy.  Any ambiguities, moreover, had to be resolved in appellant's favor.  It is very doubtful that this approach and the summary judgment threatened any substantial interference in the state court proceedings.

31 F.3d at 984.  At the hearing, The Hartford represented that it intends to ask the Court to decide this action based on the state court pleadings and the insurance policies.  The Court believes that it will be able to decide whether The Hartford is obligated to BNSF and Gandy Dancer under the insurance policies based on the pleading as a matter of law, and that this determination is distinct from any issues before the state court.  Under New Mexico law, the standard for determining whether an action was "intended or expected" is distinct from the standard for measuring intent for the purposes of tort law.  Knowles v. United Servs. Auto. Assn., 113 N.M. 703, 707, 832 P.2d 394,

398 (1992).  Because this Court's inquiry will be distinct from the state court's, there is no risk that the courts will come to different conclusions about the same matter or that the parties will be estopped from litigating an issue in state court.  Additionally, New Mexico law provides that courts determine whether an insurance company has a duty to defend based on the insurance policy and the face of the complaint.  This situation is "not a case, therefore, where the [Court] f[inds] a material factual dispute and proceed[s] to resolve it in the face of ongoing state proceedings on the same subject."  State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d at 982.  The Court, therefore, finds that this factor supports denying BNSF's and Gandy Dancer's request for a stay.

### A.     THE HARTFORD'S REQUEST FOR DECLARATORY RELIEF PRESENTS DISTINCT ISSUES FROM THE STATE PROCEEDING.

The issues before the state court are distinct from the issues presented in this case.  The federal and state suits here are neither parallel in substance nor in parties.  The Hartford is not a party in the state court case, a tort action.  This action is based on interpreting the insurance policies -- a contract action -- and does not include any tort claims.  "Concurrent federal and state suits are not 'parallel' unless they involve substantially the same parties litigating substantially the same issues.  If ongoing state court proceedings do not qualify as 'parallel' with a federal declaratory judgment action, the district court's discretion to abstain from deciding the declaratory judgment action is limited."  12-57 M. Redish Moore's Federal Practice § 57.42 (3d ed. 1999).  Cf. St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1169-70 (affirming the district court's decision to not exercise jurisdiction where insurer was party to state and federal actions, and contract questions were present in both).  BNSF and Gandy Dancer contend that the Court, to determine coverage in this case, must make factual findings regarding BNSF and Gandy Dancer's intent, which in turn requires a finding whether BNSF and Gandy Dancer had an easement across the disputed property.

-21-

They assert that the Court's resolution of those issues has the potential to create substantial friction between this Court and the state court, and could result in significant prejudice to BNSF and Gandy Dancer in each action.

The Court's determination of the contract interpretation questions that The Hartford's action presents does not require the Court to decide issues that are before the state court, because New Mexico law does not use tort law standards to determine whether an action is an "accident" or "intended or expected." Mercer, LLC brings claims in the state court for negligence, negligence per se, nuisance, unfair trade practices, trespass, deprivation of property value, and punitive damages. "The requisite intent necessary for an intentional tort . . . is 'that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.'" Knowles v. United Servs. Auto. Assn., 113 N.M. at 707, 832 P.2d at 398 (quoting Restatement (Second) of Torts § 8A (1965)). In New Mexico, a jury may award punitive damages when it finds that the conduct of a party was malicious, willful, reckless, wanton, fraudulent, or in bad faith. See UJI 13-1827 NMRA (defining malicious conduct as "intentional doing of a wrongful act with knowledge that the act was wrongful" and willful conduct as "intentional doing of an act with knowledge that harm may result").[4]

The Hartford, meanwhile, seeks declaratory relief that it owes no obligation to BNSF and Gandy Dancer under the insurance policies. See Hartford's Complaint ¶ 1, at 1. The insurance policies cover property damage that results from an "occurrence," which the policies defines as "an accident." Hartford's Complaint ¶¶ 30, 32, at 6. The policies also exclude from coverage injuries

---

[4] The Supreme Court of New Mexico's adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of law. See State v. Wilson, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (1994).

that are "expected or intended."   Hartford's Complaint ¶ 38, at 8 (stating the policies excludes

"'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured").

