IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE HARTFORD FIRE INSURANCE COMPANY,

    Plaintiff/Counter-Defendant

v.                                                              No. 1:10-cv-00137 JB/RHS

GANDY DANCER, LLC;
BNSF RAILWAY COMPANY; and
ROY D. MERCER, LLC

    Defendants,

and

BNSF RAILWAY COMPANY,

    Counter-Plaintiff,

v.

THE HARTFORD FIRE INSURANCE COMPANY,

    Counter-Defendant.

**THE HARTFORD FIRE INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT DECLARING THAT THE TERMS OF
THE POLICY ISSUED TO GANDY DANCER DO NOT PROVIDE
COVERAGE FOR ROY D. MERCER, LLC'S CLAIMS
<u>AGAINST BNSF AND GANDY DANCER</u>**

COMES NOW Plaintiff and Counter-Defendant, Hartford Fire Insurance Company incorrectly sued herein as The Hartford Fire Insurance Company ("Hartford Fire"), by and through its counsel of record, Miller Stratvert P.A. (Todd A. Schwarz and Thomas J. Bunting), and hereby submits this Memorandum in Support of its Motion for Summary Judgment requesting the Court to declare that the

policies Hartford Fire issued to Gandy Dancer do not provide coverage for the damages sought by Roy D. Mercer, LLC ("Mercer") in the consolidated actions currently pending in Socorro County District Court, <u>BNSF Railway Company v. Roy D. Mercer, LLC v. Gandy Dancer, LLC</u>, D-725-CV-2008-00092, and <u>Roy D. Mercer, LLC v. Gandy Dancer, LLC</u>, D-725-CV-2011-00044 ("Underlying Actions").

In the Underlying Actions, Mercer claims that BNSF directed Gandy Dancer to reconstruct a water diversion project on land owned by Mercer and that the renovations *themselves* damaged its property. The claimed damages are not covered because they were not caused by an "occurrence," defined in the policies as an accident. Moreover, two exclusions apply to exclude the damages from coverage: (1) the work performed on Mercer's property that it claims damaged the property was "expected or intended" by BNSF and (2) the claimed property damage is to real property on which Gandy Dancer conducted operations at BNSF's direction, and it allegedly arises out of those operations. Accordingly, summary judgment for Hartford Fire is appropriate.

## POINTS AND AUTHORITIES

The Gandy Dancer Policies do not provide coverage for Mercer's claimed damages. The undisputed material facts establish that: (1) the claimed property damage giving rise to Mercer's claims did not result from an "occurrence" as defined in the Gandy Dancer Policies, and (2) coverage is precluded by two exclusions: (a) the claimed property damage was expected and intended by BNSF, and (b) the claimed property damage is to that portion of real property on which Gandy Dancer (at BNSF's direction) performed operations and the alleged property damage arises from those excluded operations.

A.      Summary Judgment Standard.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is material only if it might affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248.

Once the moving party shows the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which it carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party may not rest on its pleadings but must set forth specific facts to overcome the motion. Applied Genetics, 912 F.2d at 1241. The material undisputed facts and New Mexico law leave no question that summary judgment is appropriate in this case.

B.      Standards of Insurance Contract Construction.

In New Mexico, an obligation of a liability insurer is contractual and is to be determined by the terms of the policy. Miller v. Monumental Life Ins. Co., 376 F. Supp. 2d 1238, 1245 (D. N.M. 2005), rev'd on other grounds, 502 F.3d 1245 (10th Cir. 2007). Insurance policies are interpreted in their usual and ordinary sense unless the language of the policy requires something different. N.M. Physicians Mut. Liab. Co. v. LaMure, 116 N.M. 92, 95, 860 P.2d 734, 737 (1993). If the allegations of the underlying complaint fall outside the provisions of the policy, indemnification by the insurer is not required. Id.

While ambiguous policies are interpreted liberally in favor of the insured, unambiguous policies must be enforced as written. Id. A court will not resort to a strained construction for the purpose of creating an ambiguity. Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 17, 139 N.M. 24, 127 P.3d 1111. When, as here, the terms are clear and unambiguous, then the court does not construe the terms, it merely gives the terms their usual and ordinary meaning. Miller, 376 F. Supp. 2d at 1244. The Court is bound to enforce the policy's terms as written. Id. at 1246; Albuquerque Gravel Prods. Co. v. Am. Employers Ins. Co., 282 F.2d 218, 220 (10th Cir. 1960) ("The terms of the insured's policy fix the right of recovery.").

