IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE HARTFORD FIRE INSURANCE COMPANY,

      Plaintiff/Counter-Defendant,

vs.                                                  No. CIV 10-0137 JB/RHS

GANDY DANCER, LLC;
BNSF RAILWAY COMPANY; and
ROY D. MERCER, LLC.,

      Defendants,

-- and --

BNSF RAILWAY COMPANY,

      Counter-Plaintiff,

vs.

THE HARTFORD FIRE INSURANCE COMPANY,

      Counter-Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) The Hartford Fire Insurance Company's Motion for Summary Judgment Declaring that the Terms of the Policy Issued to Gandy Dancer Do Not Provide Coverage for Roy D. Mercer, LLC's Claims Against BNSF and Gandy Dancer, filed June 10, 2011 (Doc. 37)("MSJ"); and (ii) BNSF Railway Company's Rule 56(f) Motion and Memorandum Brief in Support to Conduct Discovery, filed July 21, 2011 (Doc. 47)("Discovery Motion").  The Court held a hearing on January 31, 2012.  The primary issues are: (i) whether Defendant Roy D. Mercer, LLC's allegations against Defendant Gandy Dancer, LLC and

Defendant/Counter-Plaintiff BNSF Railway Company in the underlying state litigation give rise to coverage under the insurance policies which Plaintiff/Counter-Defendant The Hartford Fire Insurance Company ("The Hartford"); (ii) whether any exclusion applies to preclude coverage; (iii) whether The Hartford is estopped from denying coverage; and (iv) whether the Court should delay deciding the MSJ so that discovery may be conducted.  The Court will grant in part and deny in part the MSJ.  The Court finds that Mercer LLC's allegations of property damages and negligent misrepresentation do not give rise to coverage under the insurance policies.  The Court will deny the MSJ in part, however, because Mercer LLC's allegations of trespass and nuisance trigger coverage, and because a determination of the ultimate duties under the policies is premature.  The Court will deny the Discovery Motion, because additional discovery is unnecessary.

## FACTUAL BACKGROUND

This case involves the construction of a water diversion system in 2006, over which litigation is taking place in state court.  The Hartford seeks a declaratory judgment that the facts alleged in the underlying state litigation do not give rise to insurance coverage under the policies it issued. Many of the material facts are undisputed.

1.    **The Insurance Policies.**

The Hartford issued a business liability insurance policy to Gandy Dancer, Policy Number 21 UUN QZ5048, with policy dates of August 8, 2005 to August 8, 2006, and issued a second policy, 21 UUN QZ5048, with policy dates of August 8, 2006 to August 8, 2007. See 21 UUN QZ5048, Commercial General Liability Coverage Form, filed June 10, 2011 (Doc. 37-7)("05-06 Gandy Dancer Policy"); 21 UUN QZ5048, Commercial General Liability Coverage Form, filed June

2

10, 2011 (Doc. 37-8)("06-07 Gandy Dancer Policy");[1] MSJ ¶¶ 10-11, at 5 (setting forth these facts);

BNSF Railway Company's Response Brief in Opposition to the Hartford Fire Insurance Company's

Motion for Summary Judgment Against BNSF and Gandy Dancer ¶ 1, at 4, filed July 21, 2011 (Doc.

48)("BNSF Response")(not disputing this fact).[2]  The Gandy Dancer Policies provide cover for, in

relevant part, "property damage" caused by an "occurrence" as those terms are defined in the Gandy

Dancer Policies.  05-06 Gandy Dancer Policy; 06-07 Gandy Dancer Policy; MSJ ¶ 14, at 5 (setting

forth this fact); BNSF Response ¶ 1, at 4 (not disputing this fact); Defendant Gandy Dancer's

Response to Plaintiff Hartford Fire Insurance Company's Motion for Summary Judgment Declaring

That the Terms of the Policy Issued to Gandy Dancer Do Not Provide Coverage for Roy D. Mercer,

LLC's Claims Against BNSF and Gandy Dancer at 5-6, filed July 21, 2011 (Doc. 45)("Gandy

Dancer Response")(not disputing this portion of the fact).  The Gandy Dancer Policies provide in

---

[1] Collectively, the Court will refer to the 05-06 Gandy Dancer Policy and the 06-07 Gandy
Dancer Policy as the "Gandy Dancer Policies."

[2] Gandy Dancer does not dispute the contents of The Hartford's asserted facts, that The
Hartford  issued policy number 21 UUN QZ5048 for the dates August 8, 2005 to August 8, 2006
and then for dates August 8, 2006 to August 8, 2007; rather Gandy Dancer disputes The Hartford's
citations, which imply that "the only relevant pages in the CGL policies are attached as Exhibit 12
to the motion."  Defendant Gandy Dancer's Response to Plaintiff Hartford Fire Insurance
Company's Motion for Summary Judgment Declaring That the Terms of the Policy Issued to Gandy
Dancer Do Not Provide Coverage for Roy D. Mercer, LLC's Claims Against BNSF and Gandy
Dancer at 5, filed July 21, 2011 (Doc. 45)("Gandy Dancer Response")(not disputing this fact).
Gandy Dancer does not provide any other pages of the 05-06 Gandy Dancer Policy and does not
dispute the content of the asserted fact.  Accordingly, Gandy Dancer has not specifically
controverted the asserted fact, and the Court will deem The Hartford's asserted fact admitted.
See D.N.M.LR-Civ. 56.1.  To the extent that Gandy Dancer was directing the Court to a citation
error, the Court notes that The Hartford cited to exhibit 12 (Doc. 37-7) for both the 05-06 Gandy
Dancer Policy and the 06-07 Gandy Dancer Policy.  Close examination of The Hartford's attached
exhibits reveals that the relevant pages of the 05-06 Gandy Dancer policy are attached as exhibit 12
(Doc. 37-7) and the relevant pages of the 06-07 Gandy Dancer policy are attached as exhibit 13
(Doc. 37-8).  Accordingly, when the Court refers to the 06-07 Gandy Dancer Policy, the Court is
referring to document 37-8.

relevant part:

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     Insuring Agreement

    a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies . . .

    b.     This insurance applies to "bodily injury" and "property damage" only if:

        (1)     The "bodily injury" or "property damage" is caused by an "occurrence" . . .

05-06 Gandy Dancer Policy; 06-07 Gandy Dancer Policy; MSJ ¶ 14, at 5-6 (setting forth this fact);

BNSF Response ¶ 1, at 4 (not disputing this fact).[3]  The Gandy Dancer Policies provide that

"property damage" means:

    a.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

---

[3]Gandy Dancer disputes The Hartford's asserted fact regarding the provisions of the Gandy Dancer Policies to the extent that it suggests that the only relevant portions of the Gandy Dancer Policies are included in undisputed material facts 14, 15, 16, and 17 -- all of which discuss policy provisions and define policy terms.  See Gandy Dancer Response at 5-6 (disputing this fact).  Gandy Dancer asserts that The Hartford omits the definition for "property damage."  Gandy Dancer Response at 6.  Gandy Dancer does not dispute the content of any of the asserted facts; rather, it asserts that another policy provision should have been included.  Because Gandy Dancer does not specifically controvert the content of The Hartford's asserted facts, the Court will deem those facts admitted.  See D.N.M.LR-Civ. 56.1(b).  The Court views Gandy Dancer as asserting another fact; because The Hartford does not dispute the Gandy Dancer Policies definition of "property damage" in its The Hartford Fire Insurance Company's Reply in Support of Motion for Summary Judgment Declaring that the Terms of the Policy Issued to Gandy Dancer Do Not Provide Coverage for Roy D. Mercer, LLC's Claims Against BNSF and Gandy Dancer at 2, filed September 2, 2011 (Doc. 52)("Reply"), the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

21 UUN QZ5048, Commercial General Liability Coverage Form at 1, filed July 21, 2011 (Doc. 45-2)("05-06 Gandy Dancer Policy").  "Occurrence" is defined in the Gandy Dancer Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  05-06 Gandy Dancer Policy at 15; 06-07 Gandy Dancer Policy at 17; MSJ ¶ 15, at 5-6 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact).  The Gandy Dancer Policies also include the following exclusions:

 a. Expected Or Intended Injury:

  "Bodily injury" or "property damage" expected or intended from standpoint of the insured.  This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

 . . .

 j. Damage To Property:

  "Property damage" to:

  . . .

  (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

 . . . .

05-06 Gandy Dancer Policy at 2; 06-07 Gandy Dancer Policy at 4; MSJ ¶ 16, at 5-6 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact).  The Gandy Dancer Policies distinguish between the Named Insured and additional insureds as follows: "Throughout this policy the words 'you' and 'your' refer to the named insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy . . . . The word 'insured' means any person or organization

qualifying as such under Section II -- Who Is An Insured." 05-06 Gandy Dancer Policy at 1; 06-07 Gandy Dancer Policy at 1; MSJ ¶ 17, at 5-6 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact). Gandy Dancer is the only Named Insured under the Gandy Dancer Policies, and The Hartford assumes for the purposes of the MSJ only that BNSF Railway qualifies as an additional insured. See MSJ ¶ 18 and n. 2, at 7 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact).

   2.    **Facts Giving Rise to the Underlying Action**.

   BNSF Railway owns and operates a railroad track and facilities in Socorro County, New Mexico. See MSJ ¶ 1, at 2 (setting fort this fact); Defendant Gandy Dancer's Response to Plaintiff Hartford Fire Insurance Company's Motion for Summary Judgment Declaring That the Terms of the Policy Issued to Gandy Dancer Do Not Provide Coverage for Roy D. Mercer, LLC's Claims Against BNSF and Gandy Dancer at 5, filed July 21, 2011 (Doc. 45)("Gandy Dancer Response")(not disputing this fact); BNSF Railway Company's Response Brief in Opposition to the Hartford Fire Insurance Company's Motion for Summary Judgment Against BNSF and Gandy Dancer ¶ 1, at 4, filed July 21, 2011 (Doc. 48)("BNSF Response")(not disputing this fact). A portion of these facilities is located adjacent to a tract of land that Mercer LLC owns. See BNSF Railway Co. v. Roy D. Mercer, LLC, D-725-CV-20080092, Verified Complaint for Injunctive Relief, Declaratory Judgment, Negligence and Nuisance ¶ 8, at 2 (dated June 3, 2008), filed June 10, 2011 (Doc. 37-1)("BNSF State Complaint"); BNSF Railway Co. v. Roy D. Mercer, LLC, D-725-CV-20080092, Amended Complaint for Declaratory Judgment and Injunctive Relief (dated August 22, 2008), filed June 10, 2011 (Doc. 37-2)("BNSF State Am. Complaint"); Roy D. Mercer, LLC v. Gandy Dancer, LLC, D-725-CV-201100044, Complaint for Damages (dated May 21, 2011), filed June 10, 2011

6

(Doc. 37-3)("Mercer State Complaint"); MSJ ¶ 1, at 2 (setting forth this fact); Gandy Dancer

Response at 5 (not disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact).  Mercer

LLC's land lies within a silty basin for the Brown Arroyo, also known as the Matanza Arroyo.  See

generally BNSF State Complaint ¶ 8, at 2; BNSF State Am. Complaint; Mercer State Complaint;

MSJ ¶ 1, at 2 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this fact); BNSF

Response ¶ 1, at 4 (not disputing this fact).  On September 23, 1936, the Middle Rio Grande

Conservancy District ("MRGCD") granted to BNSF Railway's predecessor, the Atchison, Topeka,

and Santa Fe Railway Company, a right to

> enter upon lands described in the easement and use so much of the natural material
> as such earth, rock, wood, etc. as it may elect or desire to remove for the purposes
> of constructing a surface ditch, dykes [sic] and spoil banks, together with any other
> facilities or structures necessary for the protection of the railroad or other property
> of the part of the second part from surface or other water, said tracts, or parcels of
> land.

Easement at 38 (executed September 23, 1936), filed July 21, 2011 (Doc. 48-1)("1936 Easement");

BNSF Response ¶ 12, at 7 (setting forth this fact); The Hartford Fire Insurance Company's Reply

in Support of Motion for Summary Judgment Declaring that the Terms of the Policy Issued to

Gandy Dancer Do Not Provide Coverage for Roy D. Mercer, LLC's Claims Against BNSF and

Gandy Dancer at 2, filed September 2, 2011 (Doc. 52)("Reply")(not disputing this fact).[4]

---

[4]The Reply states that there "are no genuine issues of material fact," and does not refer to
any of the facts which Gandy Dancer and BNSF Railway asserted in their Responses.  Reply at 2.
The local rules provide that a "Reply must contain a concise statement of those facts set forth in the
Response which the movant disputes or to which the movant asserts an objection. . . . All material
facts set forth in the Response will be deemed undisputed unless specifically controverted."
D.N.M.LR-Civ. 56.1.  Because The Hartford does not specifically controvert or even discuss any
of the additional facts set forth in the Gandy Dancer Response or in the BNSF Response, the Court
will deem all of the additional facts asserted in the Responses admitted.  In the interest of clarity,
the Court will continue to indicate that the Reply does not dispute any facts that Gandy Dancer or
BNSF Railway added in their Responses.

On December 29, 2003, Mercer LLC acquired the Brown Arroyo property through a deed filed in the Office of the County Clerk of Socorro County.  See BNSF State Complaint ¶ 11, at 2; MSJ ¶ 2, at 2 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact).  At the time that Mercer LLC acquired the Brown Arroyo property, a water diversion system went through the property to control flood water flowing down the Brown Arroyo.  See BNSF State Complaint ¶ 17, at 3; MSJ ¶ 3, at 2 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact).  BNSF Railway's 1936 Easement grants to BNSF Railway the right to use the natural material as it may desire for the construction of ditches, dikes, spoil banks, and other necessary facilities and structure to protect the railroad from Brown Arroyo's flood waters.  See BNSF State Complaint ¶ 14, at 3; MSJ ¶ 4, at 3; Gandy Dancer Response at 5 (not disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact).

Gandy Dancer has been a BNSF Railway's contractor for several years, and has performed a variety of work involving the use of heavy equipment, including responding to derailments, and to damages to railroad tracks, cars, roadbed, and structures associated with the provisions of the railroad freight service.  See Affidavit of Phillip Gallegos ¶ 4, at 1 (executed July 12, 2011), filed July 21, 2011 (Doc. 45-3)("Gallegos Aff."); Gandy Dancer Response ¶ 1, at 6 (setting forth this fact); Reply at 2 (not disputing this fact).  In August 2006, there was unprecedented rainfall in Socorro County that caused severe flood damage to BNSF Railway's property and to other property in Luis Lopez, New Mexico and other areas of the county.  See Gallegos Aff. ¶ 5, at 1-2; Gandy Dancer Response ¶ 2, at 6 (setting forth this fact); Reply at 2 (not disputing this fact).  As a consequence of the flooding, BNSF Railway's tracks, roadbed, and adjacent structures were washed out, and freight services near the Brown Arroyo stopped for several days.  See Gallegos Aff. ¶ 5, at

8

1-2; Gandy Dancer Response ¶ 2, at 6 (setting forth this fact); Reply at 2 (not disputing this fact).

Around August 2006, BNSF Railway hired Gandy Dancer to reconstruct the diversion system by clearing vegetation, building up the levees, expanding the diversion channel, and constructing piers to control flood waters to minimize the likelihood of additional breaches and flood damage. See BNSF State Complaint ¶ 22, at 4; Complaint for Declaratory Judgment ¶ 17, at 3, filed February 16, 2010 (Doc. 1)("Complaint"); Defendant Gandy Dancer, LLC's Answer to Complaint for Declaratory Judgment ¶ 17, at 3, filed March 28, 2010 (Doc. 12)("Gandy Dancer Answer"); Defendant Roy D. Mercer's Answer to Plaintiff's Complaint for Declaratory Judgment ¶ 17, at 3, filed April 5, 2010 (Doc. 14)("Mercer Answer"); Defendant BNSF Railway Company's Amended Answer to Complaint for Declaratory Judgment and Counterclaim ¶ 17, at 3, filed April 13, 2010 (Doc. 15)("BNSF Answer"); MSJ ¶ 5, at 3 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact). This work also involved rebuilding track, roadbed, and adjacent structures, including the dikes, berms,[5] and ditches that were part of the Brown Arroyo diversion system. See Gallegos Aff. ¶ 5, at 1-2; Gandy Dancer Response ¶ 3, at 6 (setting forth this fact); Reply at 2 (not disputing this fact). For several weeks, Gandy Dancer worked, along with heavy-equipment operators for the MRGCD and for the Bureau of Reclamation, to rebuild the dikes and ditches, and other parts of the Brown Arroyo diversion system. See Gallegos Aff. ¶ 4, at 7; Gandy Dancer Response ¶ 4, at 7 (setting forth this fact); BNSF Response ¶ 9, at 6-7; Reply at 2 (not disputing this fact). Some of the work performed by Gandy Dancer was done on the Brown Arroyo property. See BNSF State Complaint ¶ 22, at 4; Complaint

---

[5]A berm is a "flat strip of land, raised bank, or terrace bordering a river or canal; a path or grass strip beside a road; an artificial ridge or embankment . . . ." New Oxford American Dictionary 157 (A. Stevenson & C.A. Lindberg eds., 3d. 2010).

¶ 17, at 3; Gandy Dancer Answer ¶ 17, at 3; BNSF Answer ¶ 17, at 3; MSJ ¶ 5, at 3 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact).  BNSF Railway and Gandy Dancer knew that they were re-constructing the diversion system on the Brown Arroyo property, and using dirt and other resources from the Brown Arroyo property, but contend that they had the legal right and authority to do so.  See BNSF State Complaint ¶¶ 14, 22, at 3-4; BNSF Railway Co. v. Roy D. Mercer, LLC, D-725-CV-20080092, Reply and Affirmative Defenses to the Counterclaim Filed by Defendant/Counter-Plaintiff Roy D. Mercer ¶¶ 6, 14, at 2-3 (dated August 14, 2008), filed June 10, 2011 (Doc. 37-4)("BNSF State Counterclaim Reply"); BNSF Railway Co. v. Roy D. Mercer, LLC, D-725-CV-20080092, Memorandum Brief in Opposition to Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction at 1-3 (dated June 26, 2008), filed June 10, 2011 (Doc. 37-5)("Mercer State Opposition to TRO"); MSJ ¶ 6, at 3 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact).  In addition to natural materials available at the site, Gandy Dancer used materials that the Bureau of Reclamation provided.  See Gallegos Aff. ¶ 4, at 7; Gandy Dancer Response ¶ 4, at 7 (setting forth this fact); Reply at 2 (not disputing this fact).

Gandy Dancer understood that BNSF Railway had the right to rebuild and to rehabilitate the dikes, ditches, and other works.  See Gallegos Aff. ¶ 6, at 2; Gandy Dancer Response ¶ 5, at 7 (setting forth this fact); Reply at 2 (not disputing this fact).  BNSF Railway advised Gandy Dancer that the 1936 Easement specifically authorized and allowed Gandy Dancer to rebuild the railway beds, dikes, and ditches using available natural materials at the site.  See Affidavit of Jamin Hutchens ¶ 6, at 1 (executed July 8, 2011), filed July 21, 2011 (Doc. 45-4)("Hutchens Aff."); Gandy Dancer Response ¶ 6, at 7 (setting forth this fact); Reply at 2 (not disputing this fact).  BNSF

Railway subsequently provided Gandy Dancer with a copy of the 1936 Easement.  See 1936 Easement at 38; Hutchens Aff. ¶ 7, at 2; Gandy Dancer Response ¶ 7, at 7 (setting forth this fact); Reply at 2 (not disputing this fact).  When an official from the MRGCD called Mike Mechenbier, the sole member of Mercer LLC, and asked for permission to enter his property to rebuild the diversion system, Mechenbier gave consent.  See Hutchens Aff. ¶ 8, at 2; Gallegos Aff. ¶ 6, at 2; Gandy Dancer Response ¶¶ 8-9, at 7 (setting forth this fact); Reply at 2 (not disputing this fact).

