## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

THE HARTFORD FIRE INSURANCE COMPANY,

     Plaintiff/Counter-Defendant

v.

No. 1:10-cv-00137 JB/RHS

GANDY DANCER, LLC;
BNSF RAILWAY COMPANY; and
ROY D. MERCER, LLC

     Defendants,

and

BNSF RAILWAY COMPANY,

     Counter-Plaintiff,

v.

THE HARTFORD FIRE INSURANCE COMPANY,

     Counter-Defendant.

## THE HARTFORD FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT REGARDING PERSONAL AND ADVERTISING INJURY COVERAGE, AND MEMORANDUM IN SUPPORT

COMES NOW Plaintiff and Counter-Defendant, Hartford Fire Insurance Company ("Hartford"), by and through its counsel of record, Miller Stratvert P.A. (Todd A. Schwarz and Tom Bunting), and pursuant to Federal Rule of Civil Procedure 56 moves the Court for a summary judgment that the "Personal and Advertising Injury" provision of the insurance Policies issued to Gandy Dancer does not cover claims asserted by Roy D. Mercer LLC in the underlying actions. Specifically, Hartford requests a declaratory judgment that neither BNSF nor Gandy Dancer is alleged to have committed the following Personal and Advertising Injury offense:

> The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.[1]

Hartford respectfully requests summary judgment on two independent grounds. First, the Personal and Advertising Injury offense of Wrongful Eviction applies only to certain structures and premises that persons occupy – not to unoccupied, unimproved farm and ranch land. Second, Wrongful Eviction applies only when actions are taken on behalf of an owner, landlord, or lessor of a room, dwelling, or premises. Because neither BNSF nor Gandy Dancer was an owner, landlord, or lessor with respect to the property on which they worked, there is no coverage under the Personal and Advertising Injury provision.

## Undisputed Material Facts

1.  Hartford issued a policy of business liability insurance to Gandy Dancer, Policy Number 21 UUN QZ5048, with policy dates of 8/8/05 to 8/8/06 ("2005-06 Gandy Dancer Policy"). [Relevant pages of the 2005-06 Gandy Dancer Policy are attached hereto as Exhibit 1]

2.  Hartford also issued a policy of business liability insurance to Gandy Dancer, Policy Number 21 UUN QZ5048, with policy dates of 8/8/06 to 8/8/07 ("2006-07 Gandy Dancer Policy"). [Relevant pages of the 2006-07 Gandy Dancer Policy are attached hereto as Exhibit 2] The 2005-06 Gandy Dancer Policy and the 2006-07 Gandy Dancer Policy are collectively referenced herein as "the Policies."

3.  Coverage B of the Policies is titled Personal and Advertising Injury Liability, and provides coverage to insureds for certain "offenses" as defined in the Policies' Definitions section. [Exhibit 1 at 2-5; Exhibit 2 at 2-5]. The Policies define Personal and Advertising Injury as follows:

---

[1] This Motion will refer to the offense as "Wrongful Eviction."

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral, written or electronic publication of material that violates a person's right of privacy;

**f.** Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

**g.** Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

**h.** Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

[Exhibit 1 at 5; Exhibit 2 at 5]

4.      This matter is based on actions in law and equity pending in the Seventh Judicial District Court, County of Socorro, State of New Mexico ("the underlying actions"). BNSF Railway Company ("BNSF") claims an easement on the property of Roy D. Mercer, LLC (the "Mercer Property"), located in Socorro County, New Mexico, which grants to BNSF the right to use the natural material as it may desire for the construction of ditches, dikes, spoil banks, and other necessary facilities and structures to protect the railroad from floodwaters of the nearby

Brown Arroyo. [BNSF's Verified Complaint for Injunctive Relief, Declaratory Judgment, Negligence and Nuisance filed in the Seventh Judicial District Court, County of Socorro, State of New Mexico, No. D-0725-CV 2008 on June 3, 2008, relevant pages attached to Hartford's Motion for Summary Judgment, Doc. No. 37, as Exhibit 6, ¶ 8]

