**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

THE HARTFORD FIRE INSURANCE COMPANY,

      Plaintiff/Counter-Defendant

     v.                                   No. 1:10-cv-00137 JB/RHS

GANDY DANCER, LLC;
BNSF RAILWAY COMPANY; and
ROY D. MERCER, LLC

      Defendants,
   and

BNSF RAILWAY COMPANY,

      Counter-Plaintiff,

     v.

THE HARTFORD FIRE INSURANCE COMPANY,

      Counter-Defendant.

**BNSF RAILWAY COMPANY'S RESPONSE BRIEF IN OPPOSITION TO THE**
**HARTFORD FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY**
**JUDGMENT REGARDING PERSONAL AND ADVERTISING INJURY COVERAGE**

Defendant BNSF Railway Company ("BNSF") submits the following Response to The

Hartford Fire Insurance Company's Motion for Summary Judgment Regarding Personal and

Advertising Injury Coverage ("Motion"). Although the Motion was not styled as a motion to

reconsider, the Motion Hartford Fire Insurance Company's ("Hartford") is nothing more than

an attempt to reverse the Court's determination that the personal and advertising injury

provisions of the applicable policy obligate Hartford to provide a defense for BNSF and Gandy

Dancer LLC ("Gandy Dancer") in the underlying action. Hartford's contentions that the terms of

the personal and advertising injury provision preclude coverage are contrary to this Court's own

prior ruling in this case, are contrary to law, and rely upon disputed facts.  As set forth below, New Mexico law, which Hartford inexplicably failed to cite in its Motion, mandates that terms of an insurance policy that are ambiguous must be construed against the insurer.   Moreover, numerous courts have held that the terms, upon which Hartford seeks to deny coverage are ambiguous and/or otherwise provide coverage for the types of claims asserted by Roy D. Mercer, LLC ("Mercer") in its lawsuit against Gandy Dancer and BNSF.  Additionally, Mercer's Motion fundamentally relies upon a determination of "ownership" of real estate, which constitutes a contested issue in the underlying lawsuit between Mercer and Gandy Dancer and BNSF.

I.      **Introduction**

        This is Hartford's second bite at the apple on the issue of coverage under the "Personal and Advertising Injury" provision of a Commercial General Liability Policy issued to Gandy Dancer, and demonstrates the contradictory positions that Hartford has taken throughout this case.  Before providing any information in Rule 26 Initial Disclosures or Responding to written discovery served by BNSF, on June 10, 2011, Hartford filed a Motion for Summary Judgment seeking a declaration of noncoverage for Roy D. Mercer, LLC's ("Mercer") claims against BNSF and Gandy Dancer in the underlying lawsuit.  *See* [Doc. No. 37 and 74].  In response BNSF filed a Rule 56(f) (i.e. Rule 56(d)) Motion to conduct discovery prior to the Court ruling on Hartford's Motion for Summary Judgment.  *See* [Doc. No. 48].   Hartford opposed this request and stated that "this action is ready for a decision."  *See* [Doc. No. 52 at p. 14].  Then, in response to BNSF's discovery requests to Hartford, Hartford filed a Motion for Protective Order in which it asserted that it should not have to "respond to Plaintiffs' [BNSF's] discovery requests until the issue of policy coverage has been determined…."  [Doc. No. 72].  According to

Hartford, no additional discovery was necessary for this Court to decide the coverage issues presented in this case.

However, Hartford abandoned that approach once the Court issued its Memorandum Opinion and Order denying Hartford's motion for summary judgment and motion for protective order determining that the policy provided coverage for Mercer's claims of nuisance and trespass under the personal and advertising provision of the policy. *See* [Doc. No. 74 at p. 71]. Even though Hartford maintained its refusal to respond to BNSF's discovery after the Court issued its Opinion, Hartford served requests for admission to Mercer, a party according to Hartford's complaint, who was "joined as an interested party to be bound by the judgment[1]" on August 17, 2012. [Doc. No. 78]. After receiving responses from Mercer, who is in a hotly contested litigation against BNSF and Gandy Dancer in state court ("underlying lawsuit"), Hartford filed its second motion for summary judgment ("Motion"), which attacks this Court's prior Opinion and calls upon this Court to reverse that Opinion. *Compare* [Doc. No. 74] *with* [Doc. No. 83].

Specifically, Hartford has called upon this Court to find that four words within the personal and advertising injury provision of the Hartford Policy (i.e. person, occupy, premises, and owner) preclude coverage for BNSF and Gandy Dancer in relation to Mercer's claims against them. Amazingly, Hartford's Motion utterly fails to cite to any of the numerous cases which have found both the personal and advertising injury provision as a whole and the specific terms upon which Hartford relies to be ambiguous, and further fails to alert this Court to the fact that controlling New Mexico law requires that these ambiguities must be construed against Hartford.

Ultimately, there is no dispute that the Mercer Property contained levees and other diversion systems along with a fence at the time of Mercer's dispute with BNSF and Gandy

---

[1] See Complaint, ¶6 [Doc. 1]

Dancer. *See* Affidavit of M. Mechenbier, attached hereto as Exhibit A; Affidavit of H. Stone, which is attached hereto (without exhibits) as Exhibit B; Affidavit of P. Gallegos, which is attached hereto as Exhibit C. Indeed, the core of Mercer's claims against BNSF and Gandy Dancer is that the levee and diversion system which BNSF rehabilitated and maintained on the Mercer Property constituted trespass and nuisance. *See* Hartford's Undisputed Fact No. 6. Conversely, BNSF has maintained that its earthworks and any other structures on the Mercer Property were constructed and maintained pursuant to an express easement ("the Easement") which broadly provided BNSF with the authority to construct levees, facilities, structures, ditches etc. **on the Mercer Property** (either necessary or desirable) for the protection of the railroad. *See* the Easement, attached hereto as Exhibit D. In turn, Mercer has claimed that the work exceeded the scope of the Easement, and therefore, Mercer has the right to destroy the levees and diversion system. That dispute is currently pending and has not been resolved in the underlying lawsuit.

