# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

THE HARTFORD FIRE INSURANCE COMPANY,

      Plaintiff

vs.                                                                                No. CIV 10-0137 JB/RHS

GANDY DANCER, LLC;
BNSF RAILWAY COMPANY; and
ROY D. MERCER, LLC,

        Defendants,

and

BNSF RAILWAY COMPANY;

      Counter-Plaintiff

vs.

THE HARTFORD FIRE INSURANCE COMPANY,

      Counter-Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on The Hartford Fire Insurance Company's Motion for Summary Judgment Regarding Personal and Advertising Injury Coverage and Memorandum in Support, filed September 27, 2012 (Doc. 83)("2nd MSJ"). The Court held a hearing on January 7, 2013. The primary issue is whether the "Personal and Advertising Injury" provision of the insurance policies that Plaintiff and Counterdefendant The Hartford Fire Insurance Company issued to Defendant Gandy Dancer, LLC is ambiguous, or covers Defendant Roy D. Mercer LLC's allegations of trespass and nuisance in the underlying state court action. The Court determines that the terms "premises," "person," and "occupy" are ambiguous, and the

Court must construe these terms against The Hartford as the drafter of the policies.  The Court will construe the 2nd MSJ as a motion to reconsider its previous holding that the term "owner, landlord or lessor" does not exclude coverage for Defendant BNSF Railway Company and Gandy Dancer, and the Court will reconsider its previous holding in the Memorandum Opinion and Order, filed March 28, 2012 (Doc. 74)("March 28 MOO") in part.  The Court will not reconsider whether BNSF Railway has an ownership interest in the property at issue within the term of the policies, because The Hartford fails to notify the Court of a change in the facts or controlling law which counsel it to reconsider its holding that BNSF Railway has an ownership interest.  On the other hand, the Court reconsiders whether Mercer LLC's allegations of trespass and nuisance allege a wrongful eviction, entry, or invasion of right of private occupancy committed by or on behalf of BNSF Railway, and the Court concludes that the policies do not cover Mercer LLC's trespass claim.  The Court also concludes that Mercer LLC's allegations of nuisance are potentially within policies' scope of coverage for a personal and advertising injury, and the Court does not change its previous holding that the allegations of nuisance trigger The Hartford's duty to defend.  Accordingly, the 2nd MSJ is granted in part and denied in part.

## FACTUAL BACKGROUND

This case involves the construction of a water diversion system in 2006, over which litigation is taking place in state court.  The Hartford seeks a declaratory judgment that the facts alleged in the underlying state litigation do not give rise to insurance coverage under the policies it issued. Many of the material facts are undisputed.

The Hartford issued a policy of business liability to Defendant Gandy Dancer, LLC titled "Policy Number 21 UUN QZ5048," with effective dates from August 8, 2005, through August 8,

2006.  2nd MSJ ¶ 1, at 2 (citing Commercial General Liability Coverage Form, filed September 27, 2012 (Doc. 83)("05-06 Gandy Dancer Policy"))(setting forth this fact).[1]  The Hartford also asserts that it issued a business liability insurance policy to Gandy Dancer titled "Policy Number 21 UUN QZ5048," with policy dates of August 8, 2006, through August 8, 2007.  2nd MSJ ¶ 2, at 2 (citing Commercial General Liability Coverage Form, filed September 27, 2012 (Doc. 83)("06-07 Gandy Dancer Policy"))(setting forth this fact).[2]  The Policies provide for Personal

---

[1]  The Hartford asserts that the 2005-2006 Gandy Dancer Policy's was effective from August 8, 2005 through August 8, 2006.  2nd MSJ ¶ 1, at 2.  BNSF Railway and Gandy Dancer dispute this fact, asserting that The Hartford has failed to provide any evidence supporting the coverage dates.  See BNSF Railway Company's Response Brief in Opposition to the Hartford Fire Insurance Company's Motion for Summary Judgment Regarding Personal and Advertising Injury Coverage ¶ 1 at 5, filed October 22, 2012 (Doc. 87)("BNSF Response"); Defendant Gandy Dancer's Response in Opposition to The Hartford Fire Insurance Company's Motion for Summary Judgment Regarding Personal and Advertising Injury Coverage ¶ 1, at 4, filed October 22, 2012 (Doc. 88)("Gandy Dancer Response").  Indeed, BNSF Railway and Gandy Dancer are correct that, although The Hartford attaches pages of what appear to be an insurance policy, see 05-06 Gandy Dancer Policy at 14 (the Gandy Dancer Policies contain two sets of page numbers: (i) those which are part of the original documents -- located in the bottom-right-hand-corner of the page; and (ii) those attached by the Court's CM/ECF system when the Policies were filed -- located in the upper-right-hand corner of the page; the Court's citations are to the page numbers attached when the Policies were filed with the Court.), those pages do not indicate that this is the policy The Hartford identifies, or its coverage dates.  Rule 56.1(b) of the United States District Court for the District of New Mexico's Local Court Rules provides in part:

> The Reply must contain a concise statement of those facts set forth in the Response which the movant disputes or to which the movant asserts an objection. Each fact must be lettered, must refer with particularity to those portions of the record upon which the movant relies, and must state the letter of the non-movant's fact. All material facts set forth in the Response will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).  The Court has already found that the coverage dates of the 05-06 Gandy Dancer Policy are undisputed, and BNSF Railway and Gandy Dancer have not indicated that the Court's previous finding is inaccurate.  See Memorandum Opinion and Order ¶ 1, at 2, filed March 28, 2012 (Doc. 74)("March 28 MOO").  Accordingly, the Court will deem that the coverage dates of the 05-05 Gandy Dancer Policy are undisputed.

[2] BNSF Railway and Gandy Dancer assert that this fact is disputed, because The Hartford has not cited to a particular portion of the record supporting the 06-07 Gandy Dancer Policy's

and Advertising Injury Liability for enumerated offenses defined in the Policies.  See 2nd MSJ ¶ 3, at 2 (citing 05-06 Gandy Dancer Policy at 15; 06-07 Gandy Dancer Policy at 19 (collectively, "the Gandy Dancer Policies"))(setting forth this fact); BNSF Railway Company's Response Brief in Opposition to the Hartford Fire Insurance Company's Motion for Summary Judgment Regarding Personal and Advertising Injury Coverage ¶ 3 at 5, filed October 22, 2012 (Doc. 87)("BNSF Response").  The Gandy Dancer Policies define a "Personal and Advertising Injury" as:

> injury, including consequential "bodily injury" arising out of one or more of the following offenses:
>
> a.      False arrest, detention or imprisonment;
>
> b.      Malicious prosecution;
>
> c.      The wrongful eviction from, wrongful entry into, or invasion of the right to private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>
> d.      Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e.      Oral, written or electronic publication of material that violates a person's right of privacy;
>
> f.      Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

---

coverage dates.  See BNSF Response ¶ 2, at 5; Gandy Dancer Response ¶ 1, at 4.  Indeed, BNSF Railway and Gandy Dancer are correct that, although The Hartford attaches pages of what appear to be an insurance policy, see Commercial General Liability Coverage Form at 18, filed September 27, 2012 (Doc. 83), those pages do not indicate that this is the one that The Hartford identifies, or its coverage dates.  On the other hand, the Court previously found that the existence of the 06-07 Gandy Dancer Policy and its coverage dates are undisputed.  See March 28 MOO ¶ 1, at 2-3.  Neither BNSF Railway or Gandy Dancer has asserted, or provided the Court with facts disputing, the Court's previous finding of this fact as undisputed.  Accordingly, the Court determines that the existence of the 06-07 Gandy Dancer Policy and its coverage dates are undisputed.

      g.     Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

      h.     Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

2nd MSJ ¶ 3, at 2-3 (citing 05-06 Policy at 5; 06-07 Policy at 5)(setting forth this fact).[3]  Gandy

Dancer is the named insured on the Gandy Dancer Policies, and The Hartford has assumed, at

least for the purpose of The Hartford Fire Insurance Company's Motion for Summary Judgment

Declaring that the Terms of the Policy Issued to Gandy Dancer do not Provide Coverage for Roy

D. Mercer LLC's Claims Against BNSF and Gandy Dancer, filed June 10, 2011 (Doc. 37), that

BNSF Railway qualifies as an additional insured.  See March 28 MOO at 6.

      The underlying action in this case is BNSF Railway's complaint against Mercer LLC,

pending in the Seventh Judicial District Court, County of Socorro, for the State of New Mexico.

See 2nd MSJ ¶ 4, at 3 (setting forth this fact); BNSF Railway Company's Response Brief in

Opposition to the Hartford Fire Insurance Company's Motion for Summary Judgment Regarding

Personal and Advertising Injury Coverage ¶ 4 at 5, filed October 22, 2012 (Doc. 87)("BNSF

---

      [3] Gandy Dancer disputes that the sections quoted in the 2nd MSJ is the Personal and Advertising Injury provision, because The Hartford has not attached that portion of either Gandy Dancer Policy to the 2nd MSJ.  See Gandy Dancer Response ¶ 3, at 4.  Gandy Dancer does not point to a portion of the record which controverts The Hartford's representation of the Personal and Advertising Injury provision.  The Court, in the March 28 MOO, determined that the Commercial General Liability Coverage form, filed June 10, 2011 (Doc. 37-7) is the 05-06 Gandy Dancer Policy, and that the Commercial General Liability Coverage Form, filed June 10, 2011 (Doc. 37-8), is the 06-07 Gandy Dancer Policy.  See March 28 MOO at 2-3.  The Court also previously found that the Policies contain a Personal and Advertising Injury provision.  See March 28 MOO at 71-74.  Gandy Dancer does not dispute the accuracy of the Court's findings in the March 28 MOO.  The Personal and Advertising Injury provision in both of the Policies is verbatim to that which The Hartford quotes in the 2nd MSJ.  See 05-06 Gandy Dancer Policy at 5; 06-07 Gandy Dancer Policy at 5.  Accordingly, although Gandy Dancer disputes that The Hartford's quotation of the Personal and Advertising Injury provisions is accurate, the Court will not amend its previous finding that these provisions are undisputed material facts in the record before the Court.

Response")(not disputing this fact); Defendant Gandy Dancer's Response in Opposition to The Hartford Fire Insurance Company's Motion for Summary Judgment Regarding Personal and Advertising Injury Coverage ¶ 3, at 4, filed October 22, 2012 (Doc. 88)("Gandy Dancer Response")(not disputing this fact).  BNSF Railway Company owns an easement on the property belonging to Mercer, LLC in Socorro, granting BNSF Railway the right to "use the natural material as it may desire for the construction of ditches, dikes, spoil banks, and other necessary facilities and structures to protect the railroad from floodwaters of the nearby Brown Arroyo." 2nd MSJ ¶ 4, at 3-4 (citing Verified Complaint for Injunctive Relief, Declaratory Judgment, Negligence and Nuisance ¶ 8, at 2 filed in state court June 3, 2008, filed in federal court June 10, 2011 (Doc. 37-1)("BNSF Complaint")(setting forth this fact); Gandy Dancer Response ¶ 3, at 4 (not disputing this fact).[4]  BNSF's Easement, executed September 23, 1936 by the Rio Grande Conservancy District, filed October 22, 2012 (Doc. 87-4), also gives it the right of

---

[4] BNSF Railway disputes The Hartford's characterization of the easement's terms, and points to the language of the Easement, executed September 23, 1936 by the Rio Grande Conservancy District, filed October 22, 2012 (Doc. 87-4), in support.  See BNSF Response ¶ 4 at 5.  Notably, The Hartford's citation to the record provides little, if any, support for its description of the Easement.  The Easement provides a right to

> enter upon the following described tracts or parcels of land situated in Socorro County, New Mexico, and use so much of the natural material such as earth, rock, wood, etc., as it may elect or desire to remove for the purpose of constructing a surface ditch, dykes and spoil banks, together with any other facilities or structures necessary or desirable with any other facilities or structure necessary or desirable for the protection of the railroad or other property of the party of the second part form surface or other waters.

Easement at 1. Rule 56.1(b) of the United States District Court for the District of New Mexico's Local Court Rules provides in part:

> The Reply must contain a concise statement of those facts set forth in the Response which the movant disputes or to which the movant asserts an objection. Each fact must be lettered, must refer with particularity to those portions of the record upon which the movant relies, and must state the letter of the non-movant's

> ingress and egress upon the above described tracts or parcels of land for the
> purpose of excavating, constructing and maintaining said ditch, dykes and spoil
> banks and shall be held harmless on account of any damages sustained to the land
> or crops hereafter grown thereon on account of said improvements.

Easement at 2.  See BNSF Response ¶ 6, at 6 (setting forth this fact); The Hartford Fire

Insurance Company's Reply in Favor of its Motion for Summary Judgment Regarding Personal

and Advertising Injury Coverage at 2, filed November 9, 2012 (Doc. 93)("Reply")(not disputing

this fact).  BNSF Railway has continually "maintained and rehabilitated a system of levees and a

water diversion system on the Mercer Property."  BNSF Response ¶ 7, at 7 (citing Stone

Aff.)(setting forth this fact); Stone Aff. ¶ 19, at 7 ("BNSF's records reflect that the railroad has

consistently performed work to protect the railroad tracks from damaging floodwaters from

Matanza Arroyo since at least 1924."[5]); Reply at 2 (not disputing this fact).

When Mike Mechenbier, the Director and sole member of Mercer LLC acquired the

Mercer Property, the property contained a berm.[6]  BNSF Response ¶ 2, at 9 (citing Mechenbier

Aff. ¶ 4, at 2)(setting forth this fact); Michael Mechenbier's Response to Plaintiff/Counter-

Defendant The Hartford Fire Insurance Company's First Requests for Admissions to Michael

Mechenbier ¶ 3 at 2, filed September 27, 2012 (Doc. 83)("Mercer Admissions")(setting forth this

---

fact. All material facts set forth in the Response will be deemed undisputed unless
specifically controverted.

D.N.M.LR-Civ. 56.1(b).  The Court determines that BNSF Railway has failed to meet its burden
of specifically controverting the Easement's language.  Although the Easement's language may
be more specific in nature, The Hartford's summary of the language sets forth largely the same
right.  Accordingly, the Court adopts The Hartford's fact as undisputed.

[5] Mercer LLC's land lies within a silty basin of the Brown Arroyo, "also known as the
Matanza Arroyo" ("the Mercer Property").  March 28 MOO at 7.

[6] A berm is a "flat strip of land, raised bank, or terrace bordering a river or canal; a path
or grass strip beside a road; an artificial ridge or embankment . . . ."  New Oxford Am.
Dictionary 157 (Angus Stevenson & Christine A. Lindberg eds., 3d. 2010).

fact); Reply ¶ 2, at 2.   At times, the berm has been substantially larger than at the time

Mechenbier purchased the Mercer Property.   See BNSF Response ¶ 2, at 9 (citing Mechenbier

Aff. ¶ 4, at 2 (stating that, when Mechenbier acquired the Mercer Property, a berm between one-

and-a-half and two feet high was on the land); Stone Aff. ¶¶ 9-15, at 4-6))(setting forth this

fact).[7]

Mercer LLC intended to use the property for agricultural purposes, such as grazing cattle.