In Knowles v. United Services Automobile Association, the Supreme Court of New Mexico

interpreted an insurance policy which excluded from coverage any "injury that was 'expected or

intended.'"   113 N.M. at 704, 832 P.2d at 395.[5]   Edward Montoya alleged that Plaintiff Kim

Knowles placed a locked gate across a road on Knowles property that interfered with Montoya's use

of an easement.  Knowles "thought that he had a legal right to erect the gate."  113 N.M. at 705, 832

P.2d at 396.  Montoya initiated suit for damages and injunctive relief against Knowles, and Knowles

tendered the defense to United Services Automobile Association ("USAA").  USAA declined to

defend Knowles.  After Montoya dismissed his claim for damages, Knowles sued USAA to recover

defense costs incurred in the suit Montoya filed.  "USAA claimed that Montoya's claim was an

expected or intended result of appellant's actions and thereby excluded from coverage."  113 N.M.

at 704, 832 P.2d at 395.

---

[5] Both parties agree that Knowles v. United Services Automobile Association is controlling in this
case.  See Reply at 3 ("Pursuant to Knowles, this Court's resolution of Hartford's claim that the
exclusionary clause relieves it of the duty to defend and indemnify will necessarily require inquiry
into BNSF's and Gandy Dancer's intent beyond merely confirming that BNSF and Gandy Dancer
did in fact perform the remedial work."); Tr. at 33:10-13 (Court, Suarez)(stating that, if it is
permitted to go forward, The Hartford will file a summary judgment motion asking the Court to
determine whether Knowles v. United Services Automobile Association is determinative of The
Hartford's obligations under the insurance policies).  The Supreme Court of New Mexico has not
returned to the meaning of "expected or intended" since Knowles v. United Services Automobile
Association, and the Court of Appeals of New Mexico continues to cite to that case when
interpreting the meaning of "expected or intended" in insurance policies. See Computer Corner, Inc.
v. Fireman's Fund Ins. Co., 132 N.M. 264, 267, 46 P.3d 1264 (Ct. App. 2002).  The Supreme Court
of New Mexico subsequently cited Knowles v. United Services Automobile Association for the
proposition that " "exclusionary clauses must be narrowly construed."  Rummel v. Lexington Ins.
Co., 123 N.M. 752, 764 945 P.2d 970, 982 (1997).  See Allstate Ins. Co. v. Stone, 116 N.M. 464,
467, 863 P.2d 1085, 1088 (1993).  The Ct has no reason to think that the Supreme Court of New
Mexico would not continue to follow Knowles v. United Services Automobile Association.

The parties agreed that there was no factual dispute, and the only matter in dispute was whether USAA was obligated to defend Knowles.  Noting that "[t]he duty to defend is distinct from the duty to indemnify," the Supreme Court stated that "[t]he duty to defend is a contractual obligation emanating from the insurance policy, and arising when 'the injured [third] party's complaint states facts which bring the case within the coverage of the policy, not whether [the injured third party] can prove an action against the insured for damages.'"  113 N.M. at 704, 832 P.2d at 395 (quoting Am. Employers' Ins. Co. v. Cont'l Cas. Co., 85 N.M. 346, 348, 512 P.2d 674, 676 (1973)).  Under the "basic coverage provisions" of the policy, USAA was required to defend appellant against "any suit for damages . . . even if groundless or if fraudulent."  113 N.M. at 704, 832 P.2d at 395.  "[T]he basic coverage provision 'applie[d] only if [the occurrences] are not excluded in this policy,'" and "[t]he policy list[ed] a number of exclusions including an exclusion for 'injury or damage which is expected or intended by an insured.'"  113 N.M. at 704, 832 P.2d at 395.

"USAA d[id] not contest that the allegations in the Montoya complaint constituted a claim for wrongful eviction but rather contend[ed] that the policy cover[ed] only negligent wrongful eviction and not wrongful eviction resulting from appellant's intentional acts."  113 N.M. at 704, 832 P.2d at 395.  USAA argued that language in an insurance contract excluding coverage for "injury or damage which is expected or intended by an insured" should be read to exclude coverage for volitional acts:

> USAA argues that because the law presumes that a person intends the foreseeable results of his or her intentional acts, Deseret Federal Savings Ass'n v. United States Fidelity & Guarantee Co., 714 P.2d 1143, 1146 (Utah 1986), damages claimed in the Montoya complaint are excluded from coverage even though appellant thought that he had a legal right to erect the gate.  See Red Ball Leasing, Inc. v. Hartford Accident & Indem. Co., 915 F.2d 306, 311 (7th Cir. 1990) (repossession of leased

-24-

> trucks by leasing company under mistaken belief that lessee was in default is intentional act excluded from coverage under policy). Finally, USAA contends that, while ambiguities are construed in favor of the insured, <u>Foundation Reserve Insurance Co. v. McCarthy</u>, 77 N.M. 118, 119, 419 P.2d 963, 964 (1966), the clause at issue here is not ambiguous.