C.  Constructing Water Diversion Improvements Is Not An "Occurrence."

The Gandy Dancer Policies do not cover reconstructing the water diversion project because it was not "damaged" by an "occurrence." The Gandy Dancer Policies provide coverage for property damage "caused by an occurrence." [UMF ¶ 15] An "Occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [UMF ¶ 15] The undisputed material facts clearly reveal the complete absence of any accidental injury to the property. As such, BNSF and Gandy Dancer cannot meet their burden of establishing a covered event within the grant of coverage and Hartford Fire is entitled to summary judgment

While the Policies do not define "accident," New Mexico courts define accident in terms of an insured's intent to commit an act – not to achieve a specific result. See Vihstadt v. Travelers Ins. Co., 103 N.M. 465, 466, 709 P.2d 187, 188 (1985); accord City of Wilmington v. Pigott, 307 S.E.2d 857, 859 (N.C. Ct. App. 1983); see also New Memorial Assoc. v. Credit Gen. Ins. Corp., 973 F. Supp. 1027, 1030 (D. N.M. 1977) (stating that an undefined policy term must be interpreted in its usual and ordinary sense).

The New Mexico Supreme Court examined the meaning of "accident" and found that it "expresses the thought of an event occurring without design or purpose, or unintentionally on the part of the assured

4

[and] . . . does not include the result of willful design." Vihstadt, 103 N.M. at 466, 709 P.2d at 188 (quoted authority omitted); see also Pigott, 307 S.E.2d at 859 (same). In Vihstadt, the Supreme Court specifically rejected any distinction between an accidental means and an accidental result, stating that "if there was no accident in the means, there was none in the result, for the two are inseparable." Vihstadt, 103 N.M. at 467, 709 P.2d at 189 (quoted authority omitted). In so doing the court wished to "lay to rest" the only argument that the Gandy Dancer Policies provide coverage here: that an intentional act can produce accidental results under the policy without some intervening cause. Id. at 467, 709 P.2d at 189. In sum, to decide whether an injury is an accident, New Mexico courts "examine the accidental or intentional quality of the precise event or act causing the injury," rather than whether the result was intended. Sena v. Travelers Ins. Co., 801 F. Supp. 471, 474 (D. N.M. 1992).

The "precise event or act causing the injury" in this case was no accident. Here, BNSF and Gandy Dancer intended precisely what Mercer claims caused its damages – reconstruction of the water diversion project on the Brown Arroyo Property. [UMF ¶ 8] The damages Mercer seeks and all of the asserted claims are based on BNSF's reconstruction of the project. The water diversion project was reconstructed as planned. Mercer does not allege that the water diversion project was constructed negligently or that it was not constructed precisely where BNSF intended. Rather, it is undisputed that BNSF and Gandy Dancer intentionally reconstructed the water diversion project on Mercer's land with full knowledge that it was on Mercer's land. Because there was no additional unexpected, independent or unforeseen happening that caused damages, there was no accident.

In Albuquerque Gravel Prods. Co. v. Am. Employers Ins. Co., 282 F.2d 218 (10th Cir. 1960), Albuquerque Gravel Products built a loading ramp across an arroyo. When summer rains came, nearby properties flooded, and property owners sued Albuquerque Gravel seeking compensation for the flood-

induced damage. Id. at 219. Albuquerque Gravel tendered defense and indemnity to its liability carrier, American Employers Insurance Company, and the carrier declined the tender on the basis that the damages were not caused by an accident with the meaning of the policy. Albuquerque Gravel brought suit, seeking coverage under the policy, but the Tenth Circuit rejected its claims, finding that the flooding was not accidental but rather the expected result of normal consequence. Similarly, here, constructing improvements to real property to control water flow are not accidental within the means of a general liability policy.

Nor does it matter whether BNSF and Gandy Dancer actually had, or believed they had, legal authority to reconstruct the water diversion project. While Mercer's ability to recover against BNSF may depend on BNSF's legal right to have performed the work, the purported damage to Mercer's land was the result of the construction work that was performed rather than BNSF's and Gandy Dancer's authority to do the work. See Fire Insurance Exchange v. Superior Court of San Bernardino County, 104 Cal. Rptr. 3d 534 (Cal. Ct. App. 2010)[1] (holding that a misunderstanding of legal rights did not turn the conversion of property into an accident); Red Ball Leasing, Inc. v. The Hartford Accident & Indem., 915 F.2d 306, 311-12 (7th Cir. 1990) (repossessing cars, although based upon erroneous information, is not accidental) (cited by the New Mexico Supreme Court in Knowles v. United Servs. Auto. Ass'n, 113 N.M. 703, 705, 832 P.2d 394, 396 (1992)); Pigott, 307 S.E. 2d at 859 (insured's order to remove green houses, while based upon erroneous interpretation of building code, was not an accident).