For several weeks, Gandy Dancer, MRGCD, and the Bureau of Reclamation personnel were working to restore the dikes and ditches.  See Gallegos Aff. ¶ 6, at 2; Gandy Dancer Response ¶ 10, at 7 (setting forth this fact); Reply at 2 (not disputing this fact).  The work was conducted under emergency conditions, and additional rainfall not only destroyed some of the completed work, but also caused additional damages to diversion system components.  See Gallegos Aff. ¶ 6, at 2; Gandy Dancer Response ¶ 10, at 7-8 (setting forth this fact); Reply at 2 (not disputing this fac).  Gandy Dancer disputes that Mercer LLC lost any use of its property or water rights as a consequence of Gandy Dancer's work.  See Gallegos Aff. ¶ 9, at 3; Gandy Dancer Response ¶ 11, at 8 (setting forth this fact); Reply at 2 (not disputing this fact).  The Mercer LLC land "has been fallow for over a decade and was choked throughout by heavy vegetation including cottonwoods, salt cedar and other brush," and all of Mercer LLC's property "in the Brown Arroyo was subject to being inundated with floodwaters for weeks at a time and was unusable for any farming or ranching."  Gallegos Aff. ¶ 9, at 3; Gandy Dancer Response ¶ 12, at 8 (setting forth this fact); Reply at 2 (not disputing this fact).  Gandy Dancer intended to restore and reinforce pre-existing dikes and ditches that have historically protected BNSF Railway's railroad track and track bed from flood damage.  See Gallegos Aff. ¶ 10, at 3; Gandy Dancer Response ¶ 13, at 8 (setting forth this fact); BNSF Response ¶ 10, at 7 (setting forth this fact); Reply at 2 (not disputing this fact).  Gandy Dancer did not expect, intend, or

11

anticipate that its work would result in any harm or loss of use of the adjacent Mercer LLC property or cause flooding of that property.  See Gallegos Aff. ¶ 11, at 3; Gandy Dancer Response ¶ 14, at 8 (setting forth this fact); BNSF Response ¶ 11, at 7 (setting forth this fact); Reply at 2 (not disputing this fact).  Gandy Dancer contends that the dikes and ditches it reconstructed on the Brown Arroyo did not harm Mercer LLC's property, but efficiently facilitated the flow of flood waters from the Brown Arroyo away from the Mercer LLC property.  See Gallegos Aff. ¶ 12, at 3; Gandy Dancer Response ¶ 15, at 8 (setting forth this fact); BNSF Response ¶ 11, at 8 (setting forth this fact); Reply at 2 (not disputing this fact).

### 2.    **History of the Underlying Action.**

There are currently pending in the Seventh Judicial District Court, Socorro County, State of New Mexico, two actions: (i) BNSF Railway Company v. Roy D. Mercer, LLC, D-725-CV-200800092; and (ii) Roy D. Mercer, LLC v. Gandy Dancer, LLC, D-725-CV-201100044.  BNSF commenced the underlying action,  BNSF Railway Company v. Roy D. Mercer, LLC, D-725-CV-200800092, when it filed the BNSF State Complaint on June 3, 2008 and obtained a temporary injunction preventing Mercer, LLC from disturbing remedial work performed on the levees.  See MSJ ¶ 6, at 3 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact).  On July 8, 2008, Mercer LLC filed an answer and counterclaim.  See BNSF Railway Company v. Roy D. Mercer, LLC, D-725-CV-200800092, Answer to Verified Complaint for Injunctive Relief, Declaratory Judgment, Negligence, and Nuisance and Counterclaim (dated July 8, 2008), filed February 16, 2010 (Doc. 1-1)("Mercer State Counterclaim"); MSJ ¶ 8, at 4; Gandy Dancer Response at 5 (not disputing this portion of fact 8); BNSF Response ¶ 1, at 4 (not disputing this portion of fact 8).  On September 15, 2008, Mercer LLC filed an answer to the BNSF State Am. Complaint.  See BNSF Railway Company v. Roy D. Mercer,

LLC, D-725-CV-200800092, Answer to Amended Complaint for Declaratory Judgment and Injunctive Relief and Counterclaim (dated September 15, 2008), filed February 16, 2010 (Doc. 1-2)("Mercer Am. State Counterclaim"); MSJ ¶ 8, at 4 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this portion of fact 8); BNSF Response ¶ 1, at 4 (not disputing this portion of fact 8). The Mercer Am. State Counterclaim incorporated "each and every allegation . . . in its entirety" contained within the Mercer State Counterclaim "as though more fully set forth herein," and asserts additional claims for declaratory judgment and "modification of the easement by estoppel." Mercer Am. State Counterclaim at 1, 2-3, 4-5.[6] On June 24, 2009, Mercer LLC filed a second amended counterclaim against BNSF Railway. See Defendant/Counter-Plaintiff's 2nd

---

[6]The Hartford asserts that, in the Mercer Am. State Counterclaim, "Mercer appeared to drop all of the allegations and claims made in the original Counterclaim and purported to assert claims for declaratory judgment and 'modification of the easement by estoppel.'" MSJ ¶ 8, at 4 (setting forth this fact). Both Gandy Dancer and BNSF Railway dispute this fact and assert that the Mercer Am. State Counterclaim incorporates each allegation made in the Mercer State Counterclaim. See Gandy Dancer Response at 5 (disputing this fact); BNSF Response ¶ 2, at 4 (disputing this fact). The Mercer Am. State Counterclaim states: "The Defendant/Counter-Plaintiff, ROY D. MERCER, LLC, hereby incorporates by referenced [sic], each and every allegation, response, defenses and affirmative defenses in its entirety, contained within its Answer to Verified Complaint for Injunctive Relief, Declaratory Judgment, Negligence and Nuisances and Counterclaim as though more fully set forth herein." Mercer Am. State Counterclaim ¶ 1, at 1. The local rules provide:

> The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b). BNSF Railway and Gandy Dancer have specifically controverted The Hartford's asserted fact, because the portion of the record upon which all parties rely more closely conforms to the version that BNSF Railway and Gandy Dancer set forth. Because the Mercer Am. State Counterclaim specifically states that it incorporates all of its allegations from the Mercer State Counterclaim, the Court will modify the asserted fact to more accurately reflect to the contents of the Mercer Am. State Counterclaim. See D.N.M.LR-Civ. 56.1(b).

Amended Counterclaim Against Plaintiff/Counter-Defendant BNSF (dated June 24, 2009), filed February 16, 2010 (Doc. 1-4)("Mercer 2nd Am. State Counterclaim"); MSJ ¶ 8, at 4 (setting forth this fact); Gandy Dancer Response at 5 (not disputing this portion of fact 8); BNSF Response ¶ 2, at 4 (not disputing this portion of fact 8).

Mercer LLC alleges that the reconstruction of the water diversion system and use of the Brown Arroyo property resources constitutes damage to Mercer LLC's property. See Mercer State Counterclaim; Mercer Am. State Counterclaim; Mercer 2nd Am. State Counterclaim; MSJ ¶ 9, at 4 (setting forth this fact); BNSF Response ¶ 1, at 4 (not disputing this fact).[7] Mechenbier testified that the complaint against Gandy Dancer is based on "loss of use of property and possible forfeiture of water rights," and admitted that Gandy Dancer did not "touch" parts of the property which are alleged to have been lost. Mechenbier Depo. at 141:22-142:16; Gandy Dancer Response at 5

---

[7]Gandy Dancer disputes that Mercer LLC contends that the reconstruction of the diversion system and use of resources constitutes damage to the Mercer LLC property. See Gandy Dancer Response at 5 (disputing this fact). Gandy Dancer asserts that Mechenbier testified in a deposition that the counterclaims against Gandy Dancer are based on "loss of use of property and possible forfeiture of water rights," and that the alleged loss of use includes areas of the property that Gandy Dancer did not touch. See Deposition of Mike Mechenbier at 8:9-18 (April 19, 2011), filed July 21, 2011 (Doc. 45-1)("Mechenbier Depo."); id. at 17:19-18:2; id. at 141:22-142:16; Gandy Dancer Response at 5. In the deposition, Mechenbier stated that his allegations are that "the piece of property was turned into a canal, loss of use of the property, and possible forfeiture of water rights." Mechenbier Depo. at 17:19-18:2. Mechenbier also stated that Gandy Dancer did not touch part of the area alleged to have been lost. See Mechenbier Depo. at 141:22-142:16. In the Mercer 2nd Am. State Complaint, however, Mercer LLC alleges that BNSF Railway's construction and use of materials damaged Mercer LLC. See Mercer 2nd Am. State Complaint ¶¶ 8-9, at 3. Accordingly, the information that Gandy Dancer produced does not specifically controvert The Hartford's asserted fact that Mercer LLC contends that the reconstruction and use of resources caused damage to Mercer LLC's property, and the Court will deem that fact admitted. See D.N.M.LR-Civ. 56.1(b). The Court views the information that Gandy Dancer produced as going hand-in-hand with The Hartford's asserted fact, and it will treat Gandy Dancer's assertions regarding Mechenbier's deposition as facts. Because The Hartford does not dispute this fact in its Reply, see Reply at 2, the Court will deem Gandy Dancer's asserted facts regarding Mechenbier's deposition admitted. See D.N.M.LR-Civ. 56.1(b) ("All material facts set forth in the Response will be deemed undisputed unless specifically controverted.")

(setting forth this fact); Reply at 2 (not disputing this fact).  BNSF Railway argues that Mercer

LLC's only recourse is for inverse condemnation.  See BNSF Railway Co. v. Roy D. Mercer, LLC,

No. 09-0733, Plaintiff/Counter-Defendant BNSF Railway Company's Reply and Affirmative

Defenses to Defendant/Counter-Plaintiff's Second Amended Counterclaim Against

Plaintiff/Counter-Defendant BNSF (dated August 3, 2009), filed June 10, 2011 (Doc. 37-6)("BNSF

Reply 2nd Am. Counterclaim"); MSJ ¶ 9, at 4 (setting forth this fact); Gandy Dancer at 5 (not

disputing this portion of fact 9); BNSF Response ¶ 1, at 4 (not disputing this fact).

Mercer LLC alleges that a "poorly constructed berm" rendered the property unusable for

irrigation purposes.  Roy D. Mercer, LLC v. Gandy Dancer, LLC, D-725-CV-201100044, Roy D.

Mercer LLC's Answer Brief in Opposition to BNSF's Motion to Dismiss Counterclaims (dated June

24, 2011), filed July 21, 2011 (Doc. 48-1)("Mercer Opposition"); BNSF Response ¶ 5, at 6 (setting

forth this fact); Reply at 2 (not disputing this fact).  Mercer LLC alleges that Gandy Dancer and

BNSF constructed the diversion channel "without reviewing or determining the natural water flow,"

and "without the proper, necessary and/or required designs, plans, permits, and/or the like to do so."

Mercer 2nd Am. State Counterclaim ¶¶ 11-12 at 3; Contract for Construction or Other Work § 7,

at 3-4 (dated March 16, 2001), filed February 16, 2010 (Doc. 1-5)("Contract"); BNSF Response ¶¶

6-7, at 6 (setting forth this fact); Reply at 2 (not disputing this fact).  Mercer LLC asserts that the

diversion project caused the discharge of storm water onto Mercer LLC's property and damaged it.

See Mercer 2nd Am. State Counterclaim ¶ 13, at 3; BNSF Response ¶ 8, at 6 (setting forth this fact);

Reply at 2 (not disputing this fact).

####    3.    **Insurance Policy Application.**

BNSF Railway sought coverage under the Gandy Dancer Policies for Mercer LLC's claims.

See BNSF Answer; MSJ ¶ 12, at 5 (setting forth this fact); Gandy Dancer Response at 5 (not

disputing this fact); BNSF Response ¶ 1, at 4 (not disputing this fact).  The Hartford filed its Complaint on February 16, 2010.  See Complaint; MSJ ¶ 13, at 5 (setting forth this fact); Gandy Dancer Response (not disputing this fact); BNSF Response (not disputing this fact).

BNSF Railway notified The Hartford of Mercer LLC's claim for damages after receiving notice in November 2006 of Mercer LLC's intent to assert claims against BNSF Railway, and requested that The Hartford defend and indemnify BNSF Railway under the Gandy Dancer Policies.  See Declaration of David A. Fortis ¶ 3, at 1-2, filed July 21, 2011 (Doc. 48-1)("Fortis Decl."); BNSF Response ¶ 1, at 5 (setting forth this fact); Reply at 2 (not disputing this fact).  BNSF Railway pressed The Hartford "numerous times over many months" for a decision regarding coverage, because it was attempting to negotiate with Mercer LLC to resolve the claim.  Fortis Decl. ¶¶ 4-5, at 2; BNSF Response ¶ 1, at 5 (setting forth this fact); Reply at 2 (not disputing this fact).  BNSF Railway provided The Hartford with all of the information it requested concerning the claim and progress of negotiations with Mercer LLC.  See Fortis Decl. ¶¶ 4-5, at 2; BNSF Response ¶ 1, at 5 (setting forth this fact); Reply at 2 (not disputing this fact). On October 2, 2007, Donald Kieffer, the Claim Consultant for The Hartford, notified BNSF Railway that BNSF Railway was entitled to a defense and indemnification under the Gandy Dancer Policies.  See Electronic Mail Transmission from Donald Kieffer to Earl E. Debrine at 4 (dated October 2, 2007), filed July 21, 2011 (Doc. 48-1)("Oct. 2, 2007 Kieffer Email"); BNSF Response ¶ 2, at 5 (setting forth this fact); Reply at 2 (not disputing this fact).  The Kieffer Email states:

> Please provide me with the contact information for Mr. Mercer's attorney.  We will contact him directly regarding the claim.  Currently we are reviewing the materials which you have provided to clarify the nature, extent and value of the damages.
>
> We have confirmed that BNSF is entitled to a defense and indemnification under our policy, subject to the terms and conditions of our policy.  Please notify us immediately if BNSF is served with a lawsuit in connection with this loss, so that we

16

can refer their defense to counsel.

> If BNSF is served with a lawsuit in this matter, we will forward defense of this claim
> to The Law Offices of Eva Rappaport in Albuquerque.

Oct. 2, 2007 Kieffer Email at 4; BNSF Response ¶ 2, at 5 (setting forth this fact); Reply at 2 (not

disputing this fact). Before making this determination, The Hartford had in its possession: (i) an

electronic mail transmission from Mercer LLC's attorney offering to settle the claim; (ii) maps of

the property at issue; (iii) a copy of the 1936 Easement; (iv) documents pertaining to Mercer LLC's

purchase of the property; and (v) an appraisal of Mercer LLC's property. See Electronic Mail

Transmission from Earl DeBrine to Donald Kieffer at 5 (dated September 6, 2007), filed July 21,

2011 (Doc. 48-1)("Sept. 6, 2007 DeBrine Email"); BNSF Response ¶ 3, at 5.

After informing BNSF Railway that it was entitled to an indemnification and a defense, The

Hartford directed it to allow The Hartford and its appointed attorneys to determine whether

settlements were appropriate, and directed BNSF Railway not to settle with Mercer LLC without

The Hartford's consent. See Kieffer Email at 4; Electronic Mail Transmission from Earl DeBrine

to Donald Kieffer at 9 (dated October 2, 2007), filed July 21, 2011 (Doc. 48-1)("Oct. 2, 2007

DeBrine Email"); Electronic Mail Transmission from Donald Kieffer to J.K. Hollowwa at 10 (dated

March 7, 2008), filed July 21, 2011 (Doc. 48-1)("Mar. 7, 2008 Kieffer Email"); Electronic Mail

Transmission from Donald Kieffer to Earl DeBrine at 15 (dated May 15, 2008), filed July 21, 2011

(Doc. 48-1)("May 15, 2008 Kieffer Email"); BNSF Response ¶ 4, at 6 (setting forth this fact); Reply

at 2 (not disputing this fact). The Hartford's subsequent attempt to reserve its rights did not mention

the "Expected or Intended Injury" exclusion set forth in section 2(a) of its insurance policy with

Gandy Dancer. Letter from Donald Kieffer to Earl DeBrine at 1-4 (dated November 13, 2007), filed

July 21, 2011 (Doc. 48-2)("Kieffer Letter"); BNSF Response ¶ 4, at 6 (setting forth this fact); Reply

at 2 (not disputing this fact).

## PROCEDURAL BACKGROUND

On February 16, 2010, The Hartford filed its Complaint.[8]   The Hartford requests a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  See Hartford's Complaint at 1.  The Hartford requests that the Court declare that The Hartford owes no insurance obligations to indemnify, or to defend, BNSF Railway or Gandy Dancer in connection with the rehabilitation work that is the subject of Mercer LLC's suit against BNSF and Gandy Dancer.  See Hartford's Complaint ¶ 1, at 1.

On March 28, 2010, Gandy Dancer filed its Answer to Complaint for Declaratory Judgment. Doc. 12 ("Gandy Dancer's Answer to Hartford").  Gandy Dancer asserts that the doctrines of waiver, delay and/or laches, bad faith, inequitable conduct and/or unclean hands, and "mend and hold" bar The Hartford's claims.[9]  Gandy Dancer's Answer to Hartford ¶¶ 1-7, at 9.  Gandy Dancer requests that the Court grant a declaratory judgment against The Hartford, declaring that The Hartford has a duty to defend and indemnify Gandy Dancer in the underlying suit.  See Gandy Dancer's Answer to Hartford at 10.  Mercer LLC responded, similarly asserting that the doctrines of laches, estoppel and/or waiver, comparative fault, acquiescence, and The Hartford's failure to join

---

[8] In its Complaint, The Hartford contends that Mercer LLC dropped all the allegations and claims asserted in Mercer LLC's original counterclaim, and purported to assert claims for declaratory judgment and modification of the easement by estoppel in Mercer LLC's amended counterclaim.  See Hartford's Complaint ¶ 22, at 4.  Mercer LLC "incorporates by referenced, [sic] each and every allegation, response, defenses [sic] and affirmative defense in it [sic] entirety, contained within its" original counterclaim.  Mercer LLC's Answer to Amended Complaint for Declaratory Judgment and Injunctive Relief and Counterclaim ¶ 1, at 1, filed September 15, 2008 (Doc. 1-2)(Mercer's First Amended Counterclaim).

[9]The "mend the hold" doctrine provides that a contract party is not permitted to change is position on the meaning of a contract in the middle of litigation over it.  First Bank & Trust Co. of Illinois v. Cimerring, 365 F.App'x 5, 8 (7th Cir. 2010)(unpublished).

a necessary party bar The Hartford's claims.  See Mercer's Answer to Hartford ¶ 46, at 7.  BNSF

Railway responded, asserting that the doctrines of waiver, estoppel, estoppel by contract, bad faith,

inequitable conduct, unclean hands, laches, and "mend the hold" bar Hartford's claims.  See BNSF's

Answer at 7.  BNSF Railway asserted counterclaims for bad faith, breach of contract, violation of

the Unfair Insurance Practices Act, and violation of the New Mexico Unfair Practices Act, N.M.S.A.