5.      Around late July to early August 2006, following severe flooding through the Brown Arroyo, BNSF hired Defendant Gandy Dancer, LLC ("Gandy Dancer") to reconstruct the railroad's water diversion system by clearing vegetation, building up the levees, expanding the diversion channel, and constructing piers to control floodwaters to minimize the likelihood of additional breaches and flood damage. Some of the work performed by Gandy Dancer was done on the Mercer property and some was not. [Hartford's Motion for Summary Judgment, Doc. No. 37, at UMF 5]

6.      After employees or officials representing Mercer indicated they might alter or destroy some of the work performed by Gandy Dancer, BNSF filed a Verified Complaint for Injunctive Relief, Declaratory Judgment, Negligence and Nuisance, No. D-0725-CV-2008, on June 3, 2008. Mercer filed an Answer and Counterclaim against BNSF and then a First and Second Amended Counterclaim, alleging Trespass, Negligence, Negligent Misrepresentation, Misrepresentation, Nuisance, Unjust Enrichment, and Prima Facie Tort. [See Mercer's Answer and Counterclaim, attached to Doc. No. 1 as Exhibit 1; see also Hartford's Motion for Summary Judgment, Doc. No. 37, at UMF 8]

7.      The Mercer Property was intended for agricultural uses, such as grazing cattle, at the time Gandy Dancer performed the work, and no persons lived on or otherwise occupied the property. The Mercer Property remains unoccupied. [Michael Mechenbier's Response to Request for Admissions Nos. 3, 4, and 5, attached hereto as Exhibit 3]

4

8.      At the time Gandy Dancer performed the work on the Mercer Property, it contained no buildings or residential structures. The Mercer Property still contains no buildings or residential structures. [Exhibit 3, Request Nos. 6 and 7]

9.      At the time Gandy Dancer performed the work on the Mercer Property, it did not constitute the grounds of any building or other structure (other than possibly the presence of an irrigation ditch) and still does not. [Exhibit 3, Request Nos. 8 and 9]

10.      Hartford filed the instant action for declaratory judgment on February 16, 2010. [See Doc. No. 1] On June 10, 2011 Hartford filed its *Motion for Summary Judgment Declaring That the Terms of the Policy Issued to Gandy Dancer do not Provide Coverage for Roy D. Mercer, LLC's Claims Against BNSF.* [Doc. No. 37] The Motion asserted that the Policies do not cover Mercer's counterclaims against either BNSF or Gandy Dancer because (a) the counterclaims did not allege an occurrence under the Policies, and (b) to the extent that the Mercer's counterclaims alleged an occurrence under the Policies, the alleged actions fell within the Policies' exclusions and were not covered. [Id. and see Memorandum in Support, Doc. No. 38] BNSF's and Gandy Dancer's Response briefs alleged that the Policies do provide coverage for all of Mercer's claims, and raised the argument that the Policies Personal and Advertising Injury provisions may cover the allegations. [Response of Gandy Dancer, Doc. No. 45, at 18; Response of BNSF, Doc. No. 48, at 22]

11.      In its Memorandum Opinion and Order filed March 28, 2012, this Court granted Hartford's Motion for Summary Judgment with respect to Mercer's allegations of property damage and negligent misrepresentations, but not with respect to its allegations of trespass and nuisance.

**Summary Judgment Standard**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).

Once the moving party shows the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which it carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**Background Law**

In New Mexico, an obligation of a liability insurer is contractual and is to be determined by the terms of the policy. Miller v. Monumental Life Ins. Co., 376 F. Supp. 2d 1238, 1245 (D. N.M. 2005), rev'd on other grounds, 502 F.3d 1245 (10th Cir. 2007). Insurance policies are interpreted in their usual and ordinary sense unless the language of the policy requires something different. N.M. Physicians Mut. Liab. Co. v. LaMure, 116 N.M. 92, 95, 860 P.2d 734, 737 (1993). "[A]n insurance policy is not rendered ambiguous merely because a term is not defined; rather, the term must be interpreted in its usual, ordinary, and popular sense." Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111.