Hartford has attempted to ignore the fact that this dispute remains unresolved by having a stranger to the contract of insurance, Mercer, make admissions including the terms "occupied", "structure", and "persons" as a means of defining those words for purposes of denying coverage under the Hartford Policy. *See* Exhibit 3 to Hartford's Second Motion for Summary Judgment, [Doc. No. 83 at p. 22-24]. Moreover, Hartford has evidenced its bad faith in responding to BNSF's claim for coverage by eliciting these "admissions" while having full knowledge of the hotly contested litigation ongoing in the underlying lawsuit.

Regardless of what meaning Hartford and Mercer ascribe to these terms, those personal interpretations have no effect on coverage. As set forth below, several courts have deemed these phrases to be ambiguous or interpreted these words broadly to include the types of claims,

entities, and structures which are the heart of the dispute in the underlying lawsuit. Consequently, as set forth below, this Court should reject Hartford's attempts to have Mercer define the terms of a policy in a manner that destroys coverage for BNSF and Gandy Dancer, and should follow the overwhelming weight of authority and again deny Hartford's (second) Motion for Summary Judgment.

## II.  Response to Hartford's "Undisputed Material Facts"

1.  Hartford has not offered any evidence to support its claim in Undisputed Fact No. 1 concerning the policy dates or numbers of the "2005-06 Gandy Dancer Policy, and therefore, Hartford has not properly established this alleged fact as being undisputed.  *See* Fed.R.Civ.P. 56(c)(1)(requiring the party asserting a fact is undisputed must support the assertion by citing to "particular parts" of the record).

2.  Hartford has not offered any evidence to support its Undisputed Fact No. 2, and therefore, Hartford has not properly established this alleged fact as being undisputed.  *Id.*

3.  BNSF does not dispute Hartford's Undisputed Fact No. 3 for purposes of this Motion only, but notes that Hartford's Exhibits do not contain the "Personal and Advertising Injury Liability" provision of the applicable policies.  *Id.*

4.  BNSF disputes Hartford's characterization of the terms of the Easement in Undisputed Fact No. 4. The Easement specifically grants BNSF the right to:

> shall have the right to enter upon the following described tracts or parcels of land situated in Socorro County, New Mexico, and ***use so much of the natural material such as earth, rock, wood, etc., as it may elect or desire to remove for the purpose of constructing a surface ditch, dykes and spoil banks, together with any other facilities or structures necessary or desirable for the protection of the railroad or other property*** of the party of the second part from surface or other waters…. (*emphasis added*)

BNSF was further :

> given the right of ingress and egress upon the above described tracts or parcels of land *for the purpose of excavating, constructing and maintaining said ditch, dykes and spoil banks and shall be held harmless on account of any damages sustained to the land or crops hereafter grown on account of said improvements.*

*See* Exhibit D.

5.     BNSF disputes Hartford's Undisputed Fact No. 5, claiming that BNSF constructed "piers" on the Mercer property in 2006.   However, BNSF admits that after extraordinary flooding in Socorro County in August of 2006 and in conjunction with federal and local officials, BNSF and its contractor, Gandy Dancer, performed work to rebuild and rehabilitate the diversion system, clearing vegetation and rebuilding levees and ditches to enable the water to flow through the system and away from Mercer's property.  *See* Exhibits B and C. Some of the  work was performed on Mercer's tracts of the Brown Arroyo Property.  *Id*; Amended Complaint for Declaratory and Injunctive Relief (Doc. No. 37-2) at ¶ 23.

6.     For purposes of this Motion only, BNSF does not dispute Undisputed Fact No. 6, and further states that Mercer's claims demonstrate that both Mercer and BNSF are claiming ownership of the levee and diversion channel on the Mercer Property.

7.     In response to Hartford's Undisputed Fact No. 7, BNSF admits only that Mercer *is claiming* that the Mercer Property was intended for agricultural uses, such as grazing cattle, at the time Gandy Dancer performed the work.  For purposes of this Motion, BNSF admits only that no natural persons lived on the Mercer Property at the time the work was performed. However, BNSF denies that the Mercer Property was or is "unoccupied" as that term is used in the policy and denies that no persons have occupied the premises.  Further, BNSF objects to the extent that Mercer's interpretation of the term "occupied" controls the interpretation of the Hartford Policy.  Mercer's statements in response to Hartford's discovery requests cannot serve

to unilaterally re-define the words "occupy" or "person." Both Mercer and BNSF occupied the premises. BNSF has continually maintained and has rehabilitated a system of levees and a water diversion system on the Mercer Property. *See* Exhibit B. Moreover, the Mercer Property contained a fence, which was established by prior owners, and Mercer has claimed that it intended to and was preparing to use the property for agricultural and grazing purposes. *See* Exhibit A. Consequently, and as set forth below, both Mercer and BNSF "occupied" the Mercer Property by possessing the property, by keeping it for their use, and by preventing each other (at various times) from using portions of the property.[2] *See* Exhibit B (noting the work performed to the diversion system including the "berms" on the Mercer Property); *see also* Exhibit C (same). Indeed, the heart of the dispute between Mercer and BNSF and Gandy Dancer is that both parties assert rights to possess and occupy the Mercer Property. *See* Hartford's Undisputed Fact No. 6.