See 2nd MSJ ¶ 7, at 4 (citing Mercer Admissions ¶¶ 3-5, at 2 ("Mercer admits that as of August

2006, the Mercer property was intended for agricultural uses, including grazing."))(setting forth

this fact); BNSF Response ¶¶ 7, 1 at 7, 8-9 (not disputing that Mercer LLC "intended to and was

preparing to use the property for agricultural and grazing purposes")[8]; Gandy Dancer Response ¶

---

[7] The parties dispute the size of the berm.  Mercer LLC states that, when Mechenbier acquired the property, there was a "'low, approximately 1.5 to 2 foot berm'" on the property. BNSF Railway Response ¶ 2, at 9 (quoting Mechenbier Aff. ¶ 4, at 2).  BNSF Railway asserts that the berm "has been substantially larger than Mercer claims."  BNSF Railway Response ¶ 2, at 9 (citing Mechenbier Aff.; Stone Aff. ¶¶ 9-15, at 4-6 (stating that the height of a berm on the Mercer Property "is approximately 14 feet and the amount of sediment deposited by summer thunderstorm runoff is on average 5 feet higher than the BNSF railroad tracks").  The Hartford contends that BNSF Railway has inaccurately characterized its sources in asserting this fact.  See Reply ¶ 2, at 2.  The Hartford, however, cites to no facts controverting BNSF Railway's statement that the berm "has been substantially larger than Mercer claims."  D.N.M.LR-Civ. 56.1(b) (requiring that the "Reply must . . . refer with particularity to those portions of the record upon which the movant relies," to dispute facts set forth in a response).  The portions of the record to which BNSF Railway cite support it proposed undisputed fact.  Because The Hartford has failed to contradict that, at times, the berm which was on the Mercer Property when Mechenbier purchased it has been larger than it was at the time of purchase, the Court will deem this fact undisputed.

[8] BNSF Railway asserts that Mercer LLC is "claiming that the Mercer Property was intended for agricultural uses."  BNSF Response ¶ 7, at 6.  This statement does not appear to contradict The Hartford's proposed undisputed material fact.  Moreover, BNSF Railway cites to no portion of the record which controverts Mercer LLC's admission that the Mercer Property was intended for agricultural use.  Moreover, the Mercer Admissions do not appear to be allegations; rather, these are admissions from the "Director and sole member of Roy D. Mercer LLC."  Mercer Admissions ¶ 1, at 2.  Because BNSF Railway has failed to specifically

4, at 4 (not disputing that the Mercer Property was intended for agricultural purposes, such as

grazing cattle).   No natural persons lived on the Mercer Property in 2006.  See 2nd MSJ ¶ 7, at 4

(citing Mercer Admissions ¶¶ 3-5, at 2)(setting forth this fact); BNSF Response ¶ 7, at 6 (not

disputing this fact); Gandy Dancer Response ¶ 4, at 4 (not disputing this fact).[9]

Around late July to early August 2006, after a year of severe flooding in the Brown

Arroyo, BNSF Railroad hired Gandy Dancer to reconstruct its water diversion system by

clearing vegetation, building up the levees, and expanding the diversion channel to control

floodwaters to minimize the likelihood of additional breaches and flood damage.  See 2nd MSJ ¶

5, at 4 (citing 1st MSJ ¶ 5, at 3)(setting forth this fact); BNSF Response ¶ 5, at 6 (not disputing

---

controvert The Hartford's fact that the land was intended for agricultural use, the Court deems
this fact undisputed.  See D.N.M.LR-Civ. 56.1(b).

[9] The parties dispute whether the Mercer Property was or is occupied "as that term is used
in the policy."  BNSF Response ¶ 7, at 6.  See 2nd MSJ ¶ 7, at 4 (asserting that the Mercer
property "remains unoccupied"); Gandy Dancer Response ¶ 4, at 4 (asserting that the term
"person" in the Gandy Dancer Policies is not restricted to "natural persons," and that the term
"premises that a person occupies" does not require the "presence of buildings or residential
structures occupied by natural persons").
     BNSF Railway states that an undisputed material fact is that Mechenbier did not inspect
the Mercer Property until a dike broke on the property in the summer of 2006.  See BNSF
Response ¶ 2, at 9 (citing Deposition of Mike Mechenbier Vol. I at 35:2-23 (taken April 19,
2011), filed October 22, 2012 (Doc. 87-6)(setting forth this fact).  The Hartford contends that
this fact is immaterial, and, moreover, that BNSF Railway's citations to the record do not support
the fact.  See Reply ¶ 2, at 2.  Indeed, in his deposition, Mechenbier responds to the question,
"[d]o you recall the earliest you went to in the property, the 60 acres, and observed or inspected,
the earliest date" with "[i]t was probably after the dike broke."  Mechenbier Dep. at 35:4-7.
Mechenbier does not elaborate as to what year he is referring.  Moreover, the question appears to
be ambiguous.  It is unclear whether the question was directed at the first time Mechenbier ever
inspected the Mercer Property, or at the first time he inspected the property in the summer of
2006.  See Mechenbier Dep. at 35:14-25 (referring to a number of "big rains" during "that
summer," and not indicating whether any time periods outside of "that summer" were discussed
during the deposition).  Accordingly, the Court concludes that The Hartford controverts BNSF
Railway's statement that Mechenbier did not inspect the Mercer Property before the flooding in
2006, because The Hartford correctly notes that the portion of the record upon which BNSF
Railway relies does not support this fact.  Whether Mechenbier inspected the property for the
first time ever after flooding in 2006 remains disputed.

that, "after extraordinary flooding in Socorro County in August of 2006," BNSF Railway and

Gandy Dancer rehabilitated the water diversion system through "clearing vegetation and

rebuilding levees and ditches")[10]; Gandy Dancer Response ¶ 3, at 4 (not disputing this fact).

Some of BNSF Railway and Gandy Dancer's work was performed on the Mercer Property.  See

BNSF Response ¶ 5, at 6 (citing Amended Complaint for Declaratory Judgment and Injunctive

Relief ¶ 23, at 5, filed in state court August 22, 2008, filed in federal court June 10, 2011 (Doc.

37-2)("Amended BNSF Complaint")); Reply at 2 (not disputing this fact).  At the time Gandy

Dancer performed the work on Mercer Property, the property had no buildings or residential

structures, and currently does not have buildings or residential structures.  See 2nd MSJ ¶ 8, at 5

(citing Mercer Admissions ¶¶ 6, 7 at 2-3)(setting forth this fact); BNSF Response ¶ 8, at 7-8 (not

disputing this fact).[11]   Other than an irrigation ditch, a fence, the levees, and the diversion

---

[10] The Hartford states that BNSF constructed "piers" on the Mercer LLC   property   in
2006 as part of its reconstruction of the water diversion system.  2nd MSJ ¶ 5, at 4.  See Gandy
Dancer Response ¶ 3, at 4 (not disputing this fact).  In support of this fact, The Hartford cites to
its 1st MSJ, wherein it asserts the same fact, and cites to the BNSFJ Complaint ¶ 22, at 4.
Indeed, in that paragraph, BNSF Railway asserts that it "worked to rehabilitate the diversion
system . . . constructing peirs to control floodwaters to minimize the likelihood of additional
breaches and flood damage."  BNSF Complaint ¶ 22, at 4.  The Court adopted this fact as
undisputed in the March 28 MOO.  See March 28 MOO at 9.  BNSF Railway disputes that it
constructed "piers," but fails to cite to documents in the record that dispute the Court's previous
finding of this fact, or contradict BNSF Railway's own allegation in the BNSF Complaint.
BNSF Response at 6 (citing Affidavit of Howard C. Stone, P.E., executed September 21, 2012,
filed October 22, 2012 (Doc. 87-2)(describing the work done on the Mercer Property in August,
2006, and not describing the construction of any "piers"); Affidavit of Phillip Gallegos, executed
July 19, 2012, filed October 22, 2012 (Doc. 87-3)(same)).  The absence of a fact in the items to
which BNSF Railway points does not specifically controvert its own admittance of this fact in an
earlier pleading.  The Court, therefore, determines that that BNSF Railway constructed piers on
the Mercer Property in 2006 is undisputed.  See D.N.M.-LR Civ. 56.1(b).

[11] BNSF Railway does not dispute this fact, but disputes the meaning of "residential
structures," and contends that the fact is immaterial, because the Gandy Dancer Policies do not
limit The Hartford's coverage to "residential structures," or mention that term in the Advertising
and Personal Injury definition section.  BNSF Response ¶ 8, at 7-8.

system, Mercer Property did not contain any buildings which could be considered "structures." 2nd MSJ ¶ 9, at 5 (citing Mercer Admissions ¶¶ 8, 9, at 3)(setting forth that, in August 2006, the Mercer Property did not contain any structures "other than possibly the presence of an irrigation ditch"); BNSF Response ¶ 9, at 8 (not disputing that the irrigation ditch may have "constituted a structure").[12]

Employees of Mercer LLC indicated that they might alter or destroy some of Gandy Dancer's work, which prompted BNSF Railway to file the BNSF Complaint. See 2nd MSJ ¶ 6, at 4 (setting forth this fact); BNSF Response ¶ 6, at 6 (not disputing this fact); Gandy Dancer Response ¶ 3, at 4 (not disputing this fact). In response to the BNSF Complaint, Mercer LLC counterclaimed for trespass, negligence, negligent misrepresentation, misrepresentation, nuisance, unjust enrichment, and prima facie tort. See 2nd MSJ ¶ 6, at 4 (citing 1st MSJ ¶ 8, at 4; Answer to Verified Complaint for Injunctive Relief, Declaratory Judgment, Negligence and Nuisance and Counterclaim, filed in state court July 8, 2008, filed in federal court February 6, 2010 (Doc. 1-1)("Mercer LLC Answer"))(setting forth this fact); BNSF Response ¶ 6, at 6 (not disputing this fact); Gandy Dancer Response ¶ 3, at 4 (not disputing this fact). Mercer LLC contends that, after the 2006 flooding, the berm on the Mercer Property is "'fifteen feet or more in height and about forty feet deep,'" and caused a "'new channel to be dug through the entirety of the Mercer Property from north to south.'" BNSF Response ¶ 4, at 9 (quoting Mechenbier Aff. ¶¶ 9-11, at 2-3)(setting forth this fact); Reply ¶ 4, at 2 (not disputing this fact). Mercer LLC contends that BNSF Railway's work, which Gandy Dancer performed, caused the Mercer

---

[12] The parties dispute whether the irrigation ditch, fence levees, and diversion system constitute "structures." See 2nd MSJ ¶ 9, at 5 (asserting that only the irrigation ditch could be considered a "structure"); BNSF Response ¶ 9, at 8 (asserting that the irrigation ditch, fence, levees, and diversion system are "structures").

Property to become "'uneven.'"   BNSF Response ¶ 4, at 9 (quoting Mechenbier Aff. ¶ 16, at

3)(setting forth this fact); Reply ¶ 4, at 2 (not disputing this fact).   In the underlying action,

whether Gandy Dancer's work on the Mercer Property exceeded the scope of BNSF Railway's

Easement remains disputed.   See BNSF Response ¶ 5, at 10 (citing Order on Roy D. Mercer

LLC's Motion for Partial Summary Judgment Against BNSF Railway Company and Gandy

Dancer, LLC, filed in state court July 5, 2012, filed in federal court October 22, 2012 (Doc. 87-

8)(setting forth this fact); Reply ¶ 5, at 2 (not disputing this fact).

## PROCEDURAL BACKGROUND

On February 16, 2010, The Hartford filed its Complaint for Declaratory Judgment.   See

Doc. 1 ("Hartford's Complaint").[13]   The Hartford requests a declaratory judgment pursuant to the

Federal Declaratory Judgment Act, 28 U.S.C. § 2201.   See Hartford's Complaint at 1.   The

Hartford requests that the Court declare that The Hartford owes no insurance obligations to

indemnify, or to defend, BNSF Railway or Gandy Dancer in connection with the rehabilitation

work that is the subject of Mercer LLC's suit against BNSF Railway and Gandy Dancer.   See

Hartford's Complaint ¶ 1, at 1.

On June 10, 2011, The Hartford moved the Court for summary judgment, requesting that

the Court declare that the Gandy Dancer Policies do not provide coverage for the damages that

Mercer LLC seeks in the underlying action.   See The Hartford Fire Insurance Company's

---

[13] In its Complaint, The Hartford contends that Mercer LLC dropped all the allegations and claims asserted in Mercer LLC's original counterclaim, and purported to assert claims for declaratory judgment and modification of the easement by estoppel in Mercer LLC's amended counterclaim.   See Hartford's Complaint ¶ 22, at 4.   Mercer LLC "incorporates by referenced, [sic] each and every allegation, response, defenses [sic] and affirmative defense in it [sic] entirety, contained within its" original counterclaim.   Mercer LLC's Answer to Amended Complaint for Declaratory Judgment and Injunctive Relief and Counterclaim ¶ 1, at 1, filed September 15, 2008 (Doc. 1-2).

Memorandum in Support of Its Motion for Summary Judgment Declaring that the Terms of the

Policy Issued to Gandy Dancer Do Not Provide Coverage for Roy D. Mercer LLC's Claims

Against BNSF and Gandy Dancer at 1-2, filed June 10, 2011 (Doc. 38)("1st MSJ Memo.").  The

Hartford asserted that, in the underlying action, Mercer LLC contends that BNSF Railway

directed Gandy Dancer to reconstruct a water diversion project on Mercer LLC's land and that

"the renovations themselves damaged its property."  1st MSJ Memo at 2 (emphasis original).

The Hartford argued that the Gandy Dancer Policies do not cover the damages sought in the

underlying action, because they were not caused "by an 'occurrence,'" as defined in the policies.

1st MSJ Memo at 2.  The Hartford also contended that two coverage exclusions apply to exclude

the damages from coverage: (i) the work performed on Mercer LLC's property was "expected or

intended" by BNSF Railway; and (ii) the claimed property damage is to real property on which

Gandy Dancer conducted operations at BNSF Railway's direction.  1st MSJ Memo at 2.