113 N.M. at 705, 832 P.2d at 396.

Knowles contended "that he did not subjectively expect or intend the harm alleged in the Montoya complaint," and that "[b]ecause exclusionary clauses must be narrowly construed," 113 N.M. at 705, 832 P.2d at 396 (citing <u>King v. Travelers Ins. Co.</u>, 84 N.M. 550, 556, 505 P.2d 1226, 1232 (1973)), the Supreme Court should read the basic coverage exclusions for "intended or expected" not to include intentional actions that result in unintended harm, or, alternatively, the Supreme Court should find that "intended or expected by the insured" created an ambiguity that the Supreme Court should be construed against USAA, 113 N.M. at 705, 832 P.2d at 396 (citing <u>Stanback v. Westchester Fire Ins. Co.</u>, 314 S.E.2d 775 (1984)).

The Supreme Court of New Mexico rejected both parties' positions. The Supreme Court, noted that the issue was a matter of first impression for the court, but courts in others jurisdictions had split on the issue. The Supreme Court found persuasive a Superior Court of Pennsylvania case to which both parties cited: <u>United Services Automobile Association v. Elitzky</u>, 517 A.2d 982 (Pa. Super. 1986). In <u>United Services Automobile Association v. Elitzky</u>, the defendants purchased a homeowner's policy from the insurer that provided coverage for bodily injury and property damages subject to an exclusionary clause that negated coverage for damage "expected or intended by the insured." 517 A.2d at 985.

> During the term of the policy, the Elitzkys were sued by Judge Bruno for malicious defamation and intentional infliction of emotional injury for their alleged "malicious, intentional and reckless conduct" during prior litigation over which Judge Bruno had presided. The insurer filed an action for a declaratory judgment seeking a

> determination that it would not be obligated to defend or indemnify the Elitzkys because the damages alleged by Judge Bruno were caused by the Elitzkys' intentional conduct and were thus excluded by the policy.

Knowles v. United Servs. Auto. Assn., 113 N.M. at 706, 832 P.2d at 397.  The trial court concluded that because the judge's claims were based on intentional torts, the insurance company had no duty to defend.

The Superior Court of Pennsylvania rejected the trial court's reasoning, which incorporated tort concepts into contract law.  The Superior Court held that, instead, "expected or intended" should be read to exclude harm of the same general type as the insured intended:

> On appeal, the Superior Court of Pennsylvania interpreted the phrase "expected or intended" as used in the homeowner's policy.  Prior to concluding that, in the context of interpreting an insurance contract, the terms "expected" and "intended" were synonymous, [U.S. Auto. Ass'n v. Elitzky, 517 A.2d] at 991, the Elitzky court discussed three possible interpretations of "intended" in exclusionary clauses.  The first interpretation was that an exclusionary clause only excludes coverage for the harm caused when the insured acted with specific intent to cause the damage.  Id. at 986 (citing Pachucki v. Republic Ins. Co., 89 Wis. 2d 703, 278 N.W.2d 898 (1979)).  The court declined to adopt this interpretation, because "[s]uch an approach would award wrong-doers by affording them insurance coverage just because their plans went slightly awry," and could create problems of proof.  Id. 517 A.2d at 988.  The second interpretation focused on whether the insured committed an intentional act and, if so, the exclusionary clause excludes coverage for injuries that are the "natural and probable consequence" of the intentional act.  Id. at 986 (citing Argonaut Southwest Ins. Co. v. Maupin, 500 S.W.2d 633 (Tex. 1973)).  The second interpretation was rejected by the Elitzky court because it improperly interjected tort principles into what was essentially an issue of contract interpretation.  Id. 517 A.2d at 988.  The third interpretation was that an exclusionary clause excludes harm of the same general type as the insured intended.  Id. at 987 (citing Riverside Ins. Co. v. Wiland, 16 Ohio App. 3d 23, 474 N.E.2d 371 (1984)).  The court adopted this approach because it was consonant with policies underlying insurance law.  Id.  According to the court, this approach balances the policy of construing ambiguous clauses in favor of the insured against an insurance company's right to not insure against harm deliberately caused by the insured.  Id.  In addition, this approach fosters the public policy that an insured not be encouraged to act wrongfully because of knowledge that such an act is insured.  Id.