California courts agree that "an accident does not occur when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." Fire Ins. Exch., 104 Cal. Rptr. 3d at 537. Fire Ins. Exch. involved a residential renovation that

---

[1] Rehearing denied, 2010 Cal. App. LEXIS 282 (Cal. App. 4th Dist., February 22, 2010, review denied, 2010 Cal. Lexis 3851 (Cal. Apr. 22, 2010).

unwittingly encroached on a neighbor's property. The encroaching neighbor's insurer refused to defend it in the resultant suit because the addition was not an occurrence, which the policy defined as "an accident including exposure to conditions which result during the policy period." Consistent with Vihstadt, Sena, and Albuquerque Gravel Products, the California Court of Appeals held that there was no coverage because where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an "accident" merely because the insured did not intend to cause injury.

Because Mercer's alleged damages were caused by BNSF's and Gandy Dancer's deliberate actions, without any additional, unexpected, independent or unforeseen happening, the damages were not caused by an "occurrence" and are, therefore, not covered by the Gandy Dancer Policies.

D.  BNSF's Reconstruction Of The Water Diversion Project Was "Expected Or Intended."

Not only does coverage not exist due to a lack of occurrence, but two separate exclusions also bar coverage. The first is the "expected and intended" exclusion. Because BNSF and Gandy Dancer "expected and intended" to reconstruct the water diversion project, the damages it allegedly caused Mercer are excluded under this clause. The exclusion reads:

> a.  Expected or Intended Injury:
>
> "Bodily Injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.
>
> [Exhibits 12 and 13; UMF 16]

Exclusionary definitions in an insurance contract are to be enforced so long as their meanings are clear and they do not conflict with statutory law. Safeco Ins. Co. v. McKenna, 90 N.M. 516, 518, 565 P.2d 1033, 1035 (1977). Intentional acts exclusions are enforceable to deny indemnification to an insured for his

7

intentional acts. LaMure, 116 N.M. at 98, 860 P.2d 734. An exclusionary clause in an insurance contract excludes harm of the same general type as the insured intended. Knowles, 113 N.M. at 706-07, 832 P.2d at 397-98.

Here, the work that Mercer alleges is "property damage" is precisely the work that BNSF and Gandy Dancer expected and intended to perform on Mercer's property. Specifically, BNSF intended to reconstruct the water diversion project on the Brown Arroyo to redirect the flow of the water away from its railway line. These are precisely the damages Mercer claims. Hartford Fire does not suggest that BNSF or Gandy Dancer intended to harm Mercer, but nonetheless they absolutely intended to perform the work that caused the alleged harm.

Knowles controls here and demonstrates that Mercer's damages are not covered under the Gandy Dancer Policies. In Knowles, the insured placed a locked gate across a road on the insured's property that interfered with Montoya's use of an easement across the property. The New Mexico Supreme Court found that while the insured "may not have intended or expected to cause any harm to Montoya, he desired to limit access to the road." 113 N.M. at 708, 832 P.2d at 399. The Court concluded that the harm alleged in the complaint was of the same general type as that expected or intended by the insured and was therefore excluded. However, the Court found coverage on another ground, because a policy rider expressly covered wrongful evictions. That issue is not present here.

The Gandy Dancer Policies do not provide coverage for property damage arising from intentional torts. Rather, as set forth above, they specifically limit coverage to property damage caused by an "occurrence" or accidental happening. Accordingly, the exclusion of intentional acts is not repugnant to the general insuring provision for property damage and is enforceable. LaMure, 116 N.M. at 98, 860 P.2d at 740. As in Knowles, while BNSF and Gandy Dancer might not have specifically intended to harm Mercer,

8

they intended to do exactly what Mercer claims caused it harm, such that indemnification for Mercer's damages is excluded under the clear and unambiguous terms of the Gandy Dancer Policies.

E.     <u>Mercer's Damages Are Excluded From Coverage Because They Are For Damage To Real Property Caused By Gandy Dancer's Work On That Property.</u>

The plain language of exclusion j.(5) applies because Mercer's action is for damage to the particular part of real property on which Gandy Dancer performed operations, and the "property damage" arose out of those operations. As such, these damages are excluded from coverage. This exclusion reads as follows:

> j. Damage to Property
>
> "Property damage" to:
>
> ...
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations.
>
> [Exhibits 12 and 13; UMF 16]

In other words, to the extent a contractor's work can be said to be the cause of damage to property, it is excluded.