1978, §§ 57-12-1 to 57-12-30.  See BNSF's Answer at 14-16.

The Hartford filed an answer to BNSF Railway's counterclaims on May 13, 2010.  See The

Hartford Insurance Company's Answer to BNSF Railway Company's Counterclaim at 1, filed May

13, 2010 (Doc. 19)("Hartford's Response to Counterclaims").  The Hartford denied most of BNSF

Railway's allegations and asserted that BNSF Railway's counterclaims were barred to the extent that

others' fault caused the injuries and to the extent that BNSF Railway failed to mitigate damages.

See Hartford's Response to Counterclaim at 7.  The Hartford also contended that BNSF Railway's

claim for punitive damages violates the Constitution of the United States as well as the Constitution

of the State of New Mexico.  See Hartford's Response to Counterclaim at 7.  The Hartford argued

that BNSF Railway knowingly brought a groundless action under the Unfair Practices Act.  See

Hartford's Response to Counterclaim at 7.  The Hartford once again asserted that BNSF Railway

is not entitled to coverage under the policies and requests that the Court dismiss BNSF Railway's

counterclaims with prejudice.  See Hartford's Response to Counterclaim at 8.

On March 30, 2011, the Court denied BNSF Railway's and Gandy Dancer's request to stay

the proceedings before the Court.  See Memorandum Opinion and Order, filed March 30, 2011 (Doc.

35)("MOO").  The Court found that the issues pending before the Court, whether BNSF Railway's

and Gandy Dancer's actions were "expected and intended," is distinct from the tort questions before

the state court.  MOO at 18-19.  The Court also found that, "under New Mexico law, the Court

19

determines whether The Hartford has a duty to defend based on the State Court Complaint and the insurance policies, and The Hartford has represented that it will seek a decision based only on those documents." MOO at 19.

The Hartford moves the Court for summary judgment, requesting the Court to declare that the Gandy Dancer Policies do not provide coverage for the damages that Mercer LLC seeks in the consolidated state actions. See The Hartford Fire Insurance Company's Memorandum in Support of Its Motion for Summary Judgment Declaring that the Terms of the Policy Issued to Gandy Dancer Do Not Provide Coverage for Roy D. Mercer, LLC's Claims Against BNSF and Gandy Dancer at 1-2, filed June 10, 2011 (Doc. 38)("MSJ Memo"). The Hartford asserts that, in the underlying state actions, Mercer LLC contends that BNSF Railway directed Gandy Dancer to reconstruct a water diversion project on Mercer LLC's land and that "the renovations themselves damaged its property." MSJ Memo at 2 (emphasis original). It argues that the damages sought are not covered under the Gandy Dancer Policies, because they were not caused "by an 'occurrence,'" as defined in the policies. MSJ Memo at 2. The Hartford also contends that two coverage exclusions apply to exclude the damages from coverage: (i) the work performed on Mercer LLC's property was "expected or intended" by BNSF Railway; and (ii) the claimed property damage is to real property on which Gandy Dancer conducted operations at BNSF Railway's direction. MSJ Memo at 2.

The Hartford asserts that, in New Mexico, a liability insurer's obligation is contractual and the terms of the policy control. See MSJ Memo at 3 (citing Miller v. Monumental Life Ins. Co., 376 F.Supp.2d 1238, 1245 (D.N.M. 2005)(Browning, J.) rev'd on other grounds by 50 F.3d 1245 (10th Cir. 2007)). It argues that the Gandy Dancer Policies do not cover reconstructing the water diversion project, because it was not "damaged" by an "occurrence." MSJ Memo at 4. It contends that the material facts demonstrate "the complete absence of any accidental injury to the property,"

20

and that BNSF Railway and Gandy Dancer cannot meet their burden of establishing a covered event within the grant of coverage.  MSJ Memo at 4.  The Hartford asserts that the New Mexico courts define "accident" in terms of an "insured's intent to commit an act -- not to achieve a specific result."  MSJ Memo at 4 (citing Vihstadt v. Travelers Ins. Co., 103 N.M. 465, 466, 709 P.2d 187, 188 (1985)).  It argues that the Supreme Court of New Mexico has also held that the term "accident" expresses "the thought of an event occurring without design or purpose, or unintentionally on the part of the assured [and] . . . does not include the result of willful design."  MSJ Memo at 4-5 (citing Vihstadt v. Travelers Ins. Co., 103 N.M. at 466, 709 P.2d at 188).  The Hartford contends that there is a difference between accidental means and accidental result, and that the "precise event or act causing the injury" in this case was not accidental.  MSJ Memo at 5.  It argues that BNSF Railway and Gandy Dancer intended the reconstruction which Mercer LLC alleges damaged the property, and asserts that Mercer LLC "does not allege that the water diversion project was constructed negligently or that it was not constructed precisely where BNSF intended."  MSJ Memo at 5.  The Hartford contends that there was no additional, independent, or unforeseen event which caused damages to the Mercer LLC property.  See MSJ Memo at 5.  The Hartford further asserts that it does not matter whether BNSF Railway and Gandy Dancer had, or believed they had, legal authority to reconstruct the water diversion system, because a misunderstanding of legal rights does make the property damage an accident.  See MSJ Memo at 6 (citing Fire Ins. Exchange v. Superior Court, 104 Cal.Rptr.3d 534 (Cal. Ct. App. 2010)).

The Hartford also argues that BNSF Railway's and Gandy Dancer's reconstruction of the water diversion project was "expected or intended," such that the resulting damage is excluded under the Gandy Dancer Policies.  MSJ Memo at 7.  It asserts that, under New Mexico law, exclusionary definitions are "to be enforced so long as their meanings are clear and they do not

21

conflict with statutory law." MSJ Memo at 7 (citing Safeco Ins. Co. v. McKenna, 90 N.M. 516, 518, 565 P.2d 1033, 1035 (1977)).  The Hartford contends that BNSF Railway and Gandy Dancer intended to reconstruct the water diversion system on the Brown Arroyo property and that Mercer LLC alleges that this construction damaged its property.  See MSJ Memo at 8.  It compares the events in this case to Knowles v. United Servs. Auto. Ass'n, 113 N.M. 703, 832 P.2d 394 (1992), and asserts that the Supreme Court of New Mexico held that a similar exclusion would apply where, although the insured did not expect or intend harm, he intended the act which caused the damages. See 113 N.M. at 708, 832 P.2d at 399.  The Hartford argues that, as in Knowles v. United Servs. Auto. Ass'n, while BNSF Railway and Gandy Dancer may not have intended to harm Mercer LLC, "they intended to do exactly what Mercer claims caused it harm, such that indemnification for Mercer's damages is excluded under the clear and unambiguous terms of the Gandy Dancer Policies."  MSJ Memo at 8-9.  The Hartford also contends that exclusion j(5), which addresses damages to real property, applies, because "to the extent a contractor's work can be said to be the cause of damage to property, it is excluded."  MSJ Memo at 9.

Mercer LLC filed a response indicating that it takes no position on the MSJ.  See Roy D. Mercer, LLC's Response to The Hartford Fire Insurance Companies' Motion for Summary Judgment [Doc. # 37], filed June 24, 2011 (Doc. 42).

On July 21, 2011, Gandy Dancer filed the Gandy Dancer Response.  See Doc. 45.  Gandy Dancer argues that: (i) an "occurrence," as the Gandy Dancer Policies define that term, caused the damage which Mercer LLC alleges; (ii) in analyzing whether the loss was "expected or intended," The Hartford has mischaracterized Mercer LLC's alleged property damage as consisting of the dikes and ditches themselves; (iii) Mercer LLC's loss of use claims are not limited to land on which Gandy Dancer performed work; (iv) Mercer LLC's trespass allegations also trigger coverage under

22

the Gandy Dancer Policies; and (v) The Hartford has prematurely filed its MSJ, before any of the parties have made initial disclosures pursuant to rule 26(a)(1) of the Federal Rules of Civil Procedure.  Gandy Dancer Responses at 3-4.

Gandy Dancer argues that The Hartford mischaracterizes the "property damage" that forms the basis of Mercer LLC's claims against Gandy Dancer as consisting solely of the construction of the water diversion system.  Gandy Dancer Response at 10.  It asserts that Mechenbier clarified, in his deposition, that "he is alleging that he has been damaged by permanently losing the use of Mercer's 60 acre tract for farming and/or grazing, and not just the use of property that the dikes and ditches occupy."  Gandy Dancer Response at 10 (citing Mechenbier Depo. at 17:19-18:2; id. at 141:22-142:16).  It argues that Mechenbier testified that he could not graze cattle on the property, because he "would be afraid that if we had a large storm event, you'd lose the cattle with the amount [of] water getting channeled through there."  Gandy Dancer Response at 10 (citing Mechenbier Depo. at 28:13-17).  Gandy Dancer also represents that Mechenbier has never attempted to graze cattle on or irrigate the property.  See Gandy Dancer Response at 11 (citing Mechenbier Depo. at 141:22-142:16).  Gandy Dancer argues that Mechenbier admitted that the water diversion system that Gandy Dancer re-built in 2006 was designed to divert flood waters in the Brown Arroyo in the same southernly direction as had historically been the case.  See Gandy Dancer Response at 11 (citing Mechenbier Depo. at 63:20-66:3).  It asserts that the Gandy Dancer Policies define an occurrence as "an accident" and that, in King v. Travelers Ins. Co., 84 N.M. 550, 505 P.2d 1226 (1973), the Supreme Court of New Mexico held: "Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause."  Gandy Dancer Response at 11 (quoting King v. Travelers Ins. Co., 84 N.M. at 553-54 , 505 P.2d at 1229-30)(emphasis original).

23

Gandy Dancer further argues that the Supreme Court of New Mexico found that "an insurance policy designed to compensate for damages suffered by 'accidental means' is no less effective when the damages result from negligence." Gandy Dancer Response at 11 (quoting <u>King v. Travelers Ins. Co.</u>, 84 N.M. at 553, 505 P.2d at 1229). It contends that allegations of negligence do not preclude the alleged harm from being accidental and that there is a dispute as to the material fact whether the alleged harm was unexpected. Gandy Dancer Response at 12.

Gandy Dancer argues that The Hartford's reliance on <u>Vihstadt v. Travelers Ins. Co.</u> is misplaced, because <u>Vihstadt v. Travelers Ins. Co.</u> dealt with bodily injury rather than property damage and did not address the body of case law "peculiar to an insurance company's duty to defend under a liability insurance policy." Gandy Dancer Response at 12. It asserts that at issue in <u>Vihstadt v. Travelers Ins. Co.</u> was whether the aspirin poisoning that resulted from the intentional digestion of fifty aspirin was an "accident" under a health insurance policy. Gandy Dancer Response at 12. It further asserts that, in <u>Vihstadt v. Travelers Ins. Co.</u>, the Supreme Court of New Mexico relied on <u>Hayden v. Insurance Co. of North America</u>, 5 Wash.App. 701, 490 P.2d 454 (1971), for the proposition that "an accident is never present when a deliberate act is performed, unless some additional, unexpected, independent and unforeseen happening occurs," and that the Supreme Court of New Mexico held that, because there was no unforeseen happening, there was no accident or coverage. Gandy Dancer Response at 12. It contends that Mercer LLC's alleged loss was not "the natural result of Gandy Dancer's work and certainly was not expected or the result of some willful design," and that "the unexpected, unforeseen happening that brought about the alleged property damage is Mercer's unsupported and irrational fear that flooding of the same magnitude . . . will suddenly become commonplace." Gandy Dancer Response at 12-13. Gandy Dancer also argues that this case is unlike <u>Albuquerque Gravel Products Co. v. American Employers Ins. Co.</u>,

24

282 F.2d 218 (10th Cir. 1960), because there the defendants built a new dam that caused normal rains to flood nearby properties.  <u>See</u> Gandy Dancer Response at 13.  It contends that it is undisputed that Gandy Dancer's work was intended to ensure that future flood waters would be drained toward the Rio Grande River more efficiently and with less resulting erosion.  <u>See</u> Gandy Dancer Response at 13.  Gandy Dancer asserts that the Court should reject The Hartford's argument that, "[b]ecause BNSF and Gandy Dancer expected and intended to reconstruct the water diversion project, the damages it allegedly cause[d] Mercer are excluded."  Gandy Dancer Response at 14.  It argues that The Hartford has mischaracterized Mercer LLC's alleged property damage as consisting only of the actual work that Gandy Dancer performed, whereas Mechenbier's deposition makes clear that the alleged damages are the complete and permanent loss of use of the sixty-acre tract.  <u>See</u> Gandy Dancer Response at 14.  Gandy Dancer contends that The Hartford's reliance on <u>Knowles v. United Services Automobile Ass'n</u> is also misplaced, because, there, the Supreme Court of New Mexico, relying on <u>United Services Automobile Ass'n v. Elitzky</u>, 358 Pa.Super. 362, 517 A.2d 982 (1986), found that "expected or intended" meant that the exclusion applies to harm of the "same general type" that the insured intends and that, under <u>Knowles v. United Services Automobile Ass'n</u>, The Hartford must show that there are no disputed issues of fact that Gandy Dancer intended to cause harm of the "same general type" that Mercer LLC alleges.  Gandy Dancer Response at 15.   It contends that, unlike <u>Knowles v. United Services Automobile Ass'n</u>, where the insured intended to limit access to a road, Gandy Dancer "was simply restoring the pre-flood status quo . . . in a way that ostensibly benefits the Mercer Property."  Gandy Dancer Response at 16.

Gandy Dancer also argues that Mercer LLC's claims do not fall "completely within exclusion j(5)," because, "[b]y its plain terms, the exclusion is limited to property damage to the particular part of the real property where operations are being performed."  Gandy Dancer Response

25

at 16.  It asserts that Mercer LLC's claims extend to the entire sixty-acre tract and are not limited to where Gandy Dancer worked.  See Gandy Dancer Response at 17.  It contends that Advantage Homebuilding, LLC v. Maryland Casualty, Co., 470 F.3d 1003 (10th Cir. 2006) is distinguishable, because, there, the damages to a home were limited to "the particular part of the real property on which the contractor was performing operations and it was undisputed that all of the damage occurred while the operations were ongoing."  Gandy Dancer Response at 17.  Gandy Dancer also argues that Interstate Properties v. Prasanna, Inc., 2006 Ohio 2686, 2006 Ohio App. LEXIS 2521 (Ohio App. May 21, 2006), is distinguishable, because that court held:

> Collateral damage is not the actual poor work product; rather it consequentially flows from it.  Examples of collateral damage include the additional property damage that results from subsequent rain or other external factors, such as damage to the interior of a home or surrounding landscape caused by a leaky roof or a poorly installed drainage system.

Gandy Dancer Response at 18 (citing Interstate Properties v. Prasanna, Inc., 2006 Ohio App. LEXIS 2521, at *27).  Alternatively, Gandy Dancer argues that Mercer LLC's allegations of trespass trigger a duty to defend under the "personal and advertising injury" policy provision, because it does not condition coverage on there being "an occurrence," and because other courts have held that trespass constitutes wrongful entry under similar provisions.  Gandy Dancer Response at 18-19.

Finally, Gandy Dancer argues that The Hartford filed its motion for summary judgment at a point in the case where none of the parties have made initial disclosures under rule 26(a) of the Federal Rules of Civil Procedure.  See Gandy Dancer Response at 20.  It asserts that "Rule 56(f) provides that if a party opposing a motion for summary judgment shows by affidavit that, for specific reasons, it cannot present facts essential to justify its opposition, then the Court in its discretion may deny the motion or order a continuance."  Gandy Dancer Response at 20.  Gandy Dancer contends that "it should be allowed to conduct additional discovery because there are

26

unresolved factual issues as to whether Gandy Dancer should have known that its work would lead to the complete loss of use of Mercer's property due to flooding or otherwise."  Gandy Dancer Response at 21.  It attaches the Rule 56(f) Affidavit of Robert P. Warburton, filed July 21, 2011 (Doc. 45-5)("Warburton Aff."), in support of its argument and in compliance with rule 56(f).  It also argues that, because New Mexico law requires the Court to look beyond the allegations in the Complaint when evaluating an insurer's duty to defend, Gandy Dancer should be given the opportunity to develop additional facts through discovery that may impact the Court's analysis on the MSJ.  See Gandy Dancer Response at 21.

On July 21, 2011, BNSF Railway filed the BNSF Response.  See Doc. 48.  BNSF Railway first argues that The Hartford is estopped from denying coverage or that it has waived its claim of non-coverage.  See BNSF Response at 1.  BNSF Railway argues that The Hartford is estopped from denying coverage, because it recognized that there was coverage under the policy and because The Hartford's "belated attempt to reserve its rights to contest coverage was not only ineffective, but constitutes prima facie bad faith."  BNSF Response at 8.  It asserts that, under New Mexico law, when an insurance carrier "assumes and conducts the defense of an action brought against the insured . . . without disclaiming liability or giving notice of a reservation of right to deny coverage," the insurance carrier is estopped from later denying coverage, because "the insurer's unconditional defense of an action brought against its insureds constitutes a waiver of the terms of the policy." BNSF Response at 8 (citing Pendleton v. Pan Am. Fire & Cas. Co., 317 F.2d 96, 99 (10th Cir. 1963); Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co., 110 N.M. 741, 745, 799 P.2d 1113, 1117 (1990)).  BNSF Railway argues that, when an insurer unconditionally accepts a defense, the insured is no longer required to show prejudice, "because he is presumed to have been prejudiced by virtue of the insurer's assumption of the defense."  BNSF Response at 8 (citing Pendleton v. Pan Am. Fire

& Cas. Co., 317 F.2d at 99).  It contends that The Hartford has forfeited its ability to assert that the policy does not provide coverage.  BNSF Railway further argues that all of the undisputed facts upon which The Hartford bases its MSJ were known to The Hartford at the time it accepted coverage,  and that The Hartford assumed BNSF Railway's defense "with knowledge of a ground of forfeiture or noncoverage under the policy."  BNSF Response at 9 (citing Pendleton v. Pan Am. Fire & Cas. Co., 317 F.2d at 99).  It asserts that it was prejudiced, because The Hartford's control of the litigation prejudiced BNSF Railway's ability to resolve the litigation at an early stage and forced BNSF Railway to undertake action while The Hartford "delayed its investigation of BNSF's claim for coverage."  BNSF Response at 9.  It represents that, at the time The Hartford accepted its defense, BNSF Railway was attempting to settle the case with Mercer LLC and that The Hartford mandated that BNSF Railway not settle any claims. See BNSF Response at 9.  Consequently, BNSF Railway argues that The Hartford's unreasonable delay in responding and attempting to negotiate a settlement with Mercer LLC has prejudiced BNSF Railway's ability to resolve the case. See BNSF Response at 9-10.