**I. The Personal and Advertising Injury Coverage Provision Does not Cover the Alleged Offenses Because the Land was not a Room, Dwelling, or Premises, and Because it was not Occupied**

The Personal and Advertising Injury offense of Wrongful Eviction applies only to certain places that are actually occupied – not merely to any real property. Because the Mercer property was not a room, dwelling, or premises, and because it was not occupied by any persons as the Policies require, the Hartford Policies do not cover claims for damages made in the underlying actions.

a. The Land was Neither a Room, a Dwelling, nor a Premises Under the Policies

Wrongful Eviction coverage does not apply simply to land, but rather only to a "room, dwelling, or premises." The California Court of Appeals in Mirpad, LLC v. California Ins. Guarantee Ass'n, 132 Cal.App.4th 1058 (2005), examined the plain language of an identically-worded Wrongful Eviction offense in holding that a commercial building is not a room, dwelling, or premises. The court stated that "[t]he relationship between eviction and the intent that it be from a place where people live is consistent with the places listed in the definition of 'personal injury.'" Mirpad, 132 Cal.App.4th at 1072 (emphasis in original). The court decided that while "premises" was broader than "room" or "dwelling," it should be defined in the "same class or nature of the more specific words that precede it." Id. at 1072, citing Waranch v. Gulf Insurance Co., 18 Cal App 3d 356, 360-361 (1998). It thus looked to Webster's dictionary to define a premises as "'a building or part of a building usu[ally] with its appurtenances (as grounds).'" Id. (quoting Webster's 9th New Collegiate Dict. (1986) pp. 1023, 390, 928). The court therefore suggested that real estate must actually be occupied by people, as in a residential setting, in order for Personal and Advertising Injury coverage to apply. Simply put, the court declared that rooms, dwellings, and premises "are places where people live." Id.

7

But this Court need not rely on other jurisdictions' interpretations of the Policies' language when it can assess the terms' usual and ordinary meanings for itself. Dictionary definitions are invaluable in determining how an ordinary insured would have understood a policy term. See, e.g., Battishill, 2006-NMSC-004, ¶ 8 ("We...hold that the common and ordinary meaning of 'vandalism,' 'malicious mischief,' and 'arson' [in an insurance policy] may be ascertained from a dictionary."). Webster's defines a premises as "a tract of land with the buildings thereon" and "a building or part of a building usually with its appurtenances (as grounds)." Webster's New Collegiate Dictionary 901 (1981). Black's defines a premises as "a house or building, along with its grounds." Black's Law Dictionary 1300 (9th ed. 2009). The ordinary meaning of the term therefore does not include a tract of uninhabited, unimproved ranch land such as the Mercer property; for land to be a premises it must contain, or be appurtenant to, buildings. There are no buildings on the Mercer property. UMF 8.

That a premises must include buildings residential in nature is reinforced by the other two places from which a Wrongful Eviction can occur: a room and a dwelling. New Mexico's law of contract interpretation requires that courts consider an individual term in the context in which it appears, and construe it in concord with its related terms. See Pub. Serv. Co. of N.M. v. Diamond D Constr. Co., 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651 ("[W]e view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions."); see also Mayfield Smithson Enters. v. Com-Quip, Inc., 120 N.M. 9, 14, 896 P.2d 1156, 1161 (1995) (declining to interpret a contract in a manner that would render portions of the contract pointless). Here, both a room and a dwelling plainly contemplate structures of some sort "that a person occupies." The only way to understand the term "premises" in harmony with the other two is to recognize that it must be

8

related to residential buildings. Because the Mercer property is not a premises nor is it a room or a dwelling, the Wrongful Eviction coverage does not apply to the Defendants' actions upon it.

### b. The Land was not Occupied

Even if the Court were to conclude that the Mercer Property was a room, dwelling, or premises, the land must have been occupied for the coverage to apply. Mercer's land was not occupied – it was not and did not contain "a place where people live." Mirpad, 132 Cal.App.4th at 1072 (emphasis in original). No one lived on the land; it contained no rooms; it had no dwellings; and it was not a premises in the sense of being a building or a building's grounds. UMF 7, 8, 9. Mercer's Property was filled with overgrowth – "choked throughout by heavy vegetation" – and was used solely for agricultural and commercial purposes. See Gandy Dancer Response to MSJ, Doc. 45, at 8. It was far from being a place "that a person occupies" and, indeed, no one occupied it. UMF 7; see Sell v. Nationwide Mut. Ins. Co., 2011 U.S. Dist. LEXIS 7502, at *4 (E.D.Cal. January 25, 2011) (agreeing with the argument "the phrase 'that a person occupies' in the Personal and Advertising Injury provision requires third-party claimant Ocegueda to actually occupy the Property as a condition precedent to coverage under this provision of the policy."). Because the offense of Wrongful Eviction applies only to occupied places, it does not apply to Mercer's unoccupied land.