Additionally, as set forth below, both Mercer and BNSF are "persons" under the terms of the Hartford Policy.[3]

8.      For purposes of this Motion only, BNSF does not dispute Undisputed Fact No. 8 to the extent that the term "residential structures" does not refer to structures which serve to protect residences because as set forth below, the dikes and levees are clearly structures designed to protect residents, many of which were flooded when the levees breached in 2006 and earlier flood events. *See* Exhibit E (referring to the flooding of a residence as a result of the breach of

---

[2] *See McIntyre v. Scarbrough*, 471 S.E.2d 199, 201 (1996) (overruling a trial court's holding that "occupy" meant to "to dwell in", and in turn, holding that "[o]ccupy" is more expansively defined in Black's Law Dictionary, p. 1231 (Rev. 4th ed.1968) as "to hold possession of; to hold or keep for use; to possess."); *Matousek v. Quirici*, 195 Ill. App. 391, 392 (Ill. App. Ct. 1915) ("The actual physical presence of the defendant on the premises was not essential. By holding the right to occupy for his own business or to prevent others from occupying he exercised use and occupation of the premises….").

[3] *See Supreme Laundry Service, LLC v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 748 (7th Cir. 2007) (holding that "the 'personal and advertising injury' provision can apply to both natural persons and corporations…" and that "the use of the term 'person' in subpart 3 and the later use of the distinct term 'natural person' in subpart 6 undermines Hartford's argument that 'person' only applies to natural persons."); *see also e.g. Indus. to Indus., Inc. v. Hillsman Modular Molding, Inc.*, 644 N.W.2d 236, 242 (Wis. 2002) ("If the legislature wanted to ensure that corporations would not be included, it could have used the term 'natural person' rather than 'person.' If the legislature intended to use the term 'natural person' in Wis. Stat. § 134.93(1)(b), we believe that it would have done so.").

the levee on the Mercer Property).[4]  Moreover, the Hartford Policy does not limit coverage to "residential structures" and further, the personal and advertising injury provision of the policy does not even contain the phrase "residential structures."  Consequently, Hartford's reliance upon Undisputed Fact No. 8 is disingenuous and not material to the issues raised via Hartford's Motion. *See* Hartford's Undisputed Fact No. 5.

9.     BNSF disputes Hartford's Undisputed Fact No. 9.  First, as Mercer noted in its responses to Hartford's requests for admission, the irrigation ditch on the Mercer property may have constituted a structure.  *See* Exhibit 3 to Hartford's Motion (Doc. No. 83).  Additionally, the levees and diversion system on the Mercer Property constituted "structures".  *See* BNSF's response to Hartford's Undisputed Fact No. 8.   The Mercer Property also contained fences, which were "structures."[5]

10.     Hartford's Undisputed Fact No. 10 is not material.  BNSF denies Hartford's Undisputed Fact No. 10 to the extent that it does not accurately and fully represent the documents referenced therein.  (Doc. Nos. 1, 37, 38, 45, and 48).

11.     Hartford's Undisputed Fact No. 11 is not material, but BNSF does not dispute it.

## III.     BNSF'S ADDITIONAL UNDISPUTED MATERIAL FACTS[6]

1.     In the underlying lawsuit, Mercer has alleged that the Mercer Property "was part of a larger land purchase by Mercer from the estate of Paul Marshal, which lands were utilized

---

[4] *See In re Ingram Barge Co.*, 435 F. Supp. 2d 524, 530 (E.D. La. 2006) *aff'd sub nom. In re Complaint of Ingram Barge Co.*, 351 F. App'x 842 (5th Cir. 2009) ("A levee is a structure fixed to the land whose fundamental purpose is to protect the land-based community from flood waters.").

[5] *See Mertz v. City of Elgin, Grant County*, 800 N.W.2d 710, 713 (S.D. 2011) (affirming a city council's determination that a fence is a "structure"); *see also Oracle v. Santa Cruz County Planning Dept.*, No.509-CV-00373, 2010 WL 3930412, at *12 (N.D. Cal. Oct. 6, 2010) ("Plaintiffs contend that a fence is a 'structure,' and the Court agrees that fencing typically is a 'piece of work' that is 'artificially built or composed of parts joined together in some definite manner.'").

[6] Although BNSF disputes the claims made by Mercer  in the underlying lawsuit, Mercer's allegations are included in the following paragraphs for purposes of outlining Mercer's claims in relation to the property and evaluating coverage under the Hartford Policy.

for farming and grazing operations" and that Mercer's owner Mike Mechenbier "intended to use the property for grazing purposes after he purchased it." *See* Affidavit of M. Mechenbier at ¶¶ 3 and 18, attached hereto as Exhibit A.

2.    Additionally, Mercer has acknowledged  that when it  "purchased the Mercer Property from Paul Marshal's widow, there existed on the eastern side of the property, bordering the railroad right of way, a low, approximately 1.5 to 2 foot berm." *Id.* at paragraph 4.  In fact, the Mr. Mechenbier never walked or inspected the property prior to the 2006 floods and the berm bordering the railroad right of way has been substantially larger than Mercer claims.  *See* Exhibit B at ¶¶9-15; Exhibit A; and Deposition of M. Mechenbier at 35:4-7, relevant portions attached hereto as Exhibit F.

3.    Mercer has also alleged that when it purchased the Mercer Property, "the railroad right of way was fenced with the fences extending the full length of the Mercer Property from north to south.  The ditch was on the railroad's side of the fence." Exhibit A at ¶8.  In fact, there was no ditch designed on capture floodwaters within the railroad right of way, and it would be contrary to accepted engineering principles to allow a ditch next to the tracks to channel water in the manner claimed by Mercer.  See December 9, 2011 Affidavit of Howard Stone, attached hereto as Exhibit G.