The Court granted the 1st MSJ in part and denied it in part.  The Court agreed with The

Hartford that Mercer LLC's allegations of property damage against Gandy Dancer were not an

"occurrence" as defined in the Gandy Dancer Policies and held that those allegations "do not

give rise to coverage under the Gandy Dancer Policies."  March 28 MOO at 68.  The Court also

held that Mercer LLC's allegations of negligent misrepresentations were an "occurrence," but

that the language of Provision j(5) of the Gandy Dancer Policies excluded coverage for the

misrepresentations.  March 28 MOO at 68-71.  The Court held that Mercer LLC's allegations of

trespass and nuisance were not covered as an "occurrence," because these actions were not an

accident, but were covered under the Personal and Advertising Injury provision.  March 28 MOO

at 71-74.  The Court found that the Gandy Dancer Policies do not limit coverage to landlord/

-13-

tenant relationships and that BNSF Railway had an ownership interest in the Mercer Property, giving rise to coverage under the Personal and Advertising Provision for BNSF Railway's and Gandy Dancer's alleged trespass and nuisance on the Mercer Property.  See March 28 MOO at 72-73.  The Court also found that the "expected-or-intended" exclusion did not apply to the allegations of trespass and nuisance, because the Supreme Court of New Mexico has held, in nearly identical circumstances, that the same exclusion did not apply.  March 28 MOO at 74. The Court determined, therefore, that The Hartford had a duty to defend BNSF Railway and Gandy Dancer under the Gandy Dancer Policies against Mercer LLC's allegations of trespass and nuisance, and denied that portion of the 1st MSJ.  See March 28 MOO at 74.  The Court found that it could not determine whether The Hartford had a duty to indemnify under the Gandy Dancer Policies, because liability against BNSF Railway and Gandy Dancer had not yet been established in the underlying action.  See March 28 MOO at 75.

The Hartford moves the Court, pursuant to rule 56 of the Federal Rule of Civil Procedure, for a summary judgment that the "Personal and Advertising Injury" provision of the insurance policies issued to Defendant Gandy Dancer, LLC does not cover claims that Mercer LLC brings in the underlying action.  Specifically, The Hartford requests a declaratory judgment that neither Defendant BNSF Railway nor Gandy Dancer is alleged to have committed the following Personal and Advertising Injury offense: "The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."  2nd MSJ at 2.  The Court will refer to this coverage in subsection (c) of the Personal and Advertising Injury provision (paragraph 17 of the Gandy Dancer Policies), as the "Wrongful Eviction" provision.

-14-

The Hartford requests a summary judgment on two independent grounds.  First, The Hartford contends that the Wrongful Eviction applies only to structures and premises that persons occupy, and not to unoccupied farm and ranch land.  Second, The Hartford contends that Wrongful Eviction applies only when actions are taken on behalf of an owner, landlord, or lessor of a room, dwelling, or premises.  Accordingly, The Hartford contends that, because neither BNSF Railway nor Gandy Dancer was an owner, landlord, or lessor with respect to the property on which they worked, there is no coverage under the Wrongful Eviction provision.

The Hartford asserts that it is entitled to summary judgment because the Wrongful Eviction provision does not cover Gandy Dancer's work on the Mercer Property, because the property "was not a room, dwelling, or premises, and because it was not occupied by any persons as the Policies require."  2nd MSJ at 7.  The Hartford asserts that Wrongful Eviction coverage applies only to a "'room, dwelling, or premises,'" but not to land.  2nd MSJ at 7 (citing Mirpad, LLC v. Cal. Ins. Guarantee Ass'n, 132 Cal. App. 4th 1048 (2005)).  The Hartford asserts that the dictionary meaning of the word "premises" is a "'house or building, along with its grounds.'" 2nd MSJ at 8 (quoting Premises, Black's Law Dictionary 1300 (9th ed. 2009)).   The Hartford asserts, therefore, that the ordinary meaning of the word "does not include a tract of uninhabited, unimproved ranch land such as the Mercer property," because, "for land to be a premises it must contain, or be appurtenant to, buildings," and the Mercer Property does not.  2nd MSJ at 8.  The Hartford asserts that the two other locations in which a Wrongful Eviction can occur -- a room and a dwelling -- reinforces the requirement that a premises include a building or buildings.  The Hartford contends that the inclusion of those words in the definition of Wrongful Eviction

indicates that the term contemplates "structures of some sort 'that a person occupies.'"  2nd MSJ
at 8.

The Hartford asserts that the Mercer Property was unoccupied.  The Hartford contends
that, in addition to the property containing a building, room, or dwelling, the structure must be
occupied to trigger The Hartford's obligations under the Wrongful Eviction provision.  The
Hartford asserts that Mercer Property was filled with overgrowth and was "far from being a
place that a person occupies."  2nd MSJ at 9.  The Hartford contends that New Mexico law
recognizes a "fundamental difference between ownership of real property on one hand, and its
occupancy on the other."  2nd MSJ at 9 (citing In re Gabriel M., 2002-NMCA-047, ¶ 13, 132
N.M. 124, 45 P.3d 64).

The Hartford also asserts that the Wrongful Eviction provision does not cover BNSF
Railroad and Gandy Dancer, because neither was an owner, landlord, or lessor of the Easement
or the Mercer Property, on which the alleged offenses occurred.  The Hartford asserts that an
easement is not an ownership interest in land, and, therefore, BNSF Railroad did not own any
part of the Mercer Property.  See 2nd MSJ at 10 (citing City of Rio Rancho v. Amrep S.W., Inc.,
2011-NMSC-037, ¶ 33, 260 P.3d 414, 150 N.M. 428); Olson v. H&B Props., 118 N.M. 495, 498,
882 P.2d 536, 539 (1994)). The Hartford contends, therefore, that, even if BNSF Railroad and
Gandy Dancer "trespassed or created a nuisance within the bounds of the easement," they did not
commit the offense of Wrongful Eviction, because they did not own the Mercer Property.  2nd
MSJ at 10-11.

BNSF Railway and Gandy Dancer raise numerous arguments against the 2nd MSJ.  First,
BNSF Railway and Gandy Dancer assert that the 2nd MSJ is a motion to reconsider the Court's

"determination that the personal and advertising injury provisions of the applicable policy obligate The Hartford to provide a defense for BNSF and Gandy Dancer [] in the underlying action." BNSF Response at 1. See Gandy Dancer Response at 7. BNSF Railway also asserts that The Hartford has relied on disputed facts in the 2nd MSJ, that it has ignored that New Mexico law requires ambiguous terms in an insurance policy to be construed against the insurer, and that New Mexico courts have interpreted similar terms to provide coverage against Mercer LLC's claims. BNSF Railway and Gandy Dancer also contend that the Wrongful Eviction provision is ambiguous, and that the Court should construe the Gandy Dancer Policies against The Hartford. See Gandy Dancer Response at 6 (citing Lopez v. N.M. Pub. Sch. Ins. Auth., 117 N.M. 207, 211, 870 P.2d 745, 749 (1994); State Farm Fire & Cas. Co. v. Price, 101 N.M. 438, 442, 684 P.2d 524, 528 (Ct. App. 1984)). BNSF Railway contends that The Hartford "utterly fails to cite to any of the numerous cases which have found both the personal and advertising injury provision as a whole and the specific terms upon which Hartford relies to be ambiguous." BNSF Response at 3. BNSF Railway also asserts that the BNSF Complaint and the Mercer Answer "demonstrate that both Mercer and BNSF are claiming ownership of the levee and diversion channel on the Mercer Property." BNSF Response ¶ 6, at 6.

First, BNSF Railway and Gandy Dancer assert that the 2nd MSJ is an improper second attempt for summary judgment, and improperly attacks the March 28 MOO. Gandy Dancer asserts that The Hartford is asking the Court to reconsider whether Gandy Dancer Policies' Wrongful Eviction provision covers Mercer LLC's claims of trespass and nuisance. See Gandy Dancer Response at 7 (citing March 28 MOO at 73-74). BNSF Railway and Gandy Dancer contends that The Hartford's 2nd MSJ fails to meet the standard for a motion to reconsider,

because The Hartford is raising new arguments "'which were available at the time of the original motion,'" BNSF Response at 10-11 (quoting Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000)), see Gandy Dancer Response at 8,  and The Hartford "does not cite to any intervening change in controlling law," Gandy Dancer Response at 8, see BNSF Response at 11. Gandy Dancer notes that The Hartford could have raised the argument that the Wrongful Eviction provision does not cover Mercer LLC's allegations before the Court decided the 1st MSJ, because both Gandy Dancer and BNSF argued that the Wrongful Eviction provision covered Mercer LLC's actions at the hearing on the 1st MSJ, and in response to the 1st MSJ. See Gandy Dancer Response at 2.  Gandy Dancer also asserts that The Hartford has failed to demonstrate that the March 28 MOO was "clearly erroneous or that it would result in manifest injustice if left undisturbed," because the Court's findings are consistent with New Mexico law. Gandy Dancer Response at 8 (citing Miller v. Tripad Adoption & Counseling Servs., Inc., 2003-NMCA-055, ¶¶  9-12, 133 N.M. 544, 65 P.3d 1099; G&G Servs., Inc. v. Agora Syndicate, Inc., 2000-NMCA-003, ¶¶ 20-23, 128 N.M. 434, 993 P.2d 751).

Second, BNSF Railway and Gandy Dancer assert that the dictionary definition of "premises" does not "exclude land with no buildings," but, rather, indicates that the terms includes "both 'a tract of land' and 'any buildings thereon.'"  BNSF Response at 15 (quoting premises, Webster's New Collegiate Dictionary 901 (1981)).  See Gandy Dancer Response ¶ 4, at 4 (citing premises, Black's Law Dictionary 1180-81 (6th ed. 1990)).  BNSF Railway also notes that, before 2009, Black's Law Dictionary included in the definition of "premises" "a distinct portion of real estate."  BNSF Response at 15 (citing premises, Black's Law Dictionary 1063 (5th ed. 1979)).  Gandy Dancer also asserts that the term "premises" has been "broadly

defined to include reference to any definite area." Gandy Dancer Response at 10 (citing premises, Black's Law Dictionary 1180-81 (6th ed. 1990)). Gandy Dancer asserts that the term "premises" "cannot be fairly read to mean that land without structures is excluded from the definition," and asserts that, even if structures are required, the Mercer Property nonetheless meets the definition, given the existence of ditches, berms, dikes, and spoil banks on the Mercer Property. Gandy Dancer Response at 10. BNSF Railway similarly asserts that the term "premises" in the Gandy Dancer Policies "could reasonably be construed to include" the improvements which are the subject of the underlying action. BNSF Response at 22. BNSF Railway contends that the dikes and levees are "clearly structures designed to protect residents," because their failure can harm residents. BNSF Response ¶ 8, at 7 (citing John Larson, Levees Break, Flood Fields in Luis Lopez, Mountain Mail Newspaper, August 15, 2006, available at http://www.mymountainmail.com/  stories/socnettieandchris08-03-0620060803.php.). BNSF Railway also asserts that other courts have defined the term "insured premises" in homeowner's insurance policies to include vacant land. BNSF Response at 16 (citing Allstate Ins. Co. v. Naai, 684 F. Supp. 2d 1220, 1224 (D. Haw. 2010); Hanson v. N. Star Mut. Ins. Co., 71 F. Supp. 2d 1007, 1012 (D. S.D. 1999); Bianchi v. Westfield Ins. Co., 191 Cal. App. 3d 287, 289 (1987); Ft. Worth Lloyds v. Garza, 527 S.W. 2d 195, 198 (Tex. Civ. App. 1975)).

Third, BNSF Railway and Gandy Dancer assert that both BNSF Railway and Mercer LLC are "persons" under the terms of the Gandy Dancer Policies. BNSF Response ¶ 7, at 7; Gandy Dancer Response ¶ 4, at 4 (citing person, Black's Law Dictionary 1162 (8th ed. 2004)). Gandy Dancer contends that dictionary definitions of "person" are unavailing to The Hartford, because Black's Law Dictionary "acknowledges that the term can refer to a 'natural person' or

an entity such as a corporation."  Gandy Dancer Response at 9 (citing person, <u>Black's Law Dictionary</u> 1162 (8th ed. 2004)).  Gandy Dancer also points out that the Gandy Dancer Policies expressly restrict the meaning of the term "person" to "natural persons" in other sections, and, therefore, the absence of a similar restriction in the Wrongful Eviction provision indicates that the term is not so restricted.  Gandy Dancer Response at 9 (quoting Wrongful Eviction provision ¶ 17(h) ("Discrimination or humiliation that results in injury to the feelings or reputation of natural person.")).

Fourth, BNSF Railway and Gandy Dancer assert that the term "occupied" is not restricted to "'a place where people live.'"  BNSF Response at 17 (quoting 2nd MSJ at 9).  <u>See</u> Gandy Dancer Response at 10.  BNSF Railway contends that both it and Mercer LLC "occupied" the Mercer Property within the meaning of the Gandy Dancer Policies, "by possessing the property, by keeping it for their use, and by preventing each other (at various times) from using portions of the property."  BNSF Response ¶ 7, at 7 (citing Affidavit of Mike Mechenbier, executed October 7, 2011, filed October 22, 2011 (Doc. 87-1).  <u>See</u> Mechenbier Aff. ¶ 8, at 2 (stating that, when Mechenbier acquired the Mercer Property, "the railroad right of way was fenced with the fence extending the full length of the Mercer Property from north to south"); BNSF Response ¶ 3 at  9.  BNSF Railway contends that the "heart of the dispute between Mercer and BNSF and Gandy Dancer is that both parties assert rights to possess and occupy the Mercer Property."  BNSF Response ¶ 7, at 7.  Gandy Dancer asserts that courts have "refused to construe the term 'occupy' as narrowly as Hartford suggests" and asserts that courts have rejected the "notion that 'occupy' requires the physical presence on land."  Gandy Dancer Response at 10 (citing <u>Starks v. Vill. Green Apartments</u>, 9000 N.E. 2d 1 (Ind. 2009); <u>McIntyre v. Scarbrough</u>, 266 Ga. 824, 825, 471

-20-

F.E. 2d 199, 201 (1996); Matousek v. Quirici, Ill. App. 391, 392 (Ct. App. 1915).  See BNSF

Response at 13-14.  BNSF Railway contends that because Mercer LLC had improvements on the

Mercer Property, and because BNSF Railway maintained a levee and diversion system on the

Mercer Property, both it and Mercer LLC occupied the Mercer Property.  BNSF Railway asserts

that the United States Court of Appeals for the Ninth Circuit and the Court of Appeals of North

Carolina have expressly found that the term "occupies" is ambiguous.  BNSF Response at 18

(citing Sell v. Nationwide Mut. Ins. Co., 492 F. App'x 740 (9th Cir. August 14, 2012); Hobbs

Realty & Constr. Co. v. Scottsdale Ins. Co., 593 S.E. 2d 103, 108 (N.C. Ct. App. 2004)).

        Fifth, BNSF Railway and Gandy Dancer assert that BNSF Railway's interest in the

Mercer Property is an ownership interest, and, therefore, not outside the meaning of the term

"owner" in the Gandy Dancer Policies.  Gandy Dancer Response at 11; BNSF Response at 20.

BNSF Railway also contends that the March 28 MOO contradicts The Hartford's statement that

neither BNSF Railway nor Gandy Dancer owned the Mercer property, because the Court held

that BNSF Railway's Easement grants it an ownership interest in the property.  See BNSF

Response at 20.  Gandy Dancer asserts that BNSF Railway's Easement gives it "a reasonable

expectation of coverage under the personal and advertising injury provisions in the CGL policy."