Knowles v. United Servs. Auto. Assn., 113 N.M. at 706-07, 832 P.2d at 397-98 (footnote omitted).

The Supreme Court of New Mexico adopted the United Services Automobile Association v. Elitzky court's approach, because it believed that it was "consistent with the rationales of our prior cases and it 'affords maximum coverage to insured persons,' thereby giving effect to the reasonable expectations of the insured."  Knowles v. United Servs. Auto. Assn., 113 N.M. at 707, 832 P.2d at 398 (quoting U.S. Auto. Ass'n v. Elitzky, 517 A.2d at 988; citing Sanchez v. Herrera, 109 N.M. at 159, 783 P.2d at 469).

Applying this standard to the facts before it, the Supreme Court of New Mexico held that the insurance company had no duty to defend the defendant.  The Supreme Court held that Knowles, despite believing "he had a legal right to erect the gate," 113 N.M. at 705, 832 P.2d at 396, intended the general type of harm that resulted from his actions:

> [Knowles] intended or expected harm of the same general type as was alleged by the Montoya complaint.  The Montoya complaint alleged that appellant placed, reinforced, and locked the gate to exclude others from using the road or entering the property.  The requisite intent necessary for an intentional tort such as wrongful eviction is "that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." Restatement (Second) of Torts § 8A (1965).  While appellant may not have intended or expected to cause any harm to Montoya, he desired to limit access to the road.  Thus, the harm alleged in the Montoya complaint was of the same general type as that expected or intended by [Knowles].  Thus, coverage for appellant's acts was apparently excluded from coverage by the policy's exclusionary clause.  Because basic coverage was excluded, USAA would not, under this interpretation, have a duty to defend appellant.

113 N.M. at 707, 832 P.2d at 398.

Thus, unlike the question of intent regarding the tort claims at issue before the state court, the Court need not consider whether BNSF and Gandy Dancer "desire[d] to cause the consequences of [their] act, or that [they] believe[d] that the consequences [we]re substantially certain to result

from it."  Restatement (Second) of Torts § 8A (1965).  Rather, determining whether BNSF's and

Gandy Dancer's actions were excluded under the insurance policies' exception for "expected or

intended" injuries requires the Court to consider whether "the harm alleged in the [state court]

complaint was of the same general type as that [BNSF and Gandy Dancer] expected or intended."

Knowles v. United Servs. Auto. Assn., 113 N.M. at 707, 832 P.2d at 398.  Because the Court's

inquiry is distinct from the issue before the state court, and because the Court's determination is

based on the allegations in the State Court Complaint and the insurance policies, the Court does not

believe that deciding this issue will create friction between the state and federal courts.  Moreover,

because the Court's inquiry is distinct, a decision in this case will not estop the parties from

litigating the issues before the state court.

      The insurance policies cover property damage that results from an "occurrence," which the

policies defines as "an accident."  Hartford's Complaint ¶¶ 30, 32, at 6.  The New Mexico Supreme

Court of New Mexico has examined the meaning of "accidental," and found that it "expresses the

thought of an event occurring without design or purpose, or unintentionally on the part of the

assured [and] . . . does not include the result of wilful design."  Vihstadt v. Travelers Ins. Co., 103

N.M. 465, 466, 709 P.2d 187, 188 (l985)(citations omitted).  See Albuquerque Gravel Prods. Co.

v. Am. Employers Ins. Co., 282 F.2d 218 (10th Cir. 1960)(construction of a loading ramp across the

arroyo which retarded and diverted natural flow of water was not accident under liability policy).