While exclusion j.(5) has not been examined by the New Mexico appellate courts, other courts have examined identical exclusions and found them enforceable. Specifically, the Tenth Circuit in <u>Advantage Homebuilding, LLC v. Maryland Casualty Co.</u>, 470 F.3d 1003 (10th Cir. 2006) found the exact same exclusion unambiguous and applied it in a case factually similar to this one. In <u>Advantage</u>, the homeowners sued the insured contractor for damages for windows in their home. The insured submitted its claim to the insurer, which denied a defense and coverage. The Tenth Circuit held that exclusion j.(5) applied because the insured was performing its work when the damage occurred. The Tenth Circuit noted that the j(5)

exclusion must be interpreted to apply when the damage occurs and that it applies "only to damage from ongoing work, and not from damage after completion of work." Id. at 1011. Likewise here, exclusion j.(5) applies because Gandy Dancer was performing work when the damage occurred. Indeed, Gandy Dancer's work *is* the claimed property damage.

Likewise, consistent with the exclusion's plain language, this exclusion has been applied to claims for trespass and damage to property owned by a third party. In Interstate Properties v. Prasanna, Inc., 2006 WL 1474235, 2006 Ohio App. LEXIS 2521 (May 31, 2006), the insured was performing excavation work for construction of a hotel. During the excavation work, the excavators went on adjoining property and allegedly damaged the property by removing some of the surface area of the land. The adjoining landowner sued the insured and others for damages. The Ohio Court of Appeals agreed that exclusion j.(5) applied, and that therefore there was no coverage:

> [T]he damage to the land of [the adjoining landowner] was directly caused by, and occurred during, the excavation work done . . . on behalf of the [insured]. [The adjoining landowner] was not damaged by a subsequent rain and erosion; the excavators hauled away their soil, causing changes to the topography of the land while they graded the hotel property.

Id. *10; see also Am. Contractors Ins. Co. v. United Nat'l Ins. Co., 2006 WL 2366433 (E.D. Ky. Aug. 14, 2006) (exclusion j.(5) is unambiguous and applied to bar coverage when insured caused road under which it drilled to cave into ground).

Just as the contractor's actions of removing soil from an adjoining property in the Interstate Properties case triggered exclusion j.(5) because the claimed damage, i.e., wrongful excavation, happened during the contractor's work, so does Gandy Dancer's actions of moving soil, building berms, and constructing water diversion improvements because the claimed damage happened during Gandy Dancer's

10

construction work. Accordingly, exclusion j.(5) bars coverage for Mercer's claims against BNSF and Gandy Dancer.

## CONCLUSION

Based upon the undisputed material facts, Mercer's alleged property damage is not covered under the terms of the Gandy Dancer Policies because it was not an "occurrence." Even if the Court were to find that the actions were an occurrence, they are still excluded from coverage because BNSF and Gandy Dancer expected and intended the alleged damage, and because the alleged damage occurred to property on which Gandy Dancer performed operations and it arose out of those same operations.

Respectfully submitted,

MILLER STRATVERT P.A.


By /s/ *Todd A. Schwarz*
    Todd A. Schwarz
    Thomas J. Bunting
    Attorneys for Counter-Defendant
    Post Office Box 25687
    Albuquerque, New Mexico 87125
    Telephone: (505) 842-1950
    Facsimile: (505) 243-4408
    E-Mail: tschwarz@mstlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed electronically through the CM/ECF system on June 10, 2011, and will be served automatically pursuant to the Court's rules and regulations to the following counsel of record:

**Attorneys for Gandy Dancer, LLC:**
Robert P. Warburton
Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A.
P.O. Box 528
Albuquerque, New Mexico 87103
Telephone: (505) 938-7770
Facsimile: (505) 938-7781
E-Mail: rpw@stelznerlaw.com

**Attorneys for BNSF Railway Company:**
Earl E. DeBrine Jr.
Paul T. Halajian
Tim L. Fields
Modrall Sperling Roehl Harris & Sisk P.A.
P.O. Box 2168
Albuquerque, New Mexico 87103-2168
Telephone: (505) 848-1800
Facsimile: (505) 848-9710
E-Mail: pth@modrall.com

**Attorneys for Roy D. Mercer, LLC:**
David C. Chavez
David C. Chavez Law Firm
P.O. Box 1615
Los Lunas, New Mexico 87031-1615
Telephone: (505) 865-9696
Facsimile: (505) 865-9699
E-Mail: dcchavezlaw@hotmail.com

Kenneth R. Wagner
Lisa Pistorio Ford
Wagner Ford Law, P.A.
P.O. Box 25167
Albuquerque, NM 87125-5167
Telephone: (505) 242-6300
Facsimile: (505) 242-0790
E-Mail: sheilag@wagnerfordlaw.com

/s/ Todd A. Schwarz
Todd A. Schwarz

\\prolaw\proclient\013195-042162\pleadings\909888.doc