BNSF Railway also asserts that Mercer LLC's damages claims are covered under the Gandy Dancer Policies.  See BNSF Response at 10.  It contends that, under New Mexico law, the duty to defend is separate from, and broader than, the duty to indemnify.  See BNSF Response at 10 (citing Knowles v. United Servs. Auto. Ass'n, 113 N.M. at 704, 832 P.2d at 395).  It argues that the duty to defend arises when a complaint states facts which bring the case within coverage of the policy and that it can be based on the "potential" for coverage.  BNSF Response at 10 (citing Valley Improvement Assoc., Inc. v. U.S. Fid. and Guar. Corp., 129 F.3d 1108, 1116 (10th Cir. 1997); Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co., 110 N.M. at 744, 799 P.2d at 1116; Knowles v. United Servs. Auto. Ass'n, 113 N.M. at 704, 832 P.2d at 395).  BNSF Railway asserts that, an insurer must

"fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity . . . , provided the alleged facts tend to show an occurrence within the coverage," BNSF Response at 10 (quoting Found. Reserve Ins. Co. v. Mullenix, 97 N.M. 618, 620, 642 P.2d 604, 606 (1982))(citing Valley Improvement Assoc., Inc. v. U.S. Fid. and Guar. Corp., 129 F.3d at 1116), and that any doubt regarding the scope of coverage is resolved in favor of the insured, see BNSF Response at 11 (citing Sprintcom, Inc. v. Clarendon Nat'l Ins. Co., No. 06-702, Memorandum Opinion and Order at 10, filed August 2, 2007 (Doc. 90)(Black, C.J.)("Sprintcom MOO"); State Farm  Fire & Cas. Co. v. Ruiz, 36 F.Supp.2d 1308, 1312 (D.N.M. 1999)(Vazquez, J.); Valley Improvement Assoc., Inc. v. U.S. Fid. and Guar. Corp., 129 F.3d at 1116).  BNSF Railway argues that "the mere existence of a purposeful act in relation to an occurrence does not destroy coverage," and that the Court should look to whether BNSF Railway and Gandy Dancer intended to inflict the alleged injuries.  BNSF Response at 11 (citing Lumber Ins. Cos., Inc. v. Allen, 820 F.Supp. 33, 35 (D.N.H. 1993)).  It contends that the Supreme Court of New Mexico has held that an intentional act, negligently performed, does not preclude the "accident" from coverage and that "negligence would be the predicate of any likely liability insured against."  BNSF Response at 12 (citing King v. Travelers Ins. Co., 84 N.M. at 553, 505 P.2d at 1228).  BNSF Railway also points to the Sprintcom MOO, where the Honorable Bruce D. Black, Chief United States District Judge for the District of New Mexico, held that, in New Mexico, "when a complaint is framed in terms of an insured's negligence . . . there is a duty to defend."  BNSF Response at 12 (citing Sprintcom MOO at 15-16).  It argues that Mercer LLC's claims are "primarily based upon BNSF's and Gandy Dancer's alleged negligence and give rise to the duty of defend because they clearly support an 'occurrence.'" BNSF Response at 12.

In reliance on Vihstadt v. Travelers Ins. Co., BNSF Railway asserts that The Hartford

29

incorrectly states that the Court should look only at the underlying act and not at the harm. See BNSF Response at 13. It argues that, in Vihstadt v. Travelers Ins. Co., the Supreme Court of New Mexico "was not only reviewing the underlying action of the insured taking 50 pills, but was looking at the 'natural result' of taking the 50 pills." BNSF Response at 13 (citing Vihstadt v. Travelers Ins. Co., 103 N.M. at 467, 709 P.2d at 189). It contends that, because the flooding was not a foreseen or expected consequence of rehabilitating the diversion system, Mercer LLC's claims meet the Vihstadt v. Travelers Ins. Co. definition of an accident. See BNSF Response at 13-14. BNSF Railway argues that, in Albuquerque Gravel Products Co. v. American Employers Ins. Co., the United States Court of Appeals for the Tenth Circuit determined that the insured "should have known that the said ramp so constructed and maintained by it in said arroyo would prevent the flow of water in said arroyo from following a course down said arroyo . . . but would back up and retard the water." BNSF Response at 14 (quoting Albuquerque Gravel Prods. Co. v. Am. Emp'rs Ins. Co., 282 F.2d at 221). It asserts that Gandy Dancer's work was performed following the destruction of a pre-existing water diversion system and with the purpose of repairing that system. See BNSF Response at 14. BNSF Railway points the Court to Frederick v. Farm Bureau Ins., No. 280629, 2008 Mich. App. LEXIS 2379 (Mich. App. Nov. 25, 2008), and Clarendon National Ins. v. Smead, No. 06-0434, 2007 U.S. Dist. LEXIS 42017 (D. Haw. June 7, 2007), where the Court of Appeals of Michigan and the United States District Court for the District of Hawaii both held that, when the insureds' efforts to landscape to remove water from their land resulted in flooding on adjacent land, the resultant flooding was an "accident" and came within the "occurrence" language of an insurance contract. BNSF Response at 15 (citing Clarendon National Ins. v. Smead, 2007 U.S. Dist. LEXIS 42017, at *21-26; Frederick v. Farm Bureau Ins., 2008 Mich. App. LEXIS 2379, at *8-9). It contends that, even if the Court looks to the underlying act rather than the injury to determine

30

whether the allegations support an occurrence, Mercer LLC's allegations contend that negligent design or planning were the cause of its consequential damages.  See BNSF Response at 17.

BNSF Railway argues that the damages alleged were not expected or intended, such that they would fall within the Gandy Dancer Policies' exclusionary provision.  It asserts that, in Knowles v. United Services Automobile Ass'n, the Supreme Court of New Mexico held that, to fall within a similar exclusionary clause, the insured must have some intent beyond the intent necessary to commit the act.  See BNSF Response at 18 (citing Knowles v. United Services Automobile Ass'n, 113 N.M. at 705, 832 P.2d at 396).  It contends that other New Mexico cases and cases from other states also demonstrate that the focus should be on the harm caused.  See BNSF Response at 19 (citing Lyons v. State Farm Fire & Cas. Co., 811 N.E.2d 718, 727 (Ill. Ct. App. 2004); Computer Corner, Inc. v. Fireman's Fund Ins. Co., 132 N.M. 264, 46 P.3d 1264 (Ct. App. 2002); Turner v. Burch, 401 N.W.2d 355 (Mich. Ct. App. 1986)).  BNSF Railway argues that the relevant inquiry is not whether it intended to rehabilitate the components of the diversion system, but whether BNSF Railway intended the same harm that Mercer LLC has alleged.  See BNSF Response at 20.  It asserts that, had the Supreme Court of New Mexico intended the focus of this inquiry to be on the underlying act, then it would have adopted the approach that it rejected, and that, in rejecting the underlying-act approach, the Supreme Court of New Mexico chose to focus on whether the harm was intended.  See BNSF Response at 20 (citing Knowles v. United Services Automobile Ass'n, 113 N.M. at 706, 832 P.2d at 397).  BNSF Railway argues that The Hartford's expansive reading of this exclusion provision would preclude coverage of almost every property damage, because the underlying act is almost always intended.  See BNSF Response at 21.  BNSF Railway further asserts that the exclusion set forth in j(5) does not apply, because the majority of the alleged property damage was not on the real property where the work took place.  See BNSF Response at 21.  It

represents that Mercer LLC has alleged that Gandy Dancer's work "rendered 60 acres of [Mercer LLC's] property worthless," and that Mercer LLC has alleged that it sustained damages as a result of an alleged negligent misrepresentation, a "discharge" of water on to its property, and loss of its water rights.  BNSF Response at 21 (citing Mercer State Counterclaim ¶ 25, at 7; Mercer 2nd Am. State Counterclaim ¶¶ 9, 12, at 3-4).  BNSF Railway argues that Mercer LLC is "plainly seeking consequential damages for loss of use of real and other property <u>other</u> than the real property on which Gandy Dancer performed its work, and therefore is seeking damage which are not excluded by section j(5) of the policy."  BNSF Response at 21 (emphasis original).  It asserts that The Hartford's contention that, "to the extent a contractor's work can be said to be the cause of the damage to property, it is excluded," misstates both the plain terms of the exclusion and the holding of the case which it cites, <u>Advantage Homebuilding, LLC v. Maryland Casualty, Co.</u>  BNSF Response at 22.  It argues that The Hartford fails to mention that the exclusion refers to "that particular part of real property" and that the Tenth Circuit held that "the exclusion applies only to damage from ongoing work, and not damage after completion."  BNSF Response at 22 (citing <u>Advantage Homebuilding, LLC v. M.D. Cas., Co.</u>, 470 F.3d at 1011).

Finally, BNSF Railway argues that the Gandy Dancer Policies' coverage for personal and advertising injury provides coverage, because it is not dependent on there being an "occurrence," and is not subject to the "expected or intended" exclusion.  BNSF Response at 22.  BNSF Railway asserts that this provision covers "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."  BNSF Response at 23 (citing 06-07 Gandy Dancer Policy at 15).  It contends that courts in other states have held that this provision establishes coverage for claims of trespass or nuisance.  <u>See</u> BNSF Response at 23 (citing <u>Scottish Guar. Ins.</u>

32

Co. v. Dwyer, 19 F.3d 307, 311-12 (7th Cir. 1994); Blackhawk-Central City Sanitation Dist. v. Am.

Guar. & Liab. Ins. Co., 856 F.Supp. 584 (D. Colo. 1994); Kitsap Cnty. v. Allstate Ins. Co., 136

Wash.2d 567, 964 P.2d 1173 (1998)).  BNSF Railway argues that, in Knowles v. United Servs.

Auto. Ass'n, the Supreme Court of New Mexico held that a "wrongful eviction" provision

established coverage for an insured after the insured interfered with another party's use of an

easement, and found that "wrongful eviction" is construed broadly and cannot exclude "intended

or expected" acts.  BNSF Response at 24 (citing Knowles v. United Servs. Auto. Ass'n, 113 N.M.

at 708, 832 P.2d at 399).  It asserts that, because Mercer LLC alleges that BNSF Railway trespassed

on its property, Mercer LLC's claims are covered under the personal and advertising provision.

See BNSF Railway at 24.

On July 21, 2011, BNSF Railway filed its Discovery Motion.  See Doc. 47.  BNSF Railway

moves the Court, pursuant to rule 56(f), to defer ruling on the MSJ and to allow BNSF Railway to

conduct discovery into facts essential to its opposition to the MSJ.  See Discovery Motion at 1.  It

argues that, to the extent the Court believes that there is not enough evidence to show that Mercer

LLC's claims are within the scope of the policy, BNSF Railway "urges the Court to stay a decision

on this Motion and allow BNSF to conduct discovery on this very topic because the Motion seeks

summary judgment on very subjective and fact-intensive issues that are not yet ripe for decision."

Discovery Motion at 4.  BNSF Railway argues that The Hartford has failed to demonstrate, or make

any showing, that BNSF Railway or Gandy Dancer intended to construct the berm poorly or use a

faulty design in repairing the water diversion system.  See Discovery Motion at 4.  Additionally,

BNSF Railway asserts that The Hartford is estoped from denying coverage, because The Hartford

accepted BNSF Railway's tender for a defense, and also contends that BNSF Railway is entitled to

conduct discovery to establish this defense.  See Discovery Motion at 5.  BNSF Railway further

asserts that The Hartford has failed to provide its initial disclosures to BNSF Railway. See Discovery Motion at 5. It contends that summary judgment is premature because there are

> unresolved fact issues as to (1) whether Gandy Dancer and/or BNSF expected or intended that the reconstruction project would lead to the flooding of [Mercer LLC's] property, (2) whether Gandy Dancer and/or BNSF expected or intended that the project would deprive [Mercer LLC] of the use of [its] property, (3) whether the alleged damages and loss of use alleged by [Mercer LLC] were expected or intended, and (4) whether BNSF's alleged negligent misrepresentation was an accident.

Discovery Motion at 5.  BNSF Railway argues that, because Mercer LLC has also failed to submit its initial disclosures, BNSF Railway has been hindered in its ability to effectively conduct the discovery necessary to establish coverage and The Hartford's bad faith.  See Discovery Motion at 5-6.  It also asserts that discovery is necessary to explore facts concerning whether The Hartford has provided coverage in similar cases, to discover internal communications regarding The Hartford's original acceptance of BNSF Railway's claim, to explore evidence of settlement negotiations between Mercer LLC and The Hartford, and to discover other facts relevant to coverage issues. See Discovery Motion at 6.  It contends that, while there has been substantial discovery in the underlying action, there has been no discovery for the purpose of establishing coverage under the policy.  See Discovery Motion at 6.

On September 2, 2011, The Hartford filed The Hartford Fire Insurance Company's Reply in Support of Motion for Summary Judgment Declaring That the Terms of the Policy Issued to Gandy Dancer Do Not Provide Coverage for Roy D. Mercer, LLC's Claims Against BNSF and Gandy Dancer.  See Doc. 52 ("Reply").  In its Reply, The Hartford opposes BNSF Railway's and Gandy Dancer's requests for a deferred ruling on the MSJ under rule 56(f).  See Reply at 1.  It asserts that there are no genuine issues of material fact, that the alleged harm was expected or intended, and that the underlying acts do not constitute occurrences under the Gandy Dancer

34

Policies.  See Reply at 2.

The Hartford argues that, because BNSF Railway and Gandy Dancer expected or intended to construct the water diversion project, Mercer LLC's requested damages fall within the "expected or intended" exclusion, and are not covered.  Reply at 1.  It contends that Knowles v. United Services Automobile Ass'n is "directly on point," and "dispositive of both this issue and the entire motion."  Reply at 2.  It asserts that there is no duty to defend when the insured causes harm that "was of the same general type as that expected or intended by [the insured]."  Reply at 2 (quoting Knowles v. United Servs. Auto. Ass'n, 113 N.M. at 707, 832 P.2d at 398).  The Hartford asserts that, in Knowles v. United Servs. Auto. Ass'n, the Supreme Court of New Mexico held that the "expected or intended" clause excluded from coverage the act of installing a fence, which blocked a neighbor's access to his land, because of the insured's "obvious intent to limit access to the road -- even though the insured might not have intended his actions to be tortious."  Reply at 2 (citing Knowles v. United Servs. Auto. Ass'n, 113 N.M. at 705, 832 P.2d at 396)  It argues that Mechenbier's deposition "puts to rest any supposed factual dispute 'as to whether Gandy Dancer [and BNSF] actually intended to cause harm of the same general type alleged by Mercer.'"  Reply at 3 (alteration original)(citing Gandy Dancer Response at 15).  The Hartford points the Court to Mechenbier's deposition in which he states:

> Q:  With respect to the work, as you understand it, was that Gandy Dancer's apparent objective?
>
> A:  I -- I would say yes.
>
> Q:  And as far as you understood, the railroad's apparent objective?
>
> A:  I would -- yes.
>
> Q:  To the extent that was Gandy Dancer's objective, did it appear to be successful?  And I understand, I'm not -- I understand you're making a claim

35

> for damages, but to the extent that it was sending water through that course down under the trestle to the river, does it appear to have been successful?
>
> A:    It looks like it will work.

Reply at 3 (citing Mechenbier Depo. at 26:24-27:13). The Hartford argues: "Surely Defendants do not argue, in the face of this testimony as well as the clear goals of their water diversion work, that they did not expect or intend to accomplish the construction that is the basis of this suit." Reply at 3. It asserts that the pleadings make clear that Mercer LLC's claims flow from the Defendants' construction of the drainage project and that there is no question that the Defendants intended to construct that project, although they believed that they had a legal right to do so. See Reply at 3. The Hartford notes that the defendants in Knowles v. United Services Automobile Ass'n believed that he had a legal right to erect the gate, but that fact did not change the Supreme Court of New Mexico's coverage determination. See Reply at 3-4 (citing Knowles v. United Servs. Auto. Ass'n, 113 N.M. at 705, 832 P.2d at 396). The Hartford asserts that, because the exclusion clause "unambiguously excludes coverage," it is entitled to summary judgment.

The Hartford also argues that the water-diversion-system construction was not an "occurrence." Reply at 4. It asserts that the Gandy Dancer Policies do not cover the alleged harm resulting from the water diversion project, "because it was not an occurrence -- because it was not an accident." Reply at 4. The Hartford contends that the Supreme Court of New Mexico has "conclusively" defined the insurance term "accident," and that it "expresses the thought of an event occurring without design or purpose, or unintentionally, on the part of the assured." Reply at 4-5 (citing Vihstadt v. Travelers Ins. Co., 103 N.M. at 466, 709 P.2d at 188). It asserts that the Defendants are attempting to revive an argument that Vihstadt v. Travelers Ins. Co. laid to rest -- "that there is some sort of distinction between an accidental means and an accidental result." Reply

at 5. It states that the Supreme Court of New Mexico has held that, "if there was no accident in the means, there was none in the result, for the two are inseparable." Reply at 5 (quoting Vihstadt v. Travelers Ins. Co., 103 N.M. at 467, 709 P.2d at 189). The Hartford argues that the results here were not accidental, because they were the natural, if unintended, result. See Reply at 5 (citing Mechenbier Depo. at 26:24-27:13). It asserts that the cases that the Defendants cite are inapplicable, because they are from different jurisdictions and because, here, the Supreme Court of New Mexico has spoken. See Reply at 6. The Hartford contends that cases deeming construction activities to have been occurrences do so based on further damage that the construction caused, and not based on the construction itself. See Reply at 6. It argues that Mercer LLC seeks damages "for the construction itself and not for any resultant property damage flowing from allegedly negligent workmanship, such as flooding or water leaking through the various dikes." Reply at 6 (emphasis original). It asserts that, "whether or not, as Defendants assert, Mercer fears that flood damage might result some time in the future, he cannot possibly sue for property damage that has not yet occurred." Reply at 7 (citing Mechenbier Depo. at 28:13-17). The Hartford further asserts that, because the rule is "nearly axiomatic" that commercial general liability policies do not cover damages because of poor workmanship, King v. Travelers Ins. Co., Frederick v. Farm Bureau Ins., and Clarendon National Ins. Co. v. Snead do not apply, and that the Gandy Dancer Policies do not cover the Defendants. Reply at 7 (citing Adair Grp., Inc. v. St. Paul Fire & Marine Ins. Co., 477 F.3d 1186, 1187-88 (10th Cir. 2007)).

The Hartford also argues that Mercer LLC's claims are not covered under the personal and advertising injury provision, because that provision "only applies to landlord/tenant disputes." Reply at 7. It asserts that the provision extends to a wrongful eviction, wrongful entry, or invasion of the right of private occupancy that was undertaken on behalf of the owner, landlord, or lessor.