New Mexico law recognizes the fundamental difference between ownership of real property on one hand, and its occupancy on the other. For example, the New Mexico Court of Appeals noted common law arson as "an offense against the security of habitation or occupancy, rather than against ownership or property." In re Gabriel M., 2002-NMCA-047, ¶13, 132 N.M. 124, 45 P.3d 64 (internal quotation marks and citations omitted). The Wrongful Eviction

9

coverage's distinction between ownership and occupancy is therefore consistent with New Mexico law, which clearly differentiates between "ownership" and "occupancy."

## 2. The Personal and Advertising Injury Coverage Provision Does not Cover the Alleged Offenses Because Neither BNSF nor Gandy Dancer Owned the Land on Which They Allegedly Trespassed

The fact that the land was not a room, dwelling, or premises precludes coverage under the Personal and Advertising Injury provision. An independent reason the Policies do not cover nuisance or trespass is that BNSF and Gandy Dancer did not commit the offense of Wrongful Eviction, because they were not owners, landlords, or lessors of either the easement or the Mercer property outside the easement.

### a. Neither BNSF nor Gandy Dancer Owned the Land Encumbered by the Easement

Hartford acknowledges that BNSF claims to hold an easement and Gandy Dancer performed work for BNSF on land it believed was within the easement, although Mercer alleges trespass on property outside the easement as well. However, an easement is not an ownership interest in land; its holder has a property right in the easement itself, but not an ownership right in the encumbered real property. "An easement creates a nonpossessory right to enter and use land in the possession of another" and "is limited to the particular purpose for which the easement was created." City of Rio Rancho v. Amrep Southwest. Inc., 260 P.3d 414, 424, 150 N.M. 428, 439 (N.M. 2011) (citing RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 1.2(1), at 12 (2000)). One who holds an easement is not an owner under the law. See Olson v. H & B Properties, 882 P.2d 536, 539, 118 N.M. 495, 498 (N.M. 1994) (considering an easement which is a "right of way for water flow through the irrigation ditch, as distinguished from ownership of the ditch structure itself"). Therefore, even to the extent Mercer claims that BNSF and Gandy Dancer trespassed or created a nuisance within the bounds of the easement, BNSF and Gandy

10

Dancer were not owners, landlords, or lessors of the underlying land. Only Mercer, as the owner of the property underlying the easement, could have committed the offense of Wrongful Eviction because only Mercer owned the land. BNSF and Gandy Dancer, then, did not commit the offense of Wrongful Eviction inside the easement.

### b. Neither BNSF nor Gandy Dancer Owned the Land Outside of the Easement

The Wrongful Eviction offense does not apply to actions BNSF and Gandy Dancer took outside of the easement because they were not the owners, landlords, or lessors of the Mercer property outside the easement. Because BNSF and Gandy Dancer are not owners, landlords, or lessors of the Mercer property outside of the easement onto which they allegedly trespassed, their actions outside of the easement did not constitute the offense of Wrongful Eviction.

### c. Scottish Guarantee and Blackhawk-Central Sanitation District Construed Different Policies With Different Definitions of the Personal and Advertising Injury Offense of "Wrongful Eviction"

BNSF and Gandy Dancer cited to Scottish Guarantee Ins. Co. v. Dwyer, 19 F.3d 307, 311-12 (7th Cir. 1994) and Blackhawk-Central Sanitation Dist. v. Am. Guar. & Liab. Ins. Co., 856 F.Supp 584, 590 (D. Colo. 1994) in their Responses to Hartford's Motion for Summary Judgment. See Doc. No. 48 at 23; see Doc. No. 45 at 19. The Court also cited the cases in its Memorandum Opinion and Order. See Doc. No. 74 at 73. The cases are not helpful to this dispute because the language of their Personal and Advertising Injury provisions, and the definition of their Wrongful Eviction offenses, is fundamentally different than that of the Hartford Policies. The Court in its Opinion cited these cases for the proposition that trespass to another's property – property in which the insured does not have some sort of an ownership interest as well – could constitute "wrongful entry" under Personal and Advertising Injury coverage. But the cases' policy language did not require that any action had to have been on