4.    According to Mercer's claims, after the 2006 floods, BNSF constructed a "large" berm on the Mercer Property that "is fifteen feet or more in height and about forty feet deep" and "caused a new channel to be dug through the entirety of the Mercer Property from north to south." Exhibit A at ¶¶10-11.  Further, Mercer contends that due to the work by BNSF through Gandy Dancer the "land is now uneven…." *Id.* at ¶16.

5.      In the underlying lawsuit, the Honorable Matthew Reynolds has found that the "[a]s a matter of law, the express easement specifically contemplates, not only excavation, but also the maintenance and construction of ditches, dikes, and spoil banks on Mercer's property, but based upon the record presented to the Court in regards to Mercer's Motion for Partial Summary Judgment there are genuine issues as to material fact as to whether the scope of the easement has been exceeded."   *See* Order on Roy D. Mercer LLC's Motion for Partial Summary Judgment Against BNSF Railway Company and Gandy Dancer, LLC, attached hereto as Exhibit H.    Thus, the fundamental dispute in the underlying case is whether the work performed by Gandy Dancer on behalf of BNSF exceeded the scope of the Easement.    To the extent that such work did not exceed the scope of the Easement, BNSF would necessarily have ownership rights to any earthworks, ditches, dykes, facilities, and/or structures which built in 2006 within the scope of the Easement.   Mercer seeks equitable relief to remove those structures.   See Amended Counterclaim [Doc. Nos. 1-3 at p. 5-6; 1-5 at p. 13].   The issue of who owns the property (i.e. earthworks, ditches, dykes, facilities, and/or structures) has not been resolved in the underlying suit.

## IV.    ARGUMENT

### A.    HARTFORD HAS IMPROPERLY FILED THIS MOTION AS A SECOND MOTION FOR SUMMARY JUDGMENT.

In the Memorandum Opinion and Order [Doc. No. 74], the Court determined that Mercer's trespass and nuisance allegations in underlying lawsuit give rise to coverage under the personal and advertising provision in the CGL policy. *See* [Doc. No. 74 at 73-74].   Hartford's Motion directly attacks this Court's prior ruling on Hartford's (First) Motion for Summary Judgment, while failing to address, much less acknowledge, that this most recent Motion is

Hartford's second bite at the apple. Ultimately, Hartford's Motion is a motion for reconsideration of the Court's earlier ruling.

Hartford's refusal to address this issue emphasizes the fact that Hartford cannot meet the requirements for warranting reconsideration of the Court's ruling. A motion for reconsideration is an "inappropriate vehicle to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion." *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Grounds warranting a motion to reconsider include (1) an intervening change in controlling law, (2) new evidence, previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* at 1012. "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* None of these grounds exist in this case. First, Hartford does not cite to any intervening change in controlling law in its Motion. Second, Hartford does not point to any new evidence that was unavailable during the pendency of its first motion for summary judgment. The information proffered via Hartford's requests for admission was clearly known or discoverable prior to Hartford's first motion for summary judgment. Third, Hartford's Motion does not include any assertion or argument, nor does it establish that, the Court's Memorandum Opinion and Order was clearly erroneous or that it would result in manifest injustice if left undisturbed. For the reasons set forth in the Court's Memorandum Opinion and Order and those set forth below, the Court's ruling is clearly consistent with New Mexico law regarding an insurer's duty to defend. *See G&G Servs., Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, 128 N.M. 434, 440, 993 P.2d 751, 757; *Miller v. Triad Adoption & Counseling Servs., Inc.,* 133 N.M. 544, 548, 65 P.3d 1099, 1103 (Ct. App. 2003). For these reasons alone, the Court should deny Hartford's Motion.

**B.**     **THE PERSONAL AND ADVERTISING INJURY PROVISION IS AMBIGUOUS AND SHOULD BE CONSTRUED AGAINST HARTFORD.**

In its Motion, Hartford has oversimplified New Mexico law regarding the interpretation of an insurance policy. While New Mexico law provides that insurance policy terms having a "common and ordinary meaning" should be interpreted according to that meaning (*Battishill v. Farmers Alliance Ins. Co.*, 2006–NMSC–004, ¶ 13, 139 N.M. 24, 127 P.3d 1111), the New Mexico Supreme Court has also recently confirmed that "where a policy term is reasonably and fairly susceptible of different constructions, it is deemed ambiguous." *United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶10, 285 P.3d 644 (internal quotations omitted) (citing *Knowles v. United Servs. Auto. Ass'n*, 113 N.M. 703, 705, 832 P.2d 394, 396 (1992)). A policy term that is ambiguous "***must be*** construed against the insurance company as the drafter of the policy." *Id.* (emphasis added).

As set forth below, Hartford's Motion fails to address the fact that several courts from several jurisdictions have determined that more than one term of the personal and advertising injury coverage provision is ambiguous. Indeed, virtually every single term upon which Hartford has relied in its attempt to eradicate coverage under the personal and advertising provision has been deemed ambiguous, and therefore, for the reasons set forth below, this Court should find the personal and advertising injury provision to be ambiguous and construe the same in favor of BNSF and Gandy Dancer.

**B.**     **THE MERCER PROPERTY AND BNSF'S STRUCTURES CONSTRUCTED ON THE MERCER PROPERTY ARE PREMISES UNDER THE POLICY.**

Hartford's theory that the provision of the Hartford Policy providing coverage for "wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy…" only applies to natural persons and to "buildings residential in nature…" is wrong.