Gandy Dancer Response at 12 (citing Fed. Ins. Co. v. Century Fed. Sav. & Loan Ass'n, 113

N.M. 162, 168, 824 P.2d 302, 308 (1992); W. Commerce Bank v. Reliance Ins. Co., 105 N.M.

346, 348, 732 P.2d 873, 875 (1987)).  BNSF Railway also asserts that its ownership interest

extended to the ditches, fences, berms, and other improvements that it built and/or maintained on

the Mercer Property.  See BNSF Response at 20.  BNSF Railways contends that its Easement is

broad in nature and allowed it to fundamentally alter the Mercer Property, and that the Easement

"necessarily include[s] the right for BNSF to build and own earthworks and structures on the Mercer Property."  BNSF Response at 21.  BNSF Railway asserts that for The Hartford to contend that the Easement is not an ownerships interest lacks supported from the facts or in the applicable law.  BNSF Response at 22 (citing Kysar v. Amoco Prod. Co., 2004-NMSC-25, ¶ 51, 135 N.M. 767, 93 P.3d 1272).

BNSF Railway further contends that ownership of the Mercer Property is an issue in this case that the underlying action has yet to determine.  BNSF Railway contends that Mercer LLC's claims are based on its theory that BNSF Railway committed a nuisance and trespassed onto the Mercer Property through construction and/or enlargement of the levee and diversion system.  BNSF Railway notes that it contends in the underlying action that the improvements were within the Easement's scope and were not tortious intrusions.  BNSF Railway also contends that its improvements on the Mercer Property constitute "real property," which BNSF Railway owns, brining Mercer LLC's claims under the Gandy Dancer Policies' scope of coverage.  BNSF Response at 23-24 (citing Olson v. H&B Props., 118 N.M. 495, 882 P.2d 536 (1994); Knowles v. United Servs. Auto. Ass'n, 113 N.M. 703, 882 P.2d 394 (1992)).  BNSF Railway asserts that the Court's March 28 MOO was correct, and BNSF Railway and Gandy Dancer assert that the Court should deny the 2nd MSJ.

The Hartford replies that the "state court action does not state a claim for Personal and Advertising Injury as that term is defined by the Policies," and, therefore, it has no duty to defend or indemnify BNSF Railway or Gandy Dancer in the underlying action.  Reply at 1.  The Hartford asserts that the "mere mention of the term 'trespass' in Mercer's allegations" is insufficient to trigger the Wrongful Eviction provision.  Reply at 2.  The Hartford contends that

the Wrongful Eviction provision is the only subsection which possibly applies to Mercer LLC's claims, but it not applicable, because the definition requires "an occupied room, dwelling, or premises," and "a wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy." Reply at 2-3. The Hartford further contends that the definition covers only eviction "performed either by or on behalf of the owner, landlord or lessor of the space." Reply at 3. The Hartford contends that the Mercer Property is not a "premises," and that neither BNSF Railway or Gandy Dancer was an owner of any property, rendering Mercer LLC's claims outside the scope of the Wrongful Eviction provision. Reply at 3.

The Hartford contends that BNSF Railway and Gandy Dancer's reliance on authorities that define premises as including "vacant land" is inapposite, because none of the cases on which they rely discuss the term "premises" in the context of a Personal and Advertising Injury. Reply at 3. The Hartford also contends that neither BNSF Railway or Gandy Dancer had a possessory or ownership interest in the Mercer Property, and The Hartford asserts that Mercer LLC does not allege that BNSF Railway or Gandy Dancer trespassed on Mercer LLC's land. See Reply at 4-5. The Hartford asserts that, although BNSF Railway and Mercer LLC may have overlapping rights to the land which the Easement encumbers, Mercer LLC does not allege that BNSF Railway or Gandy Dancer interfered with Mercer LLC's right to use the property apart. The Hartford also asserts that, even if BNSF Railway and Gandy Dancer exceeded the Easement onto land that Mercer LLC exclusively owned, because BNSF Railway and Gandy Dancer do not own the land outside of the Easement, any claims based on that action fails to establish the elements of a wrongful eviction. See Reply at 5-6. The Hartford asserts that, even though the Easement grants BNSF Railway broad rights to perform construction on the Mercer Property, because neither

BNSF Railway or Gandy Dancer owned the land on which Mercer LLC claims they trespassed, Mercer LLC's allegations are not based on wrongful entry.  See Reply at 6.

The Hartford also asserts that the 2nd MSJ is not a motion to reconsider, but, rather, is properly filed as a motion for summary judgment.  The Hartford contends that, notwithstanding that similar issues were raised in the briefing on the 1st MSJ, The "Hartford's obligation to address arguments raised in response to its first Motion for Summary Judgment does not preclude it from now moving for summary judgment on the issue of Personal and Advertising Injury coverage."  Reply at 6.  The Hartford contends that any rules which would prohibit it form addressing the scope of the Wrongful Eviction provision, because it was raised in the responses to the 1st MSJ, would "allow response motions to be used offensively to hamstring the other side."  Reply at 7.

The Court held a hearing on January 7, 2013.  See Transcript of Hearing (taken January 7, 2013)("Tr.").  The Court stated that its initial impression is that it already decided the issues raised in the 2nd MSJ.  See Tr. at 4:3-13 (Court).  The Hartford stated that it first realized that BNSF Railway and Gandy Dancer were raising the Wrongful Eviction provision when they responded to the 1st MSJ, and that it "lacked the factual predicate to make the same arguments that we are making before the Court today."  Tr. at 6:16-24 (Lucero).  The Hartford also stated that it believes the Court "misconstrued" the Wrongful Eviction provision's language.  Tr. at 7:10-16 (Lucero).

The Court inquired what The Hartford's "strongest argument" is that the Court "construed it wrongly the first time."  Tr. at 8:5-9 (Court).  The Hartford stated that the "strongest part" of its argument is that the Court did not focus on whether the Mercer Property

was a "room, dwelling, or premises" as required to fall within the Wrongful Eviction provision's coverage for wrongful eviction, and if so, whether the Mercer Property was occupied "by a person." Tr. at 8:10-9:5 (Lucero). The Hartford stated that it could not fully bring that argument earlier, because it did not have admissions from Mercer LLC that the Mercer Property is devoid of a "room dwelling, or premises." Tr. at 9:6-12 (Lucero).

The Hartford asserted that Mercer LLC's claims are not covered under the Wrongful Eviction provision, because "there simply is not a room, dwelling, or premises on this land -- it's vacant land," and "a person does not occupy it or did not occupy it at the time that these alleged torts were committed." Tr. at 10:12-20 (Lucero). The Hartford asserted that, in the context of ¶ 17(c) of the Gandy Dancer Policies, BNSF Railway's improvements on the Mercer Property do not constitute a premises. See Tr. at 11:6-23 (Lucero). The Hartford contended that, because a person cannot occupy "a berm or a dam or a levy," those structures do not constitute an occupied premises from which one may be wrongfully evicted. Tr. at 11:24-12:1 (Lucero).

The Hartford asserted that whether the term "person" applies to only natural persons or includes entities is irrelevant, because "the factual predicate that we've established is that neither a natural person nor an entity occupied this vacant land." Tr. at 12:4-11 (Lucero). The Hartford contended that, within the context of the Wrongful Eviction provision, "there is no logical way to construe these words, other than, premises means something in conjunction with room or dwelling." Tr. at 14;13-20 (Lucero). The Hartford contended that the "logical and clear definition" of "occupy" requires "that somebody lives there." Tr. at 14:21-15:1 (Lucero).

The Court stated that it is concerned that, while other jurisdictions might adopt more restrictive definitions of the contested terms, the Supreme Court of New Mexico, which has

"very broadly construed some other language in policies," is likely to reject narrow definitions. Tr. at 15:2-14 (Court).  The Hartford asserted that it cannot predict how the Supreme Court of New Mexico will interpret the Wrongful Eviction provision, and that the Court "must use its own logic and its own reading and understanding in order to do this."  Tr. at 15:16-25 (Lucero).

The Court inquired of BNSF Railway whether the facts are in dispute, because "this thing seemed to me to be raising a fairly clean legal issue that I had to decide," which it did not resolve in the March 28 MOO.  Tr. at 17:9-16 (Court).  BNSF Railway stated that "what was known about the land was known back when we had this original motion."  Tr. at 17:17-24 (Fields). BNSF Railway also pointed out that it opposed the 1st MSJ, in part, because it had not had sufficient time to conduct discovery, but that The Hartford opposed allowing BNSF additional time for discovery.  See Tr. at 18:1-12 (Fields).  The Court inquired whether its March 28 MOO decided the scope of the Wrongful Eviction provision, because when it found that The Hartford had a duty to defend, "it was based upon sort of a broad reading of premises," and not the definition of specific terms.  Tr. at 18:16-24 (Court).  The Court stated that whether the Mercer Property was occupied and structures were on the land is a new issue.  See Tr. at 19:9-15 (Court).  The Court inquired why The Hartford could not file a subsequent motion for summary judgment on a new legal issue that the Court did not address in the 1st MSJ.  See Tr. at 20:9-17 (Court).  BNSF Railway responded that The Hartford had the opportunity to raise the scope of the Wrongful Eviction provision in the 1st MSJ, and it chose to not assert the argument it now raises in the 2nd MSJ.  See Tr. at 20:18-21:6 (Fields).  BNSF Railway asserted that the 2nd MSJ is "squarely within a motion to reconsider," because The Hartford has not alleged new facts that The Hartford "could not have reasonably discovered" before filing the 1st MSJ or "new case law

-26-

that's come to light that they could not have reasonably known." Tr. at 21:7-15 (Fields).  BNSF Railway asserted, therefore, that the 2nd MSJ is a motion for reconsideration, which the Court should deny.  See Tr. at 21:16-22:1 (Fields).

BNSF Railway asserted that The Hartford concedes that Mercer LLC is bringing a claim of wrongful entry against BNSF Railway.  See Tr. at 22:11-23:5 (Fields)(citing Reply at 4-5). BNSF Railway also asserted that the parties are disputing in the underlying action whether BNSF Railway and Gandy Dancer are owners of land on which Mercer LLC alleges they trespassed and interfered with Mercer LLC's right of occupancy.  See Tr. at 23:6-13 (Fields)(citing Reply at 6).  BNSF Railway asserted that the Gandy Dancer Policies discuss a "right of occupancy" and not "actually someone occupying it."  Tr. at 23:14-24:9 (Fields)(citing Gandy Dancer Policies ¶ 17(c)).  BNSF Railway asserted that The Hartford has conceded that Mercer LLC had a right to occupy the Mercer Property.  See Tr. at 24:10-20 (Fields).  BNSF Railway asserted that "there's no question that [] Mercer in this case had the right to occupy their land."  Tr. at 25:20-24 (Fields).  BNSF Railway asserted that "there is no question that we had the right to occupy, and, in fact, did occupy the land, because we built the berm."  Tr. at 26:2-6 (Fields).  BNSF Railway noted that it disputes with Mercer LLC the size of the berm on the Mercer Property, and asserted that, regardless of the size, Mercer LLC's allegations in the underlying action indicate that BNSF Railway is "occupying the property."  Tr. at 27:5-28:15 (Fields).

Regarding the meaning of the term "person" in the Wrongful Eviction provision, BNSF Railway asserted that the provision does not discuss a "natural person," which would indicate that the provision precludes corporations or entities.  Tr. at 29:9-30:6 (Fields, Court).  BNSF Railway hypothesized that, if the Supreme Court of New Mexico interpreted the Wrongful

Eviction provision, the Supreme Court of New Mexico would find that, because The Hartford did not include the adjective "natural" in the provision and included the phrase "right of occupancy," rather than simply "occupancy," the provision is not restricted to "natural persons" that actually occupy a premises.  Tr. at 31:5-17 (Fields).

BNSF Railway further argued that, in the underlying action, the Honorable Matthew G. Reynolds, New Mexico State District Judge for the Seventh Judicial District, found that "'[a]s a matter of law the express easement specifically contemplates, not only excavation, but also the maintenance and construction of ditches, dikes, and spoil banks on Mercer's property.'"  Tr. at 34:3-9 (Fields)(quoting Order on Roy D. Mercer LLC's Motion for Partial Summary Judgment Against BNSF Railway Company and Gandy Dancer, LLC ¶ 4, at 2, filed in state court July 5, 2012, filed in federal court October 22, 2012 (Doc. 87-8)("State Court PSJ").  BNSF Railway further asserted that Judge Reynolds found genuine issues of material fact regarding whether BNSF Railway exceeded the scope of the Easement.  See Tr. at 34:15-22 (Fields); id. at 36:4-7 (Fields).

Regarding the meaning of the term "person," BNSF Railway stated that it has "extensively," through its briefing, shown that the term "could be a corporation[,] . . . unless you specifically said a natural person."  Tr. at 36:11-16 (Fields).  BNSF Railway also stated that the term "premises" can refer to the land itself, but that it has "erected structures on the property," such as the berm and a ditch; therefore, even if the term requires the existence of structures, its improvements on the Mercer Property fall within the term's definition.  Tr. at 37:1-9 (Fields).  BNSF Railway contended that it has, thus, "satisfied the person requirement satisfied[,] the

occupancy requirement, we've satisfied the premises requirements, and we've satisfied the ownership requirement."  Tr. at 37:21-24 (Fields).

Gandy Dancer stated that The Hartford is asking the Court to adopt one interpretation of the Wrongful Eviction provision in violation of New Mexico law that insurance policies be construed against the drafter.  See Tr. at 39:14-23 (Warburton)(citing March 28 MOO at 74). Gandy Dancer stated that, if The Harford had intended to adopt a more restrictive definition of "person" or "occupy" or "premises," it could have written a more restrictive definition into the Gandy Dancer Policies.  Tr. at 40:9-41:6 (Warburton).  Gandy Dancer noted that Black's Law Dictionary defines "person" to include "a natural person, an entity, or organization, such as corporation."  Tr. at 41:7-13 (Warburton).  Gandy Dancer stated that The Hartford has failed to cite to a change in the facts or applicable law which would cause the Court to reconsider its decision on the scope of the Wrongful Eviction provision in the March 28 MOO.  See Tr. at 42:10-24 (Warburton).

The Hartford stated that it is asking the Court to read the Wrongful Eviction provision as "any ordinary person would read it and then come to the conclusion that either these claims do or do not fall within that language."  Tr. at 43:14-20 (Lucero).  The Hartford pointed out that the Wrongful Eviction provision does not contain the phrase "right of private occupancy," as BNSF Railway asserts.  Tr. at 44:4-15 (Lucero).  The Hartford asserted that it "knew how to differentiate rights from physical realities," and that it differentiated in the context of "a room, or dwelling or a premises that a person occupies."  Tr. at 44:16-23 (Lucero).  The Hartford stated that "the undisputed facts" indicate that the Mercer Property is vacant and unoccupied.  Tr. at 44:24-45:2 (Lucero).   The Hartford contended that the term "premises" does not include

structures which persons cannot occupy, such as the berm or ditches on the Mercer Property.  Tr. at 46:7-47:8 (Lucero).