BNSF and Gandy Dancer contend that, if BNSF believed, even erroneously, that it had an easement

across Mercer, LLC's property, BNSF and Gandy Dancer's intentional remedial construction would

amount to an accidental occurrence.  They assert that, in the state court action, BNSF and Gandy

Dancer argue that Mercer, LLC's claims fail, because BNSF and Gandy Dancer performed their

-28-

remedial work within BNSF's easement across Mercer, LLC's property.  Citing a Michigan case,

Turner v. Burch, 401 N.W.2d 355 (Mich. App. 1986), they assert that whether BNSF had an

easement or an honest belief that an easement existed is the same question this Court will have to

answer when analyzing BNSF's and Gandy Dancer's intent for the purpose of evaluating whether

their acts constitute an "occurrence" under the policies or whether the alleged property damage may

be excluded from coverage as "expected or intended" damage.  The Supreme Court of New

Mexico's holding in Knowles v. United Services Automobile Association defeats this argument.

Knowles "thought that he had a legal right to erect the gate."  113 N.M. at 705, 832 P.2d at 396.

Notwithstanding Knowles' belief, the Supreme Court held that the insurance company had no duty

to defend, because, while he "may not have intended or expected to cause any harm to Montoya, he

desired to limit access to the road.  Thus, the harm alleged in the Montoya complaint was of the

same general type as that expected or intended by [Knowles]."  113 N.M. at 707, 832 P.2d at 398.

Because the insurance policies' exclusion of coverage for "expected or intended" property damage

takes BNSF's and Gandy Dancer's actions outside of the policies' coverage, it is unnecessary for

the Court to determine whether the property damage was an occurrence.

**B.      WHETHER A DUTY TO DEFEND AND INDEMNIFY EXISTS IN THIS CASE CAN BE DETERMINED ON THE PLEADINGS AND THE INSURANCE CONTRACT.**

Under New Mexico law, an insurer's obligations are a question of contract law that is

determined by reference to the insurance policy's terms.  See Safeco Ins. Co. of Am. v. McKenna,

90 N.M. 516, 520, 565 P.2d 1033, 1037 (1977).  An insurance contract should be construed as a

"complete and harmonious instrument designed to accomplish a reasonable end."  Safeco Ins. Co.

of Am. v. McKenna, 90 N.M. at 520, 565 P.2d at 1037.  A clause in an insurance policy is

ambiguous if it is "reasonably and fairly susceptible of different constructions." Sanchez v. Herrera, 109 N.M. at 159, 783 P.2d at 469 (quoting Levenson v. Mobley, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987))(internal quotation marks omitted).

> When an insurance contract is ambiguous, it must be construed against the insurance company as the drafter of the policy. Exclusionary clauses in insurance policies are to be narrowly construed, with the reasonable expectations of the insured providing the basis for our analysis. However, an insurance policy may exclude injuries arising from intentional acts so long as the exclusionary clause is clear and does not conflict with statutory law.

Knowles v. United Servs. Auto. Assn., 113 N.M. at 705, 832 P.2d at 396 (citing Sanchez v. Herrera, 109 N.M. at 159, 783 P.2d at 469; Safeco Ins. Co. of Am. v. McKenna, 90 N.M. at 519, 565 P.2d at 1036; King v. Travelers Insurance Co., 84 N.M. 550, 555-56, 505 P.2d 1226, 1231-32 (1973)).

The Supreme Court of New Mexico has stated that "[t]he duty to defend is distinct from the duty to indemnify." Knowles v. United Servs. Auto. Assn., 113 N.M. at 705, 832 P.2d at 396 (citing Insurance Co. of N. Am. v. Wylie Corp., 105 N.M. 406, 409, 733 P.2d 854, 857 (1987)). The duty to defend is a contractual obligation emanating from the insurance policy, see Knowles v. United Servs. Auto. Assn., 113 N.M. at 705, 832 P.2d at 396, and arising when "the injured [third] party's complaint states facts which bring the case within the coverage of the policy, not whether [the injured third party] can prove an action against the insured for damages," Am. Employers' Ins. Co. v. Cont'l Cas. Co., 85 N.M. 346, 348, 512 P.2d 674, 676 (1973)(citation omitted). In Foundation Reserve Insurance Co. v. Mullenix, the Supreme Court of New Mexico stated:

> This jurisdiction recognizes the distinction between an insurer's duty to defend under the terms of an insurance policy and the duty to pay under the terms of the same policy. American Employers' Ins. Co. v. Continental Cas. Co., 85 N.M. 346, 512 P.2d 674 (1973); Lujan v. Gonzales, 84 N.M. 229, 501 P.2d 673 (Ct. App.), cert. denied, 84 N.M. 219, 501 P.2d 663 (1972). The general rule is stated in American as follows:

> "If the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy, the insurer is obligated to defend, regardless of the ultimate liability of the insured.  The question presented to the insurer in each case is whether the injured party's complaint states facts which bring the case within the coverage of the policy, not whether he can prove an action against the insured for damages.  The insurer must also fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage."