37

See Reply at 7.  It contends that the policies' plain language does not cover the Defendants' alleged trespass.  See Reply at 7 (citing Gonzales v. Allstate Ins. Co., 122 N.M. 137, 921 P.2d 944 (1996)).  The Hartford asserts that Mercer LLC is the owner of the land, and that the intrusion was not on Mercer LLC's behalf, but in defiance of Mercer LLC's rights.  See Reply at 7.  It argues that the Tenth Circuit has applied New Mexico law to an identical provision only where an action was taken, by a landlord, against the tenant's occupancy rights.  See Reply at 8 (citing Chimera Inv. Co. v. State Farm Fire & Cas. Co., 268 F.App'x 793, 797 (10th Cir. 2008)(unpublished); Winters v. Transamerica Ins. Co., 1999 U.S. App. LEXIS 21632, at *10 (10th Cir. Sept. 9, 1999)(unpublished)).  It contends that the "cases the Defendants cite in support of their argument that a trespass might trigger coverage under this part are inapplicable because not a single one dealt with the same clause as is present here."  Reply at 8.  It notes that the five out-of-state cases all held that trespass of pollutants -- not people or construction machinery -- onto neighboring land might have been covered under the policies as wrongful entry.  See Reply at 8.  It argues that none of those policies contained the policy language present here: "owner, landlord, or lessor."  Reply at 8.  The Hartford also asserts that the expected or intended injury exclusion applies to personal and advertising coverage.  See Reply at 9.  It states that the Defendants mischaracterize the expected-or-intended-injury exclusion as applying only to property damage, when the provision's plain language also mentions "bodily injury."  Reply at 9.  The Hartford argues that, viewed as a whole, "the policies make clear that property damage is not covered when it results from acts the insured expected or intended to cause the resulting harm, and Defendants' attempt to re-characterize the property damage as personal injuries cannot avoid the unambiguous exclusion."  Reply at 9 (citing Lopez v. N.M. Pub. Sch. Ins. Auth., 117 N.M. 207, 209, 870 P.2d 745, 747 (1994)).

    With respect to exclusion j(5), The Hartford first reiterates that "Mercer cannot claim

38

property damage due to flood events that have not yet occurred and might never happen," and then argues that the exclusion applies to the work "that is <u>actually</u> the basis of Mercer's claims: moving soil, building berms, and constructing water diversion improvements."  Reply at 10 (emphasis original).  The Hartford asserts that the exclusion is not limited to land that the Defendants physically touched, "when, as here, their work was meant to affect larger pieces of land that entirely encompasses Mercer's 60-acre plot."  Reply at 10.  It argues that the Defendants ask the Court to infer that damage has occurred to the property other than the portions on which they worked, which is "not true," and that, even if it were, the "particular part" of the real property upon which the Defendants performed work encompasses Mercer LLC's property as a whole.  Reply at 10.  The Hartford contends that the water diversion system was meant to effect the entire property and that exclusion j(5) precludes coverage.  <u>See</u> Reply at 10 (citing <u>William Crawford Inc. v. Travelers Ins. Co.</u>, 838 F.Supp. 157 (S.D.N.Y. 1993); <u>Utility Maint. Contractors, Inc. v. W. Am. Ins. Co.</u>, 19 Kan.App.2d 229, 866 P.2d 1093 (Kan.Ct.App. 1994)).

The Hartford also asserts that it has not waived any of its policy defenses.  The Hartford argues that it made a proper reservation of rights, because the Oct. 2, 2007 Kieffer Email, which BNSF Railway asserts was "unconditional," was, "in fact, conditioned upon all of the defenses Hartford Fire has raised in this motion."  Reply at 11-12.  It contends that the phrase "subject to the terms and conditions of our policy" was intended to reserve its rights under the Gandy Dancer Policies.  Reply at 12 (citing BNSF Response at 5).  The Hartford argues that BNSF Railway has not been presumptively prejudiced, because The Hartford reserved its rights from the minute it took up the defense.  <u>See</u> Reply at 12.  Furthermore, it asserts that BNSF Railway has not shown that it suffered any prejudice.  It argues that bases for prejudice include: "withdrawal from the defense of the action . . . resulting in inadequate time to prepare a defense; lack of reasonable opportunity to

negotiate a settlement because of the ready status of the case; and lack of reasonable opportunity to gather and preserve evidence and to institute certain pretrial procedures." Reply at 13 (quoting Bd. of Cnty. Comm'rs v. Guar. Ins. Co., 90 F.R.D. 405, 409-10 (D.Colo. 1981). The Hartford asserts that its reminder of BNSF Railway's contractual obligation not to settle without The Hartford's permission did not prejudice BNSF Railway. See Reply at 13. The Hartford contends that "the fact that Hartford Fire did not immediately write a check to Mercer upon BNSF's demand that it do so, without the time to investigate further, has not prejudiced BNSF because the policies do not cover the underlying claim." Reply at 14.

With respect to the Defendants' arguments under rule 56(f), The Hartford asserts that it is "in the Defendants' interests to delay this action as long as possible, thus keeping Hartford Fire paying for the defense in the underlying claims." Reply at 14. It argues that this matter is ripe for decision. The Hartford represents that, at the rule 26(f) conference, the parties agreed to wait to make initial disclosures and that "it is misplaced for BNSF to claim that 'Hartford has completely bypassed the procedural dictates of providing information to BNSF by failing to provide initial disclosures.'" Reply at 14 (quoting Discovery Motion at 5). The Hartford asserts that it understood that the parties had informally agreed not to go to the time and expense of discovery, because the Court's ruling on the MSJ could end the case. See Reply at 15 (citing Warburton Aff. ¶ 4, at 1). It contends that the Court's MOO also reflects the understanding, because the Court noted that "The Hartford does not require discovery to resolve its duty to defend." Reply at 15 (citing MOO at 18). Furthermore, The Hartford argues that "bad faith" is not before the Court on this motion and that BNSF Railway should not be able to delay the Court's decision to conduct discovery on its counterclaims. Reply at 15. It asserts that no "insurer would ever be able to obtain a meaningful declaratory judgment if all the insured had to do to resist summary judgment was argue bad faith"

40

and further asserts that summary judgment would dispose of BNSF Railway's counterclaims.  Reply at 15.

On January 31, 2012, the Court held a hearing.  The Hartford noted that the underlying state action in this matter is set for trial in June 2012.  See Transcript of Hearing at 3:15-17 (January 31, 2012)(Schwarz)("Tr.").[10]  It argued that the issue before the Court is a simple one: Whether the construction of a water diversion system constitutes an occurrence under the commercial general liability policy which The Hartford issued and, if it does, whether such construction fits within the contours of the expected or intended exclusion under the Gandy Dancer Policies.  See Tr. at 3:18-24 (Schwarz).  The Hartford then discussed the underlying litigation's background facts.  See Tr. at 3:25-5:17 (Schwarz).  It argued that the Gandy Dancer Policies cover only property damage or bodily injuries that an "occurrence" causes and that the policies define an "occurrence" as an accident.  Tr. at 5:19-23 (Schwarz).  The Hartford asserted that Gandy Dancer's conduct, building of berms and reconstruction of the water diversion systems, was not accidental under the case law cited in the briefs and does not satisfy a common-sense understanding of what it means to be accidental.  See Tr. at 6:9-19 (Schwarz).  It contended that, if a term is not defined in the policy and the term is not ambiguous, the Court is to give that term its ordinary meaning.  See Tr. at 6:19-21 (Schwarz).  It argued that there is nothing more intentional than constructing improvements to real property.  See Tr. at 6:21-23 (Schwarz).  The Hartford further asserted that, even if the Court determines that coverage is triggered, the activity of which Mercer LLC complains -- the construction -- falls within the expected or intended exclusion.  See Tr. at 7:8-14 (Schwarz).  It asked that the Court rely on Knowles v. United Services Automobile Ass'n, and stated that, there,

---

[10]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

the Supreme Court of New Mexico "put to bed" and rejected arguments that coverage exists when

the conduct is intentional, but the results are not.  Tr. at 7:14-8:5 (Schwarz).  The Hartford argued

that the Defendants accomplished what they set out to do -- constructing improvements to divert the

water.  See Tr. at 8:5-7 (Schwarz).  With respect to exclusion j(5), The Hartford contended that

Mercer LLC's pleadings allege that Gandy Dancer excavated soil through the construction process

that created another water diversion channel on Mercer LLC's property.  See Tr. at 8:8-19

(Schwarz).  It asserted that, because these damages stem from the construction work, exclusion j(5)

precludes coverage. See Tr. at 8:18-19 (Schwarz).  The Hartford also pointed to Mechenbier's fears,

expressed in his deposition, that the Mercer LLC property will be flooded in the future and that,

because there is no existing damage, these allegations do not entitle the Defendants to coverage.

See Tr. at 9:1-11 (Schwarz).

The Court asked whether The Hartford believes that the Gandy Dancer Policies are

unambiguous.  See Tr. at 16-17 (Court).  The Hartford agreed and stated that a Mark V hearing[11] on

the Gandy Dancer policies were unnecessary because there is no factual issue to discuss.  See Tr.

at 9:18-24 (Court, Schwarz).  It represented that BNSF Railway will likely argue that the Oct. 2,

2007 Kieffer Email constitutes a waiver, but asserted that a Mark V hearing is not necessary on the

waiver issue.  See Tr. at 9:24-10:6 (Schwarz).  The Hartford contended that the gap in time between

the Oct. 2, 2007 Kieffer Email, which acknowledged a duty to defend subject to the materials and

conditions of the policy, and the Kieffer Letter, which included a more comprehensive reservation

of rights letter, did not prejudice the Defendants, because the gap was approximately one-month.

---

[11]According to the Supreme Court of New Mexico in Mark V. Inc. v. Mellekas, 114 N.M.
728, 845 P.3d 1232 (1993), a district court may take extrinsic evidence to determine whether a
contract is ambiguous.  See 114 N.M. at 781-82, 845 P.3d at 1235-36.

See Tr. at 10:21-11:4 (Schwarz).  The Court then asked why Mercer LLC's allegations that Mechenbier cannot run cattle would not present damages, putting aside the issue of liability, and whether he would have to see the cattle washed away before he can claim a loss.  See Tr. at 11:9-17 (Court).  The Hartford asserted that its position is that there has not been a flood, so there is no reason that Mechenbier cannot put cattle out, other than his subjective belief that it would be dangerous.  See Tr. at 11:18-22 (Schwarz).  It stated that its argument was not concerned with what constitutes property damage, and that, even assuming there is property damage, there is no occurrence.  See Tr. at 11:22-12:3 (Schwarz).

The Court then asked BNSF Railway whether The Hartford had "teed up" the ultimate issue in the case: whether what Gandy Dancer and BNSF Railway did constitutes an occurrence under the Gandy Dancer Policies.  Tr. at 12:17-24 (Court).  BNSF Railway responded that it believes that there are several different issues, but that whether there was an occurrence is one.  See Tr. at 12:25-3 (Fields).  BNSF Railway also asserted that additional discovery was necessary and that there are issues concerning what conduct is intentional.  See Tr. at 13:1-4 (Fields).  It argued that, under Knowles v. United Services Automobile Ass'n and Albuquerque Gravel Products Co. v. American Employers Ins. Co., the Court looks at the case from the point-of-view of a distant third party to determine whether there is a reasonable expectation that the actions taken will lead to the consequential damages alleged.  See Tr. at 13:4-16 (Fields).  BNSF Railway noted that the Supreme Court of New Mexico "glossed over" specific intent in Knowles v. United Services Automobile Ass'n.  Tr. at 13:18-22 (Fields).  BNSF Railway argued that, in that case, the plaintiff blocked a road, and there was no question that his actions would prevent access by the other party -- no question that his actions would result in this harm.  See Tr. at 13:22-14:4 (Fields).  It asserted that, in this case, there is a question about what the harm is and argued that no harm was intended.

43

See Tr. at 14:5-11 (Fields).  Returning to the Court's question, BNSF Railway agreed that, ultimately, the Court will need to turn to whether there was an occurrence, but contended that the Court will also need to make an objective determination about the harm involved.  See Tr. at 14:12-19 (Fields).  The Court asked what was to be gained from further discovery when: (i) at some point, it will have to determine whether there was an occurrence; and (ii) on summary judgment, the Court has to take all facts in the non-moving party's favor.  See Tr. at 14:20-15:7 (Court).  BNSF Railway did not dispute either of the Court's two points.  See Tr. at 15:8 (Fields).

BNSF Railway pointed the Court to page 6 of the Reply, where The Hartford recites that Mercer LLC seeks damages such as "diminution of value of the property, due to the very existence of the construction; yet, not as a result of any defect of construction" and that "[w]hether or not, as Defendants assert, Mercer fears that flood damage might result some time in the future, he cannot possible sue for property damage that has not yet occurred."  Tr. at 16:6-16 (Court, Fields).  The Court asked, if it assumes that Mercer can sue for the loss of that property, whether it had assumed away the facts that BNSF Railway would need discovery on.  See Tr. at 16:19-23 (Court).  BNSF Railway asserted that the Court's duty in a coverage case is to confine its examination to the allegations of the complaint and that Mercer LLC has specifically alleged that the Defendants diversion system channeled run-off water onto its property.  See Tr. at 17:19-25 (Fields).  It argued that Mercer LLC alleges that the Defendants damaged property above and beyond where the berm was.  See Tr. at 18:1-7 (Fields).  It asserted that the discovery BNSF Railway needs are proposed interrogatories and requests for production that address issues regarding The Hartford's original decision to accept the defense.  See Tr. at 18:17-22 (Fields).  BNSF Railway contended that The Hartford may have conducted some investigation that would trigger coverage.  See Tr. at 19:18-22 (Fields).  The Court then stated that BNSF Railway is unlikely to obtain communications between

44

coverage counsel and The Hartford.  See Tr. at 20:21-23 (Court).  BNSF Railway responded that production would depend on what the adjuster in the situation says, because usually the adjuster is making his or her own determination about the policy coverage.  See Tr. at 20:24-21:7 (Fields).  It argued that the Kieffer Letter recognizes, for the first time, that the Oct. 2, 2007 Kieffer Email did not make a reservation of rights.  See Tr. at 23:18-24:1 (Fields).  BNSF Railway further asserts that, when The Hartford issued its reservation of rights, it focused on exclusion j(5) and whether there was an occurrence, but does not mention whether the alleged damage falls within the expected-or-intended exclusion.  See Tr. at 24:2-14 (Fields).  It reiterated that, when The Hartford accepted coverage, it did so without a reservation of rights, and it did so without stating that it has continuing concerns or that it continues to investigate.  See Tr. at 24:15-24 (Fields).  BNSF Railway asserted that The Hartford is "sitting on" its original analysis and that BNSF Railway would like to discover it.  See Tr. at 25:10-13 (Fields).

BNSF Railway argued that, looking at the Mercer 2nd Am. State Counterclaim, Mercer LLC alleges that BNSF Railway and Gandy Dancer diverted storm waters onto Mercer LLC's property and contended that Mercer LLC is complaining about more than the location of the berm construction.  See Tr. at 26:4-16 (Fields).  It asserted that Mercer LLC complains that Gandy Dancer built the berms poorly and incorrectly designed them, which resulted in damage to Mercer LLC's sixty acres of land.  See Tr. at 26:16-21 (Fields).  BNSF Railway asserted that all commercial liability policies exclude from coverage damage to the product itself, but that, in construction cases, if there are consequential damages, then that is an occurrence, the consequential damage was never intended.  See Tr. at 27:5-14 (Fields).  It disputed The Hartford's assertion that Mercer LLC is not seeking any current damages, and argued that the Mercer 2nd Am. State Counterclaim alleges that it is currently suffering and has suffered from the diversion of water onto its property, which is a

45

covered damage.  See Tr. at 27:14-28:2 (Fields).  It argued that the Court's analysis regarding a duty to defend should be based on the allegations in the underlying state complaint.  See Tr. at 28:3-14 (Fields).  With respect to Knowles v. United Services Automobile Ass'n, BNSF Railway asserted that, from an objective basis, it was reasonably foreseeable that blocking a road would lead to a lack of access.  See Tr. at 28:24-25:1 (Fields).  It asserted that this case involves an area where there have historically been flood control diversion systems, which a storm destroyed, and which two governmental entities and Gandy Dancer attempted to restore.  See Tr. at 29:8-19 (Fields).  BNSF Railway argued that the construction benefitted the surrounding landowners and did no more than restore the original water diversion system.  See Tr. at 29:20-30:1 (Fields).  It contended that it could not foresee that rebuilding the existing water diversion system would cause the additional flooding that Mercer LLC alleges damaged its property.  See Tr. at 30:23-31:7 (Fields).  It conceded that it intended to build the berm, but asserted that it did not intend any flooding.  See Tr. at 31:8-19 (Fields).  With respect to its estoppel argument, BNSF Railway made substantially the same arguments as in the BNSF Response.  See Tr. at 32:5-39:7 (Courts, Fields).  It reiterated that it needed further discovery on its estoppel argument and on why the adjuster originally accepted coverage.  See Tr. at 39:8-14 (Fields).

Gandy Dancer directed the Court's attention to two ariel photographs, which it asserted demonstrates that Gandy Dancer restored the historical flow of the Brown Arroyo.  See Tr. at 40:17-42:21 (Warburton).  Gandy Dancer asserted that Mercer LLC is alleging that it lost the use of one-hundred percent of its property around the Brown Arroyo and not just the stretch of land where Gandy Dancer did its work.  See Tr. at 42:22-43:9 (Warburton).  It argued that the Court had to determine: (i) whether there was an occurrence; and (ii) whether the harm was of the "same general type" that Gandy Dancer "intended."  Tr. at 43:10-44:2 (Warburton).  Gandy Dancer stated that its

argument is that, if one looks to what Mercer LLC is alleging -- the loss of use of sixty acres -- that is something that Gandy Dancer never intended and was not a result which it could reasonably have anticipated to flow from the work it did.  <u>See</u> Tr. at 45:8-46:1 (Warburton).  It emphasized that the issue before the Court is whether there is a duty to defend based on the allegations in the underlying complaint.  <u>See</u> Tr. at 46:4-8 (Warburton).  It asserted that the appropriate question is whether any of the claims for damages are arguably covered under the Gandy Dancer Policies.  <u>See</u> Tr. at 46:13-15 (Warburton).  With respect to exclusion j(5), Gandy Dancer argued that the exclusion applies only to the property on which it physically performed work and to damage that occurs while operations are ongoing.  <u>See</u> Tr. at 46:15-47:8 (Warburton).  Gandy Dancer also pointed the Court to <u>Greystone Construction, Inc. v. National Fire & Marine Ins. Co.</u>, 661 F.3d 1272 (10th Cir. 2011) -- a defective construction case.  <u>See</u> Tr. at 47:15-48:2 (Warburton).  It represented that the Tenth Circuit found that, if the insurance company was correct and defective construction can never be covered, then exclusion j(5) would be superfluous.  <u>See</u> Tr. at 49:5-16 (Warburton).  It asserted that the Tenth Circuit held that, where there are allegations of defective construction and resulting damage to property other than the actual work done, there can be an occurrence.  <u>See</u> Tr. at 49:17-50:2 (Warburton).