11

behalf of the owner, landlord, or lessor of the property, and thus the coverage included trespass onto property solely owned by another.[2]  It is therefore not surprising that both opinions concluded that those policies' coverage provisions applied to trespass on any land, because the policies contained broader and fundamentally different grants of coverage.  Here the plain policy language forecloses coverage for trespass onto property owned by another, because it requires any covered offense to be "committed by or on behalf of" an "owner, landlord or lessor."  Coverage under the Policies must be determined with reference to these Policies – not to policies that define the offense at issue differently.

Because neither BNSF nor Gandy Dancer was the owner, landlord, or lessor of the Mercer property either within or outside of the easement, they did not commit a Wrongful Eviction and therefore the Personal and Advertising Injury coverage does not apply.

## Conclusion

Hartford respectfully requests that the Court grant it summary judgment and rule that the Personal and Advertising Injury coverage of the Hartford Policies does not provide coverage to BNSF or Gandy Dancer for the underlying actions.

---

[2] The policies in both Scottish Guarantee and Blackhawk-Central applied to: "Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies[.]"  19 F.3d at 311; 856 F.Supp at 590.

Respectfully submitted,

MILLER STRATVERT P.A.

***ELECTRONICALLY FILED 9/27/2012***

By_ */s/ Todd A. Schwarz*_____
    Todd A. Schwarz
    Thomas J. Bunting
    Attorneys for Plaintiff/Counter-Defendant
    Post Office Box 25687
    Albuquerque, New Mexico 87125
    Telephone: (505) 842-1950
    Facsimile: (505) 243-4408
    E-Mail: tschwarz@mstlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed electronically through the CM/ECF system on September 27, 2012, and will be served automatically pursuant to the Court's rules and regulations to the following counsel of record:

**Attorneys for Gandy Dancer, LLC:**
Robert P. Warburton
Stelzner, Winter, Warburton, Flores, Sanchez
& Dawes, P.A.
P.O. Box 528
Albuquerque, New Mexico 87103
Telephone: (505) 938-7770
Facsimile: (505) 938-7781
E-Mail: rpw@stelznerlaw.com

**Attorneys for Roy D. Mercer, LLC:**
Charles T. Dumars
Tanya L. Scott
Law & Resource Planning Associates
201 3rd Street, N.W., Suite 1750
Albuquerque, NM 87102
Telephone: (505) 346-0998
Facsimile: (505) 346-0997
E-mail: ctd@lrpa-usa.com
tls@lrpa-usa.com

**Attorneys for BNSF Railway Company:**
Tim L. Fields
Nathan T. Nieman
Modrall Sperling Roehl Harris & Sisk P.A.
P.O. Box 2168
Albuquerque, New Mexico 87103-2168
Telephone: (505) 848-1800
Facsimile: (505) 848-9710
E-Mail: phalajian@modrall.com

    */s/ Todd A. Schwarz*_____
    Todd A. Schwarz



# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the stock insurance company member of The Hartford providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

d. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

e. **Incidental Medical Malpractice**

(1) "Bodily injury" arising out of the rendering of or failure to render professional health care services as a physician, dentist, nurse, emergency medical technician or paramedic shall be deemed to be caused by an "occurrence", but only if:

(a) the physician, dentist, nurse, emergency medical technician or paramedic is employed by you to provide such services, and

(b) you are not engaged in the business or occupation of providing such services.

© (Includes copyrighted material of [ ]nc., with its permission.)

**EXHIBIT**

tabbies

## n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

## o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

## p. Employment-Related Practices

"Bodily injury" to:

(1) A person arising out of any "employment–related practices"; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any "employment-related practices" are directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

## q. Asbestos

Any damages, judgments, settlements, loss, costs or expenses that:

(1) May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the "asbestos hazard";

(2) Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos hazard"; or

(3) Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos hazard".

Exclusions c. through n. do not apply to damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

### d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

### e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

### f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement".

### g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

### h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services.

### i. Infringement Of Intellectual Property Rights

"Personal and advertising injury" arising out any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

However, this exclusion does not apply to infringement, in your "advertisement", of:

(1) Copyright;

(2) Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or

(3) Title of any literary or artistic work.

### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 17.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, placing an "advertisement" for or linking to others on your web site, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

### l. Unauthorized Use Of Another's Name Or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

### m. Internet Advertisements And Content Of Others

"Personal and advertising injury" arising out of:

(1) An "advertisement" for others on your web-site;

(2) Placing a link to a web site of others on your web site;

(3) Content, including information, sounds, text, graphics, or images from a web site of others displayed within a frame or border on your web site; or

(4) Computer code, software or programming.

### n. Right Of Privacy Created By Statute

"Personal and advertising injury" arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act.

### o. Violation Of Anti-Trust law

"Personal and advertising injury" arising out of a violation of any anti-trust law.

### p. Securities

"Personal and advertising injury" arising out of the fluctuation in price or value of any stocks, bonds or other securities.

### q. Discrimination Or Humiliation

"Personal and advertising injury" that is discrimination or humiliation committed by or at the direction of any "executive officer", director, stockholder, partner or member of the insured.

### r. Employment-Related Practices

"Personal and advertising injury" to:

(1) A person arising out of any "employment–related practices"; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any "employment-related practices" are directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**s. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**t. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within three years of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while taking part in athletics.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**h. War**

Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".



# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the stock insurance company member of The Hartford providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

d. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

e. Incidental Medical Malpractice

(1) "Bodily injury" arising out of the rendering of or failure to render professional health care services as a physician, dentist, nurse, emergency medical technician or paramedic shall be deemed to be caused by an "occurrence", but only if:

(a) The physician, dentist, nurse, emergency medical technician or paramedic is employed by you to provide such services; and

(b) You are not engaged in the business or occupation of providing such services.

(Includes copyrighted material of  c. with its permission.)

**EXHIBIT**

2

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. **Employment-Related Practices**

"Bodily injury" to:

(1) A person arising out of any "employment–related practices"; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any "employment-related practices" are directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

r. **Asbestos**

(1) "Bodily injury" or "property damage" arising out of the "asbestos hazard".

(2) Any damages, judgments, settlements, loss, costs or expenses that:

(a) May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the "asbestos hazard";

(b) Arise out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos hazard"; or

(c) Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos hazard".

**Damage To Premises Rented To You – Exception For Damage By Fire, Lightning Or Explosion**

Exclusions c. through h. and j. through n. do not apply to damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" arising out of an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

### b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

### c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

### d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

### e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

### f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement".

### g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

### h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services.

### i. Infringement Of Intellectual Property Rights

"Personal and advertising injury" arising out of any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

However, this exclusion does not apply to infringement, in your "advertisement", of:

(1) Copyright;

(2) Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or

(3) Title of any literary or artistic work.

### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 17.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, placing an "advertisement" for or linking to others on your web site, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

### l. Unauthorized Use Of Another's Name Or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

### m. Pollution

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

### n. Pollution-Related

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## o. War

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## p. Internet Advertisements And Content Of Others

"Personal and advertising injury" arising out of:

(1) An "advertisement" for others on your web site;

(2) Placing a link to a web site of others on your web site;

(3) Content, including information, sounds, text, graphics, or images from a web site of others displayed within a frame or border on your web site; or

(4) Computer code, software or programming used to enable:

(a) Your web site; or

(b) The presentation or functionality of an "advertisement" or other content on your web site.

## q. Right Of Privacy Created By Statute

"Personal and advertising injury" arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act.

## r. Violation Of Anti-Trust law

"Personal and advertising injury" arising out of a violation of any anti-trust law.

## s. Securities

"Personal and advertising injury" arising out of the fluctuation in price or value of any stocks, bonds or other securities.

## t. Discrimination Or Humiliation

"Personal and advertising injury" arising out of discrimination or humiliation committed by or at the direction of any "executive officer", director, stockholder, partner or member of the insured.

## u. Employment-Related Practices

"Personal and advertising injury" to:

(1) A person arising out of any "employment–related practices"; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any "employment-related practices" are directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

## v. Asbestos

(1) "Personal and advertising injury" arising out of the "asbestos hazard".

(2) Any damages, judgments, settlements, loss, costs or expenses that:

(a) May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the "asbestos hazard";

(b) Arise out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos hazard"; or

(c) Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos hazard".