Doc. No. 83 at 7-8. First, Hartford's reliance upon *Mirpad, LLC v. California Ins. Guarantee Ass'n* is misplaced because *Mirpad* neither controls nor applies to the interpretation of the commercial general liability policy at issue in this case. 132 Cal. App. 4th 1058 (2005). In *Mirpad* the California Court of Appeals analyzed the definition of the term "person" as used in an insurance policy, and determined that the "word 'person' as used in the United Pacific Policy Necessarily Refers to a Natural Person." 132 Cal. App. 4th at 1070. Fundamental to the court's holding in *Mirpad* was the determination that the policy used both the terms "person" and "organization" and therefore, "these two words must be accorded their separate and distinct meanings." *Id.* The court reasoned that applying the same meaning to these two separate terms would render the terms "redundant and surplusage". *Id.* at 1071. In other words, because the policy included both the terms "person" and "organization", the court determined that it was appropriate to hold that the definition of the term "person" did not include "organizations". *Id.*

However, unlike the policy in *Mirpad* the Hartford Policy contains a key term which renders the analysis of *Mirpad* inapplicable to this case. In *Mirpad*, the policy included five "offenses" that would give rise to coverage under the "Personal Injury and Advertising Injury Liability" provision. *Id.* at 1064. Those five provisions only referenced a "person" or "organization" and did not include any separate reference to ***natural persons***. *Id.* Conversely, the "Personal Injury and Advertising Injury Liability" provision of Hartford's policy expressly includes coverage for both "a person" and "a natural person". *See* Exhibit I, at p. 17 (17.-h.) (providing coverage for "[d]iscrimination or humiliation that results in injury to the feelings or reputation of a ***natural person***."). Using the same logic applied by the Court in *Mirpad*, it would be inappropriate for this Court to apply the same meaning to these terms because to do so would render both terms "redundant and surplusage". *Mirpad, LLC*. v. *California Ins. Guarantee*

*Ass'n*, 132 Cal. App. 4th at 1071. Thus, under the very same reasoning set forth in *Mirpad*, it would be entirely reasonable for one to interpret the terms "person" and "natural person" differently.

Second, the Seventh Circuit Court of Appeals has already determined that references to both a "person" and a "natural person" ***in Hartford CGL policies***, renders the definition of the term "person" ambiguous such that it applies to organizations as well as "natural persons". *See Supreme Laundry Service, LLC v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 748 (7th Cir. 2007) (holding that "the 'personal and advertising injury' provision can apply to both natural persons and corporations…" and that "the use of the term 'person' in subpart 3 and the later use of the distinct term 'natural person' in subpart 6 undermines Hartford's argument that 'person' only applies to natural persons."); *see also e.g. Indus. to Indus., Inc. v. Hillsman Modular Molding, Inc.*, 644 N.W.2d 236, 242 (Wis. 2002) ("If the legislature wanted to ensure that corporations would not be included, it could have used the term 'natural person' rather than 'person.' If the legislature intended to use the term 'natural person' in Wis. Stat. § 134.93(1)(b), we believe that it would have done so.").

Moreover, the Ninth Circuit Court of Appeals has refused to apply the reasoning of *Mirpad* to eviction of an "individual doing business" in a commercial building, (*Century Sur. Co. v. Helleis*, 367 Fed. Appx. 765, 766 (9th Cir. 2010) (unpublished), and other federal courts have similarly rejected the identical arguments proffered by Hartford in its Motion. *See Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 323 F. Supp. 2d 709, 719 (E.D. Va. 2004) *aff'd in part, rev'd in part and remanded on other grounds*, 407 F.3d 631 (4th Cir. 2005) ("The Court agrees with the *Hooters of Augusta, Inc.* court that 'person' is ambiguous, even when used in a Policy provision also containing 'organization.'"); *Illinois Tool Works, Inc. v. Home Indem. Co.*,

998 F. Supp. 868, 872 (E.D. Ill. 1998) (rejecting argument that the term "personal injury" should be limited to torts that injury natural persons.).

These authorities, at the very least, demonstrate that the term "person" as used in the "Personal Injury and Advertising Injury Liability" provision of Hartford's policy is ambiguous and therefore, "must be construed against the insurance company as the drafter of the policy." *United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶10, 285 P.3d 644.

Third, Hartford's proposed interpretation of the term "premises" to exclude land without residential buildings is faulty. Plaintiff's reliance upon dictionary definitions of the term "premises" does not support Plaintiff's argument, and instead, demonstrates that the Hartford's use of the term "premises" is, at the very least, ambiguous. For instance, the dictionary definitions of "premises" which Plaintiff has proffered do not exclude land with no buildings from the definition of "premises", but merely include both "a tract of land" and any "buildings thereon". *See* Webster's New Collegiate Dictionary, 901 (1981). The fact that the term "premises" can refer to a tract of land with buildings does not mean that it cannot refer a tract of land without buildings.

Moreover, pre-2009 editions of Black's Law Dictionary defined "premises" as including a "distinct portion of real estate." *See Billstrom v. Mem'l Med. Ctr.*, 598 S.W.2d 642, 646 (Tex. Civ. App. 1980) (citing Black's Law Dictionary, p. 1063 (5th Ed. 1979)). Prior editions of Webster's Dictionary define "premises" as "*[t]he property conveyed in a deed*; hence, in general, *a piece of land or real estate*; sometimes in fire insurance papers, a building or buildings on land as to leased premises; the premises insured." *Ballsun v. Star Petroleum Co.*, 288 P. 437, 440 (1930) (quoting Webster's Dictionary ed. 1928) (emphasis added). "Webster's Third New International Dictionary contains the following definitions for 'premises': 'property

that is conveyed by bequest or deed'…." *Oregon Mut. Ins. Co. v. Highland Court, LLC*, No. CO8-394 JLR, 2009 WL 779268 *5 (W.D. Wash. 2009). These "definitions" belie Hartford's argument that all non-residential lands fall outside the definition of "premises."