The Court stated that, under its duty to construe New Mexico law in accordance with the Supreme Court of New Mexico's guidance, it is inclined to find that the term "persons" includes a corporation.  Tr. at 49:10-23 (Court).  The Court stated that, if a structure, such as a berm, is sufficient to satisfy the meaning of the term "occupy," it is inclined to find that BNSF Railway occupied the Mercer Property.  Tr. at 49:24-50:8 (Court).  The Court stated, therefore, that it is inclined to find that the Supreme Court of New Mexico would find that Mercer LLC's allegations trigger The Hartford's obligations under the Wrongful Eviction provision.  See Tr. at 50:9-15 (Court).

## LAW REGARDING SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50 (citations omitted).  Unsupported assertions or conjecture as to factual disputes are not enough to survive summary judgment.  See Branson v. Price River Coal Co.,

853 F.2d 768, 771-72 (10th Cir. 1988).  The Court may consider only admissible evidence when ruling on a motion for summary judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

If a defendant seeks summary judgment, the defendant has the "initial burden to show that there is an absence of evidence to support the nonmoving party's case."  Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(internal quotations omitted)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995)).  Upon meeting that burden, the burden shifts to the plaintiff to "identify specific facts that show the existence of a genuine issue of material fact."  Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164 (citations and internal quotations omitted).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted).  The plaintiff, in opposing the motion, "must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor."  Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164 (citations and internal quotations omitted). The mere existence of a scintilla of evidence in support of the plaintiff's position is not sufficient; there must be evidence on which the factfinder could reasonably find for the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

## LAW REGARDING MOTIONS FOR RECONSIDERATION

Under Tenth Circuit case law,

[g]enerally, a "motion for reconsideration, not recognized by the Federal Rules of Civil Procedure, Clough v. Rush, 959 F.2d 182, 186 n. 4 (10th Cir. 1992), may be construed in one of two ways: if filed within 10 days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed more than 10 days after entry of judgment, it is treated as a motion

> for relief from judgment under Rule 60(b)." Computerized Thermal Imaging, Inc.
> v. Bloomberg, L.P., 312 F.3d 1292, 1296 n.3 (10th Cir. 2002). In addition, "every
> order short of a final decree is subject to reopening at the discretion of the district
> judge." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1,
> 12 . . . (1983); see also Fed. R. Civ. P. 54(b).

Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005). A district court has discretion to

revise interlocutory orders before the entry of a final judgment. See Trujillo v. Bd. of Educ. of

the Albuquerque Pub. Schs., 212 F. App'x 760, 765 (10th Cir. 2007). When a plaintiff seeks to

obtain reconsideration of a non-final order, his or her motion for reconsideration is considered

"an interlocutory motion invoking the district court's general discretionary authority to review

and revise interlocutory rulings prior to entry of final judgment." Wagoner v. Wagoner, 938

F.2d 1120, 1122 n.1 (10th Cir. 1991). A motion for reconsideration is an "inappropriate vehicle[

] to reargue an issue previously addressed by the court when the motion merely advances new

arguments, or supporting facts which were available at the time of the original motion."

Servants of Paraclete v. Does, 204 F.3d at 1012. "Grounds warranting a motion to reconsider

include (1) an intervening change in the controlling law, (2) new evidence previously

unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of

Paraclete v. Does, 204 F.3d at 1012. "Thus, a motion for reconsideration is appropriate where

the court has misapprehended the facts, a party's position, or the controlling law." Servants of

Paraclete v. Does, 204 F.3d at 1012 (citation omitted). A district court has considerable

discretion in ruling on a motion to reconsider. See Phelps v. Hamilton, 122 F.3d 1309, 1324

(10th Cir. 1997).

## RELEVANT NEW MEXICO LAW REGARDING INSURANCE CONTRACTS

Under New Mexico law, insurance policies are interpreted like any other contract, except that, "where a policy term is 'reasonably and fairly susceptible of different construction,' it is deemed ambiguous and 'must be construed against the insurance company as the drafter of the policy." United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 10, 285 P.3d 644 (quoting Knowles v. United Serv. Auto Ass'n, 113 N.M. at 704, 832 P.2d at 396 (citing Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 6, 139 N.M. 24, 127 P.3d 1111; City of Santa Rosa v. Twin City Fire Ins. Co., 2006-NMCA-118, ¶ 7, 140 N.M. 434, 143 P.3d 196)). "Insurance policies almost always are contracts of adhesion, meaning that 'the insurance company controls the language" and "the insured has no bargaining power.'" United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 10, 285 P.3d 644 (quoting Cal. Cas. Ins. Co. v. Garcia-Price, 2003-NMCA-044, ¶ 20, 133 N.M. 439, 63 P.3d 1159)(citing accord Padilla v. State Farm Mut. Auto. Ins. Co., 2003–NMSC–011, ¶ 14 n. 3, 133 N.M. 661, 68 P.3d 901. The Supreme Court of New Mexico described how insurance contracts are ones of adhesion in Sanchez v. Herrera, 109 N.M. 155, 783 P.2d 465 (1989):

> The typical insured does not bargain for individual terms within policy clauses; the insured makes only broad choices regarding general concepts of coverage, risk, and cost. Not only does the insurance company draft the documents, but it does so with far more knowledge than the typical insured of the consequences of particular words.

109 N.M. at 159, 783 P.2d at 469. "Cognizant of this imbalance in power, 'as a matter of public policy' courts 'generally construe[ ] ambiguities 'in favor of the insured and against the insurer.'" United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 11, 285 P.3d 644 (quoting Ponder v. State Farm Mut. Auto. Ins. Co., 2000–NMSC–033, ¶ 26, 129 N.M. 698, 12

P.3d 960)(citing 2 Steven Plitt et al., Couch on Insurance § 22:14 (3d ed. 2010)).  Accordingly, when a court finds that a term in an insurance policy is ambiguous, "[t]he court's construction of [the] policy will be guided by the reasonable expectations of the insured."  Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 22, 123 N.M. 752, 945 P.2d 970.  See Phx. Indem. Ins. Co. v. Pulis, 2000-NMSC-023, ¶ 23, 129 N.M. 395, 9 P.3d 639 ("[T]he test is not what the insurer intended its words to mean, but what a reasonable person in the insured's position would have understood them to mean.").  Additionally, "'[i]t is unnecessary to show that a construction against the insurer is more logical than a construction against the insured,' so long as both constructions are reasonable."  United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 11, 285 P.3d 644 (quoting 2 Plitt, supra § 22:17, at 22-98 - 22-99).

The obligation of an insurer is a question of contract law and will be determined by reference to the insurance policy's terms.  See Safeco Ins. Co. of Am., Inc. v. McKenna, 90 N.M. 516, 520, 565 P.2d 1033, 1037.  The clauses must be construed as intended to be a complete and harmonious instrument.  See Erwin v. United Benefit Life Ins. Co., 70 N.M. 138, 381 P.2d 791 (1962).  On the other hand, where a clause "read alone is clear and unambiguous . . . it is not necessary to read the coverages together," because "there is a risk of creating, rather than identifying, ambiguity."  Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 16, 139 N.M. 24, 127 P.3d 1111.  Exclusionary clauses in insurance policies are to be narrowly construed, with the insured's reasonable expectations providing the basis for the analysis.  See King v. Travelers Ins. Co., 84 N.M. at 556, 505 P.2d at 1232.

**RELEVANT NEW MEXICO LAW REGARDING CONTRACT INTERPRETATION**

"Generally, the goal of contract interpretation is to 'ascertain the intentions of the contracting parties.'"  Gallegos v. Pueblo of Tesuque, 2002-NMSC-012, ¶ 30, 132 N.M. 207, 46 P.3d 668 (quoting Ponder v. State Farm Mut. Auto. Ins. Co., 2000-NMSC-033, ¶ 11, 129 N.M. 698, 12 P.3d 960 (internal quotation marks omitted); Strata Prod. Co. v. Mercury Exploration Co., 1996-NMSC-016, 21 N.M. 622, 630, 916 P.2d 822, 830).  "The court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties."  Gallegos v. Pueblo of Tesuque, 2002-NMSC-012, ¶ 30, 132 N.M. 207, 46 P.3d 668 (citing Ponder v. State Farm Mut. Auto. Ins. Co., 2000-NMSC-033, 11, 129 N.M. 698, 12 P.3d 960; CC Housing Corp. v. Ryder Truck Rental, Inc., 106 N.M. 577, 579, 746 P.2d 1109, 1111 (1987)).  "Absent ambiguity, provisions of a contract need only be applied, rather than construed or interpreted."  Richardson v. Farmers Ins. Co. of Am., 112 N.M. 73, 74, 811 P.2d 571, 572 (1991)(citing McKinney v. Davis, 84 N.M. 352, 503 P.2d 332 (1972)).

In New Mexico, a court may consider extrinsic evidence to determine "whether the meaning of a term or expression contained in the agreement is actually unclear."  Mark V, Inc. v. Mellekas, 1993-NMSC-001, 114 N.M. 778, 781, 845 P.2d 1232, 1235 ("New Mexico law, then, allows the court to consider extrinsic evidence to make a preliminary finding on the question of ambiguity.").  In Mark V, Inc. v. Mellekas, the Supreme Court of New Mexico summarized the law in New Mexico concerning the interpretation of "ambiguous or unclear language in written agreements":

>    An ambiguity exists in an agreement when the parties' expressions of
> mutual assent lack clarity. C.R. Anthony[v. Loretto Mall Partners], 112 N.M.
> [504,] 509 n. 2, 817 P.2d [817,] 243 n. 2 [(1991)].  The question whether an

agreement contains an ambiguity is a matter of law to be decided by the trial court. <u>Levenson v. Mobley</u>, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear. <u>C.R. Anthony</u>, 112 N.M. at 508-09, 817 P.2d at 242-43. If the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law. <u>Id</u>. at 510, 817 P.2d at 244. If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists. <u>Vickers v. North Am. Land Dev., Inc.</u>, 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). At that point, if the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved by the appropriate fact finder, <u>C.R. Anthony</u>, 112 N.M. at 510, 817 P.2d at 244.

Once the agreement is found to be ambiguous, the meaning to be assigned the unclear terms is a question of fact. <u>Segura v. Molycorp, Inc.</u>, 97 N.M. 13, 18, 636 P.2d 284, 289 (1981). However, in the event the parties do not offer evidence of the facts and circumstances surrounding execution of the agreement and leading to conflicting interpretations as to its meaning, the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation. <u>C.R. Anthony</u>, 112 N.M. at 510 n.5, 817 P.2d at 244 n.5. The factual issues, if any, presented by an ambiguity must be resolved by the jury (or by the judge as fact finder in the case of a bench trial) with the benefit of a full evidentiary hearing prior to deciding breach and damages. <u>Id.</u> at 510, 817 P.2d at 244. In order to determine the meaning of the ambiguous terms, the fact finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent. <u>American Bank of Commerce v. M & G Builders, Ltd.</u>, 92 N.M. 250, 252, 586 P.2d 1079, 1081 (1978). Evidence may be presented to the fact finder to aid in the interpretation of the agreement, but no evidence should be received when its purpose or effect is to contradict or vary the agreement's terms. <u>Maine v. Garvin</u>, 76 N.M. 546, 550-51, 417 P.2d 40, 43 (1966); <u>see also</u> <u>C.R. Anthony</u>, 112 N.M. at 509, 817 P.2d at 243.

1993-NMSC-001, 114 N.M. at 781-82, 845 P.2d at 1235-36. As this Court stated in <u>Great Am.</u>

<u>Ins. Co. of New York v. W. States Fire Protection Co.</u>, 730 F. Supp. 2d 1308 (D.N.M.

2009)(Browning, J.):

In <u>Mark V, Inc. v. Mellekas</u>, the Supreme Court of New Mexico summarized the circumstances under which it is appropriate for a district court to construe a contract as a matter of law, and when a district court should find that a contract is

ambiguous and leave construction of the contract to a jury.  According to the Supreme Court of New Mexico in Mark V, Inc. v. Mellekas, a district court may take extrinsic evidence to determine whether a contract is ambiguous, and "if the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law.  If the court determines that the contract is reasonably and fairly susceptible of different constructions, an ambiguity exists."  Id., 845 P.2d at 1235 (citations omitted).

730 F. Supp. 2d at 1314 n.1.

## NEW MEXICO LAW REGARDING THE DUTY TO DEFEND AND THE DUTY TO INDEMNIFY

The "duty to indemnify is distinct from [the] duty to defend," and resolution whether a party has a duty to defend does not "necessarily depend on there being a duty to indemnify." City of Albuquerque v. BPLW Architects & Eng'rs, Inc., 2009-NMCA-081, ¶ 31, 146 N.M. 717, 213 P.3d 1146 (citing Ins. Co. of N. Am. v. Wylie Corp., 105 N.M. 406, 409, 733 P.2d 854, 857 (1987)). In disputes stemming from insurance contracts, the "duty to defend arises out of the nature of the allegations in the complaint," Miller v. Triad Adoption & Counseling Servs., Inc., 2003-NMCA-055, ¶ 9, 133 N.M. 544, 65 P.3d 1099, and is determined "by comparing the factual allegations in the complaint with the insurance policy," Lopez v. N.M. Pub. Sch. Ins. Auth., 117 N.M. at 209, 870 P.2d at 747.  If a complaint "states facts that bring the case within the coverage of the policy," then the duty to defend will be triggered.  Bernalillo Cnty. Deputy Sheriffs Ass'n v. Cnty. of Bernalillo, 114 N.M. 695, 697, 845 P.2d 789, 791 (1992).  Generally, an insurer's "duty to defend arises out of a potentially covered claim and lasts until the conclusion of the underlying lawsuit, or until it has been shown that there is no potential for coverage," and, when there are multiple causes of action, "the duty continues until every covered claim is eliminated." Guest v. Allstate Ins. Co., 2010-NMSC-047, ¶ 33, 149 N.M. 74, 244 P.3d 342 (citing Plitt, supra, § 200:47 (Supp. 2007)).  Known, but unpleaded facts, may bring a claim

within the policy's coverage at the beginning of the litigation or at a later stage.  See Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co., 1990-NMSC-094, 110 N.M. 741, 744, 799 P.2d 1113, 1116.  "If the allegations of the complaint or the alleged facts tend to show that an occurrence comes within the coverage of the policy, the insurer has a duty to defend regardless of the ultimate liability of the insured."  Miller v. Triad Adoption & Counseling Servs., Inc., 2003-NMCA-055, ¶ 9, 133 N.M. 544, 65 P.3d 1099.  With respect to the duty to indemnify, New Mexico courts have held that  "[i]f the allegations of the federal complaint clearly fall outside the provisions of [the] liability insurance policies, indemnity by the insurer is not required."  N.M. Physicians Mut. Liability Co. v. LaMure, 116 N.M. 92, 95, 860 P.2d 734, 737 (1993).  A court will "leave[] for later" determination whether the insurer must indemnify the insured, because that "ultimate determination is based on whether the insurer became legally obligated to pay damages because of a bodily injury or property damage that does, in fact, fall under the policy coverage."  12 Plitt, surpa, § 172:2 (Supp. 2011)).  The Tenth Circuit has held that the "duty to indemnify relates to liability actually imposed on the insured for claims falling within the scope of coverage."  Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC, 451 F. App'x 745, 2011 WL 6095102, at *3 (10th Cir. Dec. 08, 2011)(unpublished)(addressing duty to indemnify in Oklahoma and applying Tenth Circuit case law from Colorado)(citing United Fire & Cas. Co. v. Boulder Plaza Residential, LLC, 633 F.3d 951, 956-57 (10th Cir. 2011)).  See Valley Imp. Ass'n v. U.S. Fid. & Guar. Corp., 129 F.3d 1108, 1126 (10th Cir. 2997)(finding that, under New Mexico law, a judgment regarding the duty to indemnify would be "premature," because "the duty to indemnify must be determined based on the facts as ultimately determined in the litigation against the insured").