Id. 85 N.M. at 348, 512 P.2d at 676.

97 N.M. at 620, 642 P.2d at 606.

The Court will thus determine whether The Hartford has a duty to defend based on the state court pleading and the insurance policies.  Moreover, The Hartford represented that it will move for summary judgment based on the pleadings and insurance policies.  The Court believes that, based on the Supreme Court of New Mexico's interpretation of "expected or intended" in Knowles v. United Services Automobile Association, it will be able to decide at least The Hartford's request for declaratory judgment on its duty to defend BNSF and Gandy Dancer as a matter of law on the pleadings and insurance policies.

## C.   DECLARATORY RELIEF WILL NOT PREJUDICE BNSF AND GANDY DANCER.

BNSF and Gandy Dancer contend that allowing this case to proceed will prejudice them. While prejudice to the parties is not a factor the Tenth Circuit has set forth for courts to consider when deciding whether to exercise jurisdiction over a declaratory judgment action, see St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1169; State Farm Fire and Cas. Co. v. Mhoon, 31 F.3d at 983, BNSF and Gandy Dancer appear to assert that this consideration supports finding that allowing this case to go forward will create tension between the state and federal courts.  The

Hartford seeks a declaration that it has no duty to defend or indemnify BNSF and Gandy Dancer based on the state court pleadings and the insurance policies.  BNSF and Gandy Dancer contend that allowing this case to proceed will prejudice them, because: (i) the Court's decision may address issues before the state court, estopping BNSF and Gandy Dancer from litigating the matters there; (ii) this action will effectively align Mercer, LLC's and The Hartford's interests against BNSF and Gandy Dancer; (iii) "the possibility of [The Hartford] using discovery in this case as an excuse for withdrawing from the defense of the underlying action leaving BNSF and Gandy Dancer without counsel," Memorandum at 2; and (iv) BNSF and Gandy Dancer will be required to fight a two front war, litigating against Mercer, LLC in state court, and The Hartford in federal court.

BNSF's and Gandy Dancer's argument that they will be prejudiced is unavailing.  First, because the issues before the Court are distinct from the issues before the state court, BNSF and Gandy Dancer do not face a risk that the Court's decision will estop them from litigating issues in state court.  Second, because the issues are distinct, this proceeding will not cause The Hartford's and Mercer, LLC's interests to align.

Third, it is unclear how The Hartford could use discovery as an "excuse" to withdraw.   In Kunkel v. Cont'l Cas. Co., 866 F.2d 1269 (10th Cir. 1989), the Tenth Circuit, in denying an insurer's challenge to the district court's entry of declaratory judgment, stated that "nothing in the Declaratory Judgment Act prohibits a court from deciding a purely legal question of contract interpretation which arises in the context of a justiciable controversy presenting other factual issues."  866 F.2d at 1276.  The Court will decide whether The Hartford has a duty to defend BNSF and Gandy Dancer as a matter of law based on the State Court Complaint and the insurance policies, and The Hartford represented at the hearing that it intends, if the Court denies BNSF's and Gandy Dancer's Motion,

to move for summary judgment based only on the State Court Complaint and the insurance policies. Consequently, it is unclear what discovery is required, or how The Hartford could use it as an "excuse for withdrawing from the defense of the underlying action leaving BNSF and Gandy Dancer without counsel." Memorandum at 2. It is also unclear why BNSF and Gandy Dancer would be unable to keep its counsel even if The Hartford is not footing the bill. The duty of the lawyer is to the insured, and not to the insurer. See American Bar Association, Model Rules of Professional Conduct, Rule 1.7(a)(stating that a lawyer's obligations to third party's must not "materially limit[ ]" his or her representation of a client).