Gandy Dancer also pointed to the Court's previous MOO, where the Court noted that The Hartford represented that the Court would not have to look beyond the four corners of the insurance contract and underlying complaint to decide the duty-to-defend issue.  <u>See</u> Tr. at 50:16-24 (Warburton).  It argued that New Mexico is not an "eight-corner" state, and that the Court must conduct a reasonable investigation and look at other facts.  Tr. at 51:5-12 (Warburton).  It asserted that, because the Court should look beyond the contract and complaint, discovery was necessary to focus on what damages would not fall within the exclusion provisions.  <u>See</u> Tr. at 51:12-52:1

47

(Warburton).  Gandy Dancer represented that it was not present for Mechenbier's deposition and was not able to ask questions that might frame the duty to defend more clearly.  See Tr. at 52:8-15 (Warburton).  For the proposition that the Court should look beyond the contract and complaint, Gandy Dancer directed the Court to G & G Services, Inc. v. Agora Syndicate, Inc., 128 N.M. 434, 993 P.2d 751 (Ct. App. 2000).  See Tr. at 52:16-53:1 (Warburton).  It also argued that, regardless of The Hartford's assertions that the damages resulting from the physical construction of the berm are not covered or are excluded, Mercer LLC has asserted that Gandy Dancer trespassed on its property.  See Tr. at 53:13-54:4 (Warburton).  Gandy Dancer contended that those claims fall under a different policy provision -- the personal-and-advertising-injury provision.  See Tr. at 54:4-14 (Warburton).  It argued that the personal-and-advertising-injury provision is not limited to landlord/tenant relationships, and noted that BNSF Railway had an easement onto Mercer LLC's property.  See Tr. at 54:25-55:6 (Warburton).  Gandy Dancer asserted that coverage under that provision is not limited to whether there was an occurrence and that The Hartford does not adequately explain why the underlying complaint does not state a claim within this provision of coverage.  See Tr. at 55:12-56:9 (Warburton).

The Court asked Gandy Dancer whether it was taking the position that the contract is ambiguous.  See Tr. at 56:22-23 (Court).  Gandy Dancer responded that, at a minimum, certain parts of the contract are ambiguous, and that the personal-and-advertising-injury portion are subject to more than one construction.  See Tr. at 56:24-57:5 (Warburton).  It also asserted that the word "occurrence" is ambiguous and that there are disputed issues of fact, whether there was any intent to cause harm of this nature.  Tr. at 57:8-58:11 (Warburton).  Gandy Dancer argued that the expected-or-intended exclusion is not an intentional acts exclusion, but an intentional injury exclusion.  See Tr. at 58:12-2 (Warburton).  It reiterated that there are disputed issues of fact

48

whether there was any intent to cause harm given the nature of the diversion system.  See Tr. at 59:3-11 (Warburton).

The Hartford asserted that Gandy Dancer's analogy, under the personal-and-advertising-injury provision, fails, because, under these circumstances, BNSF Railway would be the landlord and Gandy Dancer would be the tenant, and Gandy Dancer is not making claims against BNSF Railway.  See Tr. at 60:12-20 (Schwarz).  The Hartford argued that Chimera Inv. Co. v. State Farm Fire & Cas. Co. and Winters v. Transamerica Ins. Co., two Tenth Circuit cases, indicate that there is no coverage under the personal-and-advertising-injury provision in these circumstances, because that provision is limited to landlord/tenant cases.  See Tr. at 60:21-61:3 (Schwarz).  It asserted that Greystone Construction, Inc. v. National Fire & Marine Ins. Co. suggests that there is no occurrence here.  See Tr. at 61:4-15 (Schwarz).  With respect to BNSF Railway's estoppel argument, The Hartford asserted that the more formal reservation-of-rights letter was sent to BNSF Railway approximately seven months before BNSF Railway sued Mercer LLC and approximately eight months before Mercer filed its counterclaim.  See Tr. at 62:8-15 (Schwarz).  It contended that the reservation of rights did not prejudice BNSF Railway.  See Tr. at 62:19 (Schwarz).  The Court stated that the Honorable Timothy M. Tymkovich, United States Court of Appeals Judge, seemed rather definite that property damage which results from poor workmanship will trigger a duty to defend and had a broad definition of an occurrence.  See Tr. at 62:22-63:7 (Court).  The Hartford responded that Judge Tymkovich does not cite any New Mexico case law.  See Tr. at 63:8-14 (Schwarz).  The Court then asked whether The Hartford believed that the Supreme Court of New Mexico would be willing to go at least as far, in its interpretation of the word "occurrence," as the Tenth Circuit's interpretation of Colorado law.  Tr. at 63:8-19 (Court).  The Hartford argued that this case is beyond a duty to defend, which is broader than the duty to indemnify, and stated that what it seeks is a

49

decision on its ultimate liability under the policy.  See Tr. at 63:20-25 (Schwarz).  The Hartford reiterated that this case does not address resultant damages, but the fear of resultant damages. See Tr. at 64:20-65:2 (Schwarz).  It asserted that this case is beyond comparing the complaint and the facts known to be true to the terms of the policy; rather, The Hartford argued that it has created a summary judgment record and that the material facts are not in dispute.  See Tr. at 65:3-9 (Schwarz).  The Hartford pointed the Court to Mechenbier's deposition, where he states that he is afraid of losing cattle in a storm, and contended that there is no current damage to the property resulting from the construction.  See Tr. at 65:10-66:6 (Schwarz).

With respect to exclusion j(5), The Hartford asserted that the construction work that was performed affected the entire property and was designed to affect the entire property.  See Tr. at 66:16-22 (Schwarz).  It asserted that Gandy Dancer concedes that its work affected the entire property by enabling the run-off from the Brown Arroyo to flow through the water diversion system. See Tr. at 67:1-5 (Schwarz).  The Court then asked whether it concerned The Hartford that the Court may look at certain disputed facts in the light most favorable to the Defendants.  See Tr. at 67:11-18 (Court).  The Hartford responded that it is unconcerned, because, even if the Court assumes certain facts, under New Mexico law there was no occurrence, and that the alleged harm falls within the expected or intended exclusion.  See Tr. at 67:19-68:7 (Schwarz).  The Hartford conceded that the Court should take the four corners of the underlying complaint and compare it with the four corners of the insurance contract along with well-established facts known to the insurance carrier, but asked that the Court go beyond the duty to defend and decide the ultimate coverage issue.  See Tr. at 68:20-69:7 (Schwarz).  In response to the Court's question regarding discovery, The Hartford asserted that BNSF Railway's proposed discovery is geared towards its counterclaims and that, if the Court determines that there is no coverage, then there is no reason to begin discovery regarding

50

bad faith. <u>See</u> Tr. at 69:24-70:23 (Court, Schwarz). The Court asked whether the adjustor's analysis would be useful information to establish an ambiguity, if he interpreted the meaning of "occurrence" in the same way as Gandy Dancer and BNSF Railway. Tr. at 70:24-71:9 (Court). The Hartford responded that, whether an ambiguity exists is a question of law, and that, even if the term is ambiguous, the Court would construe that term against the insurance company. <u>See</u> Tr. at 71:10-24 (Schwarz). It stated that assessing the adjustor's thought processes is more relevant to claims handling than the meaning of the contract. <u>See</u> Tr. at 72:6-22 (Schwarz).

BNSF Railway argued that the adjustor's analysis would reveal an ambiguity and his investigation may contain other facts that would influence the coverage decision. <u>See</u> Tr. at 73:2-18 (Fields). It asserted that the Tenth Circuit, in <u>Greystone Construction, Inc. v. National Fire & Marine Ins. Co.</u>, determined that consequential damages can constitute an occurrence and that, in the underlying complaint, Mercer LLC alleges that BNSF Railway negligently constructed the water diversion system. <u>See</u> Tr. at 73:19-74:20 (Fields). BNSF Railway contended that, if the Court needs to make findings regarding the facts in the underlying case, the Court should permit the Defendants to first conduct discovery. <u>See</u> Tr. at 76:12-3 (Fields). BNSF Railway argued that the parties fundamentally disagree about the underlying case and that it would be problematic for the Court to decide that there is no coverage, because Mercer LLC is not damaged, only to have the state court determine that Mercer LLC is damaged. <u>See</u> Tr. at 77:4-21 (Fields). It asserted that the Court should decided the duty to defend based on the four corners of the complaint and insurance contract, and that the Defendants could bring in outside facts to establish coverage, but that The Hartford cannot rely on outside facts to deny coverage. <u>See</u> Tr. at 77:21-78:2 (Fields). BNSF Railway contended that it was entitled to a defense so long as there are allegations which support coverage in the underlying complaint. <u>See</u> Tr. at 78:25-79:8 (Fields).

### LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. See Abercrombie v. City of

Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th

Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing

party may not rest on the allegations contained in his complaint, but must respond with specific facts

showing the existence of a genuine factual issue to be tried.'" (citation omitted)).  Nor can a party

"avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific

facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D.

Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452

F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party

cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary

judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer,

2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid

summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby,

Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the factfinder could

reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251

(quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v.

Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely

colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson

v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact,

considering the record as a whole, could not find for the non-moving party, there is no genuine issue

for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  See Hunt v. Cromartie, 526 U.S. at 550-55; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Third, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## LAW REGARDING RULE 56(d)

Rule 56(d) of the Federal Rules of Civil Procedure states:

**(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

> **(1)** defer considering the motion or deny it;

> **(2)** allow time to obtain affidavits or declarations or to take discovery; or

> **(3)** issue any other appropriate order.

Fed. R. Civ. P. 56(d).[12]  The Tenth Circuit reviews a district court's denial of a rule 56(d) motion for abuse of discretion.  See Committee for First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992).  "A prerequisite to granting relief . . . is an affidavit furnished by the nonmovant."  Committee for First Amendment v. Campbell, 962 F.2d at 1522 (citing Pasternak v. Lear Petroleum

---

[12] "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."  Fed. R. Civ. P. 56 advisory committee notes (2010 amendments).

Exploration, Inc., 790 F.2d 828, 832 (10th Cir. 1986)).  "Unless dilatory or lacking in merit," a

party's 56(d) application "should be liberally treated."  Jensen v. Redevelopment Agency of Sandy

City, 998 F.2d 1550, 1553-54 (10th Cir. 1993)(internal quotation marks and citations omitted).  "The

general principle of Rule 56(f) is that summary judgment should be refused where the nonmoving

party has not had the opportunity to discover information that is essential to his opposition."  Price

v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000)(internal quotation marks omitted).  "Rule 56(f)

does not require, however, that summary judgment not be entered until discovery is complete."

Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., Nos. 02-1146, 03-1185, 2007 WL 2461629,

at *3 (D.N.M. June 5, 2007)(Browning, J.)(citing Price v. W. Res., Inc., 232 F.3d 779, 784 (10th Cir.

2000)).

To invoke the shelter that rule 56(d) provides, a party must (i) file an affidavit, see Pasternak

v. Lear Petroleum Exploration Inc., 790 F.2d at 832-33; (ii) identify the probable facts not available,

their relevance, and what steps have been taken to obtain those facts, see Comm. for the First

Amendment v. Campbell, 962 F.2d at 1522; (iii) explain why facts precluding summary judgment

cannot be presented, see Comm. for the First Amendment v. Campbell, 962 F.2d at 1522; and (iv)

state with specificity how the desired time would enable the nonmoving party to meet its burden in

opposing summary judgment, see Comm. for the First Amendment v. Campbell, 962 F.2d at 1522.

"Rule 56([d]) may not be invoked based solely upon the assertion that discovery is incomplete or

that the specific facts necessary to oppose summary judgment are unavailable."  Schaefer v. Antill,

No. 06-0460, 2007 WL 709046, at *9 (D.N.M. Jan. 31, 2007)(Browning, J.).  "Rule 56([d]) is not

a license for a fishing expedition."  Lewis v. Ft. Collins, 903 F.2d 752, 759 (10th Cir. 1990).

**RELEVANT NEW MEXICO LAW REGARDING CONTRACT INTERPRETATION**

"Generally, the goal of contract interpretation is to ascertain the intentions of the contracting

55

parties." <u>Gallegos v. Pueblo of Tesuque</u>, 132 N.M. 207, 218, 46 P.3d 668, 679 (2002)(quoting

<u>Ponder v. State Farm Mut. Auto. Ins. Co.</u>, 129 N.M. 698, 702, 12 P.3d 960, 964 (2000)(internal

quotation marks omitted); <u>Strata Prod. Co. v. Mercury Exploration Co.</u>, 121 N.M. 622, 630, 916

P.2d 822, 830 (1996)).  "The court's duty is confined to interpreting the contract that the parties

made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement

for the parties." <u>Gallegos v. Pueblo of Tesuque</u>, 132 N.M. at 218-19, 46 P.3d at 679-80 (quoting

<u>Ponder v. State Farm Mut. Auto. Ins. Co.</u>, 129 N.M. at 702, 12 P.3d at 964; <u>CC Housing Corp. v.</u>

<u>Ryder Truck Rental, Inc.</u>, 106 N.M. 577, 579, 746 P.2d 1109, 1111 (1987)).  "Absent ambiguity,

provisions of a contract need only be applied, rather than construed or interpreted." <u>Richardson v.</u>

<u>Farmers Ins. Co. of Am.</u>, 112 N.M. 73, 74, 811 P.2d 571, 572 (1991)(citing <u>McKinney v. Davis</u>, 84

N.M. 352, 503 P.2d 332 (1972)).

       In New Mexico, a court may consider extrinsic evidence to determine "whether the meaning

of a term or expression contained in the agreement is actually unclear." <u>Mark V, Inc. v. Mellekas</u>,

114 N.M. at 781, 845 P.2d at 1235 ("New Mexico law, then, allows the court to consider extrinsic

evidence to make a preliminary finding on the question of ambiguity.").  In <u>Mark V, Inc. v.</u>

<u>Mellekas</u>, the Supreme Court of New Mexico summarized the law in New Mexico concerning the

interpretation of "ambiguous or unclear language in written agreements:"

          An ambiguity exists in an agreement when the parties' expressions of mutual
       assent lack clarity. <u>C.R. Anthony[v. Loretto Mall Partners]</u>, 112 N.M. [504,] 509 n.
       2, 817 P.2d [817,] 243 n. 2 [(1991)].  The question whether an agreement contains
       an ambiguity is a matter of law to be decided by the trial court. <u>Levenson v. Mobley</u>,
       106 N.M. 399, 401, 744 P.2d 174, 176 (1987).  The court may consider collateral
       evidence of the circumstances surrounding the execution of the agreement in
       determining whether the language of the agreement is unclear. <u>C.R. Anthony</u>, 112
       N.M. at 508-09, 817 P.2d at 242-43.  If the evidence presented is so plain that no
       reasonable person could hold any way but one, then the court may interpret the
       meaning as a matter of law. <u>Id.</u> at 510, 817 P.2d at 244. If the court determines that
       the contract is reasonably and fairly susceptible of different constructions, an

ambiguity exists. <u>Vickers v. North Am. Land Dev., Inc.</u>, 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). At that point, if the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder, <u>C.R. Anthony</u>, 112 N.M. at 510, 817 P.2d at 244.

Once the agreement is found to be ambiguous, the meaning to be assigned the unclear terms is a question of fact. <u>Segura v. Molycorp, Inc.</u>, 97 N.M. 13, 18, 636 P.2d 284, 289 (1981). However, in the event the parties do not offer evidence of the facts and circumstances surrounding execution of the agreement and leading to conflicting interpretations as to its meaning, the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation. <u>C.R. Anthony</u>, 112 N.M. at 510 n.5, 817 P.2d at 244 n.5. The factual issues, if any, presented by an ambiguity must be resolved by the jury (or by the judge as fact finder in the case of a bench trial) with the benefit of a full evidentiary hearing prior to deciding breach and damages. <u>Id.</u> at 510, 817 P.2d at 244. In order to determine the meaning of the ambiguous terms, the fact finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent. <u>American Bank of Commerce v. M & G Builders, Ltd.</u>, 92 N.M. 250, 252, 586 P.2d 1079, 1081 (1978). Evidence may be presented to the fact finder to aid in the interpretation of the agreement, but no evidence should be received when its purpose or effect is to contradict or vary the agreement's terms. <u>Maine v. Garvin</u>, 76 N.M. 546, 550-51, 417 P.2d 40, 43 (1966); <u>see</u> <u>also</u> <u>C.R. Anthony</u>, 112 N.M. at 509, 817 P.2d at 243.

114 N.M. at 781-82, 845 P.2d at 1235-36.

As this Court stated in <u>Great American Insurance Co. of New York v. W. States Fire Protection Co.</u>, 730 F. Supp. 2d 1308 (D.N.M. 2009)(Browning, J.):

In <u>Mark V, Inc. v. Mellekas</u>, the Supreme Court of New Mexico summarized the circumstances under which it is appropriate for a district court to construe a contract as a matter of law, and when a district court should find that a contract is ambiguous and leave construction of the contract to a jury. According to the Supreme Court of New Mexico in <u>Mark V, Inc. v. Mellekas</u>, a district court may take extrinsic evidence to determine whether a contract is ambiguous, and "if the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law. If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists." <u>Id.</u>, 845 P.2d at 1235 (citations omitted).

730 F. Supp. 2d at 1314 n.1.

57

The obligation of an insurer is a question of contract law and will be determined by reference to the terms of the insurance policy. See Safeco Ins. Co. of Am., Inc. v. McKenna, 90 N.M. at 520, 565 P.2d at 1037. The clauses must be construed as intended to be a complete and harmonious instrument. See Erwin v. United Benefit Life Ins. Co., 70 N.M. 138, 381 P.2d 791 (1962). Exclusionary clauses in insurance policies are to be narrowly construed, with the insured's reasonable expectations providing the basis for the analysis. See King v. Travelers Ins. Co., 84 N.M. at 556, 505 P.2d at 1232.

## NEW MEXICO LAW REGARDING THE DUTY TO DEFEND AND THE DUTY TO INDEMNIFY

The "duty to indemnify is distinct from [the] duty to defend," and resolution whether a party has a duty to defend does not "necessarily depend on there being a duty to indemnify." City of Albuquerque v. BPLW Architects & Eng'rs, Inc., 146 N.M. 717, 726, 213 P.3d 1146, 1155 (Ct. App. 2009)(citing Ins. Co. of N. Am. v. Wylie Corp., 105 N.M. 406, 409, 733 P.2d 854, 857 (1987)). In disputes stemming from insurance contracts, the "duty to defend arises out of the nature of the allegations in the complaint," Miller v. Triad Adoption & Counseling Servs., Inc., 133 N.M. 544, 548, 65 P.3d 1099, 1103 (Ct. App. 2003), and is determined "by comparing the factual allegations in the complaint with the insurance policy," Lopez v. N.M. Pub. Sch. Ins. Auth., 117 N.M. at 209, 870 P.2d at 747. If a complaint "states facts that bring the case within the coverage of the policy," then the duty to defend will be triggered. Bernalillo Cnty. Deputy Sheriffs Ass'n v. Cnty. of Bernalillo, 114 N.M. 695, 697, 845 P.2d 789, 791 (1992). Generally, an insurer's "duty to defend arises out of a potentially covered claim and lasts until the conclusion of the underlying lawsuit, or until it has been shown that there is no potential for coverage," and, when there are multiple causes of action, "the duty continues until every covered claim is eliminated." Guest v. Allstate Ins. Co.,

149 N.M. 74, 80, 244 P.3d 342, 348 (2010) (citing S. Plitt et al, Insurer's Duty to Defend: Nature, Commencement, and Termination, 14 Couch on Insurance 3d, § 200:47 (Supp. 2007)).  Known, but unpleaded facts, may bring a claim within the coverage of the policy at the beginning of the litigation or at a later stage.  See Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co., 110 N.M. at 744, 799 P.2d at 1116.  "If the allegations of the complaint or the alleged facts tend to show that an occurrence comes within the coverage of the policy, the insurer has a duty to defend regardless of the ultimate liability of the insured."  Miller v. Triad Adoption & Counseling Servs., Inc., 133 N.M. at 548, 65 P.3d at 1103.  With respect to the duty to indemnify, New Mexico courts have held that "[i]f the allegations of the federal complaint clearly fall outside the provisions of [the] liability insurance policies, indemnity by the insurer is not required."  N.M. Physicians Mut. Liability Co. v. LaMure, 116 N.M. 92, 95, 860 P.2d 734, 737 (1993).  A court will "leave[] for later" determination whether the insurer must indemnify the insured, because that "ultimate determination is based on whether the insurer became legally obligated to pay damages because of a bodily injury or property damage that does, in fact, fall under the policy coverage."  12 Couch on Insurance § 172:2 (Supp. 2011)).  The Tenth Circuit has held that the "duty to indemnify relates to liability actually imposed on the insured for claims falling within the scope of coverage."  Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC, 451 F.App'x 745, 2011 WL 6095102, at *3 (10th Cir. Dec. 08, 2011)(unpublished)(addressing duty to indemnify in Oklahoma and applying Tenth Circuit case law from Colorado)(citing United Fire & Cas. Co. v. Boulder Plaza Residential, LLC, 633 F.3d 951, 956-57 (10th Cir. 2011)).  See Valley Imp. Ass'n v. U.S. Fid. & Guar. Corp., 129 F.3d at 1126 (finding that, under New Mexico law, a judgment regarding the duty to indemnify would be "premature," because "the duty to indemnify must be determined based on the facts as ultimately determined in the litigation against the insured").