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within three years of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RECEIVED

SEP 1 8 2012

MILLER STRATVERT, P.A.

THE HARTFORD FIRE INSURANCE COMPANY,

Plaintiff/Counter-Defendant,

v.

No. 1:10-cv-00137 JB/RHS

GANDY DANCER, LLC;
BNSF RAILWAY COMPANY; and
ROY D. MERCER, LLC

Defendants.

and

BNSF RAILWAY COMPANY,

Counter-Plaintiff,

v.

THE HARTFORD FIRE INSURANCE COMPANY,

Counter-Defendant.

## MICHAEL MECHENBIER'S RESPONSE TO
## PLAINTIFF/COUNTER-DEFENDANT THE HARTFORD FIRE INSURANCE
## COMPANY'S FIRST REQUESTS FOR ADMISSIONS TO MICHAEL MECHENBIER

TO: MICHAEL MECHENBIER
c/o Tanya L. Scott
Law & Resource Planning Associates
201 3rd Street, N.W., Suite 1750
Albuquerque, NM 87102
tls@lrpa-usa.com

Plaintiff/Counter-Defendant, The Hartford Fire Insurance Company requests Michael

Mechenbier of Roy D. Mercer, LLC to admit or deny the following Requests for Admission:



**REQUEST FOR ADMISSION NO. 1:** Admit that you are the Director and sole

member of Roy D. Mercer LLC ("Mercer").

**ADMIT:** _____X_____ **DENY:** _____

**REQUEST FOR ADMISSION NO. 2:** Admit that Mercer owns a tract of real property

in Socorro County, New Mexico that is situated near the Brown Arroyo and adjacent to railroad

facilities owned and operated by BNSF Railway Company.

**ADMIT:** _____ **DENY:** _____

Mercer admits that it owns a piece of real property in Socorro, New Mexico located
immediately west of the railroad facilities owned and operated by the BNSF Railway Company.
Mercer further admits that the described property is located approximately midway between the
La Matanza Arroyo to the north and the Brown Arroyo to the south.

**REQUEST FOR ADMISSION NO. 3:** Admit that during August of 2006 the Mercer

property was being considered for use as grazing land for Mercer's cattle.

**ADMIT:** _____ **DENY:** _____

Mercer admits that as of August 2006, the Mercer property was intended for agricultural
uses, including grazing.

**REQUEST FOR ADMISSION NO. 4:** Admit that during August of 2006 no persons

lived on or otherwise occupied the Mercer property.

**ADMIT:** _____X_____ **DENY:** _____.

**REQUEST FOR ADMISSION NO. 5:** Admit that the Mercer property is still not

occupied or lived on by any persons.

**ADMIT:** _____X_____ **DENY:** _____

**REQUEST FOR ADMISSION NO. 6:** Admit that during August of 2006 the Mercer

property did not contain any buildings or residential structures.

**ADMIT:** _____X_____ **DENY:** _____

2

**REQUEST FOR ADMISSION NO. 7:** Admit that the Mercer property still contains no

buildings or residential structures.

**ADMIT:** ____X____ **DENY:** _____

**REQUEST FOR ADMISSION NO. 8:** Admit that during August of 2006 the Mercer

property did not constitute the grounds of any building or other structure.

**ADMIT:** _____ **DENY:** _____

Mercer admits that during August of 2006, the property did not contain any buildings.
On the west side of the property is the Luis Lopez irrigation ditch that traverses the Mercer
property in some areas and which could be considered a "structure".

**REQUEST FOR ADMISSION NO. 9:** Admit that the Mercer property still does not

constitute the grounds of any building or other structure.

**ADMIT:** _____ **DENY:** _____

Mercer admits that there are still no buildings on the property and that the Luis Lopez
irrigation ditch still exists on the west side of the property.

Respectfully submitted,

LAW & RESOURCE PLANNING ASSOCIATES,
*A Professional Corporation*

By: _____

Charles/T. DuMars
Tanya/L. Scott
Attorneys for Michael Mechenbier
Albuquerque Plaza, 201 3rd Street NW. Ste. 1750
Albuquerque, NM 87102
(505) 346-0998 / FAX: (505) 346-0997

3