Second, insurers have defined "premises" to include even vacant land[7] in the context of other insurance policies. *See e.g. United Nuclear Corporation v. Allstate Insurance Company¸* 2012-NMSC-032, ¶¶30-32, 285 P.3d 644 (New Mexico Supreme Court analyzing overall insurance industry use of the term "sudden and accidental" for purposes of evaluating the use of the term in the policy at issue in that case.). Specifically, several courts have analyzed homeowner's insurance policies which define the "insured premises" in part as "vacant land." *See Bianchi v. Westfield Ins. Co.*, 191 Cal. App. 3d 287, 289 (1987) (definition of "insured premises" included "vacant land, other than farm land, owned or rented to any insured…"); *Fort Worth Lloyds v. Garza*, 527 S.W.2d 195, 198 (Tex. Civ. App. 1975) ("The term 'premises' means…vacant land…."); *Hanson v. N. Star Mut. Ins. Co.*, 71 F. Supp. 2d 1007, 1012 (D.S.D. 1999) ("[T]he policy defines 'insured premises' applicable to the present situation as … 'all vacant land owned by or rented to an insured'."); *Allstate Ins. Co. v. Naai*, 684 F. Supp. 2d 1220, 1224 (D. Haw. 2010) *aff'd*, 10-15415, 2012 WL 3016770 (9th Cir. July 24, 2012) ("Insured Premises" means "vacant land…."). Thus, insurance industry practice in defining "premises" also contradicts Plaintiff's theory that only land with residential buildings can be a "premises" pursuant to an insurance policy.

Ultimately, the terms "premises" and "persons" are not defined by the Hartford Policy. In the absence of such definitions, the authorities set forth in the preceding paragraphs unequivocally demonstrate that the terms "premises" and "person" are and have been given

---

[7] Though BNSF contends that the "premises" at issue in this case (i.e. the Mercer Property) was not vacant, it is clear from these authorities that the term premises has been broadly defined by insurers to include both vacant land and land including structures.

several different but reasonable meanings and interpretations by both insurers and insureds, including meanings which would necessarily deem the property at issue in this case to fall within the definition of a "premises." Accordingly, neither the term "person" nor the term "premise" in the Hartford Policy can be construed to preclude coverage for BNSF.

## C. THE MERCER PROPERTY WAS OCCUPIED BY BOTH MERCER AND BNSF.

Contrary to Hartford's Motion, the term "occupied" does not only refer to "a place where people live." Doc. No. 83 at 9. This identical argument has been repeatedly rejected by courts. *McIntyre v. Scarbrough*, 471 S.E.2d 199, 201 (1996) (overruling a trial court's holding that "occupy" meant to "to dwell in", and in turn, holding that "[o]ccupy" is more expansively defined in Black's Law Dictionary, p. 1231 (Rev. 4th ed.1968) as "to hold possession of; to hold or keep for use; to possess."); *Matousek v. Quirici*, 195 Ill. App. 391, 392 (Ill. App. Ct. 1915) ("The actual physical presence of the defendant on the premises was not essential. By holding the right to occupy for his own business or to prevent others from occupying he exercised use and occupation of the premises…."); *Starks v. Vill. Green Apartments*, 854 N.E.2d 411, 417 (Ind. Ct. App. 2006) *abrogated on other grounds by Klotz v. Hoyt*, 900 N.E.2d 1 (Ind. 2009) ("[O]ccupy in this context does not require actual, physical presence, but instead connotes the legal right to maintain actual, physical presence.").

Here, Mercer has claimed that it owned the property at issue, that it had a right to and to occupy the property, that the property contained fences, a ditch, and a berm and that it intended to utilize the property for grazing purposes. *See* Exhibit A. Such assertions demonstrate that Mercer is claiming that it held the land for its use, and therefore, occupied the property at issue. Moreover, it is undisputed that BNSF built and maintained levees and a diversion system ***on the***

***Mercer Property*** for BNSF's use.  *See* BNSF's Material Fact No. 3 and response to Hartford's "Undisputed Material Fact" No. 7.  Thus, both BNSF and Mercer occupied the Mercer Property.

Hartford's argument is also defectively premised upon the holding of *Sell v. Nationwide Mutual Insurance Company*, 2011 U.S. Dist. LEXIS 7502 (E.D. Cal. Jan. 25, 2011).  [Doc. No. 83 at p. 9].  On August 14, 2012 (over a month prior to Hartford filing its Motion), the Ninth Circuit Court of Appeals overruled the district court in that case, and expressly held the phrase "that a person occupies" is ambiguous because "it is at least arguable that the 'occupies' limitation does not require the third-party to physically possess the property." *Snell v. Nationwide Mut. Ins. Co.*, No. 11-15492, 2012 WL 3298393, at \*2 (9th Cir. Aug. 14, 2012) (unpublished), *overruling Snell v. Nationwide Mut. Ins. Co.*. 2011 U.S. Dist. LEXIS 7502 (E.D. Cal. Jan. 25, 2011).  Indeed, the Ninth Circuit noted that a North Carolina court has rejected the argument that the phrase "that the person occupies" requires actual physical possession of the property.  *See Snell*, 2012 WL 3298393, at \*2 (9th Cir. Aug. 14, 2012) (citing *Hobbs Realty & Constr. Co. v. Scottsdale Ins. Co.*, 593 S.E.2d 103, 108 (N.C.Ct.App.2004)).  This holding is yet another example of courts finding that the terms of the personal and advertising injury provision are ambiguous.