## ANALYSIS

The Court will grant the 2nd MSJ in part and deny it in part.  To the extent that The Hartford contends that the Mercer Property was not a premises, or was unoccupied by a person, within the Wrongful Eviction provision's terms, the Court finds that these terms are ambiguous, and the Court is bound by New Mexico law to construe these ambiguous terms in an insurance policy against The Hartford as the drafter of the Gandy Dancer Policies.  To the extent that The Hartford asserts that the Wrongful Eviction provision does not cover Mercer LLC's trespass and nuisance allegations against BNSF Railway and Gandy Dancer in the underlying action, because BNSF Railway and Gandy Dancer were not owners, landlords, or lessors regarding the Mercer Property, the Court rejected that argument in the March 28 MOO.  The Court will not reconsider whether BNSF Railway has an ownership interest in the Mercer Property within the meaning of the Wrongful Eviction provision, because The Hartford fails to point to a change in the facts or controlling law which renders its previous holding erroneous.  The Court, however, determines that The Hartford has convinced the Court that it misapprehended the controlling law and/or the facts whether Mercer LLC's allegations of trespass and nuisance are allegations of a wrongful eviction, entry, or invasion of the right of private occupancy committed by or on behalf of an owner, landlord, or lessor, and the Court will reconsider its March 28 MOO in that regard.  The Court concludes that Mercer LLC's allegations of trespass are not within the scope of the Wrongful Eviction provision, but Mercer LLC's allegations nonetheless, trigger The Hartford's duty to defend.

I.     THE TERMS "PREMISES," "PERSON," AND "OCCUPY" DO NOT EXCLUDE
       COVERAGE OF MERCER LLC'S CLAIMS.

The Hartford contends that the Mercer Property is not a "premises" and was unoccupied by a person at the time of the allegations in the Mercer Answer, and, therefore, that Mercer LLC's allegations of trespass and nuisance are outside the Gandy Dancer Policies' coverage. 2nd MSJ at 2.  BNSF Railway and Gandy Dancer respond that the terms "premises," "person," and "occupy" are ambiguous, and that the Court must construe these terms against The Hartford as the drafter of the Gandy Dancer Policies.  Gandy Dancer Response at 6.  The Court agrees with BNSF Railway and Gandy Dancer, and concludes that the terms are ambiguous, and the Court concludes that it must construe these terms against The Hartford.  The Court, therefore, will not grant The Hartford summary judgment declaring that these terms exclude coverage of Mercer LLC's claims against BNSF Railway and Gandy Dancer in the underlying action.

Under New Mexico law, the Court may consider extrinsic evidence to determine whether an ambiguity in an insurance contract exists.  See Mark V., Inc. v. Mellekas, 114 N.M. at 781, 845 P.2d at 1235.  A contract "is not rendered ambiguous merely because a term is not defined; rather, the term must be interpreted in its usual, ordinary, and popular sense . . . and may be ascertained from a dictionary."  Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 8, 139 N.M. 24, 127 P.3d 1111.  See Pedroza v. Lomas Auto Mall, Inc., No. CIV-07-0591 JB/RHS, 2013 WL 4446770, 18 (D.N.M. Aug. 2, 2013)(Browning, J.)(same).  In the context of an insurance contract, when an ambiguity is found, "[t]he court's construction of [the] policy will be guided by the reasonable expectations of the insured."  Rummel v. Lexington Ins. Co., 1997-NMSC–041, ¶ 22, 123 N.M. 752, 945 P.2d 970.  Moreover, "where a policy term is 'reasonably and fairly susceptible of different construction,' it is deemed ambiguous and 'must be construed

-40-

against the insurance company as the drafter of the policy." United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 10, 285 P.3d 644 (quoting Knowles v. United Serv. Auto Ass'n, 113 N.M. 703, 704, 832 P.2d 394, 396 (1992)(citing Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 6, 139 N.M. 24, 127 P.3d 1111; City of Santa Rosa v. Twin City Fire Ins. Co., 2006-NMCA-118, ¶ 7, 140 N.M. 434, 143 P.3d 196)). "'It is unnecessary to show that a construction against the insurer is more logical than a construction against the insured,' so long as both constructions are reasonable." United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 11, 285 P.3d 644 (quoting 2 Plitt, supra § 22:17, at 22-98 - 22-99).

A.   **THE TERM "PREMISES" IS AMBIGUOUS, AND THE COURT MUST CONSTRUE IT AGAINST THE HARTFORD.**

The parties assert differing definitions of "premises," depending upon the date of the dictionary being used. The Hartford is correct to state that Black's Law Dictionary currently defines the term as a "'house or building, along with its grounds,'" 2nd MSJ at 8 (quoting premises, Black's Law Dictionary 1300 (9th ed. 2009)), and that the term "building," according to a dictionary, refers to a "structure with a roof, esp. a permanent structure," building, Black's Law Dictionary 222 (9th ed. 2009). See building, New Oxford Am. Dictionary 228 (Angus Stevenson & Christine A. Lindberg eds., 3d. 2010)("a structure with a roof and walls, such as a house, school, store, or factory"). BNSF Railway asserts that, before 2009, Black's Law Dictionary gave the term "premises" a more general definition, as "'a distinct portion of real estate.'" BNSF Response at 15 (citing premises, Black's Law Dictionary 1063 (5th ed. 1979)). See Gandy Dancer Response at 10. Gandy Dancer also asserts that, even if the term "premises" requires the existence of a "structure," the Mercer Property meets the definition, because of the ditches, berms, dikes, and spoil banks on the property. Gandy Dancer Response at 10. BNSF

-41-

Railway's and Gandy Dancer's citations to older dictionaries evidence a tension, or perhaps a shift, in the meaning of the term "premises" within the last twenty years.  The Supreme Court of New Mexico, however, requires the Court to determine the "common and ordinary meaning of an undefined term . . . based upon contemporary usage, where possible, because the issue is how a reasonable insured would understand the term at the time of purchase."  Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 11, 139 N.M. 24, 127 P.3d 1111(rejecting the historical meaning of the term "vandalism" when interpreting an insurance contract).  On the other hand, that the term has progressed away from a definition which would have included vacant land indicates that, at the time Gandy Dancer entered into an insurance contract with The Hartford, the meaning of the term "premises" may not have been as restrictive as dictionaries in recent years indicate.  Moreover, "it may be necessary to look beyond the dictionary definition to ascertain the common and ordinary meaning of a word or words in some cases."  Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 10, 139 N.M. 24, 127 P.3d 1111.

The Court's focus in interpreting the language of an insurance policy "'must be upon the objective expectations the language of the policy would create in the mind of a hypothetical reasonable insured who, we assume, will have limited knowledge of insurance law.'"  Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 10, 139 N.M. 24, 127 P.3d 1111 (quoting Computer Corner, Inc. v. Fireman's Fund Ins. Co., 2002-NMCA-054 ¶ 7, 132 N.M. 264, 46 P.3d 1264).  As used in a number of contexts, the term "premises" is not restricted to the reference of a house or building.  See Henderson v. Bd. of Cnty. Comm'rs for San Miguel Cnty., 2013 WL 3985049, at *4 (10th Cir. Aug. 6, 2013)("The New Mexico Supreme Court held that the landowner's duty to avoid creating or permitting an unsafe condition on its premises was not

limited by the physical boundaries of the land."). For example, when discussing interests obtained through oil and gas leases, courts within New Mexico commonly refer to the interest as one "derived from the leased premises." ConocoPhillips Co. v. Lyons, 2013-NMSC-009, ¶ 33, 299 P.3d 844. The Supreme Court of New Mexico referred to the oil-and-gas interest as a "leased premises," without reference to buildings or improvements on the land; rather, the context indicates that the premises may have been absent of any buildings or improvements before drilling occurred. 2013-NMSC-009 ¶ 33, 299 P.3d 844 (discussing the scope of a free use clause in a statutory oil-and-gas lease). In the context of landlord/tenant law, the Court of Appeals of New Mexico has referred to leased land as a "premises." Grogan v. N.M. Taxation & Revenue Dept., 2003-NMCA-033, ¶ 27, 133 N.M. 354, 62 P.3d 1236. Similarly, the Court of Appeals of New Mexico has referred to a premises as a "lot or parcel," in distinguishing between a "residence" and a "premises" as used in a village ordinance. Curtis v. Bd. of Trustees of Village of Los Ranchos de Albuquerque, No. 31,648, 2012 WL 874884, at *3 (N.M. Ct. App. Feb. 16, 2012)(interpreting a village ordinance to require the measurement of a sewer connection across a premises, irrespective whether "structures may be located between the connection points"). This distinction indicates that interpreting "premises" to include land without buildings is consistent with the context in which the term is found: The Wrongful Eviction provision provides coverage for "[t]he wrongful eviction from . . . a room dwelling or premises." Gandy Dancer Policies ¶ 17(c), at 5. Just as the Court of Appeals of New Mexico determined that it must uphold a village ordinance's distinction between "residence" and "premises," that the Wrongful Eviction provision distinguishes between a "dwelling" and "premises" indicates that the terms apply to different areas, exclusive of one another.

New Mexico courts' use of the term "premises" indicates that a "reasonable person in the insured's position" could have construed the term to refer to land, notwithstanding the absence of buildings or structures thereon.  Phx. Indem. Ins. Co. v. Pulis, 2000-NMSC-023, ¶ 23, 129 N.M. 39, 9 P.3d 639.  Moreover, the changing dictionary definition of the term "premises" indicates that, in the not-so-distant past, the term included lands absent structure of buildings, and a reasonable insured might not be up-to-date on the current legal definition of the term.  See Battishill v. Farmers Alliance Ins. Co., 2006-NMSC-004, ¶ 10, 139 N.M. 24, 127 P.3d 1111. The Court concludes that the extrinsic evidence of the use of the term in context, and its developing dictionary definition, indicate that the term "premises" is "reasonably and fairly susceptible of different construction," and is ambiguous.  United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 10, 285 P.3d 644 (secondary quotations omitted).  In the insurance context, the Supreme Court of New Mexico requires the Court to "construe[ ] ambiguity in favor of the insured and against the insurer."  United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 11, 285 P.3d 644 (internal quotations omitted).  In this matter, BNSF Railway and Gandy Dancer have proffered a reasonable interpretation of the ambiguous term "premises," and the Court will adopt an interpretation of that term to include vacant land, absent any buildings.  The term "premises," therefore, does not preclude coverage of Mercer LLC's claims based upon BNSF Railway and Gandy Dancer's alleged trespass and nuisance on the Mercer Property.

**B.    THE TERM "PERSON OCCUPIES" IS AMBIGUOUS AND THE COURT MUST CONSTRUE IT AGAINST THE HARTFORD.**

The Hartford asserts that the Wrongful Eviction provision does not cover Mercer LLC's claims because a person did not occupy the Mercer Property.  See 2nd MSJ at 9.  The Hartford asserts that the Mercer Property was "unoccupied land," as it was "filled with overgrowth."  2nd

MSJ at 9.  BNSF Railway and Gandy Dancer contend that the term "person" is not restricted to a "natural person," and, therefore, may include a corporation.  Gandy Dancer Response at 9 (citing person, Black's Law Dictionary 1162 (8th ed. 2004)).  See BNSF Response ¶ 7, at 7.  BNSF Railway asserts that it and Mercer LLC occupied the Mercer Property "by possessing the property, by keeping it for their use, and by preventing each other [] from using portions of the property."  BNSF Response ¶ 7, at 7.  Gandy Dancer contends that the term "occupy" does not require "the physical presence on land."  Gandy Dancer Response at 10.  The Court agrees with BNSF Railway and Gandy Dancer.

A dictionary definition of "person" indicates that it may refer to a "human being," person, Black's Law Dictionary 1257 (9th ed. 2009), or a "one (as a human being, a partnership, or a corporation) that is recognized by law as the subject or rights and duties," person, Merriam-Webster Dictionary (2013), available at http://www.merriam-webster.com/dictionary/person. Accordingly, the dictionary definitions of this term indicate that both parties' interpretations are reasonable.  Moreover, at least one court has construed the exact provision at issue here to include the wrongful eviction of corporations.  The United States Court of Appeals for the Seventh Circuit has held that the term "person" in the Wrongful Eviction provision of The Hartford's Commercial General Liability Form cannot "refer to simply natural persons when it can plausibly apply to a corporate entity," because a corporation may be wrongfully evicted from a premises, "especially where the drafters never expressed any intent that usage of the term was meant only to refer to natural persons."  Supreme Laundry Serv., LLC v. Hartford Cas. Ins. Co., 521 F.3d 743, 747-748 (7th Cir. 2008).  The United States District Court for the District of Arizona has held the same regarding the term "person" in an insurance policy that did not limit

its application to "natural persons."  City of Glendale v. Nat'l Union Fire Ins., Co., No. CV-12-380-PHX-BSB, 2013 WL 1296418, at **12-13 (D. Ariz., Mar. 29, 2013)(citing Supreme Laundry Serv. LLC, v. Hartford Cas. Ins. Co., 521 F.3d 743)).  Although The Hartford correctly points out that the Court of Appeals of California has held that a the term "person" does not apply to "corporations" in a personal injury provision, 2nd MSJ at 9 (citing Mirpad LLC v. Cal. Ins. Guar. Assn., 132 Cal. App. 4th at 1072), the Court's task in interpreting an insurance policy is not to determine whether a term could be interpreted in the insurer's favor; the Court's task is to determine whether a term is susceptible to multiple reasonable meanings, and if so, the Court must adopt the interpretation that is consistent with the "reasonable expectations of the insured," Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 22, 123 N.M. 752, 945 P.2d 970.  Here, the dictionary definitions of "person" and the ordinary use of the term do not restrict its meaning to "natural persons," but, rather, indicate that the term is "reasonably and fairly susceptible of different construction."  United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 10, 285 P.3d 644 (internal quotations omitted).  Because the Supreme Court of New Mexico requires the Court, after finding an ambiguity in an insurance policy, to construe the ambiguity against the drafter, the Court will construe the term "person" in favor of Gandy Dancer and against The Hartford.  See United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 11, 285 P.3d 644. The Court concludes, therefore, that, because a reasonable construction of the term "person" includes corporations, the term does not preclude coverage of Mercer LLC's allegations against BNSF Railway and Gandy Dancer.