Fourth, BNSF and Gandy Dancer are large, sophisticated parties, capable of fighting a two-front war. New Mexico law permits a coverage declaratory judgment action to proceed not only with, but in, the underlying action which requires an insured to defend himself to both actions as well. See, e.g., State Farm Fire and Cas. Co. v. Mhoon, 31 F.3d at 984; Foundation Reserve Ins. Co. v. Mullenix, , 97 N.M. 618, 620, 642 P.2d 604, 606 (1982). Because this war will be decided on the State Court Complaint and the insurance policies, it will likely be a small war. Additionally, this matter must be decided at some point, so BNSF's and Gandy Dancer's argument is really more about timing than prejudice, and there is no good reason to require The Hartford to continue to fund BNSF's and Gandy Dancer's defense if they are not obligated to do so under the insurance policies. If the decision whether The Hartford is obligated to insure BNSF and Gandy Dancer under the policies requires additional discover, or turns on issues before the state court, BNSF and Gandy Dancer may renew their request to stay this proceeding.

## II.    THE STATE FARM FIRE AND CASUALTY CO. V. MHOON FACTORS FAVOR ALLOWING THIS CASE TO PROCEED.

The remaining State Farm Fire and Casualty Co. v. Mhoon, factors also weigh in favor of denying BNSF's and Gandy Dancer's Motion.  The Tenth Circuit has adopted a five-factor test for evaluating whether a district court should exercise its discretionary jurisdiction over a declaratory judgment action:

> [(i)] whether a declaratory action would settle the controversy; [(ii)] whether it would serve a useful purpose in clarifying the legal relations at issue; [(iii)] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [(iv)] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [(v)] whether there is an alternative remedy which is better or more effective.

St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1169 (quoting State Farm Fire and Cas. Co. v. Mhoon, 31 F.3d at 983).  In State Farm Fire and Cas. Co. v. Mhoon, the Tenth Circuit reasoned:

> We do not, however, see any abuse of discretion in the trial court's decision to hear this case.  Leading us to our conclusion is the fact that a live need for a declaration of State Farm's rights and duties did, in fact, exist.  Neither party before us has suggested that State Farm was, or could have been made, a party to the state tort action, thus obviating any need for an independent declaratory action and providing a simpler and more efficient resolution of State Farm's obligations toward Mhoon.  Indeed, both concede that a suit like this one would have been required at some point in some case other than the state tort action.  We note, moreover, that there is a substantial interest in deciding these issues without undue delay, particularly the question of the duty to defend.  See generally Metro. Property & Liability Ins. Co. v. Kirkwood, 729 F.2d 61 (1st Cir. 1984) (deciding the duty to defend question first would allow the state tort action to be tried without the potential of a conflict of interest arising between insurer and insured).  The federal district court was an available forum to State Farm, and on the facts before us we see no reason why the declaratory judgment action should not have proceeded as it did.

31 F.3d at 983-84.

The same reasoning applies here.  The Hartford has a live need for a declaration of its rights and duties.  The federal and state suits are parallel in neither substance nor parties.  The Hartford

is not a party to the underlying litigation.  As discussed in section I, interpreting the contract issues

relevant to deciding The Hartford' declaratory judgment action does not require the Court to engage

in overlapping factual inquire with the state court.

> This is not a case, therefore, where the [Court] f[inds] a material factual dispute and
> proceed[s] to resolve it in the face of ongoing state proceedings on the same subject.
> That would present quite a different issue, particularly in light of the fact that . . . the
> state proceeding [is] quite far along.  Even though a stay might be proper in such as
> case, a dismissal such as appellant suggests would not be required, since the duty to
> defend and coverage issues would remain to be decided in light of the outcome of the
> state case.

31 F.3d at 984.

The other State Farm Fire and Casualty Co. v. Mhoon factors also support denying BNSF's

and Gandy Dancer's Motion.  The Court's determination of The Hartford's obligations to BNSF and

Gandy Dancer will settle whether it has a duty to defend or indemnify them, clarifying the legal

relations at issue.  While, the Supreme Court of New Mexico has expressed a preference to have

insurance coverage issues resolved by the court hearing the underlying issue, see Foundation

Reserve Ins. Co. v. Mullenix, 97 N.M. at 620, 642 P.2d at 606 ("We believe this is the better rule

because it prevents multiple suits and avoids the expense to insured of defending a collateral action

brought by the insurer for a declaration of the insurer's obligation to defend under the policy."), The

Hartford is not a party to the state court proceeding, and is permitted seek declaratory judgment

while the state court proceeding is ongoing, see State Farm Fire and Cas. Co. v. Mhoon, 31 F.3d at

984; Transamerica Ins. Group v. Hinkle-Keeran Group, Inc., 53 F.3d 343, at *5 (10th Cir.