59

## ANALYSIS

The Court finds that Mercer LLC's allegations of property damages and negligent misrepresentation do not give rise to coverage under the insurance policies. The Court concludes, however, that Mercer LLC's allegations of trespass and nuisance trigger coverage, and that a determination of the ultimate duties under the policies is premature. The Court finds that additional discovery is unnecessary to decide the MSJ.

## I.    THE GANDY DANCER POLICIES COVER ONLY MERCER LLC'S ALLEGED DAMAGES FOR TRESPASS AND NUISANCE.

The Hartford asserts that, in the underlying state actions, Mercer LLC alleges that BNSF Railway directed Gandy Dancer to reconstruct a water diversion project on Mercer LLC's land and that "the renovations themselves damaged its property." MSJ Memo at 2 (emphasis original). It argues that the Gandy Dancer Policies do not cover the claimed damages sought, because they were not caused "by an 'occurrence,'" as the policies define that term. MSJ Memo at 2. The Hartford also contends that two coverage exclusions apply to exclude the damages from coverage: (i) the work performed on Mercer LLC's property was "expected or intended" by BNSF Railway; and (ii) the alleged property damage is to real property on which Gandy Dancer conducted operations at BNSF Railway's direction. MSJ Memo at 2.

Gandy Dancer argues that The Hartford mischaracterizes the "property damage" that forms the basis of Mercer LLC's claims against Gandy Dancer as consisting solely of the construction of the water diversion system. Gandy Dancer Response at 10. It asserts that Mechenbier clarified, in his deposition, that "he is alleging that he has been damaged by permanently losing the use of Mercer's 60 acre tract for farming and/or grazing, and not just the use of property that the dikes and ditches occupy." Gandy Dancer Response at 10 (citing Mechenbier Depo. at 17:19-18:2; id. at

141:22-142:16).  It contends that Mercer LLC's alleged loss was not "the natural result of Gandy Dancer's work and certainly was not expected or the result of some willful design," and that "the unexpected, unforeseen happening that brought about the alleged property damage is Mercer's unsupported and irrational fear that flooding of the same magnitude . . . will suddenly become commonplace."  Gandy Dancer Response at 12-13.  Gandy Dancer also argues that Mercer LLC's claims do not fall "completely within exclusion J(5)," because, "[b]y its plain terms, the exclusion is limited to property damage to the particular part of the real property where operations are being performed."  Gandy Dancer Response at 16.  It asserts that Mercer LLC's claims extend to the entire sixty-acre tract and are not limited to where Gandy Dancer worked.  See Gandy Dancer Response at 17.

BNSF Railway argues that "the mere existence of a purposeful act in relation to an occurrence does not destroy coverage," and that the Court should look to whether BNSF Railway and Gandy Dancer intended to inflict the alleged injuries.  BNSF Response at 11 (citing Lumber Ins. Cos., Inc. v. Allen, 820 F.Supp. 33, 35 (D.N.H. 1993)).  It contends that the Supreme Court of New Mexico has held that an intentional act, negligently performed, does not preclude an "accident" from coverage and that "negligence would be the predicate of any likely liability insured against."  BNSF Response at 12 (citing King v. Travelers Ins. Co., 84 N.M. at 553, 505 P.2d at 1228).  BNSF Railway further asserts that the exclusion set forth in j(5) does not apply, because the majority of the alleged property damage was not on the real property where the work took place.  See BNSF Response at 21.  It represents that Mercer LLC has alleged that Gandy Dancer's work "rendered 60 acres of [Mercer LLC's] property worthless" and that Mercer LLC has alleged that it sustained damages as a result of an alleged negligent misrepresentation, an alleged "discharge" of water on to its property, and an alleged loss of its water rights.  BNSF Response at 21 (citing Mercer State

61

Counterclaim ¶ 25, at 7; Mercer 2nd Am. State Counterclaim ¶¶ 9, 12, at 3-4).

The following facts assist the Court in determining coverage.  At the time Mercer LLC acquired the Brown Arroyo property, a water diversion system went through the property to control flood water flowing down the Brown Arroyo.  See MSJ ¶ 3, at 2.  Around August 2006, after unprecedented rain, BNSF Railway hired Gandy Dancer to reconstruct the diversion system by clearing vegetation, building up the levees, expanding the diversion channel, and constructing piers to control flood waters to minimize the likelihood of additional breaches and flood damage. See MSJ ¶ 5, at 3.  BNSF Railway and Gandy Dancer knew that they were re-constructing the diversion system on the Brown Arroyo property and using dirt and other resources from the Brown Arroyo property.  See MSJ ¶ 6, at 3.

With respect to Mercer LLC's allegations, the Court turns to the Mercer State Complaint, Mercer State Counterclaim, Mercer Am. State Counterclaim, and Mercer 2nd Am. State Counterclaim.  Mercer LLC asserts that BNSF Railway's and Gandy Dancer's work "resulted in the pre-existing 2006 two-foot high berm being turned into a twelve to fifteen foot high channel approximately nine to fifteen foot in width at the top of the levy with a base of approximately thirty feet."  Mercer State Counterclaim ¶ 6, at 5.  It alleges that all the materials used to build the "levy" were harvested from Mercer LLC's property, which "created a diversion channel on Mercer's property approximately fifty to one hundred yards in width from the North to South boundaries of Mercer's property."  Mercer State Counterclaim ¶ 7, at 5.  It asserts that the water diversion project diverts the Brown Arroyo, at the base of the railroad track on BNSF Railway's property, south onto Mercer LLC's property.  See Mercer State Counterclaim ¶ 18, at 7-8.  It further asserts that BNSF Railway changed the "natural flow of flood water and redirected the flood water directly onto Mercer's property."  Mercer State Counterclaim ¶ 19, at 8.  Mercer LLC alleges that the construction

62

of the diversion channel has rendered sixty acres of Mercer LLC's property worthless.  See Mercer State Counterclaim ¶ 25, at 9.  It asserts several causes of action against BNSF Railway and Gandy Dancer: (i) trespass; (ii) negligence; (iii) negligent misrepresentation; (iv) misrepresentation; (v) nuisance; (vi) unjust enrichment; and (vii) prima facie tort.  See Mercer State Counterclaim ¶¶ 27, 41, 49, 55, 59, 71, at 9, 11, 13, 14, 16, 17.  In the Mercer Am. State Counterclaim, Mercer LLC incorporated by reference the allegations of the Mercer State Counterclaim, and added: (i) a request for declaratory judgment that there was no easement; and (ii) a claim for modification of the easement by estoppel.  See Mercer Am. State Counterclaim ¶¶ 21-22, 31, at 4, 6.  The Mercer 2nd Am. State Counterclaim also incorporates the allegations of the Mercer Am. State Counterclaim and asserts a count of negligence per se, unfair trade practice, inverse condemnation, deprivation of property value, abandonment, and modification of easement.  See Mercer 2nd Am. State Counterclaim at 1-12.  Mercer LLC adds that "BNSF did eliminate railroad bridges and/or trusses to the west of the Brown Arroyo, which carried the run-off water and/or storm waters to the Rio Grande River, and did wrongfully and without authority to do so, did divert and channel the run-off waters and/or storm waters into Mercer's property."  Mercer 2nd Am. State Counterclaim ¶ 6, at 3. It asserts that the water diversion system was constructed without the proper design, plans, permits, or review of the Brown Arroyo's flow, which devalued Mercer LLC's water rights.  See Mercer 2nd Am. State Counterclaim ¶¶ 7-8, at 3.  In the Mercer State Complaint, Mercer LLC alleges that Gandy Dancer altered the water control structures on and near the Brown Arroyo property, which caused water to flow onto the property.  See Mercer State Complaint ¶ 9, at 2.  It asserts that these alterations "have caused and will cause" flood waters to cross the property, damaging any crops that it may plant, and preventing Mercer LLC from using the property.  Mercer State Complaint ¶¶ 10-11, at 2.  Mercer LLC alleges that Gandy Dancer breached duties of care owed to it when it "altered

water control structures that allowed and caused flood waters to be diverted onto the Property." Mercer State Complaint ¶ 14, at 2-3.  It also alleges that Gandy Dancer "knew or should have known" that its actions would harm Mercer LLC.  Mercer State Complaint ¶ 15, at 3.

## A.   THE ALLEGED PROPERTY DAMAGES WERE NOT AN OCCURRENCE AND ARE NOT COVERED.

The Gandy Dancer Policies provide, in section 1(b)(1), that The Hartford will cover only "bodily injury" and "property damage" that an "occurrence" causes.  06-07 Gandy Dancer Policy at 2.  Under the policies, an "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  06-07 Gandy Dancer Policy at 5. The Supreme Court of New Mexico has held that, where the term "accident" is not defined in the policy, the term must be interpreted in its usual, ordinary, and popular sense.  O'Rourke v. New Amsterdam Cas. Co., 68 N.M. 409, 412, 362 P.2d 790, 792 (1961)(citing M. Schnoll & Son, Inc. v. Standard Acc. Ins. Co., 190 Pa. Super. 360, 154 A.2d 431 (Pa. Super 1959)).  In O'Rourke v. New Amsterdam Cas. Co., the Supreme Court of New Mexico gave several possible definitions of "accident": (i) "happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected"; (ii) "an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event"; (iii) "an unlooked for mishap, or an untoward event which is not expected or designed."  O'Rourke v. New Amsterdam Cas. Co., 68 N.M. at 412, 362 P.2d at 792 (citations omitted).  Couch on Insurance suggests that the most "sound" way to view an "accident" is to "place the focus on the insured," and that "where the harm is the natural result of the voluntary and intentional acts of the insured, it is not 'caused by accident,'" even though the result may have been unexpected, unforeseen, and unintended.  9 Couch on Insurance § 126:27.

The Court finds that the alleged damages to Mercer LLC's property were not "accidental"

and thus cannot qualify as an occurrence.  Mercer LLC alleges that BNSF Railway and Gandy Dancer enlarged the water diversion system and altered the flow of the water, diverting the water onto Mercer LLC's property.  Under Knowles v. United Services Automobile Association, these allegations related to property damage are not covered.  There, the Supreme Court of New Mexico, interpreting an "expected or intended" exclusion clause, held: "While appellant may not have intended or expected to cause any harm to Montoya, he desired to limit access to the road."  113 N.M. at 707, 832 P.2d at 398.[13]  Whether something is expected or intended, however, is also part of the definition of accident.  See New Oxford American Dictionary 9 (defining an accident as "an unfortunate incident that happens unexpectedly or unintentionally," or "an event that happens by chance without apparent or deliberate cause").  Accordingly, similar to Knowles v. United Services Automobile Association, Gandy Dancer and BNSF Railway may not have expected to flood Mercer LLC's property, but they intended to divert the water from the Brown Arroyo.  The allegations are that Mercer LLC deposited the diverted water directly on Mercer LLC's property.  See Mercer State Counterclaim ¶ 19, at 8.  Accordingly, the allegations are that Gandy Dancer and BNSF Railway designed the water diversion system to divert water on Mercer LLC's property.  See King v. Travelers Ins. Co., 84 N.M. at 553, 505 P.2d at 1229 ("If accident and negligence be not opposites, accident and design are.").  It is undisputed that Gandy Dancer and BNSF Railway intended to deposit the water diverted away from the railroad trestle, and Mercer LLC's allegations, which the Court looks to when determining the duty to defend, see  Miller v. Triad Adoption & Counseling

_____

[13]The Court finds the Supreme Court of New Mexico's discussion of Knowles v. United Services Automobile Association useful, even though that case dealt with the expected-or-intended exclusion.  Although the Court's analysis for these allegations focuses on whether there is coverage, because the definition of "accident" includes whether a result is expected or intended, the Court believes that Knowles v. United Services Automobile Association helps inform the Court's decision on the coverage issue.

Servs., Inc., 133 N.M. at 548, 65 P.3d at 1103, assert that the water diversion system directs the water to its property.

This case is not one where some part of the water diversion system is alleged to be defective, the flooding is not alleged to derive from a leak or ineffective drainage.  Those kinds of allegations would fall within the breadth of an "accident" or "occurrence."  King v. Travelers Ins. Co., 84 N.M. at 553, 505 P.2d at 1229 ("[I]t is clear to us from the stipulated facts that the loss suffered by Appellants was loss caused by accidental discharge and leakage of water from within a plumbing system.").  At the hearing, BNSF Railway analogized the allegations in this case to when a roof fails and water from the leaky roof damages a piano, asserting that the case law holds that such damages will be an occurrence.  See Tr. at 26:15-27:22 (Fields).  Here, however, there is not an allegation that the berm or system broke, or was defective; the allegation is that the system, which Gandy Dancer and BNSF Railway designed, deposited the water on Mercer LLC's land.  Continuing with the piano analogy, it would be as if a roofer designed the roof with a spout pouring water onto the piano.  In Vihstadt v. Travelers Ins. Co., the Supreme Court of New Mexico, looking to property damage cases for the definition of an accident, determined that an individual's ingestion of fifty aspirin was not an "unlooked for mishap or an untoward event which was not expected or designed."  103 N.M. at 467, 709 P.2d at 189.  The Supreme Court of New Mexico continued, rejecting "the distinction between accidental means and accidental results," and reaffirming its earlier holding that "[t]here was an accident throughout, or there was no accident at all."  Vihstadt v. Travelers Ins. Co.,  103 N.M. at 467, 709 P.2d at 189.  Similarly, this diversion is not an "untoward event," because Gandy Dancer reconstructed the water diversion system, and Mercer LLC alleges no more than that the water went where Gandy Dancer and BNSF Railway directed it.

The portions of the Mechenbier deposition to which Gandy Dancer cites do not persuade the

66

Court that this conclusion is incorrect.  Gandy Dancer asserts that Mechenbier admitted that "the water diversion works that Gandy Dancer re-built in 2006 were designed to divert flood waters in the Brown Arroyo [in] the same southerly direction as had historically been the case."  Gandy Dancer Response at 11.  While Mechenbier agrees that the water flows in the same direction, consistent with Mercer LLC's pleadings, Mechenbier states that the 2006 water course differs from the one established in 1941, because "[n]ow all the water is being held on my piece of property, not running down adjacent to the railroad track."  Mechenbier Depo. at 65:24-66:3, 68:19-25. Furthermore, Mechenbier states that he is suing Gandy Dancer, because "the piece of property was turned into a canal, loss of use of the property, and possible forfeiture of water rights."  Mechenbier Depo. at 17:19-18:2.  In Albuquerque Gravel Products Co. v. American Employers Ins. Co., the Tenth Circuit addressed the meaning of the term "accident" when the insurance company refused to defend an action brought because the insured's negligent construction of a loading ramp diverted the flow of water onto the adjoining premises, "causing the damages complained of."  282 F.2d at 219.  The Tenth Circuit noted that the "gravaman of the state court action was the insured's negligence in constructing and maintaining the loading ramp across the arroyo which retarded and diverted the natural flow of water," and held that, "[i]f the results are the normal consequences of a negligent act, it is not accidental."  Albuquerque Gravel Prods. Co. v. Am. Emp'rs Ins. Co., 282 F.2d at 221.  It held that, "assuming negligence in the construction of the ramp, results of the floods were not accidental."  Albuquerque Gravel Prods. Co. v. Am. Emp'rs Ins. Co., 282 F.2d at 221. Like Albuquerque Gravel Products Co. v. American Employers Ins. Co., Mercer LLC alleges that the construction diverted water onto his property, which caused damages.  Because the result, water damage to the property, was the natural consequence of diverting the water, the Court cannot soundly say that the alleged property damage was an accident.  Moreover, the Court does not believe

67

that the allegations would fit within the common understanding of an accident, because the allegations are that the water diversion system diverts the water onto Mercer LLC's property.

Because the alleged property damages stemming from the water diversion system were not an "occurrence," these allegations of damage do not give rise to coverage under the Gandy Dancer Policies.

**B.   THE ALLEGED NEGLIGENT MISREPRESENTATIONS WERE AN OCCURRENCE UNDER THE GANDY DANCER POLICIES, BUT ARE EXCLUDED UNDER PROVISION j(5).**

The Hartford, in its Reply, did not address BNSF Railway's argument that Mercer LLC's allegations of negligent misrepresentation gave rise to coverage.[14]   BNSF Railway argues that Mercer LLC's negligent misrepresentation claim alleges "property damage" arising from an "occurrence."  BNSF Response at 12.  In relation to its negligent misrepresentation claim, Mercer LLC alleges that it relied on BNSF Railway's repeated representations that BNSF Railway had authority to enter onto the property, and construct the diversion channel and channel system on Mercer LLC's land.  See Mercer State Counterclaim ¶ 50, at 13.  Mercer LLC alleges that it only discovered BNSF Railway's lack of authority after the project was completed and materials from Mercer LLC's property expended, and that it suffered damages.  See  Mercer State Counterclaim ¶¶ 51-52, at 13.   Mercer LLC thus alleges property damages stemming from the negligent misrepresentations.