Specifically, in *Hobbs Realty & Construction Company*, the North Carolina Court of Appeals expressly rejected the identical argument proffered by Hartford. 593 S.E.2d 103, 108 (N.C.Ct.App.2004).  In that case, the plaintiffs in the underlying lawsuit had acquired a ***right to occupy*** a beach property via a lease.  *Id.* at 105.  The owner of the property ultimately prevented the plaintiffs from taking possession of the property, and as a result, the plaintiffs sued the property owner.  *Id.*  The property owner's insurer denied coverage for these claims, and asserted that there was no coverage under a provision of the policy which provided coverage for "the

wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor….” *Id.* at 107, *compare with* Hartford’s Undisputed Fact No. 3.  According to the insurer, this provision did not provide coverage because the phrase “that a person occupies” “serves to deny insurance coverage where plaintiffs in the underlying lawsuit have not physically occupied the premises when the alleged injury occurred.”  *Id.*  In rejecting that argument, which is the same argument proffered by Hartford, the North Carolina Court of Appeals held that “the proper inquiry is not whether a party has physically assumed control of the property, but whether he has obtained *a legally enforceable right to do so.*”  *Id.* at 108 (emphasis added).   Accordingly, the court also held that the phrase “invasion of the right of private occupancy of a room, dwelling or premises that a person occupies” is ambiguous, and therefore must be interpreted in favor of the insured to provide coverage even when a person does not physically occupy the premises.  *Id.*

Here, BNSF’s and Gandy Dancers case for coverage is even more compelling than that of the plaintiffs in either *Hobbs Realty & Construction Company* or *Snell* because BNSF actually constructed and maintained structures (i.e. berm/levee, ditch, fence, and diversion system) ***on the Mercer Property***, and it is those structures which are the subject of Mercer’s claims against BNSF and Gandy Dancer.  Thus, BNSF not only had a right to occupy the Mercer Property, it did so pursuant to the Easement.  *See* Exhibits D and H. Hartford’s contention that the personal and advertising injury coverage requires physical presence of a human being on the premises is wrong, and cannot serve to preclude coverage in this case.

### D. THE EASEMENT GAVE BNSF AN OWNERSHIP INTEREST IN BOTH THE MERCER PROPERTY AND ANY STRUCTURES, INCLUDING EARTHWORKS CREATED BY BNSF ON THE PROPERTY

Hartford's assertion that coverage is precluded because "neither BNSF nor Gandy Dancer owned the land" is directly contrary to this Court's prior holding and the terms of the easement at issue in the underlying litigation.

First, this Court has already determined that BNSF's easement is an ownership interest in the property at issue. *See* Doc. No. 74. Specifically, this Court noted the following:

> Here, BNSF Railway argues that it had an easement in the Brown Arroyo, which is an ownership interest. *See CenterPoint Energy Houston Elec. LLC v. Harris Cnty. Toll Road Auth.,* 436 F.3d 541, 543 n. 3 (5th Cir.2006)("The general rule is altered where the utility required to relocate holds an *ownership interest,* such as an *easement* in the property from which the utility services were relocated." (emphasis added)). Accordingly, BNSF Railway is an owner, and Gandy Dancer acted on its behalf.

While Hartford baldly asserted that "an easement is not an ownership in land" it did not cite to any caselaw which included such a finding. Further, the Mercer Property was not merely "land", but instead included ditches, a fence, a "berm" or levee, and other earthworks, which were built and/or maintained by BNSF. *See* Exhibits A - D. It is the use of or rehabilitation of these structures on the Mercer Property which is the subject of Mercer's claims. Thus, BNSF's interest in Mercer's land, does not end the inquiry because the Mercer Property contained these structures over which BNSF claims an ownership right.

Second, Hartford's argument concerning "ownership" of the Mercer property ignores Mercer's claims and the fact that the Easement at issue in this case was extremely broad and essentially permitted BNSF to fundamentally alter Mercer's land in virtually any manner

"necessary or desirable for the protection of the railroad". *See* Exhibit D. The Easement allowed BNSF to:

> . . . enter upon the . . . land . . . and use so much of the natural material . . . as it may elect or desire to remove for the purpose of **constructing a surface ditch, dykes and spoils banks together with any other facilities or structures** necessary or desirable for protection of the railroad . . . from surface or other waters . . . (*emphasis added*)

The railroad was further:

> . . . given the right of ingress and egress upon the . . . land for the purpose of excavating, constructing and maintaining said ditch, dykes and spoil banks . . . and shall be held harmless on account of any damages sustained to the land or crops hereafter grown thereon **on account of said improvements**. (*emphasis added*)

*Id.*

The easement granted BNSF the right to construct and maintain "surface ditch, dykes and spoil banks together with any other facilities or structures" **on the Mercer property**. *See also*, Order on Roy D. Mercer, LLC's Motion for Partial Summary Judgment Against BNSF Railway Company and Gandy Dancer, LLC (finding "[a]s a matter of law, the express easement specifically contemplates, not only the excavation, but also the maintenance and construction of ditches, dikes, and spoil banks **on Mercer's property**…."), attached hereto as Exhibit H. Here, BNSF and Gandy Dancer reconstructed the levee and diversion system on the Mercer property and maintains that it continues to have the right to construct any other "surface ditch, dykes and spoils banks together with any other facilities or structures necessary or desirable for protection of the railroad" on the Mercer Property. *See* Exhibit D. The rights granted to BNSF via the Easement are extremely broad and necessarily include the right for BNSF to build and own earthworks and structures on the Mercer Property. Thus, Hartford's claim that an easement is

not an ownership interest in the Mercer Property is not supported facts present in this case and the scope of the easement. *See also e.g. Kysar v. Amoco Prod. Co.*, 2004 NMSC 25, ¶51, 135 N.M. 767, 93 P.3d 1272 (noting that "an easement is a real property interest" and that "[a] conveyance of a right of surface access or easement constitutes a conveyance of real estate....") (internal quotations and citations omitted).