The dictionary definition of occupy is: to "reside or have one's place of business in (a building); fill or take up (a space or time); be situated in or at (a place or position in a system or

hierarchy)."  Occupy, <u>New Oxford Am. Dictionary</u> 1213 (3d ed. 2010).  To "reside" means to "have one's permanent home in a particular place" and to "be situated."  Reside, <u>New Oxford Am. Dictionary</u> 1485 (3d ed. 2010).  "Situate" refers to "having a site; located."  Situate, <u>Merriam-Webster Dictionary</u> (2013), <u>available at</u> http://www.merriam-webster.com/dictionary/situated?show=1&t= 1377565370.  The parties do not dispute that BNSF Railway has, in accordance with its Easement, maintained and rehabilitated a system of levees and a water diversion channel on the Mercer Property.  <u>See</u> BNSF Response ¶ 7, at 7; Reply at 2.  The parties also do not dispute that Mercer LLC owns the Mercer Property, and intended to use it for agricultural purposes.  <u>See</u> 2nd MSJ ¶ 7, at 4; BNSF Response ¶¶ 7, 1 at 7, 8-9; Gandy Dancer Response ¶ 4, at 4.  These facts indicate that the Mercer Property was at least a part of both BNSF Railway's and Mercer LLC's business, and could both be considered to "reside" on the property, in so far as both entities had a presence on the property, or at least a "site."  Moreover, the exact term in the Wrongful Eviction provision provides coverage for a "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy."  Gandy Dancer Policies ¶ 17(c), at 5.  The United States Court of Appeals for the Tenth Circuit has explained that the "right of private occupancy" is susceptible to a "broad range of interpretations."  <u>Winters v. Transamerica Ins. Co.</u>, 194 F.3d 1321, 1999 WL 69985, at *3 (10th Cir. Sept. 9, 1999)(unpublished).  Given the Tenth Circuit's recognition that the right of private occupancy is broad, the dictionary definitions of the term "occupy," and that both BNSF Railway and Mercer LLC could be considered to be located, or operate business out of, the Mercer Property, the Court cannot conclude, as a matter of law, that the term unambiguously precludes coverage of Mercer LLC's claims.  The Court concludes that the term "occupy" is "reasonably and fairly

Case 1:10-cv-00137-JB-RHS Document 122 Filed 08/30/13 Page 48 of 62

susceptible of different construction," and the Court must, therefore, construe the term against

The Hartford. United Nuclear Corp. v. Allstate Ins. Co., 2012-NMSC-032, ¶ 10, 285 P.3d 644

(internal quotation omitted). In sum, the terms which The Hartford contends preclude coverage

of Mercer LLC's claims against BNSF Railway and Gandy Dancer -- premises, person, and

occupy -- are at least ambiguous, if not often interpreted to cover exactly the allegations Mercer

LLC makes. Under New Mexico law, the Court must interpret ambiguous clauses in the Gandy

Dancer Policies against The Hartford, as the drafter of the contract "with far more knowledge

than the typical insured of the consequences of particular words." Sanchez v. Herrera, 109 N.M.

at 159, 783 P.2d at 469. The Court, therefore, will not grant The Hartford summary judgment

declaring that the terms "premises," "person," and "occupy" in the Gandy Dancer Policies

exclude Mercer LLC's claims against BNSF Railway and Gandy Dancer.

**II.    THE COURT WILL RECONSIDER, IN PART, ITS PREVIOUS HOLDING THAT THE TERM "COMMITTED BY OR ON BEHALF OF AN OWNER, LANDLORD OR LESSOR" IN THE PERSONAL     AND     ADVERTISING INJURY PROVISION DO NOT EXCLUDE BSNF RAILWAY AND GANDY DANCER FROM COVERAGE.**

The Hartford contends that the Wrongful Eviction provision covers only actions taken on

behalf of the owner, landlord, or lessor of a room, dwelling, or premises, and that neither BNSF

Railway nor Gandy Dancer qualify for coverage under that provision. See 2nd MSJ at 2. BNSF

Railway and Gandy Dancer assert that the 2nd MSJ is an improper second attempt for summary

judgment on the issue of ownership, which the Court addressed in the March 28 MOO. See

BNSF Response at 10-11; Gandy Dancer Response at 7. The Court agrees with BNSF Railway

and Gandy Dancer that the Court already held that BNSF Railway had an ownership interest in

the Mercer Property, and that any allegedly tortious action of Gandy Dancer were performed on

-48-

behalf of BNSF Railway.  The Court will not reconsider this holding, because The Hartford fails to point to new facts or a change in the controlling law which counsel that the Court reconsider its previous holding.   On the other hand, The Hartford has notified the Court that it misapprehended the facts and/or the controlling law regarding whether Mercer LLC's allegations of trespass and nuisance were committed by or on behalf of an owner, landlord, or lessor of the Mercer Property.  The Court will, therefore, reconsider its March 28 MOO on that basis alone, and concludes that Mercer LLC's allegations of trespass are not personal injuries within the scope of the Gandy Dancer Policies, but the Court concludes that the allegations of nuisance potentially are within the policies' scope, and, therefore, trigger The Hartford's duty to defend.

### A. THE COURT WIILL NOT RECONSIDER ITS HOLDING THAT BNSF RAILWAY POSSESSES AN OWNERSHIP INTEREST IN THE MERCER PROPERTY THROUGH THE EASEMENT.

The Hartford contends that an easement is not an ownership interest in land, and, therefore, any alleged trespass or nuisance was not committed by or on behalf of an owner of the Mercer Property.  See 2nd MSJ at 10-11.  The Court previously addressed whether an easement is an ownership interest in the Mercer Property.  See March 28 MOO at 73 ("BNSF Railway is an owner, and Gandy Dancer acted on its behalf.").  The Hartford cites to City of Rio Rancho v. Amrep Southwest, Inc., 2011-NMSC-037, 150 N.M. 428, 260 P.3d 414, for the proposition that an easement is "not an ownership right in the encumbered real property."  2nd MSJ at 10. Indeed, in City of Rio Rancho v. Amrep Southwest, Inc., the Supreme Court of New Mexico distinguished between an "easement" and a "fee" interest in land, but also explained that the "owner of the fee title retains the right to make 'any reasonable use desired of the land in which the easement exists,' as long as that use is consistent with the rights of the easement holder."

-49-

City of Rio Rancho v. Amrep Southwest, Inc., 2011-NMSC-037, ¶ 33, 150 N.M. 428, 260 P.3d 414.  Accordingly, rather than foreclosing any interpretation of the term "owner" to include the holder of an easement, the Supreme Court of New Mexico recognized that, whatever rights of ownership belong to the fee holder, the easement holder's rights circumscribe fee holder's rights to its land.  The Hartford also cites to Olson v. H&B Prop., 1994-NMSC-100, 118  N.M. 495, 882 P.2d 536, in asserting that, because an easement is "distinguished from ownership of" the underlying land, an easement is not an ownership interest.  2nd MSJ at 10 (citing 1994-NMSC-100, 118 N.M. at 498, 882 P.2d at 539).   There is nothing inconsistent, however, with the distinction between an ownership interest in the land, and an ownership interest in the easement which encumbers the land.  Moreover, the Tenth Circuit has referred to an easement as an "ownership interest."   United States v. Brandt, 496 F. App'x 822, 824 (10th Cir. Sept. 11, 2012)(unpublished)(explaining that the United States of America no longer possessed an "ownership interest" upon the extinction of its easement on a property); Utah Gospel Mission v. Salt Lake City Corp., 425 F.3d 1249, 1256 (10th Cir. 2005) (holding that Salt Lake city "relinquished its legally significant remaining ownership interest, named the easement, for consideration valued at $5.375 million").

The Hartford argues that the Wrongful Eviction provision nonetheless does not apply, because, if BNSF Railways' use of its easement was a nuisance, Mercer LLC does not allege that the easement "in any way . . . interfered with Mercer's right to also use that same property." Reply at 5.  Mercer LLC's allegations against BNSF Railway, however, undercut this argument. Mercer LLC argues that the "existing diversion channel and levy in place on Mercer's property" has caused Mercer LLC to halt the reconstruction of its property.  Answer to Verified Complaint

for Injunctive Relief, Declaratory Judgment, Negligence and Nuisance and Counterclaim ¶ 10, at 6, filed in state court July 8, 2008, filed in federal court February 16, 2010 (Doc. 1-1)("Mercer Answer").  Mercer LLC also alleges that BNSF Railway's actions have deprived it "of the reasonable use of his property for the past two years."  Mercer Answer ¶ 11, at 6.  These allegations demonstrate that Mercer LLC is alleging that BNSF Railway's use of its easement interfered with Mercer LLC's use of the Mercer Property.  Accordingly, The Hartford fails to demonstrate that the Court misapprehended the law or facts in holding that BNSF Railway's Easement on the Mercer Property may fairly and reasonably be construed to be an ownership interest, within the meaning of the Wrongful Eviction provision.  The Court will not reconsider this holding in the March 28 MOO.

### B.   THE COURT WILL RECONSIDER AND GRANT THE HARTFORD A DECLARATORY JUDGMENT THAT, IF GANDY DANCER EXCEEDED THE SCOPE OF BNSF RAILWAY'S EASEMENT ON THE MERCER PROPERTY, SUCH TRESPASS IS NOT COVERED UNDER THE WRONGFUL EVICTION PROVISION.

The Hartford contends that the Court misapprehended the Wrongful Eviction provision, because the language requires that the wrongful entry, eviction, or invasion of right of privacy be committed by an owner of the property, and, if Gandy Dancer exceeded the bounds of the Easement, it was no longer acting on behalf of the owner of the Mercer Property.  See 2nd MSJ at 11.  The Court previously addressed The Hartford's argument that, even if BNSF Railway possessed an ownership interest through the Easement, when or if Gandy Dancer exceeded the scope of BNSF Railway's Easement, Gandy Dancer was no longer acting on behalf of an owner of the Mercer Property.  See March 28 MOO at 73.  The Court held that allegations of trespass and nuisance are within the scope of the Wrongful Eviction provision, in part because the

provision is not limited to landlord/tenant disputes.  See March 28 MOO at 73 (citing Scottish

Guar. Ins. Co. v. Dwyer, 19 F.3d 307 (7th Cir. 1994); Blackhawk-Central Sanitation Dist. v. Am.

Guar. &  Liab. Ins. Co., 856 F. Supp. 584 (D. Colo. 1994)).  The Hartford asserts that Scottish

Guar. Ins. Co. v. Dwyer and Blackhawk-Cent. Sanitation Dist. v. Am. Guar. &  Liab. Ins. Co. are

inapplicable, because the policy provisions in those cases did not require a wrongful eviction,

entry, or invasion of the right of private occupancy to be committed on an owner's behalf.  See

2nd MSJ at 11.  The Hartford contends, therefore, that the Wrongful Eviction provision does not

extend to any allegations of tortious conduct arising from Gandy Dancer or BNSF Railway's

actions exceeding the scope of the Easement.  See 2nd MSJ at 11-12.  The Hartford is correct

that the policy at issue in Scottish Guar. Ins. Co. v. Dwyer and Blackhawk-Cent. Sanitation Dist.

v. Am. Guar. &  Liab. Ins. Co. is broader than those in the Gandy Dancer Policies.  See Scottish

Guar. Ins. Co. v. Dwyer, 19 F.3d at 311 (providing coverage for the "[w]rongul entry into, or

eviction of a person from, a room, dwelling or premises that the person occupies," but not

qualifying that the action be by or on behalf of an owner, landlord, or lessor).  On the other hand,

the United States District Court for the District of Colorado, in Blackhawk-Cent. Sanitation Dist.

v. Am. Guar. &  Liab. Ins. Co., held that a provision identical to that in the 05-06 Gandy Dancer

Policy, which covered "wrongful eviction, from, wrongful entry into, or invasion of the right of

private occupancy," committed "by or on behalf of its owner, landlord or lessor" was ambiguous,

and must be construed in favor of providing coverage. 856 F. Supp. at 590.   The Court notes,

however, that, in Valley Imp. Ass'n, Inc. v. U.S. Fidelity & Guar. Corp., upon which the Court

relied in stating that "the Tenth Circuit, in a case arising under New Mexico law, held that

averments of trespass could constitute 'wrongful entry on the property of another,'" the Tenth

Circuit did not discuss whether the personal injury provision at issue included a restriction for conduct "by or on behalf of its owner."  March 28 MOO at 73 (citing 129 F.3d at 1117).  The Court concludes, therefore, that The Hartford has properly advised the Court that it misapprehended the law and possibly the facts of the Wrongful Eviction provision, and the Court concludes that it should reconsider its holding regarding the provision's coverage for allegations of trespass.   See Servants of Paraclete v. Does, 204 F.3d at 1012 ("Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law.").

A number of courts that have interpreted the term "by or on behalf of its owner, landlord or lessor" in the context of an insurance provision such as the Wrongful Eviction provision have found the term to be ambiguous, and construe the term against the insurer.  See New Castle Cnty. v. Nat'l Union Fire Ins. Co., 243 F.3d 744 (3d Cir. 2001); New Castle Cnty. v. Nat'l Union Fire Ins. Co., 174 F.3d 338, 344 (3d Cir. 1999)(predicting that Delaware law would find that the term "by or on behalf of its owner, landlord or lessor" could modify either the terms "wrongful entry" and "invasion," or "occupy," and, is, therefore, ambiguous); Royal Ins. Co. of Am. v. Kirksville College of Osteopathic, 191 F.3d 959 (8th Cir. 1999)(same, with respect to Missouri law); Lakeland Vill. of Homeowners Ass'n v. Great Am. Ins. Group, 727 F. Supp. 2d 887 (E.D. Cal., 2010)(same with respect to California law).   On the other hand, some courts have found that the term is limited in its coverage to wrongful evictions, entries, or invasion, that an owner, landlord, or lessor commits.   See Monarch Greenback, LLC, v. Monticello Ins. Co., 118 F. Supp. 2d 1068, 1077 (D. Idaho 1999)(finding that the "ownership phrase describes the person committing the tort, not the status of the tenant"); United States Fidelity & Guar. Co. v. Goodwin, 950 F. Supp.

24, 27 (D. Me. 1996)(finding that the term "its" modifies "room, dwelling or premises," and not the word "person," and, therefore "unambiguously requires that the wrongful entry be committed by the owner, landlord, or lessor of the room, dwelling, or premises").