1995)("Based upon Mullenix and Lopez we do not believe that Transamerica is precluded from

bringing a collateral proceeding seeking a declaratory judgment that it had no duty to defend in the

primary, state court action.").  BNSF and Gandy Dancer do not contend that The Hartford is seeking

a declaratory remedy for the purpose of "procedural fencing" or "to provide an arena for a race to

res judicata." St. Paul Fire and Marine Ins. Co. v. Runyon, 53 F.3d at 1169 (finding "procedural

fencing" where "issue in the federal declaratory judgment action is identical to what would be a

defense to the state court contract action").  Because The Hartford is not a party to the state court

action, the state court cannot grant The Hartford the relief it seeks.

In sum, the State Farm Fire and Casualty Co. v. Mhoon factors favor denying BNSF's and

Gandy Dancer's Motion.[6]  The issues before the Court are distinct from those before the state court,

---

[6] BNSF and Gandy Dancer also contend that equitable considerations support staying these proceedings.  They assert that, "because Hartford seeks equitable relief through the Declaratory Judgment Act, its unreasonable delay in bringing suit constitutes laches which further counsels in favor of a stay."  Memorandum at 5.  They further assert:

> Prejudice to BNSF and Gandy Dancer substantially outweighs any prejudice Hartford may assert by having to wait for resolution of the underlying action. Hartford waited two and a half years after accepting coverage and over one and a half years after Mercer filed its counterclaims in the underlying action to file this declaratory judgment action in federal court.  This lengthy period of time constitutes laches as a matter of law and undermines any argument by Hartford that it will suffer prejudice if a stay is entered.

Memorandum at 12.

> One asserting the defense of laches must satisfy four distinct elements, one of which is lack of notice that the other party would assert a claim. [Garcia v. Garcia, 111 N.M. 581, 588, 808 P.2d 31, 38 (1991).] ("The elements required to be proved by one asserting the defense are: (1)[c]onduct on the part of the defendant, giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which [she] bases [her] suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred." (quoting Baker v. Benedict, 92 N.M. 283, 286, 587 P.2d 430, 433 (1978))).

In re Estate of Duran, 133 N.M. 553, 66 P.3d 326 (2003).  Here, The Hartford has been defending under a reservation of rights, so BNSF and Gandy Dancer have been on notice since November 13,

and BNSF and Gandy Dancer have not shown that allowing this action to proceed will prejudice them.  The Court will therefore deny the Motion and permit these proceedings to move forward. The Court's decision is without prejudice to BNSF and Gandy Dancer renewing their request to stay this proceedings if subsequent events demonstrate that the Court must address factual matters or legal issues that are before the state court.

**IT IS ORDERED** that BNSF Railway Company's and Gandy Dancer's Motion to Stay Proceedings, filed July 14, 2010 (Doc. 29), is denied.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Ruth Fuess Keegan
PNM Resources, Inc.
Albuquerque, New Mexico

-- and --

Todd Schwarz
Kelsey D. Green
Miller Stratvert, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

---

2007, when The Hartford had reserved its rights to deny coverage and withdraw the defense if no coverage is available under the insurance policies.  <u>See</u> BNSF's Answer ¶ 20, at 12.  Thus, laches is not applicable.  Moreover, because the BNSF and Gandy Dancer have not shown that allowing this case to proceed will prejudice them, the Court is unconvinced that The Hartford's delay in seeking declaratory judgment tips the prejudice scale in their favor.  Indeed, the delay has helped BNSF and Gandy Dancer -- not prejudiced them -- by having The Hartford pay for their defense. Consequently, the Court will not stay this action based on equitable considerations.

Robert P. Warburton
Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant Gandy Dancer, LLC*

Tim L. Fields
Earl E. DeBrine , Jr.
Paul T. Halajian
Erin Langenwalter
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant BNSF Railway Company*

David C. Chavez
The Law Office of David C. Chavez
Los Lunas, New Mexico

-- and –

Kenneth R. Wagner
Lisa Pistorio Ford
Wagner Ford Law, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant Roy D. Mercer, LLC*