The Court could not locate any New Mexico state cases discussing whether a negligent

---

[14]Because The Hartford did not address the allegations of negligent misrepresentation in its briefs or argument, the Court does not believe that it has met its initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d at 891.  The Court will, however, address whether these allegations trigger coverage so that it may determine the "ultimate" coverage question, whether there is a duty to defend that could potentially trigger a duty to indemnify.  Tr. at 63:20-25 (Schwarz).

misrepresentation would constitute an "occurrence" or "accident." "Courts have differed over whether negligent misrepresentation can constitute an 'accident' or 'occurrence' under a policy of liability insurance so as to give rise to an insurer's duty to defend or indemnify an insured." H. Brennenstuhl, Annotation, Negligent Misrepresentation as "Accident" or "Occurrence" Warranting Insurance Coverage, 58 A.L.R. 483 (5th ed. 1998). Courts holding that negligent misrepresentation is accidental in nature have considered the tort to be unintentional and have focused on the tortfeasor's lack of intent to cause injury to the relying party. See Brennenstuhl, supra 58 A.L.R. 483, § 2. Other courts have held that the tortfeasor's intent to induce reliance on the representation or the foreseeability of the injury removes the act from the realm of accidental happenings. See Brennenstuhl, supra 58 A.L.R. 483, § 2. Chief Judge Black, in his Sprintcom MOO, held that it was likely that the Supreme Court of New Mexico would "conclude that an alleged negligent misrepresentation qualifies as an 'accident,'" because the Supreme Court of New Mexico has held that "negligent misrepresentation is grounded in negligence rather than an intent to deceive." Sprintcom MOO at 17-18 (citing Golden Cone Concepts, Inc. v. Villa Linda Mall, 113 N.M. 9, 14, 820 P.2d 1323, 1327 (1991)).[15] The Court has noted that to establish a claim for negligent misrepresentation, under New Mexico law, a party must demonstrate: (i) an untrue statement; (ii) made by one who has no reasonable ground for believing the statement was true; (iii) on which the speaker intends the listener to rely; (iv) on which the listener relied; and (v) such reliance caused harm to the listener. See Bhandari v. VHA S.W. Comty. Health Corp., No. 09-0932, 2011 WL

---

[15]Further supporting Chief Judge Black's conclusion, the Supreme Court of New Mexico has held that negligent misrepresentation is not a "lesser included" cause of action for deceit or fraud, Ledbetter v. Webb, 103 N.M. 597, 602, 711 P.2d 874, 879 (1985), and the Court of Appeals of New Mexico has noted that "[p]rinciples of negligence govern the law of negligent misrepresentation," Saylor v. Valles, 133 N.M. 432, 438, 63 P.3d 1152, 1158 (Ct. App. 2002).

1336512, at *16 (D.N.M. Mar. 30, 2011)(Browning, J.).

The Court agrees with Chief Judge Black that the Supreme Court of New Mexico would find that negligent misrepresentation constitutes an accident because it is not based on an "intent to deceive." Golden Cone Concepts, Inc. v. Villa Linda Mall, 113 N.M. at 14, 820 P.2d at 1327. An individual who negligently misrepresents a fact does not mean to speak falsely, such that it may not be obvious to the speaker that their statements are not justified or will cause harm. Accordingly, negligent misrepresentations fit more comfortably within the definition of an accident, because a speaker, while intending to induce reliance, does not expect or intend to misrepresent a fact. BNSF Railway believed the 1936 Easement permitted it to make improvements to and reconstruct the water diversion system. See MSJ ¶ 6, at 3. In the Sprintcom MOO, Chief Judge Black found that there was an occurrence, under the policy, where the insured warranted that it had authority to assign its interest in a lease of a communications tower, even though it had not obtained permission from the Bureau of Land Management to do so. See Sprintcom MOO at 2, 20. Similarly, here, BNSF Railway and Gandy Dancer represented that they had authority to perform work because of the 1936 Easement. These allegations are sufficient to trigger coverage, because an insurer's "duty to defend arises out of a potentially covered claim." Guest v. Allstate Ins. Co., 149 N.M. at 80, 244 P.3d at 348 (emphasis added).

The Court finds, however, that provision j(5) excludes coverage for negligent misrepresentation, because they relate to work on the particular part of the property, which Gandy Dancer and BNSF Railway performed, out of which the property damages arise. See 05-06 Gandy Dancer Policy § j(5), at 4. The Tenth Circuit, in Advantage Homebuilding, LLC v. Maryland Cas. Co., which analyzed an identical exclusion provision, held that "the language of exclusion j(5) unambiguously focuses on when the 'property damage' at issue occurs." 410 F.3d at 1010. The

70

Tenth Circuit further found that "exclusion j(5) applies whenever <u>property damage</u> 'arises out of the work of the insured, its contractors, or its subcontractors while performing operations.'" <u>Advantage Homebuilding, LLC v. Maryland Cas. Co.</u>, 410 F.3d at 1010 (emphasis original).  Here, the construction which Gandy Dancer and BNSF Railway performed <u>is</u> the property damage that Mercer LLC alleges.  BNSF Railway made no arguments regarding the application of exclusion of j(5) to coverage of the negligent misrepresentation allegations.  Because the damages, from the removal of materials and the construction, constitute property damage arising out of the work of the insured and its contractors, the Court finds that provision j(5) excludes these allegations from coverage.

      **C.**    **TRESPASS AND NUISANCE ALLEGATIONS DO NOT GIVE RISE TO COVERAGE AS AN OCCURRENCE, BUT ARE COVERED UNDER THE PERSONAL AND ADVERTISING PROVISION.**

The trespass and nuisance allegations assert that the construction of the diversion channel caused an invasion onto Mercer LLC's lands.  <u>See</u> Mercer State Complaint ¶¶ 31, 61, at 10,15.  Like the property damages, these allegations do not constitute an occurrence, because BNSF Railway and Gandy Dancer intended to enter Mercer LLC's property and intended to construct the water diversion system that Mercer LLC alleges interfered with its use of the property.  BNSF Railway's and Gandy Dancer's actions in this regard cannot be fairly termed an "accident."

BNSF Railway and Gandy Dancer also argue that the trespass and nuisance allegations could give rise to coverage under the personal-and-advertising-injury provision.  That provision establishes coverage for "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord, or lessor."  05-06 Gandy Dancer Policy § 17, at 1.  BNSF Railway contends that courts in other states have held that this provision establishes coverage for claims of trespass or nuisance.  <u>See</u> BNSF Response at 23 (citing <u>Scottish Guar. Ins. Co. v. Dwyer</u>, 19 F.3d at 311-12;

Blackhawk-Central City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co., 856 F.Supp. 584; Kitsap Cnty. v. Allstate Ins. Co., 136 Wash.2d 567, 964 P.2d 1173).  It argues that, in Knowles v. United Services Automobile Ass'n, the Supreme Court of New Mexico held that a "wrongful eviction" provision established coverage for an insured after the insured interfered with another party's use of an easement, and found that "wrongful eviction" is construed broadly and cannot exclude "intended or expected."  BNSF Response at 24 (citing Knowles v. United Servs. Auto. Ass'n, 113 N.M. at 708, 832 P.2d at 399).  The Hartford contends that the personal-and-advertising-injury provision does not cover Mercer LLC's claims, because that provision "only applies to landlord/tenant disputes."  Reply at 7.  It asserts that the provision extends to a wrongful eviction, wrongful entry, or invasion of the right of private occupancy that was undertaken on behalf of the owner, landlord, or lessor.  See Reply at 7.  It contends that the policies' plain language does not cover the Defendants' alleged trespass.  See Reply at 7 (citing Gonzales v. Allstate Ins. Co., 122 N.M. 137, 921 P.2d 944).  The Hartford asserts that Mercer LLC is the owner of the land, and that the intrusion was not on Mercer LLC's behalf, but in defiance of Mercer LLC's rights.  See Reply at 7.  The Hartford asserted that Gandy Dancer's analogy, under the personal and advertising injury provision, fails, because, under these circumstances, BNSF Railway would be the landlord and Gandy Dancer would be the tenant, and Gandy Dancer is not making claims against BNSF Railway. See Tr. at 60:12-20 (Schwarz).

The Hartford asserts that the personal-and-advertising-injury provision for wrongful eviction, wrongful entry, or invasion of right to privacy applies only to landlord/tenant relationships.  The language of the exclusion, however, provides that it covers actions "committed by or on behalf of its owner, landlord, or lessor," and appears to go beyond a simple landlord/tenant scenario.  05-06 Gandy Dancer Policy § 17, at 1.  Here, BNSF Railway argues that it had an easement in the Brown

Arroyo, which is an ownership interest. See Centerpoint Energy Houston Elec. LLC v. Harris Cnty. Toll Road Auth., 436 F.3d 541, 543 n.3 (5th Cir. 2006)("The general rule is altered where the utility required to relocate holds an ownership interest, such as an easement in the property from which the utility services were relocated."(emphasis added)). Accordingly, BNSF Railway is an owner, and Gandy Dancer acted on its behalf. In Valley Improvement Ass'n, Inc. v. U.S. Fidelity & Guaranty Corp., the Tenth Circuit, in a case arising under New Mexico law, held that averments of trespass could constitute "wrongful entry on the property of another" and thus invoke coverage under a personal-injury provision. 129 F.3d at 1117. Other courts have also held that a provision establishing coverage for wrongful eviction or wrongful entry requires an insurer to provide a defense against claims of trespass and nuisance. See Scottish Guar. Ins. Co. v. Dwyer, 19 F.3d at 311-12 (holding that allegations of "negligent trespass to property constitute a 'wrongful entry'"); Blackhawk-Central City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co., 856 F.Supp. at 590 ("I conclude that a person of ordinary intelligence would have understood the term 'wrongful entry' in the personal injury coverage to include the trespass and nuisance claims alleged in the Old Timer complaint."). The Gandy Dancer Policies do not limit coverage to landlord/tenant relationships, because the policies' plain language permits coverage for damages arising from an owner's actions or actions taken on the owner's behalf. BNSF Railway asserts that it has an ownership interest, and, in its MSJ, The Hartford concedes that BNSF Railway and Gandy Dancer contend that they had the legal right and authority to construct the water diversion system on the Brown Arroyo property. See MSJ ¶ 6, at 3. There is no language in the personal-and-advertising provision that would exclude coverage under these circumstances, and the duty to defend arises when the complaint is arguably within the scope of coverage. See G & G Servs., Inc. v. Agora Syndicate, Inc., 128 N.M. at 440, 993 P.2d at 757. Accordingly, the Court finds that the trespass and nuisance allegations give rise to

coverage under the Gandy Dancer Policies' personal-and-advertising provision.

The Court finds that the Supreme Court of New Mexico would not apply the expected-or-intended exclusion to prevent coverage in these circumstances. The circumstances of this case substantially mirror the facts of <u>Knowles v. United Services Automobile Ass'n</u>, where an individual, believing he had a legal right to do so, erected a fence that interfered with another's easement. <u>See</u> 113 N.M. at 705, 832 P.2d at 396. The Supreme Court of New Mexico found that Knowles' actions fell within the expected-or-intended exclusion, because "the harm alleged in the Montoya complaint was of the same general type as that expected or intended by [Knowles]." 113 N.M. at 707, 832 P.2d at 398. Ultimately, however, the Supreme Court of New Mexico held that the expected-or-intended exclusion was "repugnant to the clause offering coverage for wrongful eviction," and that it was "ineffective to preclude coverage" in that case. <u>Knowles v. United Servs. Auto. Ass'n</u>, 113 N.M. at 708, 832 P.2d at 399. The Court believes that the same reasoning is applicable here, because, if the expected or intended exclusion applies, then the offered coverage for wrongful eviction or wrongful entry is meaningless, as the insurer will never be required to cover such damages.

Accordingly, Mercer LLC's trespass and nuisance allegations trigger a duty to defend.[16] Because these allegations arguably give rise to coverage under the policies, the Court will grant in part and deny in part the MSJ. The Court will grant the MSJ in part and finds that the allegations of property damage and negligent misrepresentation are not covered under the Gandy Dancer Policies. The Court will deny the MSJ with respect to the allegations of trespass and nuisance.

---

[16]Because the Court finds that some of Mercer LLC's allegations trigger the duty to defend, the Court need not address BNSF Railway's argument that The Hartford is estopped from denying coverage.

**E.    THE COURT WILL NOT, AT THIS TIME, DETERMINE WHETHER THERE IS A DUTY TO INDEMNIFY, BECAUSE SUCH A DECISION WOULD BE PREMATURE.**

With respect to the duty to indemnify, New Mexico courts have held that, "[i]f the allegations of the federal complaint clearly fall outside the provisions of [the] liability insurance policies, indemnity by the insurer is not required."  N.M. Physicians Mut. Liability Co. v. LaMure, 116 N.M. at 95, 860 P.2d at 737.  A court will "leave[] for later" determination whether the insurer must indemnify the insured, because that "ultimate determination is based on whether the insurer became legally obligated to pay damages because of a bodily injury or property damage that does, in fact, fall under the policy coverage."  12 Couch on Insurance § 172:2.  The Tenth Circuit has held that the "duty to indemnify relates to liability actually imposed on the insured for claims falling within the scope of coverage."  Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC, 2011 WL 6095102, at *3.  See Valley Imp. Ass'n v. U.S. Fid. & Guar. Corp., 129 F.3d at 1126 (finding that, under New Mexico law, a judgment regarding the duty to indemnify would be "premature," because "the duty to indemnify must be determined based on the facts as ultimately determined in the litigation against the insured").  Because the Court has determined that some of the allegations in the underlying action trigger a duty to defend, The Hartford may also have a duty to indemnify BNSF Railway and Gandy Dancer.  Accordingly, it is premature to reach the decision on The Hartford's ultimate liability under the policy, which it seeks.  See Tr. at 63:20-25 (Schwarz).  The Court will deny the MSJ insofar as it seeks a determination whether The Hartford will be liable on any of the asserted claims.

## II.     THE COURT WILL DENY THE RULE 56(d) DISCOVERY MOTION.[17]

"The general principle of Rule 56([d]) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition."  Price v. W. Res., Inc., 232 F.3d at 783 (internal quotation marks omitted).  "Rule 56([d]) does not require, however, that summary judgment not be entered until discovery is complete."  Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., 2007 WL 2461629, at *3 (citing Price v. W. Res., Inc., 232 F.3d at 784).  To invoke the shelter that rule 56(d) provides, a party must (i) file an affidavit, see Pasternak v. Lear Petroleum Exploration Inc., 790 F.2d at 832-33; (ii) identify the probable facts not available, their relevance, and what steps have been taken to obtain those facts, see Comm. for the First Amendment v. Campbell, 962 F.2d at 1522; (iii) explain why facts precluding summary judgment cannot be presented, see Comm. for the First Amendment v. Campbell, 962 F.2d at 1522; and (iv) state with specificity how the desired time would enable the nonmoving party to meet its burden in opposing summary judgment, see Comm. for the First Amendment v. Campbell, 962 F.2d at 1522.  "Rule 56([d]) may not be invoked based solely upon the assertion that discovery is incomplete or that the specific facts necessary to oppose summary judgment are unavailable."  Schaefer v. Antill, No., 2007 WL 709046, at *9 (citations omitted). "Rule 56([d]) is not a license for a fishing expedition."  Lewis v. Ft. Collins, 903 F.2d at 759.

BNSF Railway asserts that discovery is necessary to establish: (i) whether Gandy Dancer and/or BNSF Railway expected or intended that the reconstruction project would lead to the flooding of Mercer LLC's property; (ii) whether Gandy Dancer and/or BNSF Railway expected or

---

[17]Although the Discovery Motion argues that the Court should permit discovery under rule 56(f), the Federal Rules of Civil Procedure have been amended, and the relief that BNSF Railway and Gandy Dancer seek is now available under rule 56(d).

intended that the project would deprive Mercer LLC of the use of its property; (iii) whether the alleged damages and loss of use were expected or intended; and (iv) whether BNSF Railway's negligent misrepresentation was an accident.  See Discovery Motion at 5.  It also argues that discovery is necessary to decide BNSF Railway's counterclaims and The Hartford's ultimate duty with respect to the Gandy Dancer Policies.  The Court does not believe that discovery is necessary to decide the MSJ, because the "duty to defend arises out of the nature of the allegations in the complaint," Miller v. Triad Adoption & Counseling Servs., Inc., 133 N.M. at 548, 65 P.3d at 1103, and is determined "by comparing the factual allegations in the complaint with the insurance policy," Lopez v. N.M. Pub. Sch. Ins. Auth., 117 N.M. at 209, 870 P.2d at 747.  Because the Court looks only to the insurance policies and the underlying allegations, no discovery is necessary to determine whether there is a duty to defend.  Looking only at the Gandy Dancer Polices, underlying allegations, and the Mechenbier deposition that Gandy Dancer submitted, the Court is able to determine that no duty to defend was triggered with respect to the allegations of property damage and negligent misrepresentation.  Because the Court confined its examination to those documents, no additional discovery would have altered the Court's findings.  Furthermore, the Court, in its MOO, indicated that discovery would be unnecessary because it could "decide at least The Hartford's request for a declaratory judgment on its duty to defend BNSF and Gandy Dancer as a matter of law on the pleadings and insurance policies."  MOO at 31.  If the Court were to delay ruling on the MSJ, so that the Defendants could conduct discovery, it would undermine the MOO and its decision not to stay the case.  The Court based its decision on a finding that it could decide the MSJ without such discovery, and the Court believes its decision was correct, because the Court can determine, and has determined, the coverage issues by comparing the underlying allegations to the policy coverage.  The Court agrees that any determination of ultimate liability is premature, and

the Court has denied the MSJ with respect to the duty to indemnify.  See Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC, 2011 WL 6095102, at *3; Discovery Motion at 5.  Moreover, because the Court found that the underlying allegations trigger a duty to defend, The Hartford will continue to defend BNSF Railway and Gandy Dancer in the state litigation.

BNSF Railway's allegations of bad faith are not before the Court on the MSJ; thus, discovery related to those issues would not assist the Court in deciding the MSJ.  Additionally, BNSF Railway did not argue that bad faith was a basis to deny the MSJ.  The Court also does not believe that discovery on the issues related to estoppel and how the claims were processed are necessary for the Court to reach its decision.  Because the Court has determined that the allegations trigger coverage, the Court need not reach the question whether The Hartford is estopped from denying coverage. Even if the Court were to reach that question, the Court does not believe that The Hartford would be estopped from denying coverage.[18]

Because additional discovery is not necessary to dispose of the MSJ, the Court will deny the Discovery Motion.

**IT IS ORDERED** that The Hartford Fire Insurance Company's Motion for Summary Judgment Declaring that the Terms of the Policy Issued to Gandy Dancer Do Not Provide Coverage for Roy D. Mercer, LLC's Claims Against BNSF and Gandy Dancer, filed June 10, 2011 (Doc. 37),

---

[18]In Dixon v. Chicago Insurance Co., 9 F.App'x 922 (10th Cir. 2001)(unpublished), a New Mexico case, the Tenth Circuit held that prejudice should not be presumed where "Chicago did tender a reservation of rights, albeit late in the litigation."  9 F.App'x at 924.  There, the insurer made a reservation of rights nine months after the claim for damages and only a few months before trial.  See Dixon v. Chicago Ins. Co., 9 F.App'x at 924.  Here, The Hartford initially stated that its acceptance of its duty to defend was subject to the terms and conditions of its policy.  See Oct. 2, 2007 Kieffer Email at 4.  Moreover, The Hartford asserted that the more formal reservation of rights letter was sent to BNSF Railway approximately seven months before BNSF Railway sued Mercer LLC and approximately eight months before Mercer filed its counterclaim.  See Tr. at 62:8-15 (Schwarz); Kieffer Letter; BNSF State Complaint at 1; Mercer State Counterclaim at 1.

is granted in part and denied in part; and (ii) BNSF Railway Company's Rule 56(f) Motion and

Memorandum Brief in Support to Conduct Discovery, filed July 21, 2011 (Doc. 47), is denied.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Thomas J. Bunting
Todd Schwarz
Miller Stratvert, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Robert P. Warburton
Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant Gandy Dancer, LLC*

Tim L. Fields
Earl E. DeBrine, Jr.
Paul T. Halajian
Nathan T. Nieman
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant BNSF Railway Company*

Charles T. DuMars
Tanya L. Scott
Law & Resource Planning Associates
Albuquerque, New Mexico

    *Attorneys for Defendant Roy D. Mercer, LLC*