Hartford's claim that BNSF was not an "owner" of Mercer's land, also fails because such a claim is putting the cart before the horse. The issue of ownership of the structures and earthworks on the Mercer Property has not been decided in the underlying case. Mercer has alleged that BNSF committed trespass nuisance by constructing and/or enlarging a levee and diversion system, which allegedly deprived Mercer of the use of the property. *See* Doc. No. 1-2 at ¶¶11, 26-39, 58-65. It is clear that Mercer's claims are, at least in part, premised upon its contention that these earthworks, which BNSF and Gandy Dancer constructed and rehabilitated, exceed the scope of the easement and therefore, constitutes a "wrongful entry into, or invasion of the right of private occupancy of" Mercer's premises. *See id.* and Mercer's Undisputed Fact No. 5. Conversely, BNSF contends that the earthworks do not exceed the scope of the easement and therefore, it had the right, under the Easement, to construct, maintain, and own, without the threat of destruction by Mercer, the earthworks on the Mercer Property. As set forth above, the term "premises" could reasonably be construed to include the earthworks which are the subject of Mercer's claims against BNSF and Gandy Dancer. Thus, Hartford's claim that BNSF is not an "owner" under the policy is necessarily premised upon the assumption that BNSF is not the owner of the earthworks. However, for purposes of coverage, to the extent that BNSF did not exceed the scope of the Easement, it would clearly "own" the berm, just as it would own any facilities and/or structures constructed on Mercer's property pursuant to the easement. *See*

Exhibit D.[8]  Hartford cannot deny coverage by unilaterally making a determination that has still not been reached in and which is the central dispute in the underlying case.

Moreover, contrary to Hartford's assertions, neither *City of Rio Rancho v. Amrep Southwest, Inc.* nor *Olson v. H&B Properties*, mandate a different ruling.  Unlike the easement here, neither of the easements at issue in *City of Rio Rancho* and *Olsen*, included the right to construct "***surface ditch, dykes and spoils banks together with any other facilities or structures***".  *See City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, 150 N.M. 428, 260 P.3d 414, 426 and *Olson v. H&B Properties*, 118 N.M. 495, 498, 882 P.2d 536, 539 (1994). Indeed, the New Mexico Supreme Court's findings in *Olson v. H&B Properties* actually support this Court's holding that BNSF has an ownership interest in the premises at issue in this case. 118 N.M. 495 at 498, 882 P.2d at 539.  In *Olsen*, the court distinguished an easement granting a "right of way for water to flow *through* an irrigation ditch from the ownership of the ditch itself" because the party holding the easement in that case also had a separate ownership interest in the ditch itself, by virtue of a tenancy in common.  *Id.* at 499, 882 P.2d at 540.   Thus, the court held that the parties owned the ditch ***and*** had a separate easement permitting water to flow through the easement.  *Id.*   In so holding, the court also found that "***[t]he physical structure of the ditch itself is real property***, ***owned by the community who built it as tenants in common by virtue of their joint investment of capital and labor.***"  *Id.* at 498, 882 P.2d at 539 (emphasis added).

Here, the easement held by BNSF, unlike the easement at issue in *Olsen,* granted both the right to use and construct "surface ditch, dykes and spoils banks together with any other facilities or structures".  Pursuant to the court's holding in *Olsen*, the physical structure of the berm or any

<hr>

[8] Moreover, Mercer has alleged that BNSF inversely condemned the Mercer property.  *See* Doc. No. 1-5 at ¶24. While BNSF disputes Mercer's claims, these allegations provide additional support for this Court to find that, for purposes of this Motion, an issue of fact exists concerning the ownership of the Mercer property, which precludes summary judgment in this case.

other structures or earthworks constructed by the railroad, is "real property" which BNSF owns. *Id.* The construction and rehabilitation of this berm are the gravamen of Mercer's claims against BNSF. In light of the New Mexico Supreme Court's reasoning in *Olsen*, BNSF's ownership of the berm, and the fact that Mercer ultimately claiming that the existence of the berm constitutes the basis for its trespass claims, the personal and advertising injury provision of the Hartford policy requires Hartford to provide a defense for BNSF and Gandy Dancer.

Indeed, in *Knowles v. United Services Automobile Association*, the New Mexico Supreme Court determined that interfering with an easement constituted "wrongful eviction" pursuant to an umbrella policy. 113 N.M. 703, 832 P.2d 394 (1992).

Ultimately, this Court's prior opinion is correct, and Hartford has not provided a valid basis for this Court to alter that opinion. Moreover, as set forth above, numerous courts have deemed the personal and advertising injury provision to be ambiguous, and as a result, must be interpreted in favor of coverage for the insured. BNSF requests this Court to follow the overwhelming weight of authority and deny Hartford's Motion. For these reasons and those set forth above, BNSF respectfully requests that the Court deny Hartford's (Second) Motion for Summary Judgment Regarding Personal and Advertising Injury Coverage, and to grant such other relief as the Court may deem proper.

Respectfully submitted,

MODRALL, SPERLING, ROEHL, HARRIS
  & SISK, P.A.
By: */s/ Nathan T. Nieman*
  Tim L. Fields
  Nathan T. Nieman
  *Attorneys for Defendant BNSF Railway Company*
  Post Office Box 2168
  Albuquerque, New Mexico 87103-2168
  Telephone: (505) 848-1800

WE HEREBY CERTIFY that on the 22nd day of October 2012, we filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served electronically or by U.S. Mail:

Tanya L. Scott          tls@lrpa-usa.com

Todd Schwarz          tschwarz@mstlaw.com, ekass@mstlaw.com

Tom Bunting            tbunting@mstlaw.com

Robert Warbuton       RPW@stelznerlaw.com

MODRALL, SPERLING, ROEHL,
      HARRIS & SISK, P.A.

By: */s/ Nathan T. Nieman*_____
      Nathan T. Nieman

K:\dox\client\14155\5031\W1793927.DOC