Indeed, the Tenth Circuit has interpreted an identical term to cover only the wrongful eviction, entry, or invasion of a right of occupancy that the owners, landlord, or lessor of the room, dwelling, or premises, entered into commits. In Chimera Inv. Co. v. State Farm Fire & Cas. Co., 168 F. App'x 793 (10th Cir. Mar. 11, 2008)(unpublished), the Tenth Circuit decided whether a personal-injury provision, nearly identical to the Gandy Dancer Policies ¶ 17(c) at issue here, extended coverage for an insured's wrongful eviction from and entry into the premises that another entity owned. The insured, the former owner of a condominium unit, lost the property through foreclosure and the subsequent owner -- Fidelity Funding Company -- purchased the condominium at a foreclosure sale. When Fidelity Funding attempted to take possession of the condominium, Fidelity Funding found it occupied and with changed locks. Fidelity Funding eventually attained possession of the unit, but the former owner's son repeatedly demanded a key to the unit. Approximately five months after purchasing the unit, the former owner's son forced entry into the condominium, damaging the door frame. Fidelity Funding sued the former owner and her son in state court, and the former owner's assignee -- Chimera Investment Company -- demanded coverage under the former owner's liability insurance policy with State Farm Fire & Casualty Corporation under the personal injury provision. See 268 F. App'x at 794-96. The district court granted summary judgment in State Farm's favor without an extensive discussion of the coverage issues. See 268 F. App'x at 797 n.2.

-54-

On appeal, the Tenth Circuit held that Fidelity Funding's allegations were outside the personal injury's scope of coverage.  Chimera Investment asserted that:

> Fidelity's state court complaint against the Insured clearly alleged unlawful entry, trespass, and wrongful eviction from unit 2 and that the undisputed facts show that the Insured Association was liable to Fidelity on those claims.  Fidelity was entitled to possess its own property.  Persons acting on behalf of the Insured ousted Fidelity from possession (a wrongful eviction); leased unit 2 to tenants of their choosing who occupied it over Fidelity's objection (a wrongful entry); and did so in derogation of Fidelity's right to exclusive use of unit 2 (an invasion of Fidelity's right of private occupancy).  These were "personal injuries" within the policy's definitions, Chimera contends.

268 F. App'x at 797.  The Tenth Circuit disagreed.  Applying Utah law, which requires that "ambiguous or uncertain language in an insurance contract that is fairly susceptible to different interpretations should be construed in favor of coverage," United States Fidelity & Guar. Co. v. Sandt, 854 P.2d 519, 521-22 (Utah 1993), the Tenth Circuit held that the personal injury provision did not cover the insured's allegedly wrongful eviction or entry, because Fidelity Funding, and not the insured, was the owner of the condominium.  See Chimera Inv. Co. v. State Farm Fire & Cas. Co., 268 F. App'x at 797.

> The coverage extends to wrongful entry or eviction (and so forth) "by or on behalf of the owner."  Here, Fidelity was the owner.  The wrongful entry was not "on behalf of" Fidelity but was actually in defiance of Fidelity's rights.  Giving the terms of the policy "their usually accepted meanings," see Utah Farm Bureau, 980 P.2d at 686, we conclude that the policy did not cover these "offenses."

Chimera Inv. Co. v. State Farm Fire & Cas. Co., 268 F. App'x at 797.

Utah's law regarding interpretation of insurance contracts appears to be substantially similar to New Mexico's.  Just as in New Mexico, Utah courts interpret insurance policies according to the rules of contract interpretation.  See Utah Farm Bureau Ins. Co. v. Crook, 1999 UT 47, ¶ 5, 980 P.2d 685 ("Insurance policies are generally interpreted according to rules of

contract interpretation.").   Additionally, just as in New Mexico, Utah recognizes that an "insurance policy is a classic example of an adhesion contract," and requires that "insurance policies should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance." United States Fidelity & Guar. Co. v. Sandt, 854 P.2d at 521-22.   Moreover, Utah recognizes an ambiguity when a term in an insurance policy "is fairly susceptible to different interpretations," United States Fidelity & Guar. Co. v. Sandt, 852 P.2d at 522-23, which is similar to New Mexico's recognition that an ambiguity exists when a term is "reasonably and fairly susceptible of different construction," Knowles v. United Serv. Auto Ass'n, 113 N.M. at 704, 832 P.2d at 396.

On the other hand, it is not clear whether Utah law allows extrinsic evidence to determine whether an ambiguity exists in a contract, as in New Mexico. Compare First Am. Title Ins. Co. v. J.B. Ranch, Inc., 966 P.2d 834, 836 (Utah 1998)(holding that "questions of contract interpretation not requiring resort to extrinsic evidence are matters of law," and that "an insurance policy is merely a contract between the insured and insurer and is construed pursuant to the same rules applied to ordinary contract," and that "if a policy is not ambiguous, no presumption in favor of the insured arises and the policy language is construed according to its usual and ordinary meaning" (internal quotations and citations omitted)), with Mark V., Inc. v. Mellekas, 114 N.M. at 781-82, 845 P.2d at 1235-36 ("The court may consider collateral evidence of the circumstances surrounding the execution of the agreement in determining whether the language of the agreement is unclear.").   The Tenth Circuit recognized a similar dispute, however, in Chimera Inv. Co. v. State Farm Fire & Cas. Co.  See 268 F. App'x at 797 n.3 (noting that the parties dispute whether the Tenth Circuit must decide coverage issued based on only the

-56-

allegations against the insured, and holding that "[n]one of the extrinsic evidence cited by Chimera is sufficient . . . to establish coverage, assuming <u>arguendo</u> that such evidence is properly to be considered").  The Tenth Circuit held, therefore, that the plain meaning of the terms in the personal injury provision at issue excluded coverage for wrongful acts not committed by an owner, landlord, or lessor.

The parties have not provided the Court with extrinsic evidence regarding the execution of the Gandy Dancer Policies.  Moreover, the Court is uncertain what extrinsic evidence, if any exists, would move the Gandy Dancer Policies ¶ 17(c) outside of the interpretation that the Tenth Circuit found in <u>Chimera Inv. Co. v. State Farm Fire & Cas. Co.</u>  The language of the provisions are identical, and the Tenth Circuit held that, notwithstanding extrinsic factual evidence regarding the underlying action, the language could cover only a wrongful eviction, entry, or invasion of right of private occupancy that an owner, landlord, or lessor committed.  Moreover, although other courts have found the term "by or on behalf of its owner, landlord or lessor" to be ambiguous, notably those provisions did not include the phrase "committed by," as the Gandy Dancer Policies ¶ 17(c) does here.  Gandy Dancer Policies ¶ 17(c) (providing coverage for "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy . . . <u>committed by</u> or on behalf of its owner, landlord or lessor" (emphasis added)).  The addition of the term "committed by" in the clause indicates that the term is unambiguous in the manner in which other courts have found similar clauses to be ambiguous.  <u>See</u> <u>New Castle Cnty. v. Nat'l Union Fire Ins. Co.</u>, 174 F.3d at 344 (predicting that Delaware law would find that the term "by or on behalf of its owner, landlord or lessor" could modify either the terms "wrongful entry" and "invasion," or "occupy," and, is, therefore, ambiguous).  Although the United States Court of

Appeals for the Third Circuit found that the phrase "by or on behalf of its owner, landlord or lessor" could modify either the verbs "entry" or "invasion," and be construed to describe the tortfeasor, or the phrase could modify the verb "occupies" and describe the victim, it would be illogical to conclude that the term "committed by or on behalf of its owner, landlord or lessor" could describe the victim of the alleged wrongful entry.  The Gandy Dancer Policies ¶ 17(c) is, additionally, more specific than the provision at issue in Chimera Inv. Co. v. State Farm Fire & Cas. Co.  See 268 F. App'x at 797 ("The definition of 'personal injury' in the policy includes injury . . . 'wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises . . . by or on behalf of its owner, landlord or lessor'").  The Court concludes, therefore, that the term "committed by or on behalf of its owner, landlord or lessor" is not "reasonably and fairly susceptible of different construction," Knowles v. United Serv. Auto Ass'n, 113 N.M. at 704, 832 P.2d at 396 and limits coverage to wrongful eviction, entry, or invasion or a right to private occupancy that an "owner, landlord or lessor" commits.

  The Court's conclusion requires it to reconsider its holding that the Wrongful Eviction provision covers Mercer LLC's allegations of trespass.  In support of its allegation of trespass, Mercer LLC alleges that BNSF Railway "did enter the property owned by Mercer."  Mercer Answer ¶ 28, at 9.  Accordingly, Mercer LLC's allegation is that BNSF Railway wrongfully entered onto the property Mercer LLC owns, without permission.  See N.M.R.A.-Civ. UJI 13-1301 ("A trespasser is a person who enters or remains upon the premises of another without the [express] [or] [implied] permission of the [owner] [occupant] of the premises.").  Although the parties dispute in the underlying action the scope of BNSF Railway's ownership interest in the

Mercer Property, whatever ownership interest BNSF Railway has in the Mercer Property, the trespass allegation sets forth that BNSF Railway exceeded the scope of its ownership interest. The Tenth Circuit's guidance requires the Court to interpret the Wrongful Eviction provision to not cover allegations of trespass, unless the owner of the property committed the trespass. Mercer LLC alleges the opposite here: that BNSF Railway's actions through Gandy Dancer exceeded its ownership interest as set forth in the Easement.  Accordingly, even though BNSF Railway had an ownership interest in the Mercer Property, Mercer LLC's allegations are that Gandy Dancer's actions, on BNSF Railway's behalf, trespassed beyond the scope of the Easement, demonstrating that Mercer LLC is alleging that BNSF Railway was no longer acting as an owner.  Just as the Tenth Circuit held in <u>Chimera Inv. Co. v. State Farm Fire & Cas. Co.</u>, "[h]ere, [Mercer LLC] was the owner.  The wrongful entry was not 'on behalf of' [Mercer LLC] but was actually in defiance of [Mercer LLC's] rights."  268 F. App'x at 797.  Similarly, just as the Tenth Circuit interpreted the terms of a more expansive personal injury provision to exclude coverage for wrongful eviction that was not committed by an owner of the property, the Court concludes that the Gandy Dancer Policies ¶ 17(c) does not "cover these 'offenses.'"  <u>Chimera Inv. Co. v. State Farm Fire & Cas. Co.</u>, 268 F. App'x at 797.

On the other hand, the Court will not change its previous holding that the Wrongful Eviction provision covers Mercer LLC's allegations of nuisance.  Although trespass requires a physical entry onto the property of another, <u>see</u> N.M.R.A.-Civ. UJI 13-1301, BNSF Railway could have committed a nuisance through invading Mercer LLC's right of private occupancy, while remaining within its ownership interest set forth in the Easement.  A "private nuisance" may be defined as an "invasion of the private use and enjoyment of land . . . or an invasion that

affects a single individual or a determinate number of persons in the enjoyment of some private right not common to the public." State ex rel. Vill. of Los Ranchos de Albuquerque v. City of Albuquerque, 1994-NMSC-126, 119 N.M. 150, 163, 889 P.2d 185, 198.  A defendant may be liable for nuisance notwithstanding a physical invasion into the property of another.  See Padilla v. Lawrence, 101 N.M. 556, 563, 685 P.2d 964 (Ct. App. 1984)("Where there is no physical invasion of property, as with intangible intrusions . . . the cause of action is for nuisance rather than for trespass.").   Here, Mercer LLC alleges that BNSF Railway's "'existing diversion channel and levy in place on Mercer's property'" have deprived Mercer LLC "'of the reasonable use of his property for the past two years.'"   Mercer Answer ¶¶ 10, 11, at 6.  Accordingly, Mercer LLC's allegations are that BNSF Railway's use of its ownership interest -- the Easement -- on the Mercer Property has deprived Mercer LLC of its use and enjoyment of the Mercer Property.  See Winters v. Transamerica Ins. Co., 1999 WL 699835 at *3 (holding that the broad meaning of the term "right of private occupancy" in a personal injury provision covers allegations that a landlord harassed, coerced, and intimidated tenants).  These facts bring the allegations of nuisance "potentially within the coverage of the policy."  Valley Imp. Ass'n, Inc. v. U.S. Fidelity & Guar. Corp., 129 F.3d at 1116.  The Court, therefore, does not alter its previous holding that Mercer LLC's allegations of nuisance trigger The Hartford's duty to defend.  See Guest v. Allstate Ins. Co., 2010-NMSC-047, ¶ 33, 149 N.M. 74, 244 P.3d 342 (recognizing that a duty to defend "arises out of a potentially covered claim and lasts until . . . every covered claim is eliminated").

The Court, therefore, grants the 2nd MSJ in part.  The Court concludes that the terms "premises," "person," and "occupy" do not exclude coverage of Mercer LLC's claims of trespass

and nuisance against BNSF Railway and Gandy Dancer in the underlying action, because these terms are ambiguous and must be construed against The Hartford.  The Court will not reconsider its previous holding that BNSF Railway possesses an ownership interest in the Mercer Property. On the other hand, the Court reconsiders its holding that the term "by or on behalf of the owner" does not exclude coverage of Mercer LLC's allegations of trespass and nuisance, and the Court concludes that the Wrongful Eviction provision does not cover trespass claims, because such claims do not allege a "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy . . . committed by or on behalf" of an "owner, landlord or lessor."  Gandy Dancer Policies ¶ 17(c).  The Court, however, will not change its previous holding that Mercer LLC's allegations of nuisance trigger a duty to defend, because Mercer LLC's allegations that BNSF Railway's use of its easement interfered with Mercer LLC's use and enjoyment of the Mercer Property are potentially within the Gandy Dancer Policies' coverage.

**IT IS ORDERED** that The Hartford Fire Insurance Company's Motion for Summary Judgment Regarding Personal and Advertising Injury Coverage and Memorandum in Support, filed September 27, 2012 (Doc. 83), is granted in part.  The Court concludes that the terms "premises," "person" and "occupy" in the insurance policies that Plaintiff The Hartford Fire Insurance Company issued to Defendant Gandy Dancer do not exclude Gandy Dancer and Plaintiff BNSF Railway Company's conduct alleged in the underlying action between Defendant Roy D. Mercer LLC and BNSF Railway.  The Court will not reconsider its previous holding that BNSF Railway was an "owner" with respect to its easement on property that Mercer LLC owns. On the other hand, the Court reconsiders its holding that the insurance policies cover Mercer LLC's allegations of trespass, and the Court concludes that they do not.  The Court concludes,

however, that the insurance policies nonetheless cover Mercer LLC's allegations of nuisance, and, therefore, The Hartford's duty to defend under the policies is triggered for the underlying action.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Todd A. Schwarz
Tom Bunting
Miller Stratvert, P.A.
Albuquerque, New Mexico

> *Attorneys for the Plaintiff and Counter-Defendant The Hartford Fire Insurance Company*

Robert P. Warburton
Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendant Gandy Dancer LLC*

Tim L. Fields
Earl E. DeBrine, Jr.
Paul T. Halajian
Nathan T. Nieman
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendant BNSF Railway Company*

Charles T. DuMars
Tanya L. Scott
Law & Resource Planning Associates
Albuquerque, New Mexico

> *Attorneys for Defendant Roy D. Mercer, LLC*